David Karl Gross, ABA #9611065
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
Telephone: 907.276.1550
dgross@bhb.com

Edward E. McNally, ABA #9203003
Marc E. Kasowitz *(Pro Hac Vice pending)*
Hector Torres *(Pro Hac Vice pending)*
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
Telephone: 212.506.1700
emcnally@kasowitz.com
mkasowitz@kasowitz.com
htorres@kasowitz.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ALASKA

|  |  |  |
|---|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | Case No.: 3:21-cv-00198 (SLG) |
| UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, U.S. Customs and Border Protection Acting Commissioner, in his official capacity, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### ORAL ARGUMENT REQUESTED

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.        CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 1 of 58

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................... 1

FACTS .................................................................................................................... 5

    A.    Plaintiffs' Businesses and Shipping Practices. ................................. 5

    B.    The Jones Act, the "Third Proviso" and CBP's Interpretive Rulings. ........... 8

    C.    The Irreparable Harm Caused by CBP's Penalty Notices. ........................... 10

    D.    Plaintiffs' Attempts to Resolve this Dispute with CBP. ............................... 16

ARGUMENT .......................................................................................................... 17

I.    THE HARM CAUSED BY CBP'S EXCESSIVE PENALTY NOTICES
    REQUIRES IMMEDIATE RELIEF FROM THE COURT, INCLUDING A
    STAY OF ENFORCEMENT OF ANY ADDITIONAL PENALTIES. ................. 17

    A.    The Constitutional Tolling Doctrine Bars CBP From Issuing
        Additional Draconian Penalties During this Litigation. ............................... 18

    B.    KIF Cannot Exhaust Its Administrative Remedies. ...................................... 21

II.    THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND
    A MOTION FOR PRELIMINARY INJUNCTION. ................................................ 22

III.    PLAINTIFFS' CLAIMS ARE LIKELY TO SUCCEED ON THE MERITS ......... 22

    A.    Plaintiffs are Entitled to A Declaratory Judgment That the Bayside
        Program Complies with the Jones Act. ......................................................... 24

        1.    The Third Proviso to the Jones Act. .................................................. 24

        2.    CBP Has Issued Interpretive Rulings Affirming That the
            Bayside Program Complies with the Jones Act. ............................... 27

        3.    *Horizon* and Current Status of CBP's Third Proviso
            Interpretive Rulings. ......................................................................... 30

        4.    Plaintiffs' Bayside Program Complies with the Third Proviso
            and CBP's Interpretive Rulings ........................................................ 35

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.        CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION        PAGE i
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 2 of 58

B.      CBP's Unlawful Penalties Cannot be Premised on a Secret Revision of its Own Interpretive Rulings and Regulatory Guidance..........................36

        1.      CBP Violated 19 U.S.C. § 1625(c)(1) By Modifying or Revoking Interpretive Rulings that Were in Effect Longer than Sixty Days. ..................................................................38

        2.      CBP Violated 19 U.S.C. § 1625(c)(2) By Modifying or Revoking Interpretive Rulings Involving Substantially Identical Transactions to the Bayside Program..............................39

C.      CBP's Exorbitant and Draconian Penalties Violate KIF's Due Process Rights under the Fifth Amendment. ............................................41

D.      CBP's Penalties Violates the Eighth Amendment's Prohibition on Excessive Fines. ..................................................................43

IV.     PLAINTIFFS WILL BE IRREPARABLY HARMED ABSENT INJUNCTIVE RELIEF...........................................................44

A.      Deprivation of Constitutional Rights Constitute Irreparable Harm. .............45

B.      Plaintiffs Will Suffer Irreparable Harm Unless the Court Enjoins CBP's Penalty Enforcement Actions. ........................................46

V.      THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR AND AN INJUNCTION IS IN THE PUBLIC INTEREST....................................48

CONCLUSION..................................................................49

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.           CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                        PAGE ii
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 3 of 58

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Mar. Ass'n v. Blumenthal*,
   590 F.2d 1156 (D.C. Cir. 1978) ................................................................. 25, 44

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
   750 F.2d 1470 (9th Cir. 1985) ....................................................................... 47

*Aminoil, Inc. v. U.S. E.P.A.*,
   599 F.Supp. 69 (C.D. Cal. 1984) ................................................................... 20

*Ass'n of Cmty. Cancer Ctrs. v. Azar*,
   509 F.Supp.3d 482 (D. Md. 2020) ................................................................. 49

*Austin v. United States*,
   509 U.S. 602 (1993) ....................................................................................... 44

*Bernie's Pharmacy, Inc. v. AmerisourceBergen Drug Corp.*,
   No. 3:18-CV-00183-TMB, 2018 WL 9816097 (D. Alaska Aug. 24, 2018) ......... 23, 48

*California Indus. Prod., Inc. v. United States*,
   436 F.3d 1341 (Fed. Cir. 2006) ................................................................ 37, 40

*Cent. Vermont Transp. Co. v. Dunning*,
   71 F.2d 273 (2d Cir. 1934), *aff'd*, 294 U.S. 33 (1935) ................................. 27

*Exxon Mobil Corp. v. Mnuchin*,
   430 F.Supp.3d 220 (N.D. Tex. 2019) ............................................................ 43

*ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*,
   867 F.3d 564 (5th Cir. 2017) ......................................................................... 42

*FCC v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012) ....................................................................................... 42

*Furie Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.*,
   No. 3:12-CV-00158 JWS, 2015 WL 4076843 (D. Alaska July 6, 2015) ................... 42

*Gen. Elec. Co. v. U.S. E.P.A.*,
   53 F.3d 1324 (D.C. Cir. 1995) ................................................................ 42, 43

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION    PAGE iii
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 4 of 58

*Gilder v. PGA Tour, Inc.*,
936 F.2d 417 (9th Cir. 1991) ................................................................. 23

*Horizon Lines, LLC. v. United States*,
414 F.Supp.2d 46 (D.D.C. 2006) ...................................................... *passim*

*Horizon Lines LLC v. United States of America, et al.*,
No. 1:05-cv-00952-ESH (D.C. Cir. Oct. 17, 2005) ................................. 34

*Horizon Lines, LLC--Petition for Declaratory Ord.*, No. FIN 35039,
2007 WL 4429515 (Dec. 18, 2007) ............................................. 25, 26, 33

*In the Tapline Cases*,
234 U.S. 1 (1914) ................................................................................... 35

*Int'l Custom Prod., Inc. v. United States*,
748 F.3d 1182 (Fed. Cir. 2014) .............................................................. 37

*Int'l Custom Prods., Inc. v. United States*,
33 C.I.T. 79 (2009) ................................................................................ 40

*Kahrs Int'l, Inc. v. United States*,
33 C.I.T. 1316 (2009) ....................................................................... 39, 40

*Kalthoff v. Douglas Cnty.*,
2021 WL 3010006 (D. Nev. July 15, 2021) ............................................ 46

*Kansas-Nebraska Nat. Gas Co. v. Dep't of Energy*,
No. 79-4055, 1979 WL 998 (D. Kan. July 31, 1979) ............................... 19

*M.R. v. Dreyfus*,
697 F.3d 706 (9th Cir. 2012) ................................................................. 47

*Mahroom v. Best W. Intern., Inc.*,
No. C 07–2351 JF (HRL), 2009 WL 248262 (N.D. Cal. Feb. 2, 2009) ...... 48

*Mathews v. Eldridge*,
424 U.S. 319 (1976) ............................................................................... 49

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ................................................................. 46

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
886 F.3d 803 (9th Cir. 2018) ................................................................. 47

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                              PAGE iv
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 5 of 58

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................ 23, 49

*Oklahoma Operating Co. v. Love*,
  252 U.S. 331 (1920) .................................................................................. 2, 5, 20, 21

*Randolph-Sheppard Vendors of Am. v. Weinberger*,
  795 F.2d 90 (D.C. Cir. 1986) ............................................................................. 21

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) ........................................................................................... 46

*Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*,
  771 F.3d 632 (9th Cir. 2014) ............................................................................. 24

*Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*,
  No. 3:20-CV-00290-SLG, 2021 WL 343925 (D. Alaska Feb. 1, 2021) .................... 23

*Stuhlbarg Int'l. Sales Co., Inc. v. John D. Brush and Co., Inc.*,
  240 F.3d 832 (9th Cir. 2001) ............................................................................. 48

*Thompson v. United States*,
  343 U.S. 549 (1952) ........................................................................................... 26

*Tok Air Serv., LLC v. Haaland*,
  No. 4:21-CV-0012-HRH, 2021 WL 3271342 (D. Alaska July 30, 2021) .................. 22

*United States v. Bajakajian*,
  524 U.S. 321 (1998) ........................................................................................... 44

*United States v. Mackby*,
  261 F.3d 821 (9th Cir. 2001) ............................................................................. 44

*United States v. Pacific Coast Eur. Conf.*,
  451 F.2d 712 (9th Cir. 1971) ..................................................................... 2, 5, 19, 20

*VECO Int'l, Inc. v. Alaska Pub. Offs. Comm'n*,
  753 P.2d 703 (Alaska 1988) ............................................................................... 20

*Wadley S. Ry. Co. v. Georgia*,
  235 U.S. 651 (1915) ........................................................................................... 19

*Washington v. Trump*,
  847 F.3d 1151 (9th Cir. 2017) ........................................................................... 46

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE v
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 6 of 58

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................ 22, 23, 47, 49

*Wright v. Riveland*,
    219 F.3d 905 (9th Cir. 2000) ....................................................... 44

**Statutes**

5 U.S.C. § 552 ............................................................................... 37

19 U.S.C. § 1618 ........................................................................... 22

19 U.S.C. § 1625 ..................................................................... *passim*

46 U.S.C. App. § 883 ..................................................................... 25

46 U.S.C. § 55102 ................................................................... *passim*

46 U.S.C. § 55116 ................................................................... *passim*

49 U.S.C. § 13102(17) ................................................................... 27

Jones Act ............................................................................... *passim*

Merchant Marine Act § 27 .............................................................. 25

**Rules**

19 C.F.R. § 4.80(b) ....................................................................... 41

19 C.F.R. § 113.64 ........................................................................ 41

19 C.F.R. § 171 ............................................................................ 22

19 C.F.R. § 177.2 .......................................................................... 22

U.S. Const. amend. V ......................................................... 24, 42, 43, 46

U.S. Const. amend. VIII ...................................................... 24, 44, 45, 46

Fed R. Civ. P. 65............................................................................ 1

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION      PAGE vi
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 7 of 58

**Other**

Customs Bulletin and Decisions,
https://www.cbp.gov/trade/rulings/bulletin-decisions (last visited
Aug. 23, 2021) ............................................................................................. 38

Customs Rulings Online Search System (CROSS), Customs and Border
Protection, https://rulings.cbp.gov/home ..................................................... 9

Fed. Reg., https://www.federalregister.gov/agencies/interstate-commerce-
commission (last visited Aug. 30, 2021) .................................................... 27

Letter from Glen E. Vereb, U.S. Customs and Border Protection to
Michael K. Tomenga, Counsel for American Seafoods Company LLC,
dated June 13, 2007 ..................................................................................... 31

Letter from Leonard Lehman, Assistant Commissioner, Regulations and
Rulings, to the Honorable John M. Murphy, Chairman Committee on
Merchant Marine and Fisheries, House of Representatives, dated June
27, 1978 ....................................................................................................... 28

Ruling Letter 112085 (March 10, 1992) ............................................................ 9, 28

Ruling Letter 113365 (March 10, 1995) .......................................................... 37, 39

Ruling Letter 114407 (July 23, 1998) ............................................................. 29, 36

Ruling Letter 115124 (August 11, 2000) ............................................. 9, 10, 28, 29, 36

Ruling Letter 115446 (August 9, 2001) ............................................................ *passim*

Ruling Letter 116185 (March 28, 2005) ............................................................ *passim*

Nat'l Archives, https://www.archives.gov/research/guide-fed-
records/groups/134.html (last visited Aug. 30, 2021) ................................. 27

U.S. Customs and Border Protection, What Every Member of the Trade
Community Should Know About: Coastwise Trade: Merchandise
(January 2009), available at
https://www.cbp.gov/sites/default/files/documents/CoastwiseTradeMerc
handise%20ICP.pdf ...................................................................................... 25

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE vii
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 8 of 58

U.S. Dep't of Just. (Apr. 4, 2017), https://www.justice.gov/usao-ak/pr/alaska-oil-company-agrees-pay-10-million-penalties-settle-federal-claims-violating-jones ........................................................................... 3

U.S. Dep't of Transp. Bureau of Transp. Statistics, https://www.bts.dot.gov/bts/bts/content/number-and-size-us-flag-merchant-fleet-and-its-share-world-fleet (last visited Aug. 29, 2021) ......................... 7

U.S. Dep't of Transp. Mar. Admin., https://www.maritime.dot.gov/data-reports/data-statistics/vessel-inventory-reports-xls-07-2021 (last updated Aug. 23, 2021) ...................................................................................................... 7

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION      PAGE viii
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 9 of 58

Plaintiffs Kloosterboer International Forwarding LLC ("KIF") and Alaska Reefer

Management LLC ("ARM") respectfully submit this Memorandum of Law in Support of

their Motion for Temporary Restraining Order and Preliminary Injunction, pursuant to

Federal Rule of Civil Procedure 65, for an order providing for the relief set forth in the

proposed Order to Show Cause submitted herewith, and respectfully show as follows:

## PRELIMINARY STATEMENT

This Court's intervention is urgently needed to prevent shocking and

unconstitutional overreaching by U.S. Customs and Border Protection ("CBP") in

assessing, and threatening to assess, against Plaintiffs and other companies critical to the

chain of distribution of frozen seafood from the Bering Sea to the eastern United States,

confiscatory and unprecedented penalties for purported violations of the Jones Act. This

overreaching has crippled, indeed brought to a crashing halt, the frozen seafood supply

and transportation chain between Dutch Harbor, Alaska and Calais, Maine, and from

there to destinations in the eastern United States. Plaintiffs and the other companies

critical to shipping this seafood are now unable to, and will not, resume shipping because,

absent immediate injunctive relief, CBP will impose additional massive penalties.

In assessing these penalties, CBP has reversed—without any constitutionally and

statutorily required notice, let alone opportunity to comment—20 years of established

practice CBP approved, and thus has violated and will continue to violate Plaintiffs' due

process and other constitutional rights. Accordingly, while they pursue their legal

challenges to CBP's unlawful conduct, Plaintiffs are entitled to emergency injunctive

relief barring CBP from ever imposing any penalties on Plaintiffs and the other

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION  PAGE 1 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 10 of 58

companies in the frozen seafood supply chain for shipments during the pendency of their legal challenges, including this lawsuit, and from enforcing, during the pendency of those challenges, the penalties it has already assessed.

Plaintiffs are entitled to injunctive relief for two independent reasons. First, as shown below, Plaintiffs are raising, at a minimum, substantial questions as to CBP's past and future violations of their constitutional rights—which in and of itself amounts to irreparable harm—and under the Supreme Court's long-established constitutional tolling doctrine, the government is barred from ever imposing or collecting penalties for conduct occurring while Plaintiffs' challenges are pending. *See, e.g., Oklahoma Operating Co. v. Love*, 252 U.S. 331, 338 (1920) (where plaintiff raises "reasonable ground" to contest government penalties as confiscatory, enforcement of penalties accrued *pendent lite* is barred, even if plaintiff does not ultimately prevail); *United States v. Pacific Coast Eur. Conf.*, 451 F.2d 712, 717 (9th Cir. 1971) (where plaintiff raises "substantial questions" as to constitutional validity of government action, it "ought not to have to pay a statutory penalty for noncompliance" with the challenged government action).

Second, and apart from the egregious constitutional violations themselves, what makes CBP's conduct even worse is the irreparable harm that has resulted and will continue to worsen from such massive fines absent injunctive relief—including the collapse of Plaintiffs' businesses, the permanent loss of customers, loss of hundreds of jobs, including in Alaska, a shortage of frozen seafood products in the markets this supply chain serves and, ultimately, higher prices to American consumers.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                    PAGE 2 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 11 of 58

Here are the indisputable facts. Earlier this month, CBP began issuing, without warning, notices of massive penalties—totaling nearly $25 million to KIF and over $325 million to other companies in Plaintiffs' supply chain, including many small family-owned American companies as well as others (the "Penalty Notices")—for alleged violations of the Jones Act in shipping frozen seafood products from Dutch Harbor, Alaska to Calais, Maine through the port of Bayside, New Brunswick, Canada ("Bayside").[1] CBP's Penalty Notices effectively have shut down a critical shipping route that—for over 20 years—has been approved by CBP as complying with the Jones Act, and which is essential to the delivery of frozen seafood to consumers, fast food chains, and school lunch and food aid programs throughout the eastern United States. The scope of the Penalty Notices assessed to date is so enormous that it is more than two times the annual value of all frozen Alaskan seafood transported through the Bayside port.

The urgent need for immediate injunctive relief is plain. Refrigerated trucking companies categorically refuse to transport Plaintiffs' shipments from cold storage facilities, which are close to capacity, unless they receive clear assurance they will not be exposed to additional crippling CBP penalties equal to the total value of their cargo. The cold storage facilities are fearful to accept for storage any more seafood headed to the

---

[1] The draconian penalties noticed by CBP are now more than 35 times the largest Jones Act penalties ever collected. Declaration of David Karl Gross (hereinafter "Gross Dec."), Ex. 1, *Alaska Oil Company Agrees to Pay $10 Million in Penalties to Settle Federal Claims for Violating the Jones Act*, U.S. Dep't of Just. (Apr. 4, 2017), https://www.justice.gov/usao-ak/pr/alaska-oil-company-agrees-pay-10-million-penalties-settle-federal-claims-violating-jones.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 3 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 12 of 58

United States because of the threatened penalties. Cargo vessels are no longer being sent to Bayside with seafood for the eastern United States. Fishing vessels returning from the Bering Sea to Dutch Harbor are facing dangerously tight conditions as the limited cold storage capacity fills up with cargo that was destined to the United States. In short, as a result of CBP's issuance of the Penalty Notices, the entire transportation route used by Plaintiffs has been paralyzed and will be irreparably damaged, absent Court intervention.

Plaintiffs have been—and continue to be—in full compliance with a long-recognized statutory exception in the Jones Act, referred to as the "Third Proviso," and CBP's own long-established, publicly-disclosed interpretive rulings and guidance concerning the Jones Act, extending over 20 years. CBP's penalties apparently are being imposed as a result of Plaintiffs' use of a transportation route that includes the use of rail trackage in Canada—even though that use is expressly allowed—not only by the express language of the Third Proviso, but also by CBP's own published interpretative rulings. This use of rail trackage in Canada to comply with the Third Proviso has been fully disclosed to CBP for many years, and is entirely proper. CBP has been well aware of the specific rail trackage being used by Plaintiffs since the rail line began operations in 2012, and in almost an entire decade never once raised any concerns or questions to Plaintiffs or any other company in the chain of distribution, until it served the Penalty Notices out of the blue.

While KIF promptly will file a Petition for Remission or Modification with CBP challenging the Penalty Notices issued to it, which continue to be issued to vessel owners

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.        CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION        PAGE 4 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 13 of 58

and others in the distribution chain, Plaintiffs seek immediate relief from this Court to allow shipping of frozen seafood to resume and prevent the imminent collapse of Plaintiffs' businesses, the severe harm to the many small American companies and others in the supply chain and the loss of livelihood of their employees and those in the affected supply chain. The injunctive relief requested is not only mandated by *Love* and *Pacific Coast*, but is absolutely necessary to enable Plaintiffs and the numerous other companies in the chain to resume their operations and avert massive irreparable harm.

## FACTS

### A. Plaintiffs' Businesses and Shipping Practices

Plaintiff Kloosterboer International Forwarding LLC ("KIF") is an Alaskan wholly-owned subsidiary of Plaintiff Alaska Reefer Management LLC ("ARM"). KIF and ARM arrange transportation and related services for the movement of frozen seafood products from Alaska to the eastern United States for their customers. (Declaration of Per K. Brautaset ("Brautaset Dec.") ¶ 1; Declaration of Jennifer Adamski ("Adamski Dec.") ¶ 1). Seafood companies that harvest and process fish (known as "shippers,") ship the product from Dutch Harbor, Alaska ("Dutch Harbor") via third-party non-coastwise qualified vessels (*i.e.* foreign-flagged vessels) to the port in Bayside, and then into the United States to the shippers' end customers. (Brautaset Dec. ¶¶ 6, 9-18). Those customers provide food products to major retailers and fast-food chains, including Walmart, Costco, Long John Silvers, Burger King, Arby's, food service distributors serving "mom and pop" restaurants,

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                    PAGE 5 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 14 of 58

and many others.  (Declaration of Inge Andreassen ("Andreassen Dec.") ¶ 11; *see also* Declaration of John Connelly ("Connelly Dec.") ¶ 6.)

Plaintiffs together offer an end-to-end service to shippers, ensuring quality standards and timeliness, while handling the complexity of negotiating with multiple vendors and managing documentation requirements.  (Brautaset Dec. ¶ 8).  KIF is a registered non-vessel operating common carrier specializing in refrigerated freight services for seafood products originating in Alaska, including those moving through Bayside.  (Adamski Dec. ¶ 6).  KIF contracts with third-party cold storage and trucking companies as part of the logistics services package provided to shippers.  (Adamski Dec. ¶ 7).  KIF also engages ARM to provide ocean carriage from the port of loading (Dutch Harbor) to the port of discharge (Bayside).  (Adamski Dec. ¶ 7).  ARM, in turn, contracts with vessel owners for the transportation of the frozen seafood products of KIF's customers.  (Brautaset Dec. ¶¶ 6, 10).

Plaintiffs' transportation process begins when frozen seafood products harvested and processed at sea by American Seafoods Company LLC ("ASC") arriving in the port in Dutch Harbor are moved from the fishing vessels into the Kloosterboer Dutch Harbor ("KDH") cold storage facility.  (Andreassen Dec. ¶¶ 18-19; Adamski Dec. ¶¶ 8-9).  The U.S.-bound product is later loaded onto non-coastwise qualified vessels, which are procured by ARM for shipment to Bayside.  (Brautaset Dec. ¶ 9; Adamski Dec. ¶ 8).  Non-coastwise vessels are required for this business due to a tremendous shortage of coastwise qualified vessels in the United States merchant fleet.  (Brautaset Dec. ¶¶ 19-20).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                              PAGE 6 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 15 of 58

At present, there are fewer than ten Jones Act-compliant refrigerated container vessels capable of transporting this frozen seafood, which imposes substantial capacity constraints on available shipping options to shippers.[2]

On arrival at Bayside, the seafood is unloaded from the vessels and moved directly into the Kloosterboer Bayside Cold Storage ("KBB"), awaiting further transport to the United States. (Brautaset Dec. ¶ 12; Adamski Dec. ¶ 9). ARM issues through route bills of lading and other documentation required by CBP before entry is allowed into the United States. (Brautaset Dec. ¶ 32, Ex. 2). KIF arranges trucking transportation services with third-party truckers for delivery of the product to the shippers' customers in the United States. (Gross Dec., Ex. 4; Brautaset Dec. ¶ 12; Adamski Dec. ¶¶ 8, 11). Once the trailer trucks are loaded, they are loaded onto flat rail cars on the Bayside Canadian Rail ("BCR") rail trackage, a registered Canadian railroad and a member of the Railway Association of Canada. (Brautaset Dec. ¶ 15; Adamski Dec. ¶ 10). The BCR is approximately 100 feet in length and is located entirely within the Port of Bayside, near the cold storage facility. (Brautaset Dec. ¶ 15; Adamski Dec. ¶ 10). The trucks travel the length of the Canadian rail trackage and back. (Brautaset Dec. ¶ 15; Adamski Dec. ¶ 10).

---

[2]      *See* Gross Dec., Ex. 2, *Vessel Inventory Reports XLS 07-2021*, U.S. Dep't of Transp. Mar. Admin., https://www.maritime.dot.gov/data-reports/data-statistics/vessel-inventory-reports-xls-07-2021 (last updated Aug. 23, 2021). From 1980 to the present, the United States' merchant marine fleet of cargo vessels (which include refrigerated container vessels) has been reduced by over 90 percent. *See* Gross Dec., Ex. 3, *Number and Size of the U.S. Flag Merchant Fleet and Its Share of the World Fleet*, U.S. Dep't of Transp. Bureau of Transp. Statistics, https://www.bts.dot.gov/bts/bts/content/number-and-size-us-flag-merchant-fleet-and-its-share-world-fleet (last visited Aug. 29, 2021).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                    PAGE 7 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 16 of 58

After the trucks are unloaded from the BCR rail trackage, the trucks proceed directly to the Calais, Maine border crossing, where the drivers submit the required CBP documentation and enter into the United States. (Brautaset Dec. ¶ 15; Adamski Dec. ¶¶ 10-12). This transportation route and system are referred to below as the "Bayside Program." (*See* Brautaset Dec. ¶¶ 9-18; Adamski Dec. ¶¶ 8-14).

In 2012, the owners and operators of the Bayside cold storage and related rail operations changed the Canadian rail route to a rail line owned and operated by BCR. (Brautaset Dec. ¶ 32; Adamski Dec. ¶¶ 15-16). The BCR rail line is on the same through route (*i.e.,* from origin point to final destination) described in the tariff filed with STB in 2006 by one of the shippers, ASC, that utilized the Bayside Program before contracting with ARM to perform transportation logistics services in 2009. (Brautaset Dec. ¶ 31, Ex. 1; Andreassen Dec. ¶ 21). KBB and its partners in Canada handle all rail arrangements for use of the BCR line. (Brautaset Dec. ¶ 15).

### B. The Jones Act, the "Third Proviso" and CBP's Interpretive Rulings

Under the Jones Act, 46 U.S.C. § 55101, *et seq.* the United States grants vessels built in the United States, owned by American citizens and registered under the American flag, the exclusive right, with certain exceptions, to transport cargo between points within the United States. The use of Canadian rail lines is one of those long-established exceptions, often referred to as the "Third Proviso" because of its location in the original version of the Act. The Third Proviso, which has been and remains in effect since the enactment of the Jones Act in 1920, provides that *the prohibition* on non-coastwise qualified vessels:

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                PAGE 8 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 17 of 58

does *not* apply to the transportation of merchandise between points in the continental United States, including Alaska, over *through routes in part over Canadian rail lines* and connecting water facilities if the routes are recognized by the Surface Transportation Board and rate tariffs for the routes have been filed with the Board.

46 U.S.C. § 55116.[3]  The Bayside Program used the BCR rail line specifically to ensure compliance with the Third Proviso.  CBP's interpretative rulings, for at least two decades, have recognized and approved of this exception.

CBP provides guidance in formal "ruling letters" issued in response to requests by interested parties for guidance on CBP's statutory and regulatory enforcement, including under the Jones Act.[4]  CBP expressly has provided guidance in connection with transportation routes and systems that are substantially identical to the Bayside Program. (*See* Gross Dec., Ex. 6).  For instance, in ruling letters issued between 1992 and 2005 (the "Ruling Letters"), CBP repeatedly confirmed that transportation routes substantially identical to Plaintiffs' Dutch Harbor-Maine through route *qualified* for the Third Proviso exemption.  In fact, in 2000, CBP specifically approved the Dutch Harbor-Maine transportation route used by one of KIF's customers, ASC.  (Gross Dec., Ex. 7).[5]  The Bayside Program is substantially identical to the route approved in Ruling Letter 115124, albeit with a different Canadian rail carrier and trackage.  (*See* Gross Dec. Ex. 7, Ruling

---

[3]     All emphasis supplied unless otherwise stated.

[4]     *See generally* Gross Dec., Ex. 5, *Customs Rulings Online Search System (CROSS)*, Customs and Border Protection, https://rulings.cbp.gov/home.

[5]     *See generally* Gross Dec., Exs. 6, 7, 11, 12, Ruling Letter 115446 (Aug. 9, 2001); Ruling Letter 115124 (Aug. 11, 2000); Ruling Letter 112085 (Mar. 10, 1992); Ruling Letter 116185 (Mar. 28, 2005).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                PAGE 9 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 18 of 58

Letter 115124).  Since they were issued, CBP has not revoked or revised any of its interpretative rulings beginning as early as 2000 concerning the Third Proviso guidance.

### C.    The Irreparable Harm Caused by CBP's Penalty Notices

On August 11 and 17, 2021, CBP—in direct contravention of its own interpretive rulings over a period of two decades—issued two Penalty Notices to KIF for purported violations of the Jones Act totaling approximately $25 million.  (Adamski Dec. ¶ 17, Ex. 9-10).  CBP also issued Penalty Notices to, among others, shippers, trucking providers, and owners of cold-storage facilities who are involved or connected to the Bayside Program transport of frozen seafood, for alleged violations of the Jones Act. (*See* Adamski Dec. ¶¶ 17-23; Brautaset Dec. ¶ 34).  CBP failed to identify the specific nature of the alleged violations in the Penalty Notices, other than merely a quote from and a citation to the applicable statute and regulation.  (Adamski Dec. ¶ 17; Brautaset Dec. ¶ 34).  The Penalty Notices, issued without any prior warning or notice to KIF or any of the recipients, levy draconian fines equal to the total value of the merchandise transported in that particular shipment, with cumulative penalties imposed on multiple entities that far exceed the total value of the shipped merchandise.  (*See* Adamski Dec. ¶¶ 17-23; 46 U.S.C. § 55102(c)).  To date, CBP has issued a total of 175 separate Penalty Notices totaling more than $350 million for alleged Jones Act violations dating back nearly five years.  (Brautaset Dec. ¶ 34).  To put the breathtaking scope of these penalties in scale, $350 million in penalties is more than twice the approximately $150 million annual value of the frozen Alaskan seafood transported using the Bayside Program. (Brautaset Dec. ¶ 35).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                    PAGE 10 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 19 of 58

As a result of the Penalty Notices, and because of the imminent risk of additional

crippling penalties, the entire transportation system and Dutch Harbor-Maine frozen

seafood supply chain has been halted. (Brautaset Dec. ¶¶ 35-36; Adamski Dec. ¶ 24).

Shippers have been forced to halt all transport of their product through Bayside, paralyzing

the entire supply chain, which depends on an uninterrupted supply of frozen seafood and

operates on the basis of just-in-time deliveries to customers throughout the eastern United

States. (Declaration of Francis O'Hara III ("O'Hara Dec.) ¶ 6; Connelly Dec. ¶ 6;

Brautaset Dec. ¶¶ 13, 35-36; Adamski Dec. ¶ 24; Declaration of James C. Johnson

("Johnson Dec.") ¶ 24; Declaration of Douglas L. Christensen ("Christensen Dec.") ¶ 10).

The customers of ARM and KIF, and all the other companies involved in the supply chain,

will not transport any more product via Bayside into the United States unless and until they

are assured that they will not be at risk of incurring any further draconian penalties.

(Connelly Dec. ¶ 5; Brautaset Dec. ¶ 34; Adamski Dec. ¶¶ 28-37; Johnson Dec. ¶ 5). The

harm already inflicted has been severe and is worsening progressively on an hourly and

daily basis. (Brautaset Dec. ¶ 34; Adamski Dec. ¶ 25). This harm includes 61 truckloads

of product owned by shipping customers on hold at the Bayside port, which has been

ready for final transport to Maine; vessels in Dutch Harbor placed on hold because the

available cold storage facilities at the Dutch Harbor port cannot accommodate additional

product, and vessels en route from Dutch Harbor to Bayside have been offloaded, or

diverted before being loaded, and loaded with product destined solely for Canada and

Europe. (Brautaset Dec. ¶¶ 40-41; Connelly Dec. ¶ 5; Adamski Dec. ¶ 27). By

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION       PAGE 11 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 20 of 58

September 2, 2021, 26 *million pounds* of seafood product worth an estimated $41 million, equating to 550 truckloads, will be on hold at Bayside awaiting transport into the United States. (Adamski Dec. ¶ 27).

These CBP-induced disruptions have already and will continue to derail the carefully-calibrated transportation system and supply chain that depends on the Bayside Program. (Brautaset Dec. ¶ 39). Because the products in the Dutch Harbor port cannot be moved out of those storage facilities for shipment to Bayside, capacity in those facilities for newly-harvested product is extremely limited. (Brautaset Dec. ¶ 14). And no adequate alternative transportation route is readily available to transfer frozen fish products from Dutch Harbor to the eastern United States. (Connelly Dec. ¶ 13; Brautaset Dec. ¶ 28-29; Adamski Dec. ¶ 28). Many shippers and others in the chain of supply are similarly unable to ship their products and/or face significant disruption to their operations, a serious problem compounded by the already-existing shortage of refrigerated "reefer" trailers capable of carrying frozen seafood. (*See* O'Hara Dec. ¶ 8; Brautaset Dec. ¶ 23).

As a result, absent urgent judicial intervention allowing the transportation system and supply chain to resume and be restored while the legality of CBP's conduct is reviewed, a critical transportation infrastructure system that has been in operation for more than two decades will collapse entirely, hundreds of thousands of American consumers will be deprived of a significant food source in the midst of a pandemic and hundreds of jobs will be lost. (*See* O'Hara Dec. ¶¶ 8-9; Connelly Dec. ¶ 15; Brautaset Dec. ¶¶ 29, 39-44;

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION
01118737.DOCX
CASE NO. 3:21-cv-00198 (SLG)
PAGE 12 OF 49

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 21 of 58

Adamski Dec. ¶¶ 29-37; Christensen Dec. ¶¶ 10-11; Johnson Dec. ¶ 5). Plaintiffs'

employees, absent judicial intervention, would likely be displaced and/or lose their jobs.

(Brautaset Dec. ¶¶ 36-37; Adamski Dec. ¶ 37). Sustained interruption of operations also

will result in shippers being unable to meet orders placed by customers and consumers,

ultimately resulting in a frozen fish shortage and causing increases in consumer prices for

frozen fish products. (O'Hara Dec. ¶ 9; Connelly Dec. ¶ 12; Brautaset Dec. ¶ 35; Adamski

Dec. ¶ 25; Andreassen Dec. ¶ 28).

Severe other upstream and downstream irreparable harm is unavoidable absent an

injunction that will stop the ongoing destruction of the transportation network and supply

chain. Unless shipping promptly resumes, the shippers' vessels will be unable to offload

for transport to markets in the eastern U.S., which will result in catastrophic losses to the

fishing and fish processing companies and their employees. (Declaration of Thomas

Zaffiro ("Zaffiro Dec.") ¶ 5; Connelly Dec. ¶ 15; O'Hara Dec. ¶¶ 8-9). Ultimately, if they

stop catching the fish, inventories will tighten even more, affecting further processors and

consumers. (Connelly Dec. ¶¶ 9-18; Christensen Dec. ¶ 10). If these routes remain

bottlenecked or inaccessible (see below), the only way to address large volumes of

shippers' products in the short-term is for carriers to bypass the United States and deliver

the product to other parts of the world. (Andreassen Dec. ¶ 30; Christensen Dec. ¶ 10).

The inescapable result will be shortages of pollock and other frozen seafood products in

the United States. (Connelly Dec. ¶¶ 8-9; Brautaset Dec. ¶ 35; Adamski Dec. ¶ 25;

Christensen Dec. ¶ 10). At least some of that gap is likely to be filled by imported Russian

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION            PAGE 13 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 22 of 58

and Chinese pollock, while Alaskan pollock is sent elsewhere in the world. (Connelly Dec. ¶ 8; Andreassen Dec. ¶ 33).

Downstream impacts are also highly significant and the damage caused by the Penalty Notices is irreparable, because processors of pollock in the United States will be unable to create the products that flow to their flagship customers like High Liner Foods (supplier to numerous restaurant chains) and Channel Fish Processing (a supplier to the USDA food bank and school lunch programs utilizing pollock). (*See* Zaffiro Dec. ¶ 4; Connelly Dec. ¶¶ 6-8; Andreassen Dec. ¶¶ 9-11, 13). Because inventories currently are tight, consumers inevitably will be adversely affected in the form of substantially higher prices or absence of product. (Connelly Dec. ¶¶ 10-13; Brautaset Dec. ¶ 35; Adamski Dec. ¶ 25; O'Hara Dec. ¶ 9).

The industry is currently in the midst of a critical shortage of refrigerated equipment, coastwise transport vessels and cold storage space. (Brautaset Dec. ¶¶ 20-27). There is no way a realignment is feasible in the short term to adequately support the movement of pollock out of Dutch Harbor to its intended domestic consumer markets and still preserve shippers' commitment to their customers. (Brautaset Dec. ¶¶ 20-27; Adamski Dec. ¶ 28). Disrupting the flow of goods to the United States will result in product being refocused to international markets (subject to availability of cold storage capacity) creating shortages in the United States. (O'Hara Dec. ¶ 9; Connelly Dec. ¶¶ 9-12; Brautaset Dec. ¶ 35; Andreassen Dec. ¶ 30).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION    PAGE 14 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG    Document 5    Filed 09/02/21    Page 23 of 58

Large volumes of pollock sales to markets in the eastern United States flow through the Bayside facility and are impacted by the Penalty Notices. All of this volume is already earmarked to customers and through to end markets. There will be an immediate impact on consumers if this avenue remains blocked. In the short term, and during the Spring Lenten season, the supply will be insufficient to meet the U.S. demand. (*See* Zaffiro Dec. ¶¶ 7-8; Connelly Dec. ¶ 14; Andreassen Dec.¶ 31).

No domestic shipping options are available in the short term to shift volumes of this magnitude from Dutch Harbor to the United States. (Brautaset Dec. ¶¶ 19-29; Adamski Dec. ¶ 28). Volumes delivered to mainland United States will face a barrier because of the lack of available and proper cold storage to store the product that is on hold, and to further transport that product across the United States. (Andreassen Dec. ¶ 30; Brautaset Dec. ¶ 28). This will create another bottleneck leading to delays to the customers outlined above and the resultant immediate shortage of pollock in the market. (Andreassen Dec. ¶ 28). There are few alternatives to transport from the West Coast to the East Coast. (Andreassen Dec. ¶ 32; Connelly Dec. ¶ 13; Brautaset Dec. ¶¶ 22-24). The domestic rail system is broken and freezer rail cars have a high failure rate. (Brautaset Dec. ¶ 24). Trucker shortages are well documented. (Brautaset Dec. ¶ 26; Andreassen Dec. ¶ 26).

In short, the Penalty Notices, and the threat of continuing penalties, are crippling the Bayside Program and everyone associated with it. Plaintiffs, their customers, and third parties, as well as American workers and consumers, all face irreparable harm as a result of CBP's unlawful actions.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 15 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 24 of 58

### D. Plaintiffs' Attempts to Resolve this Dispute with CBP

As this crisis in Plaintiffs' supply system has worsened over the last two weeks, since the Penalty Notices were first issued, Plaintiffs urgently have been attempting to engage with the CBP attorneys to resolve the parties' disputes over the alleged violations, but have requested that the CBP provide a "safe harbor" for a short period, to allow Plaintiffs and others in the supply chain to resume operations but without the risk of incurring additional draconian penalties. Companies integral to the transportation system in the supply chain, such as shippers, trucking firms, and storage facilities, are refusing to resume operations under the existing threat of continuing devastating penalties. Yet CBP categorically has refused any such safe harbor during a brief standstill period. (Declaration of Mark J. Robertson ("Robertson Dec.") ¶¶ 11, 15, 19; Christensen Dec. ¶ 10).

Moreover, notwithstanding Plaintiffs' request for information as to the precise nature of the alleged Jones Act violations, CBP has refused to provide such information, other than in cryptic and non-specific terms. (Robertson Dec. ¶¶ 17-19). CBP made only token efforts to accommodate Plaintiffs' request for a meeting and—as a result of CBP's continued foot dragging—has immeasurably increased the harm to Plaintiffs and the entire supply chain. CBP has most recently indicated that it is having an internal meeting "to discuss what, *if any*, additional information" it can provide. (Robertson Dec. ¶¶ 17-18). Thus, even at this late date, after being informed the entire transportation system relied on by this critical frozen seafood market will be halted and Plaintiffs' businesses decimated, CBP is still signaling that, despite Plaintiffs' express request for

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.       CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION       PAGE 16 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 25 of 58

information as to the specifics of the alleged violations, CBP may decline to provide

Plaintiffs with any explanation or justification for the penalties.  (Robertson Dec.

¶¶ 17-19; *see also* Gross Dec. Ex. 8, Letter from C. Jonathan Benner, on behalf of

Kloosterboer International Forwarding LLC, to The Honorable Troy A. Miller, Acting

Commissioner of  U.S. Customs and Border Protection (Aug. 31, 2021)).

  While CBP has alluded to a lack of knowledge as to any tariff on file with STB for

the through route engaged in by Plaintiffs as part of the Bayside Program, CBP is

mistaken (*see infra* pp. 30-31).  CBP also has made some vague references to the

Canadian "rail movement" that is part of the Bayside Program, but has refused to

elaborate as to the basis for its apparent concern regarding the rail movement.  Plaintiffs

disclosed that rail movement to CBP, as discussed below, nearly a decade ago, and CBP

never has expressed any concern.  To the contrary, CBP's own interpretative rulings, as

discussed below (*see infra* pp. 26-29), explicitly have approved substantially-similar rail

movements.

<u>**ARGUMENT**</u>

**I.**  **THE HARM CAUSED BY CBP'S EXCESSIVE PENALTY NOTICES REQUIRES IMMEDIATE RELIEF FROM THE COURT, INCLUDING A STAY OF ENFORCEMENT OF ANY ADDITIONAL PENALTIES**

  As part of their provisional remedy, Plaintiffs are entitled to a temporary restraining

order and a preliminary injunction against CBP barring it from ever issuing or enforcing

additional Penalty Notices covering shipments in the period while this action is being

litigated, both to Plaintiffs and any other people and businesses in the chain of supply,

transportation and distribution of frozen seafood products through Bayside to destinations

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION  PAGE 17 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG  Document 5  Filed 09/02/21  Page 26 of 58

in the United States. Particularly in light of the extraordinary nature of the penalties imposed by CBP, which constitute the entire value of the impacted cargo being transported allegedly in violation of the Jones Act, and the threat of additional onerous penalties that could force Plaintiffs, and others in the supply chain (including shippers, third-party cold storage facilities, trucking companies, foreign vessel owners, and importers) out of business while the validity of those penalties is being challenged, the Court is constitutionally empowered to impose a stay on any future penalties through the hearing and determination of the requested preliminary injunction. In addition, Plaintiffs, particularly KIF, are not obligated to seek or exhaust their administrative remedies due to the irreparable harm caused by the Penalty Notices and CBP's lack of an expedited procedure for resolving penalty disputes that threaten to ruin the entire distribution chain of the frozen seafood products at issue.

### A. The Constitutional Tolling Doctrine Bars CBP From Issuing Additional Draconian Penalties During this Litigation

Under the constitutional tolling doctrine, parties are protected from non-compliance with statutory and regulatory provisions during the entire period they are judicially challenging the validity of penalties issued under those laws—regardless of the ultimate outcome of their challenge—provided they have raised substantial questions as to the constitutionality of CBP's actions. *See Wadley S. Ry. Co. v. Georgia*, 235 U.S. 651 (1915); *Pacific Coast*, 451 F.2d 717 (constitutional tolling doctrine precluded the government from seeking penalty actions for non-compliance with the statute during litigation because

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.        CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION        PAGE 18 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 27 of 58

defendants' attack upon the validity of the statute was not frivolous, and substantial questions were raised).

For over 100 years, it has been recognized that the right of judicial review "is merely nominal and illusory if the party to be affected can appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality rather than to ask for the protection of the law." *Wadley*, 235 U.S. 651. Because of the enormity of the penalties collectively issued by CBP—which are roughly 35 times larger than any Jones Act penalties ever issued —as well as the ongoing nature of CBP's penalty enforcement, Plaintiffs face a "Hobson's choice" that they are constitutionally protected from having to make. *Kansas-Nebraska Nat. Gas Co. v. Dep't of Energy*, No. 79-4055, 1979 WL 998, at *4 (D. Kan. July 31, 1979) ("[A] plaintiff aggrieved by agency action need not face the 'Hobson's choice' of compliance with an order it feels is invalid, on the one hand, or heavy penalty for noncompliance before opportunity to contest the order, on the other"). To allow this challenge to proceed without threat of additional penalties for the alleged Jones Act violations, CBP must be enjoined from ever issuing or enforcing additional Penalty Notices to Plaintiffs and any other company in the supply chain of the Bayside Program while Plaintiffs are pursuing their administrative and judicial remedies. *See Pacific Coast*, 451 F.2d at 717 (Federal Maritime Commission could not issue or enforce penalties under a federal shipping statute during the pendency of the judicial penalty proceedings); *see generally VECO Int'l, Inc. v. Alaska Pub. Offs. Comm'n*, 753 P.2d 703, 717 (Alaska 1988) (recognizing the constitutional tolling doctrine).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 19 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 28 of 58

Here, the Court is authorized to grant the broad injunctive relief sought by Plaintiffs as part of its requested temporary restraining order in light of the extraordinary and irreparable harm caused to Plaintiffs and the entire supply chain by issuance of the Penalty Notices. *See Love*, 252 U.S. at 337 (Brandeis, J.) (preliminarily enjoining a state government agency from ever issuing additional penalties during the period defendant contested the penalties so long as plaintiffs could show they had "reasonable ground[s]" for contesting the penalties). District courts have the inherent power, in crafting injunctions, to enjoin federal government agencies from assessing recurring and/or punitive penalties to afford litigants a chance to contest the penalties without the risk of being "erroneously deprived" of their property. *See* e.g., *Aminoil, Inc. v. U.S. E.P.A.*, 599 F.Supp. 69, 76 (C.D. Cal. 1984) (issuing a preliminary injunction against the EPA from levying daily and treble penalties while the penalties were litigated). To be entitled to such relief, Plaintiffs merely need to demonstrate that they have "reasonable ground[s]" to contest the validity or applicability of the penalties. *See Love*, 252 U.S. at 338.

In light of the massive penalties that have been issued for the same alleged violations, because no viable options exist for the use of coastwise qualified vessels for the voyage between Dutch Harbor and Bayside, and because of the limited cold-storage capacity in Dutch Harbor, Plaintiffs and others similarly situated face the choice of either ceasing transportation practices they believe, and will prove, are lawful under the Jones Act, or continue operations and face the Sword of Damocles in the form of threatened huge additional penalties that have brought Plaintiffs' businesses and those using this

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 20 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 29 of 58

transportation route .to a complete halt.  Further, as discussed *infra* p. 22, Plaintiffs also have a substantial likelihood of success on the merits of their claims and thus have "reasonable grounds" to contest the validity or applicability of the Penalty Notices.  The Court should enjoin CBP from issuing any penalties during the period of this litigation and save Plaintiffs from an impossible choice they should not be compelled to make.

### B.     KIF Cannot Exhaust Its Administrative Remedies

KIF cannot exhaust its administrative remedies because of the substantial irreparable harm caused by the looming threat of further and accumulating CBP penalties.  Exhaustion of administrative remedies is not required where those remedies—as is the case here—are inadequate to right the wrong.  *See Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 107 (D.C. Cir. 1986).  In determining the adequacy of an administrative remedy, a court must consider all potential methods at the agency's disposal to remedy a violation if one is found.  *See id*.  No administrative procedure for expediting hearings is generally available on petitions for remission or mitigation of penalties.[6]  Here, the Court's intervention is absolutely essential to avoid irreparable harm.  *See id*.

While KIF will file expeditiously a Petition for Remission or Mitigation with CBP, in accordance with 19 U.S.C. § 1618 and 19 C.F.R. § 171, Plaintiffs require judicial

---

[6]     CBP regulations provide an illusory form of expedited consideration.  *See* 19 C.F.R. § 177.2(d).  A party submitting a petition for remission or mitigation may request expedited consideration, but "[i]n no event can any assurance be given that a particular request for a ruling will be acted upon by the time requested."  *Id.*  Rather, a request for expedited consideration "will be given consideration as the particular circumstances warrant and permit"—as decided by CBP.  *Id.*  CBP is therefore under no obligation to actually expedite consideration of a petition if KIF were to file one.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 21 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 30 of 58

intervention now because its administrative remedies are insufficient to prevent the calamity that is rapidly unfolding and CBP has stated that it will not agree to any stay of additional Penalty Notices during any interim period. (*See* Robertson Dec. ¶¶ 11, 15).

## II. THE STANDARD FOR A TEMPORARY RESTRAINING ORDER AND A MOTION FOR PRELIMINARY INJUNCTION[7]

Plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The last two elements merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. PLAINTIFFS' CLAIMS ARE LIKELY TO SUCCEED ON THE MERITS

The Court first must determine if Plaintiffs are likely to succeed on the merits of at least *one* of their claims. *See Bernie's Pharmacy, Inc. v. AmerisourceBergen Drug Corp.*, No. 3:18-CV-00183-TMB, 2018 WL 9816097, at *4 (D. Alaska Aug. 24, 2018). The Ninth Circuit has held that plaintiffs may also obtain injunctive relief if they show "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success . . . if the 'balance of hardships tips *sharply* in the plaintiffs' favor.'" *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, No. 3:20-CV-00290-SLG, 2021 WL

---

[7] "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Tok Air Serv., LLC v. Haaland*, No. 4:21-CV-0012-HRH, 2021 WL 3271342, at *4 (D. Alaska July 30, 2021).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                PAGE 22 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 31 of 58

343925, at *4 (D. Alaska Feb. 1, 2021) (internal citations omitted). Although all four *Winter* factors must still be satisfied under the "serious questions" approach, Plaintiffs "need not promise a certainty of success, nor even present a probability of success, but must [demonstrate] a 'fair chance of success on the merits.'" *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (internal citations omitted).

In their Complaint, Plaintiffs assert six separate causes of action. In Count I, Plaintiffs seek a declaratory judgment that their shipping route complies with the Third Proviso (46 U.S.C § 55116) of the Jones Act. In Counts II and III, Plaintiffs contend that CBP violated 19 U.S.C. §§ 1625(c)(1) and (2), respectively, by unlawfully modifying or revoking the agency's prior interpretive rulings as to the Third Proviso. In Count IV, KIF claims that CBP's imposition of excessive penalties—presumably based on Plaintiffs' violations of some secretive and undisclosed internal regulatory interpretations that were reversed, without prior public notice or opportunity for comment, CBP's publicly-reported interpretation of those interpretations, on which Plaintiffs relied—violates Plaintiffs' rights under the Due Process Clause of the Fifth Amendment. In Count V, KIF contends that the unprecedented penalties that CBP seeks to enforce violate the Excessive Fines Clause of the Eighth Amendment. In Count VI, Plaintiffs seek a permanent injunction under the constitutional tolling doctrine barring CPB's issuance of penalties covering the period of this suit. Plaintiffs are likely to succeed on, or at least raise "serious questions" as to, the merits of each of these claims.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 23 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 32 of 58

### A. Plaintiffs are Entitled to A Declaratory Judgment That the Bayside Program Complies with the Jones Act

CBP issued Penalty Notices to KIF and others in the supply chain for alleged violations of the Jones Act's restriction on transporting merchandise on non-coastwise vessels between two points in the United States. *See* 46 U.S.C. § 55102. But Plaintiffs are likely to succeed on the merits of their declaratory judgment claim (Count I) because an exception to the Jones Act, the Third Proviso, is applicable to the transportation of the cargo at issue here.[8]

### 1. The Third Proviso to the Jones Act

The Jones Act, Section 27 of the Merchant Marine Act (P.L. 66-261), requires that, with certain statutory exceptions, vessels transporting merchandise from one point to another within the United States utilize an American-built, owned, and crewed vessel. *See* 46 U.S.C. § 55102(b) (formerly 46 U.S.C. App. § 883). The statute provides that no merchandise shall be transported between points embraced within the coastwise laws (*i.e.*, domestically), either directly or via a foreign port, or for any part of the transportation, in any vessel other than a vessel built in and documented under United States' laws and owned by United States citizens. Vessels that meet this standard are referred to as "coastwise-qualified" vessels by CBP.[9] Merchandise transported in violation of this

---

[8]    To assert a declaratory judgment claim in federal court, there must be a justiciable case or controversy as to which declaratory relief is appropriate. *See Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014).

[9]    *See* Gross Dec., Ex. 9, U.S. Customs and Border Protection, *What Every Member of the Trade Community Should Know About: Coastwise Trade: Merchandise (January*

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                      PAGE 24 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 33 of 58

provision is subject to seizure or, alternatively, a penalty equal to the amount of the merchandise or the actual cost of the transportation, whichever is greater, and may be recovered from "any person transporting the merchandise or causing the merchandise to be transported." *Id.* §55102(c). Because of the punitive nature of the penalty, the Jones Act is to be strictly construed. *Am. Mar. Ass'n v. Blumenthal*, 590 F.2d 1156, 1165 (D.C. Cir. 1978) ("It is well understood that statutes imposing a forfeiture, particularly the horrendous penalty of forfeiture of an entire cargo worth millions of dollars, are to be construed strictly. The rationale for such strict construction that *persons should receive clear and unequivocal warning* before facing exposure to harsh penalties is especially applicable here, where the penalty for noncompliance is enormous").

There are certain statutory exceptions to the general prohibition under the Jones Act against the use of non-coastwise qualified vessels in domestic shipping. One long-established exception, part of the Jones Act since the law's inception and known as the Third Proviso, applies to the transportation of merchandise in part over rail trackage in Canada. 46 U.S.C. § 55116. The Third Proviso provides that the prohibition on non-coastwise qualified vessels:

> does *not* apply to the transportation of merchandise between points in the continental United States, including Alaska, *over through routes* in part over *Canadian rail lines* and connecting water facilities *if the routes are recognized by the Surface Transportation Board* and *rate tariffs for the routes have been filed with the Board*.

---

*2009)*, available at https://www.cbp.gov/sites/default/files/documents/CoastwiseTrade Merchandise%20ICP.pdf.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 25 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 34 of 58

*Id.* The Third Proviso exception thus establishes a three-part test:

> (1)    the transportation of merchandise must utilize "through routes[10] in part over Canadian rail lines . . .";

> (2)    the routes must be "recognized"[11] by the Surface Transportation Board; and

> (3)    rate tariffs[12] for the routes have been filed with the STB.

---

[10]    A "through route" is defined as an agreement between connecting carriers for the continuous carriage of goods from the originating point on the line of one carrier to the destination point on the line of another. *See Thompson v. United States*, 343 U.S. 549, 556 (1952) (quoting *St. Louis Southwestern R. Co. v. United States* 245 U.S. 136, 140 n.2 (1917)). As such, a "through route" includes all the points along the route, not just the origin and destination.

[11]    The concept of "recognition" of a through route by the STB is a remnant of Interstate Commerce Commission ("ICC") authority when shipping routes were more heavily regulated than they are today. "Courts have treated the filing of tariff sheets as recognition [of the route] by the ICC under the Third Proviso." *Horizon Lines, LLC-- Petition for Declaratory Ord.*, No. FIN 35039, 2007 WL 4429515, at *2 (Dec. 18, 2007) [hereinafter *Horizon STB*] (citing *Cent. Vermont Transp. Co. v. Dunning*, 71 F.2d 273, 274 (2d Cir. 1934), *aff'd*, 294 U.S. 33 (1935)).

[12]    The ICC, prior to its abolition in 1995 and its replacement by the STB as part of the deregulation of the shipping industry, formerly regulated all forms of surface transportation involving interstate commerce, including routes taken for domestic cargo and cargo entering the United States, as well as the rates charged by carriers along those routes. *See* Gross Dec., Ex. 10, *Interstate Commerce Commission*, Fed. Reg., https://www.federalregister.gov/agencies/interstate-commerce-commission (last visited Aug. 30, 2021); Records of the Interstate Commerce Commission [ICC], Nat'l Archives, https://www.archives.gov/research/guide-fed-records/groups/134.html (last visited Aug. 30, 2021); Records of the Interstate Commerce Commission [ICC], Nat'l Archives, https://www.archives.gov/research/guide-fed-records/groups/134.html (last visited Aug. 30, 2021). As part of this process, shippers would file rate tariffs describing the through route to be taken and the cost of transit. *See Cent. Vermont*, 294 U.S. at 38. A tariff on the shipment of "frozen processed fish or seafood has been exempted since 1983 from any rate tariff filing requirement when transported by rail." *Horizon Lines, LLC. v. United States*, 414 F.Supp.2d 46, 49 (D.D.C. 2006) (citing Ruling 115446, at 2). CBP's reasoning that the filing of rate tariffs with STB was not required by STB and was therefore unnecessary to comply with the Third Proviso, was rejected in *Horizon*, 414 F.Supp.2d at 56-58.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION    PAGE 26 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 35 of 58

Plaintiffs have satisfied each of these requirements and their shipments thus qualify under the Third Proviso for this exception to the Jones Act.[13]

### 2. CBP Has Issued Interpretive Rulings Affirming That the Bayside Program Complies with the Jones Act

Plaintiffs agree with CBP in one very important respect—they agree with CBP's interpretative rulings and guidance and court filings for almost the past 30 years as to the meaning and effect of the Third Proviso, including the Canadian rail use component. CBP's own rulings and guidance conclusively establish that the Bayside Program complies with the Third Proviso exception to the Jones Act. Indeed, in a series of ruling letters issued between 1992 (Gross Dec., Ex. 11, Ruling Letter 112085 (Mar. 10, 1992)) and 2005 (*id.* Ex. 12, Ruling Letter 116185 (Mar. 28, 2005)), CBP confirmed that Dutch Harbor-Maine transportation routes substantially identical to the routes in the Bayside Program satisfied the requirements of the Third Proviso.[14] Two of the Ruling Letters are directly on point.

First, in Ruling Letter 115124 (August 11, 2000) (the "'124 Ruling"), CBP considered whether a shipper's transportation of frozen fish between "a coastwise point in

---

[13]  Noncontiguous domestic trade is defined as domestic water carrier transportation "involving traffic originating in or destined to Alaska, Hawaii, or a territory or possession of the United States." 49 U.S.C. § 13102(17).

[14]  CBP's informal position as to the Third Proviso has remained consistent with its formal guidance for over 40 years. For example, the assistant commissioner at the Custom Service said in a 1978 letter to a member of Congress "The Customs Service has since interpreted the words "Canadian rail lines" to mean *any rail trackage in Canada*." *See* Gross Dec., Ex. 13, Letter from Leonard Lehman, Assistant Commissioner, Regulations and Rulings, to the Honorable John M. Murphy, Chairman Committee on Merchant Marine and Fisheries, House of Representatives, dated June 27, 1978.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 27 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 36 of 58

[Dutch Harbor, Alaska] and another coastwise point in the continental United States [Calais, Maine] . . . accomplished in part by non-coastwise qualified vessels and in part over Canadian rail lines" was in accordance with the Third Proviso. (*See* Gross Dec., Ex. 7, at *1). Frozen fish was shipped on non-coastwise vessels from Dutch Harbor to Pusan, South Korea, and trans-loaded onto another non-coastwise qualified vessel. That vessel would then sail to Bayside, Canada. When the vessel arrived in Bayside, its merchandise was unloaded and transferred onto intermodal reefer trailers under the control of New Brunswick Southern Railway ("NBS"), the rail carrier used by ASC at the time. Those reefer trailers were transported by truck to Saint John, New Brunswick, and then loaded onto NBS flat rail cars and moved "over rail trackage in Canada to a subsequent Canadian rail junction located nearer the U.S. border by rail." (*Id.* at *3). At the transfer point, the reefer trailers were offloaded onto trucks and then driven into the United States at the Calais, Maine, border crossing. (*Id.*). CBP held that this transport route and system "in part via *both foreign-flag vessel* and *rail trackage in Canada* . . . is in accord with the Third Proviso." (*Id.* at *7).

A year later CBP considered whether a route used by another shipper, Sunmar Shipping Inc. ("Sunmar"), for the transport of frozen seafood from Dutch Harbor to Maine, which was essentially identical to the route in the Bayside Program, complied with the Third Proviso. (*Compare* Gross Dec. Ex. 6 Ruling Letter 115446 at *1-2 (the "'446 Ruling") *with supra* p. 7). In ruling that the Sunmar route complied with the Third Proviso, CBP cited to the '124 Ruling and its reasoning. CBP also specifically declared that it

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION        PAGE 28 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 37 of 58

"ha[d] previously ruled that transportation scenarios *nearly identical to the one currently under consideration* did *not* violate the Third Proviso." (*Id.* (citing Gross Dec. Ex. 23 Ruling Letter 114407 (July 23, 1998), and Ex. 7 Ruling Letter 115124)).

CBP also declared in the '446 Ruling that a tariff filing was *not* required for the shipment. Specifically, CBP declared that transportation "between coastwise points of commodities which are exempt from requirements regarding rate tariffs, through the utilization of foreign-flag vessels and Canadian rail trackage, *is not prohibited merely because no tariffs may be filed to cover the movements*." (*Id.*) According to CBP, because the ICC (the agency that originally issued the tariff-filing requirement) was abolished in 1996 and its successor—STB—no longer required rail-tariff filings, no such filing was required. (*See id.* (discussing the transfer and abolition of the ICC's power over rail tariffs)).

Horizon sought reconsideration of the '446 Ruling. On March 17, 2004, Horizon filed a letter with CBP arguing that their '446 Ruling took "unwarranted liberties with the statute" and posed "a significant risk to the military, economic and homeland security interests of the United States." *See Horizon Lines, LLC. v. United States*, 414 F.Supp.2d 46, 50 (D.D.C. 2006) (citing Letter from Myles Ambrose, Counsel for Horizon to Robert Bonner, Commissioner, Bureau of Customs and Border Protection (Mar. 17, 2004)). Specifically, Horizon argued that CBP erred by failing to construe the Third Proviso narrowly and by declining to find that "sham" rail movement fell outside the protection of the Third Proviso. *Horizon*, 414 F.Supp.2d at 50-51. CBP again rejected Horizon's

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                          PAGE 29 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 38 of 58

petition in Ruling Letter 116185 (the "'185 Ruling"). In its '185 Ruling, CBP incorporated by reference its decision in its '446 Ruling and held that Sunmar was not required to file a rate tariff (because the STB no longer required filing of rate tariffs) and approved Sunmar's transportation route under the Third Proviso. (*See* Gross Dec., Ex. 6, Ruling Letter 115446 at *2-3).

CBP has never revoked or revised its '124, '446 or '185 Ruling Letters in whole or in part.

### 3. *Horizon* and Current Status of CBP's Third Proviso Interpretive Rulings

In 2005, Horizon Lines, LLC ("Horizon")—a coastwise qualified shipping line under the Jones Act—filed a complaint in the United States District Court for the District of Columbia, challenging the '446 and '185 Ruling Letters, and alleging that the Third Proviso was inapplicable because Sunmar's use of the Canadian rail trackage was a "sham."[15] Horizon argued that the Third Proviso "contains an implied prohibition on 'sham or commercially-impractical Canadian rail movement to achieve "technical compliance" with the literal terms of the statute.'" *Horizon*, 414 F.Supp.2d at 55 n.6. Affirming CBP's ruling on the "sham" issue, the District Court reasoned that the commercial soundness of the route was immaterial so long as a "through route" existed in fact. *Id.* at 55 n.6. Indeed, a year later, in a letter from CBP to ASC's counsel in the wake

---

[15] Another shipper, ASC, intervened in the action to protect its interests based on its use of a route and method identical to Sunmar's. *Horizon Lines, LLC v. United States*, No. CV05-0952 (ESH), 2005 WL 8169264, at *2 (D.D.C. Sept. 23, 2005) ("The cases are identical in every material respect").]

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 30 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 39 of 58

of the *Horizon* decision, CBP indicated that it *declined to promulgate any "commercial soundness" regulations* as requested by *Horizon*.[16] Thus, the *Horizon* court and CBP have plainly rejected the "sham" argument and found that even a rail line that is alleged to be commercially unreasonable can satisfy the Third Proviso.

Horizon also challenged CBP's ruling that no tariff filing was required. *Horizon*, 414 F.Supp.2d at 50. On this issue, the Court reversed CBP and held that Sunmar should have filed a rate tariff with the STB to comply with the Third Proviso, despite changes in the regulatory regime eliminating the rate-filing requirement. *Id.* at 56-61; n.7. The court remanded the matter to CBP for further proceedings not inconsistent with its decision.

On August 28, 2006, even though CBP never changed any of its rulings obviating the requirement of filing a rate tariff, and solely out of an abundance of caution, ASC filed the appropriate rate tariff (Tariff STB AICN 0001) with the STB. (Gross Dec., Ex. 15). This tariff as filed by ASC, although not required by CBP interpretive guidance, remains in full force and effect. When ARM took over the vessel chartering operation in 2009 from ASC (*see* Andreassen Dec. ¶¶ 21-22), it stepped into ASC's shoes as the shipper in the tariff.

Despite the district court's ruling in *Horizon*, CBP's interpretive rulings regarding the filing of a rate tariff remain unchanged and in effect. CBP has consistently held that no rate tariff filing is required and did not modify or revoke their interpretive rulings on that

---

[16]     *See* Gross Dec., Ex. 14, June 13, 2007 Letter from Glen E. Vereb, U.S. Customs and Border Protection to Michael K. Tomenga, Counsel for American Seafoods Company LLC, at 2.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                          PAGE 31 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 40 of 58

issue in the wake of *Horizon*. Therefore, shippers (including ARM as successor to ASC's tariff) are not required to amend or file new rate tariffs—which in any event serve no real-world purpose after the abolition of the ICC—to satisfy the Third Proviso, according to CBP's own regulatory guidance. As a result, when the NBSR railroad named in the 2006 ASC tariff was replaced by the BCR railroad in 2012, ARM was not required to formally notify or request approval from CBP for that change.

In the 16 years since the *Horizon* court remanded the case, CBP has not issued any Jones Act penalties to any shipper using the Dutch Harbor-Maine transportation route or even suggested that the route raised any legal issues. That is until mid-August 2021 when CBP—in a dramatic and unprecedented action—collectively imposed without any prior notice approximately $350 million in crippling penalties on KIF and a host of vessel owners, shippers, owners of cold-storage facilities, and trucking firms involved in the Bayside Program. And as described above, these penalties for violations of the Jones Act are completely contrary to CBP's own rulings, which establish that routes substantially identical to those used in the Bayside Program meet the Third Proviso exception to the Jones Act.

On May 23, 2007, Horizon filed a petition with the STB requesting that the STB declare that certain movements of goods by Sunmar and ASC between Alaska and Massachusetts on through route bills of lading via foreign-flag vessels, Canadian rail lines,

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                    PAGE 32 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 41 of 58

and truck lines operating in Canada and the United States, were "sham movements,"[17] which were designed to circumvent the Jones Act. *Horizon STB*, 2007 WL 4429515 at *1. The STB denied Horizon's petition, explaining that it does not administer or enforce the Jones Act, that there was no credible allegation of harm to another shipper, and that it was not prepared to second guess the commercial reasonableness of the route or Sunmar's and ASC's decision to utilize that route. *Id.* The same rationale continues to apply even though the specifics of the Canadian rail line used for Plaintiffs' shipments have changed, as discussed below.

Moreover, any CBP contention in this case that the use of the BCR Canadian rail trackage or movement is a "sham," rendering the Third Proviso inapplicable, is precluded by CBP's own admissions in *Horizon*.[18] There, in its submission to the Court, CBP endorsed the propriety of the substantially similar rail use in question and conceded that it is perfectly proper to include a Canadian rail segment "*solely . . . for the purpose*" of

---

[17]    The STB described the rail component of the route at issue as follows: "The goods are transported [from Bayside, approximately 6 miles to the U.S. point of entry] by truck to McAdam, New Brunswick (approximately 30 miles from the U.S. point of entry), or Saint John, New Brunswick (approximately 50 miles from the U.S. point of entry), for placement on a Canadian rail line. The goods travel by rail either from *McAdam to Saint John or from Saint John to McAdam* and are then placed on trucks for transportation into the United States." *Horizon STB*, 2007 WL 4429515, at *3. In other words, the route utilized by Sunmar and ASC at that time would often move the cargo *farther away* from the American border. The STB, CBP and the *Horizon* Court all blessed this practice as compliant with the Third Proviso, even though the rail movement's only purpose was statutory compliance.

[18]    *See* Gross Dec., Ex. 16, Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment, *Horizon Lines LLC v. United States of America, et al.*, No. 1:05-cv-00952-ESH (D.C. Cir. Oct. 17, 2005), ECF. No. 21, at 2.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 33 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG    Document 5    Filed 09/02/21    Page 42 of 58

satisfying the Third Proviso: "The United States concedes that the Canadian rail segment appears to be solely included for the purpose of satisfying the statutory exception to the cabotage laws of the United States." (Gross Dec. Ex. 16, at 2).

CBP further conceded that its "interpretation of the Third Proviso . . . [is] that the statute is satisfied by *any movement* of the cargo by Canadian rail, *regardless of its length* or direction." (*Id.* at 11). In further defending CBP's position that the rail use can be extremely limited to satisfy the "through route" part of the Third Proviso, CBP conceded to the District Court that the roles of the participating carriers do not "have to meet some threshold level of effort," citing *Sea-Land Services v. Fed. Maritime Comm'n*, 404 F.2d 824, 827 (D.D.C. 1968), for the proposition that "[t]hrough routes have historically been validated in situations where one of the participating transporters activities have been extremely minimal." Indeed, CBP also cited the Supreme Court's decision in *In the Tapline Cases*, 234 U.S. 1 (1914), for the proposition that through routes have varied "from 40 miles to as little as *25 feet*." (Gross Dec. Ex. 16, at 13).

In addition, CBP also successfully argued that the Jones Act is "like the tax revenue statutes or customs tariff laws that allow those subject to taxes or duties to lawfully structure their transactions to minimize or eliminate them." (*Id.*) CBP asserted, "In fact, this [D.D.C.] Circuit has held that the Jones Act is indeed such a statute, and that the intent of the shipper to avoid the restrictions on use of non-U.S. flag vessels is *irrelevant so long as the statutory requirements are met*." (*Id.* at 13-14).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                        PAGE 34 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 43 of 58

### 4. Plaintiffs' Bayside Program Complies with the Third Proviso and CBP's Interpretive Rulings

The ARM/KIF Bayside Program meets all of the requirements of the Third Proviso, and is consistent with *Horizon* and CBP's published rulings concerning its interpretation of the Third Proviso. As reflected in the declaration of one of the shippers for whom Plaintiffs provide logistical services: The shipper loads U.S.-bound pollock onto non-coastwise vessels in Dutch Harbor. (Brautaset Dec. ¶ 9; Adamski Dec. ¶ 8). The cargo is sailed to Bayside, Canada under a through route bill of lading. (Brautaset Dec. ¶ 9; Adamski Dec. ¶¶ 8, 11). The cargo is loaded into trucks, which are then loaded onto a flatbed railcar of the BCR, a registered Canadian railroad.[19] (*See* Brautaset Dec. ¶ 9; Adamski Dec. ¶ 8; *see also* Gross Dec., Exs. 17-20). The cargo is then moved "over rail trackage in Canada".[20] (Brautaset Dec. ¶ 9; Adamski Dec. ¶ 8). The tractor trailer then drives off the flatbed and continues directly to the border crossing at Calais, Maine and into the United States. (Brautaset Dec. ¶ 9; Adamski Dec. ¶ 8). The route used is recognized by the STB and a rate tariff is on file with the Board. *See supra* n.11.

---

[19] This method of rail carriage is slightly different than the method CBP blessed in the '124 and '446 Ruling Letters, as the reefer trailers in those cases were taken off the trucks and put onto a rail car, whereas here the reefer trailer is driven onto a flatbed railcar by a truck. *Compare* Gross Dec., Ex. , Ruling Letter 115124 and Gross Dec., Ex. 6, Ruling Letter 115446 *with supra* p. 10. This distinction is immaterial for purposes of the Third Proviso, since both methods are part of a "through route[] in part over Canadian rail lines." *See* 46 U.S.C. § 55116.

[20] *See* Gross Dec., Ruling Letters 111987 (Dec. 2, 1991), 113365 (Mar. 10, 1995), 114407 (July 23, 1998), 114507 (Oct. 26, 1998), 115124 (Aug. 11, 2000),115446 (Aug. 9, 2001) and 116185 (Mar. 28, 2005).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                      CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 35 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 44 of 58

In sum, for almost a decade and continuing to the present, Plaintiffs' use of the Bayside Program—which has been in place for at least 20 years and in which modifications have been disclosed to CBP—has complied with the statutory language of the Jones Act, including the Third Proviso, federal district court authority, and CBP's published rulings and judicial admissions concerning the Third Proviso.

Each of the three Third Proviso requirements have been met: The frozen seafood products are transported between points in the United States (1) over "through routes" in part "over rail trackage in Canada"; (2) on routes recognized by the STB; and (3) a rate tariff has been filed with the STB. Plaintiffs therefore are likely to succeed on the merits of Count I of their Complaint and will be entitled to a declaratory judgment that they have complied with the Jones Act.

## B. CBP's Unlawful Penalties Cannot be Premised on a Secret Revision of its Own Interpretive Rulings and Regulatory Guidance

Plaintiffs are also likely to succeed on the merits of their claims (Counts II and III) arising under 19 U.S.C. § 1625(c). The sudden issuance of Penalty Notices to KIF and others in the Bayside Program supply chain evidences an abrupt CBP internal reversal or revocation of prior published interpretive rulings concerning the Third Proviso, undertaken without providing any statutorily-mandated public notice and without allowing interested parties the statutorily-mandated opportunity to comment. Because the Penalty Notices are premised on a CBP violation of § 1625(c), they are void and should be rescinded. *See Int'l Custom Prod., Inc. v. United States*, 748 F.3d 1182, 1189 (Fed. Cir. 2014) (voiding a notice of action improperly issued by CBP which resulted in a tariff increase of 2,400 percent).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 36 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 45 of 58

Like other federal agencies engaged in notice-and-comment rulemaking under the

Administrative Procedure Act, 5 U.S.C. § 552, CBP must comply with strict statutorily-

prescribed procedures when it revises or revokes its "interpretive rulings," including

"*ruling letters* or internal advice memorandum."  *See* 19 U.S.C. § 1625(a); *see generally*

*California Indus. Prod., Inc. v. United States*, 436 F.3d 1341, 1351 (Fed. Cir. 2006)

(analyzing the requirements of §1625(c)).  Here, it is apparent that CBP's issuance of the

Penalty Notices is premised on some tacit modification or revocation of its long-standing

Third Proviso interpretative rulings, but no notice was ever provided to Plaintiffs or others

in the industry—as required under statutory law—concerning those changes.

Specifically, under §1625(c), a proposed interpretive ruling or decision must be

published in the *Customs Bulletin*[21] which would:

> (1)     modify (other than to correct a clerical error) or revoke a prior
> interpretive ruling or decision *which has been in effect for at least 60 days*; or
>
> (2)     have the effect of modifying the treatment previously accorded by the
> Customs Service to *substantially identical transactions*.

19 U.S.C. §§ 1625(c)(1) and (2).  CBP must provide "interested parties" an opportunity to

submit "comments on the correctness of the proposed ruling or decision" for at least

30 days after publication in the *Customs Bulletin*.  19 U.S.C. § 1625(c).  After this

---

[21]     "*Customs Bulletin and Decisions* provides a weekly compilation of decisions, rulings, regulations, notices, and abstracts concerning customs and related matters of the U.S. Customs and Border Protection, U.S. Court of Appeals for the Federal Circuit and U.S. Court of International Trade."  Gross Dec., Ex. 25, U.S. Customs & Border Protection, *Customs Bulletin and Decisions*, https://www.cbp.gov/trade/rulings/bulletin-decisions (last visited Aug. 28, 2021).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                    PAGE 37 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 46 of 58

comment period, CBP "shall publish a final ruling or decision in the *Customs Bulletin* within thirty days after the closing of the comment period," with the final ruling or decision becoming effective 60 days after the date of its publication. 19 U.S.C. § 1625(c).

Plaintiffs assert two violations of § 1625(c) by CBP. In Count II, CBP violated § 1625(c)(1) by improperly modifying guidance in the Ruling Letters that were in effect for more than 60 days without providing notice or an opportunity for comment. In Count III, CBP violated § 1625(c)(2) by improperly modifying its guidance in the Ruling Letters with respect to treatment previously accorded by CBP to substantially identical transactions.

### 1. CBP Violated 19 U.S.C. § 1625(c)(1) By Modifying or Revoking Interpretive Rulings that Were in Effect Longer than 60 Days

Plaintiffs are likely to prevail on their first claim, as the Ruling Letters discussed *supra* pp. 27-30 clearly fall under the protection of § 1625(c)(1). The most recent Ruling Letter has been in effect for more than 16 years (*see* Gross Dec. Ex. 12, Ruling Letter 116185, dated March 28, 2005) and, joined with other similar Ruling Letters, describes consistent policy and interpretation dating back to the 1990s (*see, e.g.*, *id.* Ex. 22, Ruling Letter 113365, dated March 10, 1995). These are far older than the 60-day effective duration requirement. *See* 19 U.S.C. § 1625(c)(1). Plaintiffs are not aware of any evidence that CBP has ever published a decision revising, revoking or in any way diluting the Ruling Letters in the *Customs Bulletin*. Absent any revision or revocation of its Ruling Letters, CBP is prohibited from altering its enforcement practices as to the Third Proviso specifically addressed in those letters. As a result, Plaintiffs are likely to succeed on the merits of their first §1625(c) claim (Count II).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION      PAGE 38 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 47 of 58

## 2. CBP Violated 19 U.S.C. § 1625(c)(2) By Modifying or Revoking Interpretive Rulings Involving Substantially Identical Transactions to the Bayside Program

Plaintiffs also are likely to prevail on their second claim arising under § 1625(c)(2). To prevail on a claim for violation of § 1625(c)(2), Plaintiffs must meet a four-part standard. *See Kahrs Int'l, Inc. v. United States*, 33 C.I.T. 1316, 1354 (2009). First, a "treatment [was] previously accorded by the Customs Service." *Id.*; 19 U.S.C. § 1625(c)(2). Second, the subject entries at issue here are "*substantially identical transaction[s]*" to the previous treatment. *Kahrs Int'l, Inc. v. United States*, 33 C.I.T. 1316, 1354 (2009). Third, that CBP has made a "'proposed interpretive ruling or decision' that would have the effect of modifying the previous treatment with respect to the entries in question." *Id.* Fourth, that the proposed interpretive ruling or decision violated the notice and comment requirements of Section 1625(c). *Id.; see also Int'l Custom Prods., Inc. v. United States*, 33 C.I.T. 79, 86-87 (2009). Plaintiffs satisfy each of these elements.

First, it cannot reasonably be disputed that the Ruling Letters constitute a "treatment previously accorded by the Customs Service." "Ruling letters" are explicitly referenced in the statute as a form of interpretive ruling. 19 U.S.C. § 1625(a); *see California Indus. Prod.*, 436 F.3d at 1351.

Second, the Ruling Letters govern "substantially identical transactions" to those involved in Plaintiffs' Bayside Program and the Dutch Harbor-Maine transport of frozen seafood harvested from the Bering Sea. The term "substantially identical transaction" is meant to be read broadly and include "multiple parties," and not just the parties that requested the ruling letters. *Id.* at 1354. Interpretive guidance in ruling letters extends to

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION  PAGE 39 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG Document 5 Filed 09/02/21 Page 48 of 58

"transactions of parties other than the person claiming entitlement to the statute's notice and comment process." *Id.* at 1356. The Ruling Letters, as discussed *supra* pp. 27-30, are applicable to the Bayside Program, which involves a Dutch Harbor-Maine route that has been in operation for more than 20 years. For purposes of § 1625(c)(2), the transactions at issue in the rulings are "substantially identical" to the transactions targeted by CBP's penalties.

Third, CBP's decision to issue the Penalty Notices to KIF and others in the supply chain has the effect of "modifying the previous treatment with respect to" its interpretation of the Third Proviso. Plaintiffs have continuously operated their shipping operations in accordance with the Third Proviso for nearly a decade. CBP consistently and repeatedly has confirmed in Ruling Letters that substantially identical transactions, *e.g.*, that the use of non-coastwise qualified vessels for the transport of frozen seafood on the Dutch Harbor-Maine route by Sunmar and one of Plaintiffs' customers (ASC), complied with the requirements of the Third Proviso. CBP has not revised or revoked its published Ruling Letters in over 16 years (*see* Gross Dec. Ex. 12, Ruling Letter 116185), and did not alter its guidance in the wake of the *Horizon* ruling on the tariff filing requirement. *See Horizon*, 414 F.Supp.2d at 59.

Fourth, Plaintiffs will prove that the proposed decision or ruling violated the notice and comment requirements of § 1625(c) because CBP has not published *any* interpretive

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION      PAGE 40 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 49 of 58

rulings in the *Customs Bulletin* purporting to revoke or revise any of the Ruling Letters.[22]

Failure to comply with this statutorily-mandated notice and comment procedure invalidates

both past and future penalties assessed to Plaintiffs. *See* 42 U.S.C. § 55102, 19 C.F.R.

§ 4.80(b), and 19 C.F.R. § 113.64.

In sum, Plaintiffs are likely to succeed on the merits of Counts II and III of their

Complaint that CBP, in assessing the Penalty Notices, violated 19 U.S.C. § 1625(c) by

unlawfully revoking or revising their prior interpretive rulings as to the Third Proviso.

## C. CBP's Exorbitant and Draconian Penalties Violate KIF's Due Process Rights under the Fifth Amendment

KIF is likely to succeed on the merits of its claim that CBP's conduct violates its

rights under the Due Process Clause of the Fifth Amendment. Under the Due Process

Clause,[23] laws regulating individuals or entities "must give fair notice of conduct that is

forbidden or required," *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012), and

"fair notice requires an administrative agency to "state with 'ascertainable certainty' what

is meant by the standards it has promulgated." *ExxonMobil Pipeline Co. v. U.S. Dep't of

Transp.*, 867 F.3d 564, 579 n.9 (5th Cir. 2017). "In the absence of notice—for example,

---

[22] Moreover, it appears CBP took no action to modify or revoke their prior Ruling Letters in the wake of the *Horizon* decision. *Horizon Lines*, 414 F.Supp.2d at 55. This means that all of CBP's guidance on the Third Proviso remained in place for over 15 years prior to CBP's decision to drastically change its enforcement guidance by issuing the Penalty Notices.

[23] A Fifth Amendment Due Process Claim is independent of a plaintiff's other claims, even if the claims arise from essentially the same allegations. *See Furie Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.*, No. 3:12-CV-00158 JWS, 2015 WL 4076843, at *7 (D. Alaska July 6, 2015) (considering claims arising from penalties issued by CBP under the Jones Act).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                          PAGE 41 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 50 of 58

where the regulation is not sufficiently clear to warn a party about what is expected of it—an agency may not deprive a party of property by imposing civil or criminal liability." *Gen. Elec. Co. v. U.S. E.P.A.*, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995).

Here, CBP's new, secretively implemented interpretive guidance renders its standards neither certain nor ascertainable, and its conduct egregiously violates due process. CBP's newly-contrived position with respect to the Third Proviso is directly contrary not only to the Jones Act, but also to CBP's own long-standing rulings on which KIF and others in the industry have long relied.

The enormous and unprecedented CBP penalties are even worse because, before issuing the penalties, CBP did not notify KIF or anyone else that they were in violation of the Jones Act, make any effort to understand KIF's operations and practices or provide KIF an opportunity to explain the details of the transportation route that it was utilizing, or an opportunity to cure or alter any aspects of the transportation route that CBP now claims was in violation of the Jones Act. Instead, CBP imposed enormous and unprecedented penalties on unsuspecting businesses with respect to shipments during the five years before mid-August 2021, penalties sufficient to cripple the entire Dutch Harbor-Maine transportation route and frozen seafood supply chain. CBP's imposition of more than $25 million in penalties to date offends "elementary fairness" and violates KIF's right to due process. *Gen. Elec*, 53 F.3d at 1329 (EPA's failure to provide General Electric with fair warning of its interpretation of regulations resulting in a "drastic" $25,000 penalty); *Exxon Mobil Corp. v. Mnuchin*, 430 F.Supp.3d 220, 229 (N.D. Tex. 2019) (an agency's

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 42 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 51 of 58

failure to provide fair notice of a regulatory violation before issuing an administrative penalty justifies setting aside the imposed $2,000,000 fine on due process grounds).

Plaintiffs thus are likely to succeed on the merits of Count IV of their Complaint that CBP's penalty enforcement violates KIF's rights under the Due Process Clause of the Fifth Amendment.

### D. CBP's Penalties Violates the Eighth Amendment's Prohibition on Excessive Fines

CBP's unprecedented penalties to KIF also violate the Eighth Amendment's prohibition on excessive fines. The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Austin v. United States*, 509 U.S. 602, 609-10 (1993). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). "A fine is unconstitutionally excessive if (1) the payment to the government constitutes punishment for an offense, and (2) the payment is grossly disproportionate to the gravity of the defendant's offense." *United States v. Mackby*, 261 F.3d 821, 829 (9th Cir. 2001) (holding civil fines fall within the scope of the Eighth Amendment).

CBP's Penalty Notices are clearly punitive. *See Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir. 2000) ("[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment"); 46 U.S.C. § 55102(c) (Jones Act penalties must be "equal to the

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION                    PAGE 43 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG    Document 5    Filed 09/02/21    Page 52 of 58

amount of the merchandise or the actual cost of the transportation, whichever is greater");

*Blumenthal*, 590 F.2d at 1165 (discussing the punitive nature of Jones Act penalties).

Moreover, the penalties are grossly disproportionate. KIF's penalties to date total nearly

$25 million, far exceeding KIF's gross yearly profits of $1.8 million (Adamski Dec. ¶ 26),

and constitute—by more than double—the largest Jones Act penalties levied in the

101-year history of the statute.[24] Others in the supply chain face penalties in excess of

$325 million. (Adamski Dec. ¶¶ 17-23; Brautaset Dec. ¶ 34). And here, there was no

offense, let alone a gross offense. KIF has operated in a consistent, transparent manner for

years in accordance with CBP's Third Proviso guidance without any issue.

Plaintiffs are likely to succeed on the merits of Count V of their Complaint that

CBP's penalty enforcement, as applied to KIF, violates the Eighth Amendment.

## IV. PLAINTIFFS WILL BE IRREPARABLY HARMED ABSENT INJUNCTIVE RELIEF

CBP's shocking and unconstitutional overreach and imposition of exorbitant and

unprecedented penalties without prior notice of changed regulatory enforcement violates

Plaintiffs' constitutional rights, which constitutes irreparable harm in and of itself. No

further showing should be required here. Yet, in any event, CBP's outrageous penalties

have caused, and continue to cause, irreparable harm to Plaintiffs and the entire supply

chain that has received Penalty Notices. CBP's unlawful conduct threatens the imminent

destruction—not only Plaintiffs' business, but also a critical American food supply

---

[24]     Gross Dec., Ex. 1.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION        PAGE 44 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG    Document 5    Filed 09/02/21    Page 53 of 58

infrastructure—and will lead to the imminent loss of hundreds of jobs. (*See* Zaffiro Dec. ¶ 5; O'Hara Dec. ¶ 9). Absent this Court's urgent intervention, Plaintiffs will suffer irreparable harm absent a temporary and preliminary order enjoining CBP—not only from continuing to issue notices of violation of the Jones Act or seeking to enforce existing Penalty Notices—but also from ever seeking to issue or enforce any notice issued during the period of the injunction.

### A. Deprivation of Constitutional Rights Constitute Irreparable Harm

First, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). CBP's radical change in its interpretive rulings and subsequent issuance of Penalty Notices based on this secret modification, made without notice or the opportunity to comment, deprives Plaintiffs of their rights to due process under the Fifth Amendment. In addition, the imposition of enormous fines against KIF that standing alone far exceed KIF's annual average net income for the prior two years (*see* Adamski Dec. ¶¶ 17, 26) deprives it of its constitutional right against excessive fines under the Eighth Amendment. *See also Kalthoff v. Douglas Cnty.*, 2021 WL 3010006, at *6, *8 (D. Nev. July 15, 2021) (finding irreparable harm where plaintiffs' Eight Amendment right against excessive fines, among other constitutional rights, was violated). A showing of irreparable harm is satisfied if the Court finds that Plaintiffs are likely to succeed on the merits of their constitutional claims. *See Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020) (loss of First Amendment freedoms, "even for minimal periods of time, unquestionably constitutes

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 45 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 54 of 58

irreparable injury"); *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017) (same for loss of Fifth Amendment due process rights).

### B. Plaintiffs Will Suffer Irreparable Harm Unless the Court Enjoins CBP's Penalty Enforcement Actions

While not required in light of CBP constitutional violations, Plaintiffs can also demonstrate irreparable harm under the normal standard applied when parties seek injunctive relief. To show irreparable harm, Plaintiffs must demonstrate that "in the absence of a preliminary injunction, plaintiffs are likely to suffer irreparable harm before a decision on the merits can be rendered." *Winter*, 555 U.S. at 22. There must be a "sufficient causal connection" between the alleged irreparable harm and the activity to be enjoined, such as a showing that "the requested injunction would forestall the irreparable harm." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018). However, Plaintiffs "need not further show that the action sought to be enjoined is the exclusive cause of the injury." *M.R. v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012). Plaintiffs plainly meet that standard.

Plaintiffs' entire supply chain is at a complete standstill. For instance, because of the notices of penalties levied on third-party trucking partners—essential to transport the frozen seafood products into the United States—two of KIF's primary trucking partners have informed KIF that they will no longer transport goods via the Bayside Program absent assurance they will not incur further penalties, which are directly linked to the value of their seafood cargos. (Adamski Dec. ¶ 29). This is having massive and irreparable consequences to Plaintiffs' businesses, where the fines imposed on KIF far exceed its

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION      PAGE 46 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 55 of 58

annual revenues (*see supra* p. 18), as well as those of its suppliers, customers, and consumers upstream and downstream in the supply chain. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) ("The threat of being driven out of business is sufficient to establish irreparable harm"); *Mahroom v. Best W. Intern., Inc.*, No. C 07–2351 JF (HRL), 2009 WL 248262, *3 (N.D. Cal. Feb. 2, 2009) ("'Major disruption of a business can be as harmful as its termination and thereby constitute irreparable injury,'" quoting *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186 (2d Cir. 1995)). Without a reprieve from CBP's penalty enforcement, there is simply no viable, immediate, and reliable-alternative for KIF to deliver all of its customers' expected seafood product deliveries in time to meet their customers' needs.

Moreover, Plaintiff's current and prospective customer base is at risk as a result of the Bayside Program supply chain grinding to a halt if the shutdown in the supply chain continues. *See Stuhlbarg Int'l. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("threatened loss of prospective customers or goodwill" supports preliminary injunction). Plaintiffs will suffer—indeed are already suffering—damage to their business reputation and are losing goodwill with their customers. *See Bernie's Pharmacy*, 2018 WL 9816097 at *6 ("loss of control over business reputation and damage to goodwill could constitute irreparable harm").

In short, without immediate relief from the Court, Plaintiffs' entire distribution system will be destroyed and its business ruined as a result. (Adamski Dec. ¶ 26; Brautaset Dec. ¶ 36). Irreparable harm is certain absent the immediate injunctive relief.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 47 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG    Document 5    Filed 09/02/21    Page 56 of 58

## V. THE BALANCE OF EQUITIES TIPS IN PLAINTIFFS' FAVOR AND AN INJUNCTION IS IN THE PUBLIC INTEREST

The balance of equites and the public interest overwhelmingly favor injunctive relief. *See Winter*, 555 U.S. at 20; *Nken*, 556 U.S. at 435 ("These factors merge when the Government is the opposing party"). As shown above, Plaintiffs' businesses will be destroyed, a supply route that has been utilized for over 20 years upon which the country depends for the supply of frozen seafood to the eastern United States, will be destroyed, hundreds of jobs will be lost, and customers and consumers will be forced to pay increased prices. (*See* Zaffiro Dec. ¶ 5). In stark contrast, staying enforcement of the Penalty Notices and issuance of any new notices—maintaining the status que ante—to allow an expedited resolution on the merits will not in any way harm CBP.

Moreover, federal agencies—like CBP here—that promulgate rules without adequate procedure deprive interested parties of the opportunity to comment. This tips the balance of equities toward the non-governmental party. *See, e.g., Ass'n of Cmty. Cancer Ctrs. v. Azar*, 509 F.Supp.3d 482, 501–02 (D. Md. 2020). The public has a strong interest in ensuring that governmental agencies undertake actions such as the Penalty Notices issued here only in a manner that is fair and affords the affected party due process. *See Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION  PAGE 48 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 57 of 58

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs' request for a temporary restraining order and

preliminary injunction should be granted.

DATED this the 2nd day of September, 2021.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiffs


By: _____/s/ David Karl Gross_____
David Karl Gross, ABA #9611065

KASOWITZ BENSON TORRES LLP
Edward E. McNally, ABA #9203003
Marc E. Kasowitz (*pro hac vice* pending)
Hector Torres (*pro hac vice* pending)

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198 (SLG)
MEMO IN SUPPORT OF MOTION FOR TRO, PRELIMINARY INJUNCTION          PAGE 49 OF 49
01118737.DOCX

Case 3:21-cv-00198-SLG   Document 5   Filed 09/02/21   Page 58 of 58