HQ 115446

August 9, 2001

VES-3-17-RR:IT:EC 115446 GEV

CATEGORY: Carriers

William N. Myhre, Esq.
Preston Gates Ellis & Rouvelas Meeds LLP
1735 New York Avenue, N.W.
Suite 500
Washington, D.C. 20006-5209

RE: Coastwise Trade; Third Proviso to 46 U.S.C. App. § 883

Dear Mr. Myhre:

This is in response to your letter dated August 1, 2001, on behalf of Sunmar Shipping, Inc. ("Sunmar"), requesting an expedited ruling regarding the proposed transportation of frozen fish between a coastwise point in Alaska and another coastwise point in the continental United States to be accomplished in part by non-coastwise-qualified vessels and in part over Canadian rail lines. You request expedited treatment of your request pursuant to § 177.2(d), Customs Regulations (19 CFR § 177.2(d)) in view of the fact that the cargoes in question are currently scheduled to be shipped on or about August 15, 2001. Our ruling in this matter is set forth below.

FACTS:

Sunmar is an ocean carrier engaged in the transportation of cargoes between points in the United States, Canada, Northern Europe, and Russia. The transportation currently under consideration involves the shipment of frozen fish products from fishing vessels and shore plants in the Dutch Harbor, Alaska area on foreign-flag, non-coastwise-qualified vessels and then by intermodal carriage via the New Brunswick Southern Railway ("NBS Railway"), a Canadian rail line, for ultimate delivery, via a through bill of lading, to cold storage facilities in Boston or Gloucester and other points in the United States.

Sunmar will charter foreign-flag, non-coastwise-qualified vessels from foreign owners (the "Vessels"). The products loaded onto the Vessels in the Dutch Harbor area will be unitized for intermodal carriage and handling under the through bill of lading. The Vessels will then move the cargo from Dutch Harbor to New Brunswick, Canada.

When the Vessels arrive in New Brunswick, Canada, the products will be discharged to the Bayside Food Terminal near Bayside, New Brunswick, where they will be staged for intermodal carriage. At the Bayside terminal, the products will be transferred into intermodal reefer trailers. The loaded trailers will be hauled by truck to either McAdam, New Brunswick or Saint John, New Brunswick, where the trailers will be loaded onto rail flat cars.

The rail cars will then be moved by the NBS Railway over rail trackage in Canada, either from McAdam to Saint John, or Saint John to McAdam. At either of these rail-truck transfer facilities, the NBS Railway truck trailers will be offloaded and then driven from there into the United States via the St. Stephen, New Brunswick/Calais, Maine, border crossing. After entry, the trailers will be trucked to a cold storage facility in the United States. Sunmar will be documented as the shipper, while each respective customer is the consignee and the Canadian rail carrier will be NBS Railway.

The merchandise to be transported under this proposal consists of various fish products, including by not limited to frozen pollock fillets, minced pollock, headed and gutted pollock, headed and gutted cod, cod fillets, salted cod, or hake fillets taken from North Pacific fisheries that are processed, frozen, and packaged either on shore or on board catcher processors operated by Glacier Fish Company and other operators. All products moving under the proposed transportation will be picked up directly from the catcher processor vessel, at a shore-based plant, or transshipped to Dutch Harbor, Alaska, for loading onto one of the Vessels. The Interstate Commerce Commission ("ICC"), the predecessor agency to the Surface Transportation Board ("STB"), exempted from regulation the rail transportation of "frozen processed fish or seafood (STCC 20-361)" in 1983. Exemption From Regulation—Rail Transportation—Frozen Food, Ex Parte No. 346 (Sub-No. 15), 367 I.C.C. 859 (Nov. 30, 1983). Thus, since then, this commodity/traffic has not been subject to the rate tariff filing requirement at the ICC and its successor, the STB.

ISSUE:

Whether the transportation of frozen fish indirectly between coastwise points, in part via both foreign-flag vessel and rail trackage in Canada, as described above, is in accord with the Third Proviso to 46 U.S.C. App. § 883.

LAW AND ANALYSIS:

Title 46, United States Code Appendix, § 883 (46 U.S.C. App. § 883, the coastwise merchandise statute, often called the "Jones Act"), provides in pertinent part that no merchandise shall be transported between points embraced within the coastwise laws, either directly or via a foreign port, or for any part of the transportation, in any vessel other than a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States (i.e., a coastwise-qualified vessel).

The Third Proviso to 46 U.S.C. App. § 883 provides that:

> [T]his section shall not apply to merchandise transported between points within the continental United States, including Alaska, over through routes heretofore or hereafter recognized by the Surface Transportation Board for which routes rate tariffs have been or shall hereafter be filed with the Board when such routes are in part over Canadian rail lines and their own or other connecting water facilities.

Simply stated, the prohibition against using a non-coastwise-qualified vessel set forth in § 883 would not apply if all of the conditions to the Third Proviso are met, that is:

a) through routes are utilized which have heretofore or are hereafter recognized by the STB;

b) routes rate tariffs have been or shall hereafter be filed with the STB, and have not subsequently been rejected for filing, have become effective according to their terms, and have not been subsequently suspended, or withdrawn by the STB; and

c) the routes utilized are in part over Canadian rail lines and their own or other connecting water facilities.

The Customs Service has held that "over Canadian rail lines" means over rail trackage in Canada, and that "their own or other connecting water facilities" means water facilities covered by a through route regardless of whether those facilities connect directly with the Canadian rail line covered by that through route. (See, e.g., Headquarters ruling letter 113141, dated June 29, 1994.)

On December 29, 1995, Congress passed the Interstate Commerce Commission Termination Act ("ICCTA"). This legislation, which was effective January 1, 1996, abolished the ICC, the predecessor agency to the STB (see §§ 2 and 101, Pub. L. 104-88) and although it did provide conforming amendments to several sections of the Merchant Marine Act of 1920 (see § 321, Pub. L. 104-88), nothing in the remainder of the statute or its legislative history specifically addresses the ramifications of the aforementioned abolition on the administration of the Jones Act (§ 27 of the Merchant Marine Act of 1920, as amended), including the Third Proviso. However, our review of the legislation in its entirety does yield guidance with respect to this issue. Specifically, we find the following sections of the legislation instructive in this matter.

Section 201 of Pub. L. 104-88 amended title 49 of the United States Code by adding a new Chapter 7 establishing the STB within the Department of Transportation. (§ 201(a), Pub. L. 104-88, citing 49 U.S.C. § 701) This statutory amendment provides as follows:

> Except as otherwise provided in the ICC Termination Act of 1995, or the amendments made thereby, the Board shall perform all functions that, immediately before the effective date of such Act, were functions of the Interstate Commerce Commission or were performed by any officer or employee of the Interstate Commerce Commission in the capacity as such officer or employee. (§ 210(a), Pub. L. 104-88, citing 49 U.S.C. § 702)

Accordingly, there exists unequivocal statutory authority for the premise that notwithstanding the demise of the ICC, those matters within its jurisdiction that were not subsequently eliminated by the ICCTA or the amendments made thereby (e.g., Third Proviso-dependent authorization) are now vested in the STB.

In regard to Third Proviso ruling requests to be considered by Customs subsequent to the effective date of the ICCTA, we note that pursuant to § 204(a)(2) of the ICCTA, the Board published a final rule

in the Federal Register on June 7, 1996, which removed from the Code of Federal Regulations obsolete ICC regulations, including the rail tariff filing requirement. (61 FR 29036) On July 5, 1996, the STB published in the Federal Register as a final rule its new regulations (49 CFR Part 1300, effective August 4, 1996), which require rail carriers to merely disclose their rates and service terms to any person upon formal request, as well as provide advance notice of increases in such rates or a change in such service terms. (61 FR 35139) Notwithstanding the substitution of ICC authorization with the aforementioned STB oversight, the ICCTA is devoid of any indicia that this new regulatory authority should be interpreted other than in pari materia with the Third Proviso.

It is therefore our position that notwithstanding the abolition of the ICC and the failure on the part of the ICCTA to specifically provide for conforming amendments to the Jones Act, the cumulative effect of the ICCTA nonetheless mandates that the Third Proviso remains in force albeit subject to compliance with the requirements of the STB. Further in this regard, however, we note Customs ruling letter 112085, dated March 10, 1992, issued prior to the ICCTA, wherein we held that the legality of a proposed movement of frozen seafood pursuant to the Third Proviso was not thwarted merely because the language therein provides for the filing of a rate tariff and such merchandise was a commodity for which no rate tariff was required under ICC procedures. The rationale for this position was that, "...although the statute specifies the filing of rate tariffs with the Interstate Commerce Commission, mechanistic adherence to that requirement in the present climate of deregulation would lead to an absurd result which cannot be justified." *Id.* We believe the same such result would occur were we to disallow the proposed movement under consideration where, as discussed above, the rail tariff filing requirement has been removed pursuant to the regulations of the STB promulgated pursuant to the ICCTA.

Accordingly, the indirect transportation between coastwise points of commodities which are exempt from requirements regarding rate tariffs, through the utilization of foreign-flag vessels and Canadian rail trackage, is not prohibited merely because no tariffs may be filed to cover the movements.

In this regard we note that Customs has previously ruled that transportation scenarios nearly identical to the one currently under consideration did not violate the Third Proviso. (See Customs ruling letters 114407, dated July 23, 1998, and 115124, dated August 11,

2000) We reach the same conclusion in this case inasmuch the transportation between coastwise points "either directly or via a foreign port" in non-coastwise-qualified vessels is within the purview of 46 U.S.C. App. § 883 pursuant to the express language of that statute. The Third Proviso simply permits transportation between two coastwise points that would otherwise be prohibited by that statute when such transportation is on a through route recognized, or exempted by, the STB and is in part over Canadian rail lines.

HOLDING:

The transportation of frozen fish indirectly between coastwise points, in part via both foreign-flag vessel and rail trackage in Canada, as described above, is in accord with the Third Proviso to 46 U.S.C. App. § 883.

Sincerely,

Larry L. Burton
Chief
Entry Procedures and Carriers Branch