HQ 115124
August 11, 2000
VES-3-17-RR:IT:EC 115124 GEV
CATEGORY: Carriers
William N. Myhre, Esq.

Preston Gates Ellis & Rouvelas Meeds LLP 1735 New York Avenue, N.W.

Suite 500 Washington, D.C. 20006-5209
RE: Coastwise Trade; Third Proviso to 46 U.S.C. App. § 883
Dear Mr. Myhre:

This is in response to your letter dated July 26, 2000, on behalf of [ ] requesting an expedited ruling regarding the proposed transportation of frozen fish between a coastwise point in Alaska and another coastwise point in the continental United States to be accomplished in part by non-coastwise-qualified vessels and in part over Canadian rail lines. Our ruling in this matter is set forth below.

FACTS:

ASC operates a fleet of modern catcher processors in the North Pacific producing a variety of frozen seafood products that are sold in the United States and throughout the world. The proposed transportation involves the shipment of frozen Alaskan pollock deepskin fillet blocks and other frozen fish products from Dutch Harbor, Alaska, via a foreign port on non-coastwise-qualified vessels and then by intermodal carriage via the New Brunswick Southern Railway ("NBS Railway"), a Canadian rail line, for ultimate delivery to cold storage facilities in New Bedford, Massachusetts, and other points in the United States. It is anticipated that the product will be shipped on a through bill of lading from Dutch Harbor to New Bedford.

- 2 -
[ ] will charter foreign-flag, non-coastwise-qualified vessels from foreign owners (the "Vessels"). The products loaded onto the Vessels in Dutch Harbor will be unitized for intermodal carriage and handling under the through bill of lading. The cargo will move from Dutch Harbor to Pusan, Korea, where it will be trans-loaded to another non-coastwise-qualified vessel, also under charter to [ ] or depending on scheduling, may be held in a bonded cold storage facility pending transfer to one or more of the Vessels.

When the Vessel arrives in New Brunswick, Canada, the product will be discharged to the Bayside Food Terminal, near Bayside, New Brunswick, where it will be staged for intermodal carriage by NBS Railway, which will be the responsible carrier for delivery from Bayside to customers in the Boston area and beyond. At the Bayside terminal, the products will be transferred into intermodal reefer trailers under the full control of NBS Railway. The loaded trailers will be hauled by truck to Saint John, New Brunswick, the nearest full service rail yard where flat cars capable of transporting trailers are available. There the trailers will be loaded onto rail flat cars.

From Saint John, the rail cars will be moved by the NBS Railway over rail trackage in Canada to a subsequent Canadian rail junction located nearer the U.S. border by rail. (The exact rail-truck transfer facility to be used will depend on the type of rail car involved as transfer facilities for different types of rail cars are located at different points along the rail line from Saint John.) At the transfer point, the NBS Railway truck trailers will be offloaded and then driven from there into the United States via the St. Stephen, New Brunswick/Calais, Maine, border crossing. After entry, the trailers will be trucked to the customer's cold storage facility in the United States. The transit will take about two days. [ ] will be documented as the shipper, while each respective customer is the consignee and the carrier will be NBS Railway.

The ultimate consignee for nearly two-thirds of the cargo will be the [ ] where the product will be held in storage for distribution to U.S. markets. Subject to demand, [ metric tons of product will move by this method, originating at Dutch Harbor during the Fall pollock "B Season" (September-October) and the Winter pollock "A Season" (January-February).

- 3 -
The merchandise to be transported under this proposal consists of frozen pollock fillets, minced pollock, headed and gutted pollock, headed and gutted cod, cod fillets, salted cod, or hake fillets taken from North Pacific fisheries that are processed, frozen, and packaged either on shore or on board catcher processors operated by [ ] and other operators. All products moving under the proposed trans-portation will be transshipped to Dutch Harbor, Alaska, for loading onto one of the vessels. The Interstate Commerce Commission ("ICC"), the predecessor agency to the Surface Transportation Board ("STB"), exempted from regulation the rail transportation of "frozen processed fish or seafood (STCC 20-361)" in 1983. Exemption From Regulation—Rail Transpiration—Frozen Food, Ex Parte No. 346 (Sub-No. 15), 367 I.C.C. 859 (Nov. 30, 1983). Thus, since then, this commodity/traffic has not been subject to the rate tariff filing requirement at the ICC and its successor, the STB.

ISSUE:

Whether the transportation of frozen fish indirectly between coastwise points, in part via both foreign-flag vessel and rail trackage in Canada, as described above, is in accord with the Third Proviso to 46 U.S.C. App. § 883.
LAW AND ANALYSIS:

Title 46, United States Code Appendix, § 883 (46 U.S.C. App. § 883, the coastwise merchandise statute, often called the "Jones Act"), provides in pertinent part that no merchandise shall be transported between points embraced within the coastwise laws, either directly or via a foreign port, or for any part of the transportation, in any vessel other than a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States (i.e., a coastwise-qualified vessel).

The Third Proviso to 46 U.S.C. App. § 883 provides that:

   [T]his section shall not apply to merchandise transported between points within the continental United States, including Alaska, over through routes heretofore or hereafter recognized by the Surface Transportation Board for which routes rate tariffs have been or shall hereafter be filed with the Board when such routes are in part over Canadian rail lines and their own or other connecting water facilities.

- 4 -
Simply stated, the prohibition against using a non-coastwise-qualified vessel set forth in § 883 would not apply if all of the conditions to the Third Proviso are met, that is:

through routes are utilized which have heretofore or are hereafter recognized by the STB;
routes rate tariffs have been or shall hereafter be filed with the STB, and have not subsequently been rejected for filing, have become effective according to their terms, and have not been subsequently suspended, or withdrawn by the STB; and
the routes utilized are in part over Canadian rail lines and their own or other connecting water facilities.

The Customs Service has held that "over Canadian rail lines" means over rail trackage in Canada, and that "their own or other connecting water facilities" means water facilities covered by a through route regardless of whether those facilities connect directly with the Canadian rail line covered by that through route. (See, e.g., Headquarters ruling letter 113141, dated June 29, 1994.)
On December 29, 1995, Congress passed the Interstate Commerce Commission Termination Act ("ICCTA"). This legislation, which was effective January 1, 1996, abolished the ICC, the predecessor agency to the STB (see §§ 2 and 101, Pub. L. 104-88) and although it did provide conforming amendments to several sections of the Merchant Marine Act of 1920 (see § 321, Pub. L. 104-88), nothing in the remainder of the statute or its legislative history specifically addresses the ramifications of the aforementioned abolition on the administration of the Jones Act (§ 27 of the Merchant Marine Act of 1920, as amended), including the Third Proviso. However, our review of the legislation in its entirety does yield guidance with respect to this issue. Specifically, we find the following sections of the legislation instructive in this matter.

Section 201 of Pub. L. 104-88 amended title 49 of the United States Code by adding a new Chapter 7 establishing the STB within the Department of Transportation. (§ 201(a), Pub. L. 104-88, citing 49 U.S.C. § 701) This statutory amendment provides as follows:

- 5 -
Except as otherwise provided in the ICC Termination Act of 1995, or the amendments made thereby, the Board shall perform all functions that, immediately before the effective date of such Act, were functions of the Interstate Commerce Commission or were performed by any officer or employee of the Interstate Commerce Commission in the capacity as such officer or employee. (§ 210(a), Pub. L. 104-88, citing 49 U.S.C. § 702)
Accordingly, there exists unequivocal statutory authority for the premise that notwithstanding the demise of the ICC, those matters within its jurisdiction that were not subsequently eliminated by the ICCTA or the amendments made thereby (e.g., Third Proviso-dependent authorization) are now vested in the STB.
In regard to Third Proviso ruling requests to be considered by Customs subsequent to the effective date of the ICCTA, we note that pursuant to § 204(a)(2) of the ICCTA, the Board published a final rule in the Federal Register on June 7, 1996, which removed from the Code of Federal Regulations obsolete ICC regulations, including the rail tariff filing requirement. (61 FR 29036) On July 5, 1996, the STB published in the Federal Register as a final rule its new regulations (49 CFR Part 1300, effective August 4, 1996), which require rail carriers to merely disclose their rates and service terms to any person upon formal request, as well as provide advance notice of increases in such rates or a change in such service terms. (61 FR 35139) Notwith-standing the substitution of ICC authorization with the aforementioned STB oversight, the ICCTA is devoid of any indicia that this new regulatory authority should be interpreted other than in pari materia with the Third Proviso.

It is therefore our position that notwithstanding the abolition of the ICC and the failure on the part of the ICCTA to specifically provide for conforming amendments to the Jones Act, the cumulative effect of the ICCTA nonetheless mandates that the Third Proviso remains in force albeit subject to compliance with the requirements of the STB. Further in this regard, however, we note Customs ruling letter 112085, dated March 10, 1992, issued prior to the ICCTA, wherein we held that the legality of a proposed movement of frozen seafood pursuant to the Third Proviso was not thwarted merely because the language therein provides for the filing of a rate tariff and such merchandise was a commodity for which no rate tariff was required under ICC procedures. The rationale for this position was that, "...although the statute specifies the filing of rate tariffs with the Interstate Commerce - 6 -
Commission, mechanistic adherence to that requirement in the present climate of deregulation would lead to an absurd result which cannot be justified." Id. We believe the same such result would occur were we to disallow the proposed movement under consideration where, as discussed above, the rail tariff filing requirement has been removed pursuant to

the regulations of the STB promulgated pursuant to the ICCTA.

Accordingly, the indirect transportation between coastwise points of commodities which are exempt from requirements regarding rate tariffs, through the utilization of foreign-flag vessels and Canadian rail trackage, is not prohibited merely because no tariffs may be filed to cover the movements.

In this regard we note that Customs has previously ruled that a transportation scenario nearly identical to the one currently under consideration did not violate the Third Proviso. (See Customs ruling letter 114407, dated July 23, 1998) Nothwithstanding the addition of an intermediate foreign port call in the current case, we nonetheless reach the same conclusion inasmuch the transportation between coastwise points "either directly or via a foreign port" in non-coastwise-qualified vessels is within the purview of 46 U.S.C. App. § 883 pursuant to the express language of that statute. The Third Proviso simply permits transportation between two coastwise points that would otherwise be prohibited by that statute when such transportation is on a through route recognized, or exempted by, the STB and is in part over Canadian rail lines.

HOLDING:

The transportation of frozen fish indirectly between coastwise points, in part via both foreign-flag vessel and rail trackage in Canada, as described above, is in accord with the Third Proviso to 46 U.S.C. App. § 883.

Sincerely,
Larry L. Burton Chief Entry Procedures and Carriers Branch