David Karl Gross, ABA #9611065
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
Telephone: 907.276.1550
dgross@bhb.com

Edward E. McNally, ABA #9203003
Marc E. Kasowitz *(Pro Hac Vice To Be Filed)*
Hector Torres *(Pro Hac Vice To Be Filed)*
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Telephone: 212.506.1700
emcnally@kasowitz.com
mkasowitz@kasowitz.com
htorres@kasowitz.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, U.S. Customs and Border Protection Acting Commissioner, in his official capacity,<br><br>Defendants. | Case No.: 3:21-cv-_____ (____) |

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.
DECLARATION OF JENNIFER ADAMSKI
CASE NO. 3:21-CV-_____ (____)
PAGE 1 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 1 of 18

# DECLARATION OF JENNIFER ADAMSKI

Pursuant to 28 U.S.C. § 1746, I, Jennifer Adamski, declare as follows:

1. I am the Director of Operations & Logistics for plaintiffs Kloosterboer International Forwarding LLC ("KIF") and Alaska Reefer Management LLC ("ARM"). KIF is a wholly-owned subsidiary of ARM. KIF and ARM arrange transportation and related services for the movement of frozen seafood products from Alaska to the Eastern U.S.

2. I submit this declaration in support of Plaintiffs' motion for a Temporary Restraining Order and Preliminary Injunction, which is precipitated by the massive penalties that the United States Customs and Border Protection Agency ("CBP") has issued over the last three weeks to KIF, its customers and its third-party strategic partners, such as owners of trucking companies and storage facilities, in connection with the transport of frozen seafood products from Dutch Harbor, Alaska ("Dutch Harbor") to the Eastern U.S. via Bayside, New Brunswick, Canada ("Bayside") and Calais, Maine. The amount of penalties issued currently totals approximately $350 million and threatens to destroy KIF's business of arranging key components of the Alaska-Maine transportation system. Without immediate judicial intervention, KIF's business will be eviscerated, ARM and many other strategic third-party business partners will also be imminently and irreparably harmed, as will KIF's customers – vital U.S. fishing companies that operate out of Alaska – because KIF will be unable to meet its service commitments to its customers and deliver approximately two months of orders of frozen

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI  PAGE 2 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 2 of 18

seafood products, ultimately destined for other American businesses and the American consumer.

3. Furthermore, KIF, its respective customers and third-party strategic partners now face the threat of continuing and mounting, catastrophic penalties, as CBP continues to issue penalties related to the same transportation system.

4. I have been employed by ARM or ARM affiliates for 25 years, and have served as the Director of Operations & Logistics for KIF since 2018 and for ARM since 2016. As the Director of Operations & Logistics for KIF and ARM, I am responsible for the day-to-day operations related to the vessels chartered by ARM and for the procurement of logistics services provided to KIF's customers. I have personal knowledge of the facts set forth in this Declaration.

## I. KIF Overview

5. KIF was formed under the laws of Alaska and its headquarters are located at 2025 First Avenue, Suite 1205, Seattle, Washington, 98121.

6. KIF is a registered non-vessel operating common carrier specializing in refrigerated-freight services for seafood products originating in Alaska. This includes the arrangement of transportation and cold storage from place of receipt of the fish products to its ultimate destination on behalf of shippers, including for those frozen seafood products originating in Alaska and moving through the port of Bayside.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI  PAGE 3 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 3 of 18

7. KIF contracts with ARM to provide ocean carriage from the port of loading to the port of discharge. KIF also contracts with other third-party cold storage and trucking companies as part of the logistics service package provided to each shipper.

## II. The Bayside Program

8. KIF supports its customers, who are shippers, by coordinating the integral movement of their frozen seafood product from Dutch Harbor to Bayside and from Bayside to points in the Eastern U.S. via the Calais, Maine border crossing. Those services include, among other things, arranging transportation of customers' seafood products from cold storage in Dutch Harbor to non-coastwise qualified vessels that then sail to Bayside; transfer of the seafood product from the vessels, once they arrive at Bayside, to cold-storage facilities in Bayside; and later transfer from those facilities into trucks, which are loaded onto flat rail cars on rail trackage in Bayside, and then unloaded and driven to the U.S. through the Calais, Maine border crossing, and once they obtain clearance from the CBP, continue to deliver their cargo to each of the shippers' customers, which are located in the Eastern U.S. (the "Bayside Program").

9. KIF contracts with ARM for transportation of its customers' seafood products on non-coastwise qualified vessels. KIF also contracts with an ARM affiliated entity, Kloosterboer Dutch Harbor LLC ("KDH") for cold storage in Dutch Harbor and a non-affiliated third-party entity, Kloosterboer Bayside Cold Storage ("KBB") for the cold storage of the shippers' frozen seafood products in Dutch Harbor and once the products arrive in Bayside, and for services related to a Canadian railway. Approximately 90% of

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI                                        PAGE 4 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 4 of 18

the goods stored at KBB's cold-storage facility are seafood products of KIF customers that transport their goods via the Bayside Program. KIF also contracts with American and Canadian trucking companies for the transport of the frozen seafood products from Bayside to the U.S. via the Calais, Maine border crossing on behalf of its customers.

10. The trucking partners are contracted by KIF to transport its customers' seafood products to delivery destinations in the Eastern U.S. KIF arranges for over 2,000 truckloads of seafood products to cross the Calais, Maine border crossing annually. After the frozen seafood arrives and is stored in the KBB cold-storage facility, it is transferred into trucks that are loaded onto flat rail cars on the rail trackage of the Bayside Canadian Railway ("BCR"), a registered Canadian railroad and a member of the Railway Association of Canada.[1] KBB makes all arrangements with the BCR relating to the trucks. The BCR is approximately one hundred feet in length and is located near the cold-storage facility in the Bayside port. The BCR rail trackage is entirely located within the Bayside port, which is connected to a Canadian waterway. The trucks travel the length of the rail trackage and back. After the trucks are unloaded from the BCR rail trackage, they drive directly to the Calais, Maine border crossing and into the U.S. The drive from the Bayside port to the U.S. border crossing is approximately 25.4 miles.

---

[1] On April 3, 2012, the Bayside Canadian Railway Company Limited entered into a Railway Operating Agreement with the Canadian Minister of Transportation and Infrastructure, authorizing the company to establish and operate a "shortline railway." A copy of the BCR Railway Operating Agreement is attached hereto as Exhibit 1.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-CV-_____ (____)
DECLARATION OF JENNIFER ADAMSKI                                PAGE 5 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 5 of 18

## III. Documentation Submitted to CBP

11.  Before the seafood products are allowed entry into the U.S. at the Calais, Maine border crossing, a customs broker, AN Deringer, Inc. ("Deringer"), facilitates, on behalf of KIF, the preparation of all relevant documentation that must be submitted to CBP. At the Calais, Maine border crossing, the truck drivers present the following required documents to CBP:

- a Straight Bill of Lading (also known as a truck bill of lading), issued by KBB, indicating: the routing of the seafood products (from KBB to the BCR North, then to the BCR South, and then on to their U.S. destinations), the name of the vessel that delivered the seafood products to Bayside, and the name of the fishing vessel that harvested the seafood products;

- a Combination Invoice (also known as a customs invoice) prepared by KBB on behalf of the shipper;

- an ACE manifest, which is a pre-arrival notice to CBP for the trucking partner; and

- an Intermodal Bill of Lading (also known as a "rail bill of lading"), issued by the BCR, which reflects the movement of the seafood product by rail line from North Bayside to South Bayside and back, and then to the customers' ultimate delivery destinations in the U.S.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI
PAGE 6 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 6 of 18

A complete documentation packet submitted to CBP at the Calais, Maine border crossing on April 9, 2012 is attached hereto as Exhibit 2.

12. In addition, before any arrivals of trucks at the U.S. border, Deringer submits the details of the Straight Bill of Lading, which is included in the documentation packet presented to CBP at the Calais, Maine border crossing, directly to CBP by electronic means. A United States Department of Homeland Security, U.S. Customs and Border Patrol Entry Summary (also known as CBP Form 7501), is then issued by CBP after they have cleared entry. The following, is an illustrative of the truck bill of lading – dated *April 12, 2012* – followed by the BCR-issued intermodal bill of lading covering the seafood products of one of KIF's customers, which establishes that CBP was informed of the precise nature of the BCR rail movement:

# Kloosterboer Bayside

| | | |
|---|---|---|
| Trucker: **TLC** | | Truck B/L# **C 9** |
| Tractor: **JOHN COOK** | | Trailer: **TIH745 NB** |
| Time: | | Date: **9-Apr-12** |

**STRAIGHT BILL OF LADING - ORIGINAL - NOT NEGOTIABLE**
(Issued in accordance with the regulations made under the public Commercial Vehicle Act)

TEMPERATURE **-4 DEG.** (FAHRENHEIT)

Shipper: **AMERICAN SEAFOODS COMPA**    Vessel: **CHAITEN**    Voyage: **1201**

Seal Number: **584862**

Address: **2025 First Ave. Suite 900, Seattle WA 98121**

Received at point of origin on this date from shipper, subject to classifications and tariffs filed by the carrier in effect on the date of receipt by this carrier. The goods herein described, in apparent good order, except as noted (content and condition of contents of the packages unknown) consigned and destined as shown herein, which the said carrier [the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under contract] agrees to carry at its filed rate, and deliver to the consignee at the destination indicated herein, if within the scope of its own lawful authority. Otherwise to deliver to another carrier to deliver to said destination.

It is agreed as to each carrier of all or any of the goods over all or any portion of the route to destination, and to each party at any time interested in all or any of the goods, that each service to be performed hereunder shall be subject to all terms, conditions and limitations [which are hereby incorporated by reference in this short form bill of lading and have the same force and effect as if the same were severally, fully and specifically set forth herein.]

1. Of the form of straight bill of lading prescribed by the regulations in force as of the date of this contract and made pursuant to the Public Commercial Vehicle Act, R.S.O. 1979, ch 375 when the said goods are transported by carrier subject to that act and regulations or
2. Of Bill of Lading form RT-200 approved by the Quebec Transportation Board, August 5th, 1960, when applicable, and in accordance with the bill of lading, referenced tariffs or provincial regulations of other provinces in Canada, when said goods are carried by every carrier.

| Routing: | Kloosterboer Bayside to | Bayside Canadian Railway North | JOHN COOK | |
|---|---|---|---|---|
| | Bayside Canadian Rai to | Bayside Canadian Railway South | BCR B/L# | **04/06/1202** |
| | Bayside Canadian Rai to | NEW BEDFORD, MA | | |

| | |
|---|---|
| Consigned to: **AMERICAN SEAFOODS INT'L** | Ship B/L# **CH1201-BAY-10 C** |
| AMERICAN SEAFOODS COMPANY | MR# **30/ROV 12-02** |
| Street Address: **AMERICAN SEAFOODS INTERNATIONAL** | F/V **OCEAN ROVER** |
| **40 HERMAN MELVILLE BLVD** | P.O.# **051794, d/o#85000505** |
| Town/Province: **NEW BEDFORD, MA** | Phone: **508-997-0103** |
| | Nancy |

| Pieces | Description of Goods | Marks | Size | Weight |
|---|---|---|---|---|
| 1150 | FROZEN POLLOCK BLOCK DEEPSKIN | AS2678 | DS | 56,917 LBS NET |
| | ON 23 PALLETS | | | |
| | | | | |
| | Loaded Temperature: -4 F | | | |
| 1150 | BROKER: DERINGER | | | |

Pallets: IN    TYPE   **4-Way**   OUT **23**    COST EACH   TOTAL    **56,917 LBS NET**

1. Any agreement covering transportation of the goods described herein with other than due dispatch, or for specific time, must be endorsed on this bill of lading and signed by both parties.
2. When a shipment is at "OWNER'S RISK" the words "AT OWNER'S RISK" must be entered and initialed by both parties thereto.

Bill to: **TRANSPORT LOGIS CONS**   **TLCL00006526 1**   FUR code **551**

Declared valuation: $_____ maximum liability $1.50 per pound unless declared valuation states otherwise

SHIPPER: _(signature)_    TRUCKER: _(signature)_    RECEIVER:



## Intermodal Bill of Lading

| | | | |
|---|---|---|---|
| Date: | 9 April, 2012 | Time: | 08:45:00 |
| Trailer#: | TIH 745 NB | Carrier: | John Cook |
| Truck B/L #: | C6 | Movement Ref: | 04061202 |

**Bayside, NB - North Bayside #1   -TO-   South Bayside #2   -   And return**

**Consignee**

American Seafoods International
40 Herman Melville Blvd
New Bedford, MA
02741-2087

**Shipper**

American Seafoods Company
2025 First Ave, Suite 900
Seattle, WA
98121

*Freight Bill Party - Bill to Shipper*

SLC - Shipper Load and Count

**Shippers Weight Agreement**
Gross: 71,917
Tare: 15,000
Net: 56,917   Prepaid

In Bond Type:

Cargo Description:   Frozen Fish in Packages

Cargo Piece Count:   1150 ctn   Seal(s).   584882

Protective Services:
Protect Car - Protect to -4 FA

Reference Numbers at back of Trailer - BN - Booking Number, Car Numbers: 20 361 90

13. I understand that each of the documentation packets presented to CBP after April 2012, on behalf of KIF's customers, specifically identifies the BCR rail line as an integral part of the Bayside Program. I estimate that at least 15,000 such documentation packets have been presented to CBP after April 2012, on behalf of KIF's customers, following which CBP approved entry of the product into the U.S. A sample of a documentation packet provided to CBP after April 2012 are attached hereto as Exhibits 3-7; *see also* Exhibit 2.

14. Before August 2021, when CBP suddenly commenced issuing notices of enormous penalties to KIF, its customers, and third-party partners in the Bayside Program, CBP had never advised KIF that the Bayside Program transportation route – which has been in place for twenty years, with modifications to the system disclosed to CBP since at least as early as April 2012 – was in any way not in complete compliance with the Jones Act or any other U.S. laws or regulations, or that CBP had any concerns about the nature of the route. Nor am I aware that any of KIF's customers, strategic partners or vendors ever received any notice, guidance or ruling from CBP advising them of any concerns related to the legality of the Bayside Program.

### IV. The Switch in the Use of Canadian Railways

15. In 2012, KBB, which as stated above is a non-affiliated, third-party entity, modified the Canadian trackage used as part of the Bayside Program, by switching from the New Brunswick Southern Railway ("NBSR") to the BCR rail line. KIF was aware of and supportive of that change because its customers, when the NBSR was in use,

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.   CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI                                    PAGE 10 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 10 of 18

experienced difficulties in reliably providing timely delivery to end-customers and extremely high transportation fees. Moreover, the distance of the NBSR from the U.S. border, depending on where the seafood products were off-loaded in St. John, Canada (where the seafood products were transported along the NBSR), was anywhere from 30 to 50 miles away from the Calais, Maine border crossing.

16. In any event, it is my understanding that CBP was apprised of the change from NBSR to the BCR rail trackage in 2012. Indeed, as noted above, the over 15,000 documentation packets submitted to CBP at the Calais, Maine border crossing since April 2012, would have included bills of lading clearly reporting the use of the BCR.

## V. CBP Issues Enormous Penalty Notices to KIF's Customers and Service Providers

17. On August 19, 2021, twenty years after the Bayside Program had been in operation, CBP suddenly and without any warning served two notices of penalty on KIF for purported violations of the Jones Act, totaling approximately $25 million. The two KIF notices state only that KIF stored seafood products that were delivered by a third-party non-coastwise qualified vessel to Bayside and that the purported violation was based upon "transportation of merchandise between coastwise points in the United States by way of a foreign port in violation of 46 U.S.C. § 55102 and 19 C.F.R. § 4.80." Copies of these penalty notices are attached hereto as Exhibits 8 and 9.

18. KIF was notified as early as August 17, 2021, by many of its customers and strategic partners, that they had been served with similar notices of penalty. Those notices of penalty, which I understand currently total approximately $350 million, may be

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI    PAGE 11 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 11 of 18

increasing. I also understand that some of the notices of penalty that CBP has issued relate to shipments from nearly five years ago, all seemingly related to the Bayside Program.

19. At least nine of KIF's customers also have informed KIF and ARM that penalty notices totaling approximately $139 million have been issued to them.

20. CBP has also issued four similar notices assessing penalties of approximately $37 million to cold storage providers KDH and KBB.

21. CBP has served at least sixty-eight penalty notices upon nine third-party trucking partners who participated in the Bayside Program, collectively totaling approximately $94 million.

22. CBP also served four notices of penalty on two importers engaged to facilitate the transportation of seafood products, totaling approximately $250,000.

23. I understand from ARM that at least five ship owners, whom ARM contracts to provide KIF and its clients vessel transport, collectively have received nine notices of penalty, totaling approximately $55 million.

## VI. Severe and Imminent Irreparable Harm to KIF Precipitated By CBP's Notices of Penalty

24. KIF's business has been abruptly stopped as a result of CBP's sudden issuance of $350 million in crippling penalties on KIF, its customers, and strategic partners, which is further exacerbated by the imminent risk of additional penalties being assessed. The Bayside Program, *i.e.,* the entire Alaska-Maine frozen seafood supply chain, has been and is paralyzed. The Bayside Program is utilized by Alaskan shippers

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI  PAGE 12 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 12 of 18

who are by no means major corporations. To the contrary, most of KIF's customers are comprised of family-owned, U.S. businesses, employing American workers, which for years have been providing Wild Alaska Seafood products to U.S. consumers. CBP's penalties on the shippers alone are exorbitant, but when those are added to the businesses relied upon to transport their seafood products, it makes clear CBP is either recklessly or willfully aiming to destroy an entire U.S. business chain, industry and livelihoods.

25. If this continues much longer, the existing and daily increasing damage will severely harm KIF's customers seeking to supply seafood products to their respective end-customers. The demise of the system will likely lead to the loss of jobs, especially in further processing facilities in the Eastern U.S., and a substantial reduction in supply and increased prices to consumers for frozen seafood products.

26. As a result of the penalties issued to KIF to date, KIF faces imminent destruction of its business. KIF's annual average net income for the prior two years is $1.8 million, which means that the amount of the penalties CBP has imposed on KIF is equivalent to nearly fifteen times its annual net income. KIF lacks the liquidity or assets to pay such astronomical penalties. KIF cannot pay the fines already levied upon it, never mind any additional fines CBP chooses to arbitrarily assess if KIF were able to continue transporting its customers' seafood product via the Bayside Program.

27. The immediate effect on KIF and its customers and strategic partners who are engaged in the Bayside Program's carefully-calibrated Alaska-Maine transport system is undeniably catastrophic. Virtually overnight, the penalty notices have

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.　　　　CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI　　　　　　　　　　　　　　　　　PAGE 13 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 13 of 18

essentially caused a shutdown of the Bayside Program and the supply chain that brings Alaskan fish to the Eastern U.S. And as a result, as of August 28, 2021, sixty-one truckloads of seafood product owned by KIF's shipper-customers and destined for delivery to their Eastern U.S. end-customers by the end of August, have been held in Bayside for final transport to the Calais, Maine border crossing. By September 2, 2021, approximately twenty-six million pounds of seafood product, estimated to be valued at $41 million and equating to more than five hundred and fifty truckloads, will be on hold at Bayside awaiting transport into the U.S.

28. There is simply no viable, immediate, and reliable alternative for KIF to deliver all of its customers' expected seafood product deliveries in time to meet their customers' needs. As a result of the penalties, deliveries of certain seafood are already delayed. We understand from ARM that access to domestic vessels is limited and/or otherwise unreliable. Further, cold storage capacity and container availabilities, which are necessary to store or otherwise deliver our customers' goods is strained.

29. As a result of the notices of penalties levied on KIF's third-party trucking partners, two of KIF's primary trucking partners have informed KIF that they will no longer transport goods via the Bayside Program absent assurance they will not incur further penalties. And others who have been served with notices of penalties are now advising KIF that they lack the available trucks or need to consult with counsel before providing KIF with any trucks – even to distribute seafood products that are not subject

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.　　　　CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI　　　　　　　　　　　　　　　　PAGE 14 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 14 of 18

to the Jones Act (*i.e.* seafood product that is either not of U.S. origin or is not U.S. bound).

30. KBB, KIF's cold storage partner in Bayside, is also threatened with financial ruin because 90% of the product serviced by KBB is product stored pursuant to the Bayside Program.

31. KIF's customers, who are U.S. fishing businesses operating out of Alaska, face imminent and irreparable harm. If KIF is unable to deliver its customers' products currently stored in Bayside, KIF will have to return such seafood products to Dutch Harbor, which will cause additional months of delay to the ultimate end-customers. The end-customers, all of whom rely on reliable just-in-time delivery, have and undeniably will continue to suffer severe, if not devastating, harm along with KIF's customers.

32. Simply stated, the domino effect of CBP's unfounded and seemingly targeted penalties and the threat of continuing penalties, is causing and will result in the swift and complete disintegration of the Bayside Program. Absent urgent judicial relief to the contrary, KIF will be forced out of business, resulting in the loss of the Bayside Program transportation route because KIF is currently the only company with the required operational logistical capacity to service such a transportation system.

33. KIF has also incurred and continues to incur serious and increased reputational risk. The sudden imposition of hundreds of millions of dollars in penalties upon KIF, its customers, and strategic third-party service partners has become public knowledge, and already has harmed KIF's relationships with its third-party strategic

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.   CASE NO. 3:21-CV-_____ (____)
DECLARATION OF JENNIFER ADAMSKI                                      PAGE 15 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 15 of 18

partners, which are integral and indispensable to the Bayside Program. Even if the penalties are determined to be unfounded (as Plaintiffs intend to demonstrate), the harm to the future of KIF, ARM, its customers and their U.S. end-customers' business and income stream will be unavoidable and will increase absent immediate relief allowing operations to resume.

34. KIF's U.S. customers are also facing dire harm. One of KIF's customers, the O'Hara Corporation, a family-run business that owns and operates five Alaska fishing and processing ships and partly owns a re-processing factory on the East Coast of the U.S., has informed ARM and KIF that, unless its shipments are delivered expeditiously, part of its re-processing factory will be at risk of ceasing operations due to a lack of raw material supply – which will result in reduction of the customer's workforce and higher prices for consumers of the end seafood product.

35. Additionally, our strategic partners and their employees will also face severe harm. Notwithstanding the severe penalties placed on the trucking companies, if the Bayside Program is destroyed, the truckers, who reside in Canada and the U.S., will also lose income generated from servicing the Bayside Program.

36. Deringer, which serves as the customs broker and is headquartered in Vermont, is also highly dependent on the Bayside Program for the viability of its business. We estimate that Deringer will also suffer if the Bayside Program is cancelled. KIF estimates that terminating their transportation program via the Bayside Program will result in an approximately $500,000 annual loss to Deringer.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.　　　　CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI　　　　　　　　　　　　　　　　　　PAGE 16 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 16 of 18

37. The harm to the future of KIF's businesses is imminent and cannot await the time necessary for judicial review of CBP's conduct; during which time KIF is incurring new penalties and/or unable to secure the service of its strategic partners necessary to continue the current Bayside Program. In short, absent immediate judicial intervention, KIF's business will be destroyed in its entirety.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-CV-_____ (____)
DECLARATION OF JENNIFER ADAMSKI  PAGE 17 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 17 of 18

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Bremerton, Washington
September 1st, 2021

*Jennifer Adamski* (signed)

Jennifer Adamski

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-CV-_____ (___)
DECLARATION OF JENNIFER ADAMSKI  PAGE 18 OF 18

Case 3:21-cv-00198-SLG   Document 8   Filed 09/02/21   Page 18 of 18