David Karl Gross, ABA #9611065
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
Telephone: 907.276.1550
dgross@bhb.com

Edward E. McNally, ABA #9203003
Marc E. Kasowitz (*Pro Hac Vice To Be Filed*)
Hector Torres (*Pro Hac Vice To Be Filed*)
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
Telephone: 212.506.1700
emcnally@kasowitz.com
mkasowitz@kasowitz.com
htorres@kasowitz.com
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, U.S. Customs and Border Protection Acting Commissioner, in his official capacity,<br><br>Defendants. | Case No.: 3:21-cv-_____ (____) |

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.     CASE NO. 3:21-cv-_____ (____)
DECLARATION OF DOUGLAS L. CHRISTENSEN     PAGE 1 OF 5

Case 3:21-cv-00198-SLG   Document 13   Filed 09/02/21   Page 1 of 5

## DECLARATION OF DOUGLAS L. CHRISTENSEN

Pursuant to 28 U.S.C. § 1746, I, Douglas L. Christensen, declare as follows:

1. I am the President of Arctic Storm, Inc. and Arctic Fjord, Inc. (hereinafter, the "Arctic Companies"). I submit this declaration in support of the motion of Kloosterboer International Forwarding LLC ("KIF") and Alaska Reefer Management LLC ("ARM") for a temporary restraining order and preliminary injunction. I have personal knowledge of the facts set forth herein, except where otherwise noted.

2. The Arctic Companies own and operate the United States flag catcher-processor vessels ARCTIC STORM and ARCTIC FJORD, respectively.

3. The ARCTIC STORM and the ARCTIC FJORD harvest pollock in the Bering Sea and Aleutian Islands and then process that fish onboard into a variety of frozen seafood products, including fillets, mince, and surimi. Although these pollock seafood products are sold world-wide, a significant portion of our frozen fillet and mince product is sold domestically, primarily to customers with secondary processing facilities in the Eastern United States.

4. The Arctic Companies' domestic customers primarily are comprised of businesses who use our frozen pollock seafood products to make foods such as breaded pollock fillets, fish sticks and other products sold to restaurants and consumers here in the United States.

5. The transport of frozen seafood from Dutch Harbor, Alaska to the East Coast is entirely dependent on guaranteed temperature-controlled environments on

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.     CASE NO. 3:21-cv-_____ (____)
DECLARATION OF DOUGLAS L. CHRISTENSEN     PAGE 2 OF 5

Case 3:21-cv-00198-SLG    Document 13    Filed 09/02/21    Page 2 of 5

shipping vessels and in storage facilities, and on the reliable and timely delivery of the frozen seafood product through the supply chain. This precision is essential for our customers to meet their manufacturing and processing schedules, and for compliance with their own downstream contractual commitments.

6. Reliable, temperature-controlled, timely and uninterrupted deliveries are essential for shippers like the Arctic Companies because of the "just-in-time" delivery systems required by our domestic customers. Just-in-time delivery refers to delivering frozen seafood products to customers for their immediate use, so they do not need to store the seafood product for long periods of time, reducing their cost and inventory management requirements.

7. Through Arctic Storm Management Group, LLC, the Arctic Companies contract with KIF to support the supply chains of our product by providing transportation and logistics services through KIF from Dutch Harbor, Alaska to Bayside, New Brunswick, Canada and from Bayside to points in the Eastern U.S. via the Calais, Maine border crossing. These logistics services include arranging transportation of our seafood products from Dutch Harbor via freezer vessels to Bayside, transfer of the seafood product from the freezer vessels to cold storage facilities in Bayside, subsequent transfer of the product from these facilities onto refrigerated shipping trailers, and finally transportation of those trailers via rail line and then truck to the U.S. through the Calais, Maine border crossing and to their ultimate destination in the Eastern U.S. Access to this

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.　　　　　CASE NO. 3:21-cv-_____ (____)
DECLARATION OF DOUGLAS L. CHRISTENSEN　　　　　　　　　　PAGE 3 OF 5

Case 3:21-cv-00198-SLG   Document 13   Filed 09/02/21   Page 3 of 5

coordinated transportation system is essential to our ability to efficiently and reliably meet the "just in time" delivery requirements of our customers.

8. We have contracted for these transportation services in good faith and with the expectation that they were being provided in accordance with all applicable laws. However, earlier this month, the U.S. Customs and Border Protection Division of the Department of Homeland Security (hereinafter, the "CBP") issued penalty notices to the Arctic Companies for purported violations of the Jones Act in connection with the shipment of our frozen seafood products from Dutch Harbor to Calais via Bayside.

9. I understand that KIF is unable to continue providing the transportation route described above because penalty notices also have been issued to KIF and to other companies that support the transportation route from Dutch Harbor to Calais via Bayside. This essential transportation route for supplying the "just in time" product delivery needs of our domestic customers in the Eastern U.S. has effectively been suspended due to the penalty notices.

10. The penalty notices and resulting interruption of the above-described transportation route present two significant and immediate logistical problems for the Arctic Companies. First, we have product remaining in cold storage at Bayside for our domestic customers in the Eastern U.S. that we cannot ship to them without risk of additional customs penalties. This will likely mean that we will be unable to timely fill the delivery orders these domestic customers have placed with us and that we will instead need to divert this product to foreign customers.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.     CASE NO. 3:21-cv-_____ (____)
DECLARATION OF DOUGLAS L. CHRISTENSEN     PAGE 4 OF 5

Case 3:21-cv-00198-SLG    Document 13    Filed 09/02/21    Page 4 of 5

11. Second, as we complete the pollock "B" season, we will have new product coming off the ARCTIC STORM and the ARCTIC FJORD, a substantial portion of which is likewise destined for our domestic customers in the Eastern U.S. We must now find alternative refrigerated transportation for this product. Although there are some limited alternative transportation options available, it is doubtful that those alternatives offer the capacity needed to transport all of the pollock industry's domestic-bound product in a sufficiently reliable, timely and cost-effective manner. So the Arctic Companies could well find themselves competing with other pollock producers for the limited capacity of those alternative transportation options.

SIGNED this __31st__ day of August, 2021 at Seattle, Washington.

_____
Douglas L. Christensen

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-_____ (____)
DECLARATION OF DOUGLAS L. CHRISTENSEN  PAGE 5 OF 5

Case 3:21-cv-00198-SLG   Document 13   Filed 09/02/21   Page 5 of 5