David Karl Gross, ABA #9611065
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
Telephone:   907.276.1550
Email:  dgross@bhb.com

Edward E. McNally ABA #9203003
Marc E. Kasowitz *(Pro Hac Vice To Be Filed)*
Hector Torres *(Pro Hac Vice To Be Filed)*
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY  10019
Telephone:   (212) 506-1700
mkasowitz@kasowitz.com
htorres@kasowitz.com
emcnally@kasowitz.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC,<br><br>vs.<br><br>UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, U.S. Customs and Border Protection Acting Commissioner, in his official capacity,<br><br>Defendants. | Case No.: 3:21-cv-_____ (____) |

# DECLARATION OF MARK J. ROBERTSON

Pursuant to 28 U.S.C. § 1746, I, MARK J. ROBERTSON, declare as follows:

1. I am Special Counsel in the Government Affairs and Strategic Counsel group of Kasowitz Benson Torres LLP. I am a member of the District of Columbia Bar. I submit this declaration in support of Plaintiffs Kloosterboer International Forwarding LLC ("KIF") and Alaska Reefer Management LLC's ("ARM") motion for a temporary restraining order and preliminary injunction. I have personal knowledge of the facts set forth herein.

2. My Firm represents Plaintiffs with respect to Notices of Penalty issued by United States Customs and Border Protection ("CBP") to Plaintiff KIF and Plaintiffs' various customers, shippers and others in the chain of distribution of frozen seafood products at issue (the "Penalty Notices").

3. On August 20, 2021, C. Jonathan Benner, Esq., of Thompson Coburn LLP (also engaged by Plaintiffs in connection with the Notices of Penalty) and I spoke by telephone with Ileana Gomez, Esq., CBP Assistant Chief Counsel. Mr. Benner and I told Ms. Gomez that the Penalty Notices recently issued by CBP without prior notice to any of the participants in the frozen seafood transportation supply chain from Dutch Harbor, Alaska to the Eastern United States through Bayside, New Brunswick, Canada, were having a devastating impact on that well-established route, and threatened to irreparably harm the participants in that supply chain as well as downstream customers and consumers. Moreover, we told Ms. Gomez that the threat of additional Penalty Notices

placed the participants in a position of unacceptable risk if they continued to operate. We stated our concern that, absent some clear statement that CBP would refrain from asserting additional penalties covering the timeframe during which the merits of the penalty claims could be considered by CBP, the threat of additional Penalty Notices would further disrupt the frozen seafood transportation supply chain from Dutch Harbor and irreparably harm Plaintiffs' businesses, their customers, American workers, and American consumers.

4. We also explained that cargo vessels in operation would need to be diverted or their departures terminated or delayed, and the trucks positioned to transport product to U.S. purchasers would suspend operations, absent the requested relief from CBP. We described how these impacts, given the extreme financial risk created by the size and number of Penalty Notices outstanding, not only to our clients, but to other participating shippers and carriers, would likely destroy the vital transportation chain before the merits of any petition for relief could be addressed through CBP's administrative review process.

5. Mr. Benner and I also advised that similar shipping arrangements had been found lawful in Customs Rulings addressing the Third Proviso of the Jones Act going back over 20 years, and that we were aware of no intervening contradictory guidance from CBP. We also represented that our clients had received no inquiries from CBP about the transportation arrangements at issue prior to their receipt of the CBP's Penalty Notices, and that our clients were completely blindsided.

KLOOSTERBOER INT'L V. UNITED STATES, ET AL.  CASE NO. 3:21-cv-_____ (____)
DECLARATION OF MARK J. ROBERTSON  PAGE 3 OF 8
Case 3:21-cv-00198-SLG   Document 15   Filed 09/02/21   Page 3 of 8

6. Ms. Gomez advised that she would discuss the matter internally with the appropriate CBP personnel and respond to us by Friday, August 20 or Monday, August 23.

7. On August 23, I received an email from Ms. Gomez in which she conveyed that CBP will continue to review our client's current business practices and make determinations as to violations of the Jones Act on an ongoing basis and that to the extent our client wishes to contest the validity of the Penalty Notices, it may avail itself of the redress opportunities noted on the notices.

8. The next day, I contacted Frederick B. Smith, Esq., CBP Deputy Chief Counsel (Acting), and reiterated our concerns that the Penalty Notices were totally disrupting operations across the transportation chain that moves frozen seafood from Dutch Harbor, Alaska to the Eastern United States, and that this matter deserved urgent attention in light of the potential irreparable harm to our clients as well as the industry at large.

9. Mr. Smith said he understood our concerns and suggested a teleconference later that afternoon with other CBP attorneys to further discuss the matter. During that subsequent August 24 conference call with a team of CBP attorneys, my firm colleagues, Mr. Benner, and I reiterated, among other things, that participants in the supply chain are refusing to carry any further shipments because they fear the imposition of further crushing CBP penalties that would likely destroy their businesses. We requested that CBP agree, as part of negotiations to resolve this matter, not to issue Penalty Notices for

shipments made during a brief standstill period. In addition, during this teleconference, a CBP official stated that the Agency understood no tariff relating to the subject transportation route was on file with the Surface Transportation Board.

10. On August 25, I received an email message from Ms. Gomez stating that "[o]ur clients agreed to pause the issuance of the penalty notices for two (2) weeks, effective today. Please note that this 2-week pause does not prevent the Agency from issuing penalties in the future for any violations that have already occurred or will occur during this 2-week period. Moreover, this pause does not prevent you from seeking redress through the administrative petition process. The Agency has agreed to grant this 2-week pause to provide you the opportunity to present to the Agency the arguments and supporting documentation you are relying on to establish that your clients are acting in compliance with the Jones Act."

11. CBP's agreement merely to pause the issuance of additional Penalty Notices does not address the critical underlying problem, *i.e.*, companies in the supply chain that resume shipping operations will still be operating at risk of additional Notices of Penalty and, given the extraordinary magnitude of such penalties, they are unwilling to resume operations absent a "safe harbor" during the time the issues are being litigated.

12. In response to Ms. Gomez's August 25 email, emphasizing that time was of the essence, I requested an in-person meeting as soon as possible to present the arguments and supporting documentation that would establish that our clients have been acting in compliance with the Jones Act.

13. In subsequent communications, Ms. Gomez advised that an in-person meeting was not possible but offered that the Agency would be willing to host a virtual meeting. In response, I suggested that the virtual meeting be held Monday, August 30th.

14. During a subsequent call on August 26, Ms. Gomez responded that, due to a certain key official being away on leave, it was most likely not possible to schedule the follow-on meeting before Tuesday, August 31. CBP has yet to offer a date and time for that meeting. Further, Ms. Gomez stated that it was important to make certain that the parties had knowledge of the "rail movement" involved in the subject transportation chain and that there was publicly-available video of the rail movement.

15. On August 27, I spoke by phone with Suzanne Almetica, Esq., CBP Associate Chief Counsel, Trade & Finance (Acting), in connection with this matter and, among other things, asked whether and under what circumstances the Agency would agree to suspend the issuance of any additional Penalty Notices for a short period during which we could address the underlying facts and present additional information regarding our client's operations and their compliance with the Jones Act. Associate Chief Counsel Almetica stated that the Agency would not agree to such a request. I reiterated our clients' interest in meeting with CBP in an effort to expeditiously resolve this matter.

16. On August 30, I emailed Ms. Almetica to confirm that we remained interested in scheduling a meeting with CBP at the earliest possible opportunity. I also asked whether CBP could share whether the Agency's concern with the "rail movement" is with the characteristics of the railway or with how shipments move on that railway.

17. On August 31, I received an e-mail from Associate Chief Counsel Almetica who advised that, while CBP is inclined to provide our clients with additional information regarding the alleged Jones Act violations, CBP is not yet prepared to do so. Ms. Almetica wrote, "We've had multiple internal meetings today to discuss what, *if any*, additional information we can provide. We are inclined to provide you/your client with additional information, which I think you'll find helpful. This requires coordination with multiple CBP clients, and we are working as quickly as we can." (emphasis added)

18. After being informed that the entire transportation system at issue has halted and that Plaintiffs' business (among other businesses in the transportation chain) are being decimated, CBP notes that, despite our express request for additional information as to the alleged violations, they may still refuse our request entirely.

19. In summary, despite our best efforts, CBP has refused to remove the threat that CBP will impose additional Jones Act penalties -- both for completed shipments and for ongoing shipments "in the pipeline" -- on Plaintiffs, their business partners, and those in the chain of distribution, for a short period while Plaintiffs seek a resolution of this dispute with CBP. Further, notwithstanding the urgency of the matter, CBP has yet to schedule a meeting that would allow for the presentation of arguments and supporting documentation to establish that Plaintiffs' actions and those of the other companies who have received Penalty Notices are not in violation of the Jones Act.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Washington, D.C.
       September 1, 2021

_____
MARK J. ROBERTSON