IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

---

| | | |
|---|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC, | : : : : | |
| Plaintiffs, | : : | Case No.: 3:21-cv-00198-SLG |
| vs. | : : | |
| UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, U.S. Customs and Border Protection Acting Commissioner, in his official capacity, | : : : : : : | **DECLARATION OF MICHAEL ROBERTS** |
| Defendants. | : : | |

---

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1. My name is Michael Roberts and I am the President of the American Maritime Partnership ("AMP"). I am also the former General Counsel of a leading American maritime company and have more than thirty years of legal and executive experience in the maritime industry. I have been a member of AMP leadership since the organization was founded in 1995. I make this declaration on behalf of AMP.

2. AMP is the broadest and deepest coalition ever assembled to represent the American domestic maritime industry. AMP's membership includes vessel owners and operators involved in shipping and marine services provided in America's domestic deep sea, coastal, inland and Great Lakes markets, a leading American fishing company, representatives of maritime labor, shipbuilders and repair yards, dredging and marine construction contractors, and maritime trade associations representing nearly all segments of the American domestic maritime industry. All AMP members recognize that a strong domestic maritime industry is critical for America's economic, national,

and homeland security, and is best supported by maintaining the Jones Act as the foundation of America's domestic maritime policy.

3. The Jones Act provides that any vessel transporting merchandise directly or indirectly between two American points must be an American ship, *i.e.*, one built in America, owned and crewed by American citizens and fully subject to American laws, including laws governing safety, environmental performance and taxation. In contrast, foreign ships are considered for legal purposes to be the sovereign territory of the country in which they are registered. They are not required to obey most American laws or to hire American mariners or to pay American taxes. As a result, foreign ships are generally less expensive to build and operate than American ships and can therefore charge lower freight rates.

4. Because of the Jones Act, foreign ships are not allowed directly or indirectly to carry merchandise in U.S. domestic trades. This assures a level playing for American shipbuilders and for American ships and mariners that compete to move merchandise in U.S. domestic markets. With the assurance of a fair market and level playing field provided by the Jones Act, American maritime companies have invested many billions of dollars in thousands of vessels of all types that have been built in the United States and are operated in compliance with the Jones Act and all other American laws. Further, American maritime academies, union schools and other training organizations have educated tens of thousands of American mariners who serve as the officers and crew for the U.S. flag vessels operated in America's deep sea, coastal and inland markets.

5. Those U.S. flag ships, American mariners and U.S. shipbuilding facilities and skilled workers are generally recognized to be critically important elements of America's defense industrial base. They constitute a critical mass of assets and expertise that national security experts rely upon in planning for military contingencies overseas. That critical mass of maritime assets and expertise is also

recognized as essential to being able to scale up a more robust American maritime capability if needed for national security purposes.

6. Given the cost advantage that foreign ships have over American ships, allowing foreign ships to compete with American ships in U.S. domestic trades would result in serious adverse impacts on the domestic American maritime industry. It would put in jeopardy the jobs of thousands of skilled American mariners and shipyard workers who could be forced to find other vocations. It would also jeopardize the domestic commercial maritime business of American maritime companies and shipyards. In the same vein, allowing foreign ships into any *segment* of the domestic American maritime market, whether by intentional legislative or regulatory change or as a result of the non-enforcement of the Jones Act, would result in the reduction or elimination of American maritime service in that market segment, with a corresponding loss to America's defense industrial base.

7. Hence, the American domestic maritime industry through AMP generally opposes temporary or permanent exemptions from the Jones Act. AMP also supports strict enforcement of the Jones Act so that American ships and mariners can compete on a level competitive playing field to serve customer needs in U.S. domestic markets. The absence of strict Jones Act enforcement results in the loss of American maritime jobs, less compliance with American regulatory standards, lost tax revenues, and the gradual decline of America's defense industrial base.

8. On the other hand, proper enforcement of the Jones Act enables the American maritime industry to respond effectively to changes in market demand for domestic transportation services. There are numerous examples of the American maritime industry meeting such challenges, including meeting short term emergency response needs (*e.g.*, hurricane response), as well as longer term demands that are shaped by carrier innovation (*e.g.*, containerization), emerging customer requirements (offshore oil and gas development), or entirely new markets. A very current example

of the latter is the development of renewable offshore wind energy, which is expected to spur billions of dollars in investment in U.S.-built vessels, port facilities, training centers, *etc.*, and employ tens of thousands of American citizens, all contributing to America's defense industrial base.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 10, 2021

_____
Michael Roberts