David Karl Gross, ABA #9611065
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, AK 99501
Telephone: 907.276.1550
dgross@bhb.com

Edward E. McNally, ABA #9203003
Marc E. Kasowitz *(Pro Hac Vice)*
David J. Abrams *(Pro Hac Vice)*
David E. Ross *(Pro Hac Vice)*
Hector Torres (Pro Hac Vice)
Kim Conroy (Pro Hac Vice)
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
Telephone: 212.542.4757
emcnally@kasowitz.com
mkasowitz@kasowitz.com
dabrams@kasowitz.com
dross@kasowitz.com
htorres@kasowitz.com
kconroy@kasowitz.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 3:21-cv-00198 (SLG) |
| vs. | ) ) | |
| U.S.A., U.S. DEPT. OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, Acting Commissioner, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN
FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO.: 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 1 of 48

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT..................................................................................................... 8

I.     THE CONSTITUTIONAL TOLLING DOCTRINE MANDATES THE
       BROAD INJUNCTIVE RELIEF SOUGHT BY PLAINTIFFS. ........................... 8

       A.     The Court Should Enjoin CBP From Issuing Any Further Penalty
              Notices Related to the Bayside Program While Plaintiffs Seek to
              Vindicate Their Rights. ................................................................. 8

       B.     CBP Fails To Refute Plaintiffs' Showing That They Will Suffer
              Irreparable Harm Absent Injunctive Relief. ................................. 13

              1.     Plaintiffs Have Established a Deprivation of their
                     Constitutional Rights......................................................... 13

              2.     CBP Does Not Even Attempt to Refute That Plaintiffs are
                     Suffering and Will Continue to Suffer Irreparable Harm as a
                     Result of CBP's Penalties. ................................................. 13

II.    CBP FAILS TO REBUT PLAINTIFFS' SHOWING THAT THEIR
       CLAIMS ARE LIKELY TO SUCCEED ON THE MERITS............................... 17

       A.     CBP's Own Rulings Demonstrate That Plaintiffs Are Likely to
              Succeed on Their Declaratory Judgment Claim that the Bayside
              Program Complies with the Third Proviso................................... 18

              1.     CBP's "Through Route" and "Transportation" Arguments
                     Regarding the BCR are Meritless. ..................................... 18

              2.     The Canadian Rail Line is Not Required to be "Commercially
                     Sound" Under the Third Proviso.......................................... 21

              3.     Plaintiffs Are Not Required to File a Rate Tariff to Comply
                     With the Third Proviso....................................................... 23

              4.     Rate Tariffs Covering the Through Route are on File with the
                     STB..................................................................................... 27

       B.     Plaintiffs Have Established a Likelihood of Success on their Claims
              that CBP Violated 19 U.S.C. § 1625(c)(1) and (2). .................... 28

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE i
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 2 of 48

C.     CBP Has Failed to Rebut KIF's Showing It Has Established a
       Likelihood of Success on Its Fifth Amendment Due Process Claims. ....... 31

D.     KIF Has Established a Likelihood of Success on its Eighth
       Amendment Excessive Fines Claim ............................................................ 35

III.   THE BALANCE OF EQUITIES AND PUBLIC INTEREST FACTORS
       FAVOR PLAINTIFFS REQUEST FOR INJUNCTIVE RELIEF. ...................... 38

CONCLUSION ............................................................................................................ 41

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.            CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                        PAGE ii
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 3 of 48

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Mar. Ass'n v. Blumenthal*,
  590 F.2d 1156 (D.C. Cir. 1978) ................................................................. 12, 27

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
  750 F.2d 1470 (9th Cir. 1985) ...................................................................... 15

*Aminoil, Inc. v. United States*,
  646 F. Supp. 294 (C.D. Cal. 1986) .............................................................. 13

*Bernie's Pharmacy, Inc. v. AmerisourceBergen Drug Corp.*,
  No. 3:18-CV-00183-TMB, 2018 WL 9816097 (D. Alaska Aug. 24,
  2018) .............................................................................................................. 18

*BMW of N. Am., Inc. v. Gore*,
  517 U.S. 559 (1996) ...................................................................................... 33

*Brown & Williamson Tobacco Corp. v. Engman*,
  527 F.2d 1115 (2d Cir. 1975) ....................................................................... 11

*Cabot Corp. v. United States*,
  788 F.2d 1539 (Fed. Cir. 1986) .................................................................... 25

*Caesar v. West*,
  195 F.3d 1373 (Fed. Cir. 1999) .................................................................... 25

*California Indus. Prod., Inc. v. United States*,
  436 F.3d 1341 (Fed. Cir. 2006) .................................................................... 26

*Cent. Vermont Transp. Co. v. Durning*,
  294 U.S. 33 (1935) ........................................................................................ 20

*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989) ...................................................................................... 39

*Colorado Dep't of Lab. & Emp. v. Dami Hosp.*,
  LLC, 442 P.3d 94 (Colo. 2019) .................................................................... 38

*Connecticut Nat. Bank v. Germain*,
  503 U.S. 249 (1992) ...................................................................................... 41

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.               CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                                    PAGE iii
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 4 of 48

*ExxonMobil Pipeline Co. v. United States Dep't of Transp.*,
   867 F.3d 564 (5th Cir. 2017) ................................................................. 34

*Gen. Elec. Co. v. U.S. E.P.A.*,
   53 F.3d 1324 (D.C. Cir. 1995) .............................................................. 26

*Horizon Lines, LLC. v. United States*,
   414 F. Supp. 2d 46 (D.D.C. 2006) .................................................*passim*

*Kahrs Int'l, Inc. v. United States*,
   33 C.I.T. 1316 (2009)............................................................................ 28

*Kansas-Nebraska Nat. Gas Co. v. Dep't of Energy.*
   1979 WL 998 (D. Kan. July 31, 1979) ................................................. 13

*Mahroom v. Best W. Intern., Inc.*,
   No. C 07–2351 JF (HRL), 2009 WL 248262 (N.D. Cal. Feb. 2, 2009) ..................... 15

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ................................................................ 14

*Morrison v. Dep't of the Navy*,
   876 F.3d 1106 (Fed. Cir. 2017)............................................................. 25

*Norfolk S. Ry. Co. v. Kirby*,
   543 U.S. 14 (2004)................................................................................ 21

*Oklahoma Operating Co. v. Love*,
   252 U.S. 331 (1920) ............................................................................... 9

*Pimentel v. City of Los Angeles*,
   974 F.3d 917 (9th Cir. 2020) ................................................................ 38

*Porretti v. Dzurenda*,
   No. 20-16111, 2021 WL 3853052 (9th Cir. Aug. 30, 2021) ................... 39

*Sea-Land Serv., Inc. v. Fed. Mar. Comm'n*,
   404 F.2d 824 (D.C. Cir. 1968) ....................................................... 19, 30

*Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*,
   516 F. Supp. 3d 943 (D. Alaska 2021) ................................................. 18

*St. Louis Sw. Ry. Co. v. United States*,
   245 U.S. 136 (1917)....................................................................... 19, 30

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.     CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW     PAGE iv
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 5 of 48

*Stuhlbarg Int'l. Sales Co., Inc. v. John D. Brush and Co., Inc.*,
    240 F.3d 832 (9th Cir. 2001) ................................................................. 16

*Trailer Marine Transp. Corp. v. Fed. Mar. Comm'n*,
    602 F.2d 379 (D.C. Cir. 1979) ........................................................ 20, 21

*United States v. $100,348 in U.S. Currency*,
    354 F.3d 1110 (9th Cir. 2004) ........................................................ 38, 39

*United States v. 3814 NW Thurman St.*,
    164 F.3d 1191 (9th Cir. 1999) ............................................................... 39

*United States v. Alvarez*,
    567 U.S. 709 (2012) .............................................................................. 36

*United States v. Louisiana & P.R. Co.*,
    234 U.S. 1 (1914) .................................................................................. 20

*United States v. Louisiana-Pac. Corp.*,
    967 F.2d 1372 (9th Cir. 1992) ..................................................... 9, 10, 11

*United States v. Pacific Coast Eur. Conf.*,
    451 F.2d 712 (9th Cir. 1971) ...................................................... 9, 10, 40

*United States v. Pennsylvania Ry. Co.*,
    323 U.S. 612 (1945) .............................................................................. 21

*Wadley S. Ry. Co. v. Georgia*,
    235 U.S. 651 (1915) ....................................................................... 12, 40

**Statutes**

19 U.S.C. § 1625 ..................................................................................... 7

19 U.S.C. § 1625(c) ......................................................................... *passim*

46 U.S.C. § 55102(c) .............................................................................. 12

46 U.S.C. § 55116 ...................................................................... 20, 24, 41

49 U.S.C. § 13702 .................................................................................. 24

49 U.S.C. § 13702 .................................................................................. 28

Interstate Commerce Act ........................................................................ 20

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.       CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                   PAGE v
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 6 of 48

Interstate Commerce Commission Termination Act, Pub. L. 104-88, 109
    Stat. 803 (1995) .................................................................................... 24

Jones Act ........................................................................................... *passim*

Third Proviso ..................................................................................... *passim*

**Regulations**

19 C.F.R. § 177.9(a) .................................................................................. 27

19 C.F.R. § 177.12(b) & (c) ....................................................................... 26

19 C.F.R. § 177.12(d)(1)(iv) ...................................................................... 26

**Constitutional Provisions**

Fifth Amendment .............................................................................. *passim*

Eighth Amendment ................................................................... 8, 13, 37

**Other Authorities**

CBP Delegation Guidance available at
    https://www.cbp.gov/sites/default/files/assets/documents/2021-
    May/Delegation%20Order%20Guidance%20for%20the%20Trade%20C
    ommunity_0.pdf ................................................................................... 8

Ruling Letter 116021 (January 21, 2004) ....................................... *passim*

Ruling Letter 115446 (August 9, 2001) ........................................ 21, 24, 31

Ruling Letter 105604 (April 30, 1982) ......................................... 24 31

Ruling Letter 111987 (June 29, 1994) ........................................... 31

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                      PAGE vi
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 7 of 48

Plaintiffs Kloosterboer International Forwarding LLC ("KIF") and Alaska Reefer Management LLC ("ARM") submit this Reply Memorandum of Law in Further Support of their Motion for Temporary Restraining Order and Preliminary Injunction, respectfully showing as follows:

## PRELIMINARY STATEMENT[1]

Plaintiffs' Motion demonstrated that this Court's urgent intervention is essential to prevent CBP's shocking and unconstitutional overreach in continuing to assess massive, confiscatory and unprecedented penalties for purported Jones Act violations against Plaintiffs and other companies—penalties that have brought to a screeching halt and threaten the permanent collapse of the Dutch Harbor, Alaska to eastern United States frozen seafood supply.

In urging the Court to deny this critically needed relief, defendants' opposition ("Opposition" or "Dkt. 38") confirms that CBP's secretive conduct—in reversing its own Ruling Letters without public notice—is blatantly unconstitutional. Moreover, defendants do not and cannot refute Plaintiffs' showing that, consistent with a long series of CBP Ruling Letters, every aspect of Plaintiffs' through route from Alaska to the eastern United States complies with the Third Proviso to the Jones Act.

Defendants state that more than four years ago—on April 12, 2017—a private law firm, acting at the behest of a complainant, presumed to be an industry competitor, sent a

---

[1] Defined terms herein have the meaning provided in Plaintiffs' Memorandum of Law in Support of Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion" or "Dkt. 5"). All emphasis is added unless otherwise noted.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE 1 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 8 of 48

letter to CBP alleging that Plaintiffs may have violated the Jones Act because they were utilizing the Dutch Harbor to eastern U.S. transportation route, through Bayside, for the transport of frozen seafood based on a purportedly inadequate tariff filing with the STB. CBP claims that this complaint triggered a "lengthy investigation and internal evaluation" that included reviewing two videos downloaded from the internet showing the BCR rail line movement and several photos of the BCR rail line.

None of the information in those materials was unknown—or could have been surprising—to CBP. Not only had Plaintiffs been transparent regarding their use of the BCR rail line since 2012, but the Bayside Program was known to CBP and authorized by CBP's multiple Ruling Letters that remain in full force and effect approving a substantially identical through route.

Despite the complete public visibility of all details of the Bayside Program to both CBP and the general public, and the evidence that Plaintiffs acted reasonably, in reliance on the applicable CBP rulings, CBP sat back and watched the Bayside Program progress for well over four years without a single word to Plaintiffs or anyone else involved in the Program that might provide notice of an investigation as to whether the Bayside Program complied with the Third Proviso. Indeed, CBP never notified Plaintiffs that, notwithstanding CBP's consistent rulings that a tariff filing was not required for Third Proviso compliance in these circumstances, CBP had reversed its position and intended to bring a massive enforcement action based on its new position, without providing for public review and comment.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                        PAGE 2 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 9 of 48

CBP also never notified Plaintiffs that, although CBP consistently held in its public Ruling Letters that there was no minimum travel distance required to satisfy the Canadian rail requirement in the Third Proviso, CBP secretly reversed its rulings with the intent to challenge the BCR's compliance. And then, directly in the middle of the pollock "B season," possibly the most critical time of the year for fishing companies and customers processing frozen fish products, CBP began issuing hundreds of Penalty Notices to companies in every link in the Bayside Program supply chain, even though it surely knew that the timing and the magnitude of the proposed penalties would have the maximum destructive impact on the entire U.S. pollock industry.

Equally egregious is CBP's conduct after it issued these massive penalty notices. Because Plaintiffs had not changed anything in their transportation through route in nearly a decade, and believed at all times that they were operating in complete compliance with CBP's Ruling Letters and the Third Proviso, once Plaintiffs received the notices, they immediately contacted CBP. Through numerous telephone calls with senior CBP attorneys, Plaintiffs repeatedly requested information concerning the basis for CBP's sudden charge that they were violating the Jones Act. CBP refused to explain the basis for the purported violations other than in the most general and vague terms. It was only with the filing of the Opposition on September 10, 2021, that CBP, for the first time, disclosed the flawed reasoning underlying its unconstitutional and deficient Penalty Notices. Most remarkable is CBP's purported excuse for not providing any notice, much less the statutorily and constitutionally-required notice—which was nothing more than CBP's speculation that Plaintiffs had "no intention" to change the Bayside Program so prior notice

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                            PAGE 3 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG    Document 47    Filed 09/14/21    Page 10 of 48

of the violations would not have changed anything. "The outcome would thus have been the same[.]" (Dkt. 38 at 31).

CBP's Opposition relies not just on speculation, but on revisionist history, in trying to supply an after-the-fact justification for CBP's unannounced about-face on the standards governing the Third Proviso. CBP does not and cannot come close to rationalizing its failure to engage in the required notice and comment regulatory process before suddenly reversing course and imposing massive Penalty Notices for conduct that CBP's internal rulings held for over twenty years was entirely in compliance with the Third Proviso. CBP fails to rebut Plaintiffs' showing of likelihood of success on each of its claims and entirely sidesteps Plaintiffs' incontrovertible showing of immediate and continued irreparable harm warranting injunctive relief. CBP's main defense—that the Bayside Program using the NBSR was compliant prior to 2012, but that the BCR private carriage rail to "nowhere" is so materially different from the prior use of the NBSR that it violates the Third Proviso—is entirely baseless. The BCR rail line fully complies with the Third Proviso to the letter of the law in every way, as consistently interpreted by CBP.

The BCR rail line, developed and constructed specifically to comply with the clear and unequivocal terms of the Third Proviso, is not "radically different" in purpose and effect from the NBSR rail line used by Plaintiffs before 2012, to which CBP had and continues to have no objection and encourages Plaintiffs to resume using. Like the NBSR, the BCR rail line fits squarely within the existing CBP regulatory guidance on the Third Proviso: it is indisputably a registered Canadian rail line; the goods are loaded onto it and travel a short distance—and neither CBP nor any court has ever held that there is a *de*

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE 4 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 11 of 48

*minimis* required distance or that the route must be "commercially sound" to invoke the Third Proviso.

CBP's abrupt change of its guidance without any notice to Plaintiffs or others in the supply chain is flatly unconstitutional and injunctive relief must be granted to Plaintiffs, for numerous reasons.

*First*, in now attempting to walk away from its well-established interpretive rulings on the Third Proviso that CBP never modified or revoked even after the *Horizon* decision, and by issuing such enormous penalties that the entire supply chain cannot resume operations, CBP is violating Plaintiffs' constitutional and statutory due process rights. Where, as here, Plaintiffs have raised substantial constitutional questions, the relief sought *pendente lite* is expressly authorized and, indeed, mandated under the constitutional tolling doctrine to prevent unredressable violations of constitutional rights, particularly given the enormity of threatened immediate irreparable harm. Application of the constitutional tolling doctrine is crucial to avoiding the Hobson's choice facing Plaintiffs and others in the supply chain—between complying with an unconstitutional government directive or financial destruction—which is precisely why this doctrine has been invoked by the Supreme Court and the Ninth Circuit. In fact, there could hardly be a set of facts under which the doctrine would be more essential.

In short, CBP does not and cannot refute Plaintiffs' overwhelming showing that there are, at a minimum, substantial questions concerning CBP's ongoing violation of their due process rights—constitutional violations which by definition are themselves irreparable harm.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                          PAGE 5 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 12 of 48

*Second,* CBP tries to dismiss Plaintiffs' substantial evidence of financial and other irreparable harm caused by its reckless enforcement conduct by attempting to blame the victim and claiming that Plaintiffs "brought this situation on themselves." (Dkt. 38 at 3). Apart from the fact that CBP has been fully aware of Plaintiffs' conduct for over four years, CBP's reasoning ignores the immediate irreparable harm threatened by CBP's penalties not only to Plaintiffs but also to all those who participate in and benefit from the Bayside Program. CBP's accusation simply ignores the declarations submitted by Plaintiffs and their customers concerning the immediate irreparable harm threatened by CBP's existing and future penalties, and ignores the devastating impact of the penalties— which were sprung on Plaintiffs and supply chain participants after their professed *four-year* investigation. Never once during those more than four years did CBP ever seek any information as to Plaintiffs' reasoning concerning its compliance, or even indicated that it was investigating the Bayside Program so Plaintiffs, if appropriate, could have considered viable alternatives. This recklessness is now wreaking havoc on Plaintiffs, their customers, their business partners, and countless American workers and consumers. Moreover, CBP's unprecedented enforcement action serves no public interest. It seems designed not to seek compliance, but rather the very destruction of an important sector of the frozen seafood market from Alaska to the east coast by burying all participants in massive and cumulative penalties for what, at most, are technical tariff violations.

*Third*, CBP does not rebut Plaintiffs' showing of likelihood of success on the merits of Plaintiffs' claims. CBP's contention that the BCR does not constitute "transportation" over a "through route" is contrary to the plain meaning of the Third Proviso, and is

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE 6 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 13 of 48

expressly contradicted by CBP's own longstanding guidance on the Third Proviso and inconsistent with the limited role of the STB with respect to tariffs. Here, the entire Alaska to eastern United States "through route" is at issue, not just the BCR line, and the Bayside Program remains the same as before 2012, except for a change in the Canadian rail line used. And even assuming, *arguendo*, the 2006 tariff filing by ASC was required after the *Horizon* decision, that tariff remains in effect at the STB and is not invalid as applied to Plaintiffs. CBP has failed to engage in the rulemaking it was required to conduct after *Horizon* if it intended to reverse its more than twenty years of rulings and to impose a dramatically different interpretation of Third Proviso requirements. CBP's failure to engage in notice and comment rulemaking blatantly violates 19 U.S.C. § 1625 and Plaintiffs' due process rights.

Plaintiffs have a strong likelihood of success on the merits of their claims, the threat of immediate irreparable harm caused by CBP's unconstitutional and unlawful conduct, and a balance of equities that tips so decidedly in Plaintiffs' favor that CBP does not even attempt to contest Plaintiffs' showing. The self-serving, formulaic affidavits of industry competitors who stand to benefit from the destruction of Plaintiffs' businesses should be given no weight by this Court.[2] Immediate injunctive relief is essential to prevent the

---

[2] CBP also submitted a Declaration of Michael Hebert, Chief of the Jones Act Division of Enforcement. (Dkt. 39). Mr. Hebert is a fact witness improperly advancing legal argument through his Declaration. Mr. Hebert is not responsible for investigation or determination of Jones Act violations for CBP and he lacks authority to issue penalty notices for such violation or to establish a legal position on behalf of CBP. Rather, all of the authority of Port Directors to determine the admissibility of merchandise and issue penalties is delegated to Customs Centers for Enforcement and Expertise and Fines, Penalties and Forfeitures Officers. *See* (Declaration of David Karl, dated September 14,

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE 7 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 14 of 48

demise of Plaintiffs' businesses and the collapse of the vital Alaska-eastern United States frozen seafood transportation route and supply chain, at the hands of an overreaching agency seeking to impose its enforcement mandate without adhering to fundamental due process requirements and applicable administrative procedures to which it is statutorily bound.

## ARGUMENT

I.     **THE CONSTITUTIONAL TOLLING DOCTRINE MANDATES THE BROAD INJUNCTIVE RELIEF SOUGHT BY PLAINTIFFS.**

   A.     **The Court Should Enjoin CBP From Issuing Any Further Penalty Notices Related to the Bayside Program While Plaintiffs Seek to Vindicate Their Rights.**

CBP claims that the relief sought by Plaintiffs in this case is "breathtaking" and "striking." (Dkt. 38 at 3, 35). Histrionics aside, the relief sought is reasonable and mandated under the constitutional tolling doctrine, a long-standing, judicially established principle that protects litigants while they seek to vindicate their rights in the face of enormous potential fines. There is nothing unusual about the proposed relief, which is expressly authorized by Supreme Court and Ninth Circuit precedent. *See, e.g.*, *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 338 (1920); *United States v. Pacific Coast Eur. Conf.*, 451 F.2d 712, 717 (9th Cir. 1971). Moreover, the injunctive relief sought here is more than justified based on the massive and ever-mounting penalties CBP has issued—

_____

2021 ("Gross Reply Dec.") Ex. 3, CBP Delegation Guidance available at https://www.cbp.gov/sites/default/files/assets/documents/2021-May/Delegation%20Order%20Guidance%20for%20the%20Trade%20Community_0.pdf, last visited Sept. 13, 2021.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE 8 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG    Document 47    Filed 09/14/21    Page 15 of 48

which amount to multiples of the value of the shipped products when all those in the

supply chain receiving Penalty Notices for the same shipment are included[3]—and

threatens to continue issuing, and the substantial questions raised by Plaintiffs as to the

lawfulness of those penalties.

CBP attempts to invalidate the controlling constitutional tolling argument by

relying on *United States v. Louisiana-Pac. Corp.*, 967 F.2d 1372 (9th Cir. 1992)

("*Louisiana Pacific*"). CBP argues that *Louisiana Pacific* "is closer to the facts here"

than the authorities cited by Plaintiffs[4] and that the case holds that constitutional tolling is

unavailable when a plaintiff contests the *interpretation*—rather than the *validity*—of a

statute. (Dkt. 38 at 35-36). CBP's argument is meritless.

The facts in *Louisiana Pacific* are materially different from the facts here. In

*Louisiana Pacific*, a company voluntarily entered into a consent order with the Federal

Trade Commission ("FTC"), pursuant to which it agreed, for anticompetitive reasons, to

divest a manufacturing plant within two years of the order. *Louisiana Pacific,* 967 F.2d

at 1374. Approximately one year into the two-year divesture period, the company filed a

petition with the FTC to reopen the consent order, but the FTC denied the request. One

month before the expiration of the two-year divesture period, the company requested an

extension of eighteen months within which to divest the manufacturing plant. The FTC

denied this extension and the divestiture period lapsed. When the government

---

[3] *See* Declaration of Jennifer Adamski, dated September 13, 2021 ("Adamski Reply Dec.") ¶ 8.

[4] *See* Dkt. 5 at 18-20.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                PAGE 9 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 16 of 48

commenced an action against the company for civil penalties for violating the terms of the consent order, the company argued that constitutional tolling barred the penalties issued by the FTC because the agency had refused to reopen the consent order, but did not challenge the validity of the consent order that was the basis of the penalties. The court denied application of the constitutional tolling doctrine. *Id.*

However, the company in *Louisiana Pacific*, unlike Plaintiffs here, had entered into a *voluntary agreement* with the government, and then breached that agreement. Under those circumstances, and because the company had "waived its right to obtain judicial review of the consent order," the company naturally could not invoke constitutional tolling to avoid fines resulting from its breach. *See id.* at 1378.[5] Here, in stark contrast, Plaintiffs have not waived their right to judicial review and are not challenging a voluntary agreement, but instead challenge the constitutionality and legality of CBP's conduct under the Jones Act through the issuance and threatened issuance of crippling, business-destroying penalties.

Moreover, the company in *Louisiana Pacific* knew that the accruing penalties arose from its direct violation of the consent order because of its failure to timely divest the plant. Here, it is the precise opposite. CBP is issuing and threatening to issue

---

[5] The case *Louisiana Pacific* cites, referenced by Defendants, is *Brown & Williamson Tobacco Corp. v. Engman*, 527 F.2d 1115 (2d Cir. 1975). This case likewise involves penalties accruing for violation of FTC consent orders and is distinguishable on the same grounds.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                PAGE 10 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG    Document 47    Filed 09/14/21    Page 17 of 48

penalties for conduct by Plaintiffs that has been in full compliance with the Jones Act, the Third Proviso and CBP Ruling Letters issued over a period of more than two decades.

Nor is there any support for CBP's argument that constitutional tolling is available only to a party testing the facial validity of a statute. (Dkt. 38 at 35-37). The Ninth Circuit in *Wadley S. Ry. Co. v. State of Georgia* rested its holding on the Supreme Court's exposition on the scope and purpose of constitutional tolling, which is not so limited:

> [U]nder the Constitution[,] penalties cannot be collected if they operate to deter an interested party from testing the validity of legislative rates *or orders* legislative in their nature. Their legality is not apparent on the face of such orders, but depends upon a showing of extrinsic facts. A statute, therefore, which imposes heavy penalties for violation of commands of an unascertained quality is, in its nature, somewhat akin to an *ex post facto* law, since it punishes for an act done when the legality of the command has not been authoritatively determined. Liability to a penalty for violation of such orders, before their validity has been determined, would put the part[y] affected in a position where he himself must, at his own risk, pass upon the question. *He must either obey what may finally be held to be a void order, or disobey what may ultimately be held to be a lawful order.* If a statute could constitutionally impose heavy penalties for violation of commands of such disputable and uncertain legality, *the result inevitably would be that the carrier would yield to void orders, rather than risk the enormous cumulative or confiscatory punishment that might be imposed if they should thereafter be declared to be valid.*

235 U.S. 651, 662 (1915).

The *Wadley* Court's analysis and reasoning apply directly in this case. CBP has imposed unprecedented "enormous penalties" in a cumulative and confiscatory manner. 46 U.S.C. § 55102(c) (Jones Act penalties must be "equal to the amount of merchandise or the actual cost of the transportation, whichever is greater"); *Am. Mar. Ass'n v. Blumenthal*, 590 F.2d 1156, 1165 (D.C. Cir. 1978) (explaining the punitive nature of Jones Act penalties). Moreover, the Penalty Notices issued by CBP here appear to be by

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                PAGE 11 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 18 of 48

far the largest ever issued in the century-old history of the Jones Act (*see* Adamski Reply Dec. ¶ 4-8), which raises substantial questions about the constitutionality of CBP's conduct.

In short, Plaintiffs have reasonable good-faith grounds to challenge the validity of CBP's draconian enforcement of the Jones Act and Third Proviso, and should not have to face the Hobson's choice of challenging CBP's unconstitutional conduct or complying to prevent the threat of further penalties that would destroy their businesses. *See Aminoil, Inc. v. United States*, 646 F. Supp. 294, 298 (C.D. Cal. 1986) (permitting constitutional tolling of penalties accruing under an agency order because the challenge to the validity of the order was prompt and made in good-faith). The Court should enjoin CBP from issuing any penalties during the period of this litigation and save Plaintiffs from the threat of gargantuan, ever-mounting penalties while they seek to vindicate their constitutional rights.[6]

---

[6] Contrary to CBP's assertion (Dkt. 38 at 36 n.7), the court in *Kansas-Nebraska Nat. Gas Co. v. Dep't of Energy* denied relief to the plaintiff on staying the accrual of penalties because it did not have sufficient information or the requisite evidence to "make an informed judgment on the balance of hardships to the parties". 1979 WL 998, at *13-14 (D. Kan. July 31, 1979) (where plaintiff did not even formally move the court for preliminary injunctive relief and held "we must conclude that we lack sufficient information to pass judgment on a preliminary injunction, even against the accrual of penalties. . . ."). Defendants ignore this context and overstate the quoted provision as the Court's "holding." (*See* Dkt. 38 at 36 n.7).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                               PAGE 12 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 19 of 48

### B. CBP Fails To Refute Plaintiffs' Showing That They Will Suffer Irreparable Harm Absent Injunctive Relief.

#### 1. Plaintiffs Have Established a Deprivation of their Constitutional Rights.

Plaintiffs have established both that CBP's actions deprive Plaintiffs of their rights to due process under the Fifth Amendment and violate KIF's constitutional right against excessive fines under the Eighth Amendment. (*See* Dkt. 5 at 41-44 and *infra* pp. 31-38). The requisite showing of irreparable harm is established based on Plaintiffs' demonstration of this constitutional harm. *See Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

#### 2. CBP Does Not Even Attempt to Refute That Plaintiffs are Suffering and Will Continue to Suffer Irreparable Harm as a Result of CBP's Penalties.

CBP does not even attempt to refute Plaintiffs' showing that—in addition to the constitutional harm they are suffering the threat of immediate, traditional irreparable harm and the requested injunctive relief is essential to prevent that harm.

The declarations filed by Plaintiffs in support of the Motion and in support of this Reply amply demonstrate the immediate risk that Plaintiffs' businesses, among others in the supply chain, will be destroyed in the absence of injunctive relief.[7] (*See, e.g.,* Dkt. 8, Adamski Dec. ¶¶ 24-29; Dkt. 7, Brautaset Dec. ¶ 35; Adamski Reply Dec. ¶ 9; Declaration

---

[7] ASC has reported that approximately 1.5 million pounds of its frozen seafood products will be overdue for delivery to customers by end of September, approximately 3 million pounds are likely at risk for October requirements; and several million pounds will be due in November and December, and there are no plans to get that cargo to its destination. (Andreassen Reply Dec. at ¶ 8).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.
PLAINTIFFS' REPLY MEMORANDUM OF LAW
01122704.DOCX
CASE NO. 3:21-cv-00198-SLG
PAGE 13 OF 41

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 20 of 48

of Per K. Brautaset, dated September 14, 2021 ("Brautaset Reply Dec.") ¶ 20; Declaration of Inge Andreassen, dated September 14, 2021 ("Andreassen Reply Dec.") ¶¶ 7–10).  CBP simply has no response to the unrefuted evidence regarding the destruction of KIF and ARM's businesses and their inability to continue providing their domestic services without the willingness of third-parties to provide trucking, importing, and cold storage services to the Bayside Program, as well as the threat of immediate harm to Plaintiffs' customers.  (Dkt. 8, Adamski Dec. ¶ 31; Brautaset Reply Dec. ¶ 20; Andreassen Reply Dec. ¶ 10).[8]

KIF faces a catastrophic $25 million in direct penalties issued to date—equivalent to nearly fifteen times its annual net income.  (Dkt. 8, Adamaski Dec. ¶ 26).  ARM faces claims from charterers and ship owners who have received penalty notices and are asserting that ARM is liable for over $65 million in penalties—equivalent to more than forty times its average net income.  (*See* Dkt. 7, Brautaset Dec. ¶¶ 36-38).  Neither KIF, nor ARM, are able to cover these enormous penalties without facing destruction of their businesses.  (Dkt. 7, Brautaset Dec. ¶¶ 36-38; Dkt. 8, Adamaski ¶¶ 26, 37).

The sheer magnitude of the penalties, coupled with the fact that while Plaintiffs' businesses are paralyzed, they risk a permanent loss of their customers, plainly constitutes

---

[8] Additionally, as Plaintiffs noted, if KIF is unable to deliver its customers' products currently stored in Bayside, KIF will be forced to return such seafood products to Dutch Harbor, which is already experiencing serious cold storage constraints.  (*See* Declaration of Andy Pillon, dated September 13, 2021 ("Pillon Dec.") ¶¶ 5–6, 11).  This will result in unnecessary waste, cost, and will also cause additional months of delay in delivery to the ultimate end-customers.  (Dkt. 8, Adamski Dec. ¶ 31; Andreassen Reply Dec. ¶¶ 7–8).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                PAGE 14 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG    Document 47    Filed 09/14/21    Page 21 of 48

the type of irreparable harm meant to be prevented by injunctive relief. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) ("The threat of being driven out of business is sufficient to establish irreparable harm."); *Mahroom v. Best W. Intern., Inc.*, No. C 07–2351 JF (HRL), 2009 WL 248262, *3 (N.D. Cal. Feb. 2, 2009) ("'Major disruption of a business can be as harmful as its termination and thereby constitute irreparable injury,'" quoting *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186 (2d Cir. 1995)); *Stuhlbarg Int'l. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) ("threatened loss of prospective customers or goodwill" supports preliminary injunction).

CBP argues that Plaintiffs have not adequately explained why they have not "simply resumed using the NBSR route that CBP has already sanctioned." (Dkt. 38 at 39). This disingenuous argument, which suggests that Plaintiffs' bear full responsibility for their current inability to operate their businesses, is unfounded and contradicted by the indisputable facts.[9]

---

[9] Additionally, CBP attempts to refute Plaintiffs' firmly established point that there are extremely limited viable transportation alternatives out of Dutch Harbor (*see* Brautaset Dec. ¶¶ 19-29) by offering declarations from Coastal Transportation Inc. ("Coastal") (ECF No. 40), Alaska Marine Lines Inc. ("AML") (ECF No. 41), Matson Navigation Company, Inc. ("Matson") (ECF No. 42), and Samson Tug & Barge Company, Inc. ("Samson") (ECF No. 43) (collectively the "Shipping Declarants"). The Shipping Declarants baldly assert that they have additional or sufficient capacity to transport all seafood products produced in Alaska—an assertion that defies the reality of the transportation situation in Dutch Harbor, which is fraught with capacity and reliability complications caused by congestion in western United States ports, a lack of cold storage in Dutch Harbor, a shortage of refrigerated containers and related equipment, competition from shippers transporting higher value seafood products from various Alaskan ports, harsh weather conditions in the late fall and early winter, and delayed and unpredictable sailing schedules. (Brautaset Reply Dec. ¶¶ 3-18). Contrary to the Shipping Declarants'

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                             PAGE 15 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 22 of 48

*First*, as explained in Plaintiffs' supporting declarations, CBP's issuance of excessive penalties alone threatens the immediate and irreparable destruction of Plaintiffs' businesses and reputations. And the threats of future penalties are the nails in the coffin.

*Second,* third-parties essential to the operation of the Bayside Program have made the decision not to provide services to Plaintiffs because of the penalty notices they have already received and the threat of future penalties. Without these third-parties, the Bayside Program cannot resume—regardless of the feasibility of returning to the NBSR (which is not possible as explained below) or if Plaintiffs were able to pay CBP's crushing penalties.[10]

*Third*, even if all of Plaintiffs' third-party partners were willing to resume operations (which they are not), a return to the NBSR railway that the Bayside Program has not used in nearly ten years (Dkt. 8, Adamski Dec. ¶ 15) cannot be automatically accomplished. (*See* Brautaset Reply Dec. ¶ 19).[11]

---

assertions, their vessel and barge services are not able to accommodate the shipping needs and requirements of the shippers who utilize the Bayside Program. (*Id.*)

[10] Very limited alternatives exist for shipping frozen seafood products from Dutch Harbor to the contiguous United States. (Andreassen Reply Dec. ¶ 4). The four shippers providing service from Dutch Harbor will be extremely challenged over the balance of the year to reliably and expeditiously transport seafood products to the contiguous United States (Andreassen Reply Dec. ¶¶ 4-7). And cold-storage capacity in Dutch Harbor is extremely limited, and has been further strained due to the suspension of the Bayside Program. (Pillon Dec. ¶ 5–6, 11). Even if frozen seafood could be moved to the west coast of the United States, there is insufficient cold-storage capacity and cross-country transportation options to timely move the product to the Eastern U.S. (*See* Andreassen Reply Dec. ¶ 9).

[11] As set forth in the Brautaset Reply Declaration, "[t]he section of the NBSR that was previously utilized in the Bayside Program" which was located in St. John, "is no longer active." (Brautaset Reply Dec. ¶ 19). In addition, "the infrastructure and equipment

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW  PAGE 16 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG  Document 47  Filed 09/14/21  Page 23 of 48

*And fourth*, CBP's assertion that Plaintiffs immediately can resume use of the NBSR rail program flies in the face of CBP's claim that the current tariff filing is defective. Despite CBP's flippant suggestion to the contrary, any return to using the NBSR is uncertain at this time, would require the cooperation of the NBSR, and could not be a timely remedy to the irreparable and ongoing harm caused by the issuance of the Penalty Notices.

## II.     CBP FAILS TO REBUT PLAINTIFFS' SHOWING THAT THEIR CLAIMS ARE LIKELY TO SUCCEED ON THE MERITS.

CBP fails to refute Plaintiffs' showing that they are likely to succeed on the merits of at least one of their claims. *See Bernie's Pharmacy, Inc. v. AmerisourceBergen Drug Corp.*, No. 3:18-CV-00183-TMB, 2018 WL 9816097, at *4 (D. Alaska Aug. 24, 2018). In the alternative, Plaintiffs raise a "serious question" as to the merits of their claims and "the balance of hardships tips sharply" in Plaintiffs' favor. *Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 516 F. Supp. 3d 943, 950 (D. Alaska 2021).

---

necessary to load, unload and transport the trucks and their cargo are not readily available." (*Id.*). The NBSR also does not have "flatbed rail cars readily available to accommodate the trucks and trailers" and craning the tractor trailers is not an option inasmuch as it would destroy the trailers. (*Id.*). Even if a NBSR railway outside of St. John were available, Plaintiffs would have to locate and procure reefer containers as a replacement for the tractor trailers "so the product could be off-loaded from the trucks and then later re-loaded." (*Id.*). Additionally, "the cost of recreating the previous railway in St. John, assuming approvals were obtained, could require the creation of a rail bridge." (*Id.*)

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                          PAGE 17 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 24 of 48

A. **CBP's Own Rulings Demonstrate That Plaintiffs Are Likely to Succeed on Their Declaratory Judgment Claim that the Bayside Program Complies with the Third Proviso.**

CBP argues that the Bayside Program does not comply with the Third Proviso because Plaintiffs' use of the BCR, which simply runs a short distance from Point A to Point B and returns to Point A, is not "transportation" over a "through route" involving a point of origin and a point of destination, because it is not "continuous" and does not connect two separate points. (Dkt. 38 at 15-21). None of these arguments has any merit and nothing could be further from the truth.

1. **CBP's "Through Route" and "Transportation" Arguments Regarding the BCR are Meritless.**

CBP argues that, for purposes of complying with the Third Proviso, a Canadian rail line must connect two separate points to constitute "transportation," even though no such requirement is set forth either in the Jones Act, the Third Proviso or in any of CBP's own rulings interpreting the Third Proviso. CBP's arguments concerning the definitions of the terms "transportation" and "through route" ignore the plain language of the Third Proviso, and the well-settled legal and customary meaning of those terms, including CBP's own Ruling Letters. First, it is indisputable that the BCR is part of the through route that involves "transportation of merchandise" from Dutch Harbor to the eastern United States. This newly-concocted argument is premised on nothing more than a basic definition of the term "transportation" in a dictionary CBP has relied on. (Dkt. 38 at 17-18). CBP's argument is flawed because it has no basis for imposing statutory requirements that are not in the plain language of the statute and otherwise without any authoritative support.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                          PAGE 18 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 25 of 48

CBP relies on the same sophistry in twisting the definition of "through route."[12] The Third Proviso's reference to "through route," contrary to CBP's argument, does not refer only to "connecting railroads for the *continuous* carriage of goods" from the originating point on the line of one carrier to a destination on the line of another. (Dkt. 38 at 15-16).[13]  The term "continuous" appears nowhere in the plain text of the Third Proviso, but instead again has been inserted by CBP.  The Third Proviso actually applies to the "transportation of merchandise between points in the continental United States, including Alaska, over through routes *in part* over Canadian rail lines and connecting water facilities."  46 U.S.C. § 55116.  Thus, as permitted, the Canadian rail component of

---

[12]  CBP also states that Plaintiffs "fails to disclose that the train reverses itself and returns with the merchandise to its original position" on the BCR.  (Dkt. 38 at 10).  This is simply not true.  In every Bill of Lading presented to CBP at the Calais, Maine border crossing for almost an entire decade, the BCR route is listed as:

<u>Bayside, NB – North Bayside #1 – TO – South Bayside #2 – *And Return*</u>

(*See* Dkt. 7-4 at 5).  Plaintiffs have never hidden the BCR's true route and CBP has been on notice of it for its entire period of operation.  (*See* Declaration of Darrell B. Weare, dated September 14, 2021 ("Weare Dec.") ¶ 7; Dkt. 8, Adamski Dec. ¶ 13).

[13]  CBP argues that Plaintiffs' citations to *United States v. Louisiana & P.R. Co.,* 234 U.S. 1 (1914) and *Sea-Land Serv., Inc. v. Fed. Mar. Comm'n,* 404 F.2d 824 (D.C. Cir. 1968), are "inapposite" because those cases do not involve the Third Proviso.  That misses the point.  CBP cited those cases in its *Horizon* briefing for the proposition that "[t]hrough routes have historically been validated in situations where one of the participating transporters activities have been extremely minimal."  (Dkt. 6-17 at 13).  Moreover, none of the cases CBP cites involve interpretation of the Third Proviso and instead relate only to rail carriers (*see. e.g., St. Louis Sw. Ry. Co. v. United States*, 245 U.S. 136 (1917) (considering the ICC's regulatory authority in the context of only railroad carriers).  CBP ignores the multitude of applicable cases involving through routes consisting of intermodal transportation.  *See, e.g., Cent. Vermont Transp. Co. v. Durning*, 294 U.S. 33, 40 (1935) (describing the Interstate Commerce Act, which authorized the "Commission to establish through routes and maximum joint rates over such *rail and water lines*.").

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                          PAGE 19 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 26 of 48

the Bayside Program is merely a part of a longer through route, from Dutch Harbor to the eventual destination of the product in the United States. *Accord Trailer Marine Transp. Corp. v. Fed. Mar. Comm'n*, 602 F.2d 379, 394 (D.C. Cir. 1979) (defining "through routes" involving rail and water segments of transportation as routes "that extend *in their entirety* from the coastal points on one water carrier's route to the costal points on another water carrier's route"). CBP is attempting impermissibly to re-write the Third Proviso.

Moreover, long-settled legal and customary meaning of the term "through route" establishes that it refers to intermodal transportation, including both the land (by truck and/or train) and sea portions of a voyage, and refers to the *entirety* of the journey, not just the rail component. *See United States v. Pennsylvania Ry. Co*., 323 U.S. 612, 615 (1945); *accord Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25-26 (2004) (discussing the popularity of "through" bills of lading "in which cargo owners can contract for [intermodal] transportation across oceans and to inland destinations in a single transaction"); *Trailer Marine*, 602 F.2d at 396 (defining "through routes" involving rail and water segments of transportation as routes "that extend *in their entirety* from the coastal points on one water carrier's route to the costal points on another water carrier's route").

CBP's newly-contrived definition of "through route" also directly contradicts its prior interpretive rulings on this exact issue. CBP issued a Ruling Letter in connection with responding to an argument that an Alaska-eastern U.S. frozen seafood shipper (Sunmar) had not complied with the Third Proviso because the route it utilized was

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                          PAGE 20 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 27 of 48

"commercially absurd and a purposeless diversion from the 'through' or 'direct' route the Third Proviso . . . requires."  (Gross Dec. Ex. 1, Ruling Letter 116021 at 1).  In Ruling Letter 116021 (dated January 21, 2004), Horizon Lines sought revocation of Ruling Letter 115446 regarding Sunmar's compliance with the Third Proviso.  In rejecting that argument, CBP stated:

> [T]he Third Proviso does not state a "direct" route should be used, it instead uses the term "through" route in part over Canadian rail lines.  *We have long held that "in part over Canadian rail lines" is any use of Canadian rail.  The Third Proviso does not have a de minimis requirement for "in part over Canadian rail lines," nor has CBP in the last twenty years read such a "de minimis requirement into the statute."*

(Gross Reply Dec., Ex. 1 at 5 (citing Ruling Letters 105604, 113141, 113365, 114407, and 115124)).  Not once in this Ruling Letter or any of the referenced Ruling Letters has CBP determined that any part of the "through route" needs to be "continuous."  CBP's sole support for its contention concerning the meaning of "through route"—once again, a definition found in a single dictionary—should not be accorded any weight in light of the plain statutory language, CBP's prior Ruling Letters and the well-settled legal and industry meaning of the term. In other words, there is no requirement, either statutorily or in CBP's interpretive rulings, that the BCR must be a certain length, travel for a set duration, constitute a meaningful percentage of the total through route, or even connect two distant points.

### 2. The Canadian Rail Line is Not Required to be "Commercially Sound" Under the Third Proviso.

CBP tries to avoid its prior position on the "commercial soundness" requirement by arguing that the BCR's "inherent nature" does not meet the statutory requirements of the

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                          PAGE 21 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG    Document 47    Filed 09/14/21    Page 28 of 48

Third Proviso.  This constitutes nothing more than the injection of meaningless semantics to attempt to conceal the essence of its attack against the BCR:  that the rail movement is not commercially reasonable.  CBP cannot take this position given its prior interpretive rulings, its judicial admissions in its *Horizon* briefing as to the lack of any commercial requirement,[14] and the court's decision in *Horizon*, without publishing its proposed revision or modification pursuant to 19 U.S.C. § 1625(c).

The BCR does not have to be a certain length or even "commercially sound" to comply with the Third Proviso.  The District Court in *Horizon* expressly affirmed CBP's ruling on the lack of any *de minimis* length standard, and held that there is no requirement that the Canadian rail line be "commercially sound" to satisfy the Third Proviso.  The *Horizon* Court rejected virtually word-for-word Horizon's argument that CBP has now adopted, without any public notice and comment period, as its new requirement:

> [Horizon] argues that the Third Proviso contains an implied prohibition on "sham or commercially impractical Canadian rail movement to achieve 'technical compliance' with the literal terms of the statute."  In support, [Horizon] argues that the term "through routes" as used in the Third Proviso means the most "direct" route. . . .  Plaintiff can point to no case in which the intent of the shipper, other than to transport goods according to the route described, was relevant to the determination of whether a through route existed.  *If Congress wishes to limit the use of the Third Proviso to specific routes or to require the STB to evaluate the commercial soundness of a proposed route, it has the authority to do so, but the Third Proviso as currently written contains no such requirement.*

*Horizon Lines, LLC. v. United States*, 414 F. Supp. 2d 46, 55 n.6 (D.D.C. 2006).

---

[14]  *See* Dkt. 5 at 30-35.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                                      PAGE 22 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 29 of 48

The use of the BCR in the Bayside Program complies in every way with the plain and unequivocal text of the Jones Act and the Third Proviso, CBP's own interpretive rulings governing those provisions, and the *Horizon* Court's interpretation of the "Canadian rail lines" requirement.

### 3. Plaintiffs Are Not Required to File a Rate Tariff to Comply With the Third Proviso.

CBP also argues that Plaintiffs are not in compliance with the Third Proviso because they "have not filed the required route and tariff rates with the STB in connection with their use of the BCR." (Dkt. 38 at 21). This argument is meritless for several reasons.

First, *Plaintiffs* are under no obligation to file a rate tariff to comply with the Third Proviso. The text of the Third Proviso, as discussed above, permits the use of non-coastwise vessels if, among other requirements, the "[through] routes are *recognized* by the [STB] and rate tariffs for the routes *have been filed* with [STB]." 46 U.S.C. § 55116. As discussed *infra* p. 27, rate tariffs have been filed with the STB by ASC for the Dutch Harbor to eastern United States through route.

Even absent that filing, however, a long line of CBP rulings spanning over twenty years have held that no rate tariff need be filed with the STB with respect to transportation exempt from such filings (including "rail transportation of frozen processed fish or seafood") and because of the lack of any enforcement power with the STB to regulate such

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.     CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                      PAGE 23 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 30 of 48

tariffs. (*See, e.g.,* Ruling Letters 105604, 115446 (Dkt. 6-7) and Gross Dec. Ex. 1, 116021).[15]

Additionally, CBP has stated that where carriers enter into *private* carriage agreements with shippers—as is the arrangement between the parties in the Bayside Program—as opposed to offering common carriage, no rate tariff filing is required. (*See* Gross Dec. Ex. 1, Ruling Letter 116021). Those CBP rulings have never been modified or revoked by CBP.

While the district court in *Horizon,* determined in 2004 that CBP's reasoning concerning the need for a rate tariff filing was arbitrary and capricious,[16] the court specifically did *not* vacate CBP's prior rulings, but instead *remanded* the matter to CBP for further proceedings, 414 F. Supp. 2d at 60. Since that 2004 remand, CBP has not revised or modified its regulatory rulings concerning the tariff filing issue.[17]

---

[15] In the *Sunmar* Rulings, CBP noted that the tariff filing requirement in the Third Proviso is the remnant of a tariff filing regime that Congress abolished. *See* Interstate Commerce Commission Termination Act ("ICCTA"), Pub. L. 104-88, 109 Stat. 803 (1995). The ICCTA requires only common carriers of household goods, or common carriers of certain cargoes in the non-contiguous domestic trade, to file rate tariffs with the STB. *See* 49 U.S.C. § 13702.

[16] In the same decision, the *Horizon* court rejected any commercial soundness standard for compliance with the Third Proviso. 414 F. Supp. 2d at 54 n.6.

[17] "Remand" and "vacate" are not simply interchangeable terms and the Court should not overlook what the *Horizon* decision actually says, despite what CBP has argued. Indeed, the *Horizon* decision in fact never became final because of the lack of any agency action on remand. *See Morrison v. Dep't of the Navy*, 876 F.3d 1106, 1109-10 (Fed. Cir. 2017) ("an order remanding a matter to an administrative agency for further findings and proceedings *is not final*"); *Cabot Corp. v. United States*, 788 F.2d 1539, 1542 (Fed. Cir. 1986); *see also Caesar v. West*, 195 F.3d 1373, 1374 (Fed. Cir. 1999) ("Remands to administrative agencies, because they mark *a continuation of the case*, are not generally considered final decisions for jurisdictional purposes."). The *Horizon* decision was not a

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE 24 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 31 of 48

CBP attempts to rely on the *Horizon* court's footnote that "any substantially identical Customs ruling will be revoked as a matter of law *if* the Court *vacates* the Sunmar Ruling." (Dkt. 38 at 22 (citing *Horizon*, 414 F. Supp. 2d at 54 n.5)). But CBP ignores the indisputable fact that the court did *not* vacate the Sunmar Ruling Letters at issue (115446, 116021 and 116185), but instead remanded the case to CBP for further proceedings. *Id.* at 61. Thus, by its terms, the *Horizon* decision had no effect on any similar Third Proviso rulings, none of which required the filing of a rate tariff.[18]

CBP's reliance on 19 C.F.R. § 177.12(d)(1)(iv) to avoid its statutory obligation to publicly modify or revoke its interpretive rulings in the wake of *Horizon* (Dkt. 38 at 22) is also misplaced. This provision provides that the "rendering of a judicial decision which has the effect of overturning [CBP's] position" is exempt from the general rule requiring publication of changes to CBP's interpretive rulings. *See* 19 U.S.C. § 1625(c); 19 C.F.R. § 177.12(b) & (c). However, this regulation—a part of which has been found to be an

---

final judicial disposition sufficient to revoke by implication CBP's interpretive rulings regarding the Third Proviso tariff filing requirements.

[18] Indeed, in a decision denying a motion for reconsideration filed by ASC, the *Horizon* court clarified its decision, and made clear that its decision concerned the facts and reasoning stated in CBP Ruling Letters only and did not reach the correctness of their holding. The court explained that "[t]he extent of inconsistency and error throughout CBP's *Sunmar* Rulings rendered the Court unable to conclude that the agency had 'examined the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" 429 F. Supp. 2d 92 at 98 (citations omitted). Thus, the *Horizon* remand decision allowed CBP to resolve the inconsistencies perceived by the Court and to determine whether the same or a different result was required.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                PAGE 25 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 32 of 48

invalid implementation of §1625(c)[19]—is not applicable because of the remand, and in any event, does not relieve CBP of its duty to provide clear notice of its change in enforcement priorities and interpretive rulings under the due process clause of the Fifth Amendment, particularly where the *Horizon* issue expressly did not overturn CBP's position, but simply remanded for further regulatory action.[20]  *See Blumenthal*, 590 F.2d at 1165 ("persons should receive *clear and unequivocal warning* before facing exposure to harsh [Jones Act] penalties . . . where the penalty for noncompliance is *enormous*"); *Gen. Elec. Co. v. U.S. E.P.A.*, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995) (agency's failure to provide a party with fair warning of its interpretation of regulations resulted in a "drastic" penalty that violated due process).  CBP cannot be allowed to leave on its official books clear guidance stating that "no rate tariff filing is required," take no action indicating its prior position has changed, and then point to a judicial decision from fifteen years ago and concede that its interpretive rulings were always invalid.  This type of inconsistent rulemaking and the mammoth penalties that may be assessed as a result offends "elementary fairness" and violates Plaintiffs' right to due process.  *Gen. Elec*, 53 F.3d at 1329.

---

[19] *See California Indus. Prod., Inc. v. United States*, 436 F.3d 1341, 1356 (Fed. Cir. 2006) (holding CBP's narrow interpretation of the term "substantially identical transactions" was contrary to 19 U.S.C. § 1625(c)(2)).

[20]  Pursuant to 19 C.F.R. § 177.9(a), CBP rulings are binding on all Customs Service personnel until modified or revoked and *the principle of the ruling* may be cited as authority in the disposition of transactions involving the same circumstances.  In addition, principles established in a CBP ruling may be cited as precedent in any similar transactions.  *Id.*

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                        PAGE 26 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 33 of 48

In short, CBP has been unable to refute Plaintiffs' showing that they have been in full compliance with the Third Proviso of the Jones Act.

### 4. Rate Tariffs Covering the Through Route are on File with the STB.

Even if the Court were to find that ASC was required to file a rate tariff with the STB after *Horizon* (which it did out of an abundance of caution in August 2006), that tariff as recognized by the STB remains in full force and effect and its recognition has never been revoked. CBP contends that the ASC tariff does not contain all of the technical information to permit ARM to rely on the tariff for itself, citing the requirements of 49 U.S.C. § 13702(b). (Dkt. 38 at 22). However, requiring rigid technical compliance in this instance—where rate tariffs serve no regulatory purpose and are only required to satisfy the Third Proviso—is inappropriate and unnecessary, particularly when the consequences for not strictly following the technical requirements are so devastating, as the Penalty Notices reflect.

Contrary to CBP's argument, the rate tariff filed by ASC is not void and its recognition has never been questioned, much less invalidated, by the STB. The STB "may" invalidate tariffs for not including information required by §13702(b), but invalidation is not automatic and some affirmative action must be taken by the STB for invalidation to be accomplished. *See* 49 U.S.C. § 13702(d) ("The [STB] *may invalidate* a tariff prepared by a carrier or carriers under this section if that tariff violates this section or a regulation of the [STB] carrying out this section."). The STB has never invalidated the

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                        PAGE 27 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 34 of 48

tariffs and CBP's attempt to do so now is improper since only the STB may invalidate rate tariffs.

Here, to the extent a tariff filing is deemed to be required, the Bayside Program utilizes the same through route as in the ASC tariff filing, which has been recognized by the STB for the Dutch Harbor-eastern U.S. transportation route.[21]

### B. Plaintiffs Have Established a Likelihood of Success on their Claims that CBP Violated 19 U.S.C. § 1625(c)(1) and (2).

Plaintiffs are also likely to prevail on their claims arising from CBP's notice and comment obligations set forth in 19 U.S.C. § 1625(c). First, CBP concedes that the Ruling Letters are more than sixty days old, that CBP has not published any modification or revocation of the Ruling Letters in the *Customs Bulletin*, and that the Ruling Letters constitute a "treatment" for purposes of a §1625(c) claim. *See Kahrs Int'l, Inc. v. United States*, 33 C.I.T. 1316, 1354 (2009) (listing the elements to succeed on a §1625(c) claim). As such, the only remaining elements to be established by Plaintiffs are (i) whether a proposed CBP decision would have the effect of "modifying or revoking" the Ruling Letters, and (ii) whether entries under the Bayside Program constitute "substantially identical transactions" to those previously considered by CBP. *See id.*

---

[21] The statute does not mandate that every carrier or entity involved in the Bayside Program file a rate tariff, and CBP points to no authority indicating otherwise. The statute only requires that the route being utilized is "recognized" by the STB (*see* Dkt. 5 at 35, n.11) and rate tariffs for the route are on file with the STB. Both conditions are met in this case. Any technical violations in the contents of the tariff, which has zero regulatory impact vis-a-vis the STB, should not be the basis of hundreds of millions in penalties assessed by an agency that has no enforcement power over the contents of the tariff.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE 28 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG    Document 47    Filed 09/14/21    Page 35 of 48

CBP contends that it has not changed its enforcement practices and not modified any of its interpretive rulings, and that it is Plaintiffs that modified their prior business operations that complied with the Third Proviso by switching to the BCR without seeking a ruling letter in advance. (Dkt. 38 at 40). CBP further claims that their prior Ruling Letters never sanctioned the use of the BCR or involved "substantially identical" facts. (Dkt. 38 at 24). CBP's claims are meritless and are nothing more than a post hoc attempt to rationalize CBP's conduct penalizing a company whose Canadian rail line fully complies with the Third Proviso.

*First*, as described above, CBP's penalty enforcement actions and the arguments it makes in its Opposition have the effect of modifying or revoking its interpretive rulings on the Third Proviso. In practical and legal effect, the BCR rail line is indistinguishable from the NBSR despite its shorter length. The BCR's use of a one-hundred foot rail line that involves transportation of goods by rail from Point A to Point B and then back to Point A is simply another form of rail trackage designed to comply with the Third Proviso.

The rationale provided in the long line of CBP Ruling Letters applies equally to the BCR rail line. As CBP has repeatedly noted, "in part over Canadian rail lines" is *any* use of Canadian rail. As noted, the Third Proviso does not have a *de minimis* requirement for "in part over Canadian rail lines," nor has CBP in the last twenty years read such a *de minimis* requirement into the statute." (*See, e.g.,* Gross Dec. Ex. 1, Ruling Letter 116021). Nor is there any commercial soundness requirement as both CBP and the *Horizon* court

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                PAGE 29 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 36 of 48

definitively have confirmed.  (*See supra* p. 18-23).  CBP has made this exact ruling at least *seven times* since 1982 and has never publicly modified or revoked it.[22]

Moreover, NBSR was also used exclusively to comply with the Third Proviso, and the lengthy extra trucking and rail distance was designed solely to satisfy the rail trackage requirement.  There is no practical difference between the NBSR and the BCR, which does not send the cargo in the opposite direction from the United States border as part of the through route.  And CBP asserted and prevailed in *Horizon* on its contention that it is permissible to structure rail trackage along extremely short, non-"natural" routes entirely for purposes of satisfying the requirements of the Third Proviso.  (Dkt. 6-16 at 11-15 (citing *St. Louis Sw. Rwy.,* 245 U.S. at 136, n.4; *Sea-Land*, 404 F.2d at 827; *In the Tapline Cases*, 234 U.S. 1 (1914); *Blumenthal*, 590 F.2d at 1164)).

*Second*, the transactions CBP explicitly approved of that utilized the NBSR rail line are substantially identical to the transactions utilizing the BCR through the Bayside Program.  (*Compare* Ruling Letter 115446 (Dkt. 6-7) *with* Dkt. 5 at 16-17).  In both instances, frozen seafood is shipped on non-coastwise qualified vessels from Dutch Harbor, Alaska to New Brunswick, Canada through the Bayside Port under a through route bill of lading.  The cargo is loaded into trucks which are taken to a registered Canadian railroad. The cargo is loaded onto a railcar and transported "over rail trackage in Canada."  The use of Canadian rail is only used to satisfy the Third Proviso and is not "commercially sound."

---

[22] *See* Ruling Letters 105604 (April 30, 1982), 111987 (Dkt. 6-22), 112085 (Dkt. 6-12), 113141 (June 29, 1994), 113365 (Dkt. 6-23), 114407 (Dkt. 6-24), and 115124 (Dkt. 6-8).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                                             PAGE 30 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 37 of 48

Once the cargo is transported via rail, the trucks carrying the cargo proceed to the Calais,

Maine border crossing and proceed to end-destinations in the eastern United States. The

only, immaterial differences between the transactions utilizing the NBSR and the BCR are

the location of the rail line relative to the Bayside port and the length of travel the cargo

takes over Canadian rail. As discussed above, numerous Ruling Letters, which have never

been revoked, indicate these factors do not matter. By any account, the Bayside Program is

substantially identical to the transactions utilizing the NBSR.[23] As such, Plaintiffs are

likely to prevail on their claims that CBP violated 19 U.S.C. § 1625(c)(1) and (2) by not

publicly revoking or modifying its prior interpretive rulings regarding the Third Proviso.

### C. CBP Has Failed to Rebut KIF's Showing It Has Established a Likelihood of Success on Its Fifth Amendment Due Process Claims.

KIF has also demonstrated that it is likely to succeed on the merits of its claim that

CBP's conduct, in relying on secret, undisclosed new interpretations of the Third Proviso,

and imposing crushing penalties based on such interpretations, fundamentally violates

KIF's Fifth Amendment rights. (Dkt. 5 at 41-43). That constitutional violation is all the

more egregious now that CBP has admitted that it has been on express notice of the alleged

violation for more than four years and—instead of inquiring from Plaintiffs as to the basis

for their views that they were in compliance—remained lying in wait before suddenly

---

[23] Moreover, there was no obligation, contrary to CBP's contention, to seek any interpretive ruling from CBP on Plaintiffs' use of the BCR. CBP concedes that it never published any interpretive guidance revoking or modifying the Ruling Letters. The Bayside Program is substantially identical to what was in effect prior to 2012, just more efficient, so there was no reason to seek an interpretative ruling from CBP. Any revision to this long-standing interpretive guidance required CBP to follow its notice and comment rulemaking obligations set out in §1625(c).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE 31 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG    Document 47    Filed 09/14/21    Page 38 of 48

springing unprecedented penalties totaling hundreds of millions of dollars on Plaintiffs and others in their chain of supply.

In contending that KIF has not demonstrated any Fifth Amendment claim, CBP relies on four groundless arguments. First, it contends that KIF's Fifth Amendment argument is premised on the contention that the Third Proviso is impermissibly vague. But that is not KIF's claim. Plaintiffs have no quarrel with the plain statutory language of the Third Proviso—only with CBP's failure to provide fair notice that it fundamentally had changed its more than fifteen-year old, consistent interpretive guidance concerning the Third Proviso by now claiming that the tariff that has been on file for more than fifteen years is somehow inadequate or even required, that some *de minimis* Canadian rail line length is necessary and that the transport "in part over the Canadian rail line" must be "continuous" and connect two distant points.

KIF's claim is based—not on any statutory vagueness—but on the violation of its due process rights without the requisite notice and opportunity to be heard. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996) ("Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that [one] receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that . . . may [be] impose[d].").[24]

---

[24]  CBP contends that Plaintiffs misread *ExxonMobil Pipeline Co. v. United States Dep't of Transportation* because the court's fair notice requirement dealt with an interpretation entitled to *Auer* deference. However, it is actually Defendants who misread *ExxonMobil*, as the court states: "Even assuming *arguendo* that we were to determine that the regulations . . . are ambiguous, the agency's interpretation would still fall short of warranting *Auer* deference for the *additional and independent reason* (emphasis added)

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE 32 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 39 of 48

Second, CBP claims that Plaintiffs' constitutional argument is "curious" because KIF did not request a ruling letter from CBP that would confirm that its rail usage complied with the Third Proviso. (Dkt. 38 at 29). But citizens are not required to seek confirmation from an agency that it has not fundamentally changed its long-standing rulings and guidance, upon which the industry has relied and continues to rely, without the statutorily-required notice and comment. CBP bears the sole responsibility and obligation to comply with the Fifth Amendment and regulatory rules.

CBP's third argument is equally meritless: CBP argues that it has not yet violated KIF's rights because KIF will have the chance to challenge the $25 million in penalties assessed against it in an administrative process. This argument ignores the overwhelming evidence presented by Plaintiffs in connection with the enormous harm they already have suffered and the likelihood of irreparable harm they will suffer absent immediate injunctive relief. (*See supra* p. 13-17, Dkt. 5 at 44-46). CBP cites no authority supporting its argument that no constitutional claim arises where the undisputed facts show that the mere issuance by CBP of such astronomical and crippling penalties threatens the immediate destruction of KIF's business and the livelihood of its employees.[25]

---

that ExxonMobil lacked fair notice of the interpretation of the regulation." 867 F.3d 564, 578 (5th Cir. 2017). Irrespective of any determination of a regulation's entitlement to *Auer* deference, the court in *ExxonMobil* held precisely what Plaintiffs assert in the Motion.

[25] CBP also cites statutes that require pre-penalty notices for the proposition that the Jones Act does not expressly require the same. That misses the point: KIF does not contend the notice was required by statute, but rather by the U.S. Constitution. CBP cannot validly argue that the constitutional requirements of due process do not apply to all of its regulatory enforcement actions.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                         PAGE 33 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 40 of 48

CBP's fourth point is based on offensive speculation. CBP argues that even if it had provided the constitutionally-required notice and due process, KIF would have disregarded CBP's notice and continued with its alleged violation of the Third Proviso. (Dkt. 38 at 31). The speculation is groundless and directly contradicted by the evidence concerning (a) Plaintiffs' repeated efforts to obtain from CBP an understanding as to the basis for its contention that Plaintiffs had violated the Jones Act, and (b) Plaintiffs' immediate cessation of product shipments from Bayside into the United States and additional vessel voyages with U.S.-bound cargo from Alaska to Bayside. Despite Plaintiffs' repeated pleas over a one-month seeking information and transparency (*see* Dkt. 15, Robertson Dec. at ¶¶ 3, 8-9, 12-13, 15-16, 19), CBP refused to explain the basis for its charge that Plaintiffs had violated the Jones Act, until Plaintiffs commenced this action seeking emergency injunctive relief and CBP was served with this Court's order requiring a response to Plaintiffs' Motion. In its Opposition, CBP for the first time disclosed the baseless arguments supporting its contention that Plaintiffs had violated the requirements of the Third Proviso. In the interim, while CBP continued to hide the ball, the Bayside Program has been paralyzed and is at a dead stop. Despite Plaintiffs' understanding and belief that they were in full compliance with the Jones Act, had they been advised by CBP of the purported concerns, Plaintiffs immediately would have met with CBP to discuss and address them and promptly would have modified their program to the extent the parties agreed necessary to remain in full compliance with all Third Proviso requirements. CBP's suggestion to the contrary is baseless.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                              PAGE 34 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG    Document 47    Filed 09/14/21    Page 41 of 48

### D. KIF Has Established a Likelihood of Success on its Eighth Amendment Excessive Fines Claim.

CBP also has failed to refute KIF's showing of likelihood of success in connection with its excessive fines claim. CBP first argues that the Court should not consider Plaintiffs' excessive fine claim because it is "premature." (Dkt. 38 at 32). Because CBP has the power to mitigate or rescind penalties, CBP claims that "there is *no way to know* what Penalty *CBP* will ultimately seek to collect from Plaintiffs" and "*no way to judge* whether the *unknown penalty* is grossly disproportionate" to Plaintiffs' alleged violation. (Dkt. 32 at 38). As with CBP's invalid invocation of this "defense" to KIF's Fifth Amendment claim (*see supra* p. 31), the possibility that the agency may reduce the excessive fine in no way diminishes this constitutional claim. Even if penalties later may be reduced or eliminated, the mere issuance of excessive fines infringes on KIF's constitutional rights. *Accord United States v. Alvarez*, 567 U.S. 709, 723 (2012) (recognizing constitutional rights may be chilled by the overbroad exercise of governmental power). The likelihood of immediate irreparable harm resulting from even the possibility that KIF and others may be subject to some or all of these enormous penalties is occurring *now*. (*See supra* pp. 13-17). If CBP later finds that the purported penalties should be reduced or eliminated, that does nothing to protect against the current threat of immediate irreparable harm.

Moreover, it is little comfort that CBP "may" reduce the penalties when it has shown no willingness to engage Plaintiffs and others in the Bayside Program in a meaningful dialogue on remedying any perceived issues with the Bayside Program since

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW  PAGE 35 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG Document 47 Filed 09/14/21 Page 42 of 48

issuing the Penalty Notices over a month ago, even though it has had explicit knowledge of the BCR since as early as April 2017.[26]  (Dkt. 15, Robertson Dec. at ¶ 19; Dkt. 39-1).  This is especially true in light of the fact that CBP has imposed outrageous and crushing fines to multiple parties all in connection with the shipment of the same product—fines that are equal to more than five times the value of the shipped merchandise.  (*See* Adamski Reply Dec. ¶¶ 4-8.)  CBP also cites no authority for the proposition that an excessive fine claim under the Eighth Amendment is not ripe until the penalty is actually paid.  Such a requirement would make a mockery of constitutional challenges—effectively allowing the government to drive a plaintiff out of business, or file for bankruptcy protection, before a claim was ripe for adjudication.  The law is not so devoid of fundamental principles of fairness as to require the victim of an excessive fine to become destitute in order to sue for the violation.

CBP also argues that it is entitled to deference in its issuance of Jones Act penalties (Dkt. 38 at 33-34) because its penalties purportedly are not "grossly disproportionate" to the gravity of the offense.  CBP ignores the fact that the alleged offenses are not "grave" but instead highly technical and *de minimis* in nature and instead relies on the myth concerning Plaintiffs' purported "evasion of the Jones Act . . . over many years" and the alleged but undefined "substantial" harm to the public from the alleged violations.  (Dkt. 38

---

[26] CBP has in fact been on notice of the BCR rail through the Bills of Lading for each of the thousands of shipments utilizing the Bayside Program since 2012.  (*See supra* at n.12).  Further, it is particularly offensive for CBP to accuse Plaintiffs of hiding the BCR and its operation when CBP officials evidently inspected the BCR shortly after it began operations in 2012.  (*See* Weare Dec. ¶ 7).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                                PAGE 36 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 43 of 48

at 33).  The charge of "evasion" is contradicted by Plaintiffs' transparency concerning the use of the BCR rail line as reflected in countless of bills of lading filed with CBP for shipments between 2012 and the present.  And there is nothing substantial in the technical violations alleged by CBP.  The alleged violations in no way justify the massive and crippling size of the penalties assessed.  The enormity of the fines simply pales in comparison to the alleged violation.  *Accord Colorado Dep't of Lab. & Emp. v. Dami Hosp.*, LLC, 442 P.3d 94, 101–02 (Colo. 2019) ("The concept of 'proportionality' itself also persuades us that ability to pay is an appropriate element of the Excessive Fines Clause gross disproportionality analysis.  A fine that would bankrupt a person *or put a company out of business* would be a substantially more onerous fine than one that did not.").  These violations do not constitute a "gross" offense sufficient to justify such huge penalties.[27]

---

[27]  The second and third *Bajakajian* factors used to identify whether a punishment is grossly disproportional to the underlying offense require an analysis into "(2) whether the underlying offense related to other illegal activities; [and] (3) whether other penalties may be imposed for the offense."  *See United States v. $100,348 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004) (enunciating the "*Bajakajian* factors").  These factors weigh heavily in Plaintiffs' favor.  Use of the BCR rail line neither constitutes an illegal activity nor justifies the imposition of other penalties.  Citing to *Pimentel v. City of Los Angeles*, 974 F.3d 917, 923 (9th Cir. 2020), CBP asserts that the second and third factors are "usually neutral in civil cases."  (Dkt. 38 at 34).  The *Pimentel* court noted that in the record before it, there was no information advancing these factors one way or another, not that these factors should be disregarded in all civil cases.  Moreover, in *$100,348 in U.S. Currency*, another civil case, the Ninth Circuit not only considered the second and third factors in its analysis, but actually credited the factors in plaintiff's favor.  *See* 354 F.3d at 1122; *see also United States v. 3814 NW Thurman St.*, 164 F.3d 1191, 1197 (9th Cir. 1999) (weighing the fact that the claimant had "not been charged with any related criminal activity" in determining whether a forfeiture was excessive).  Thus, the Court should find that the second and third *Bajakajian* factors weigh in Plaintiffs' favor.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                PAGE 37 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG    Document 47    Filed 09/14/21    Page 44 of 48

## III.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FACTORS FAVOR PLAINTIFFS REQUEST FOR INJUNCTIVE RELIEF.

CBP does not contest Plaintiffs' showing concerning the balance of the equities.[28]

As regards the public interest prong of the *Winter* test, CBP argues that an injunction is not

in the public interest because: (i) following the constitutional tolling doctrine would permit

Plaintiffs to "break the law;" (ii) companies utilizing coastwise vessels in domestic trade

will lose business they might otherwise pick up given the paralysis caused by CBP's fines;

and (iii) the Bayside Program violates the intent of the Third Proviso and the Jones Act.

(Dkt. 38 at 40-42).

CBP's public interest arguments are baseless.  Plaintiffs are not "breaking the

law"—they are operating under a statutory exception to the Jones Act that CBP

repeatedly has recognized in substantially identical situations.  (*See supra* pp. 28-31; Dkt

5 at 24-36).  Moreover, CBP's argument contravenes the essence of the constitutional

tolling doctrine, which permits litigants to vindicate their rights without fear that

exorbitant penalties would accrue during the pendency of litigation.  *See Wadley*, 235

U.S. at 651 (constitutional tolling doctrine precluded the government from seeking

---

[28]    Although the third and fourth *Winter* factors merge when the government is a party, courts still consider the balance of equities when analyzing whether the government action at issue is in the public interest.  *Porretti v. Dzurenda*, No. 20-16111, 2021 WL 3853052, at *8 (9th Cir. Aug. 30, 2021) ("The 'balance of equities' concerns the burdens or hardships to [the individual] compared with the burden on [the government] if an injunction is ordered.  The 'public interest' mostly concerns the injunction's 'impact on nonparties rather than parties.'" (citations omitted)).  CBP thus concedes that Plaintiffs have established that the equities tip decidedly in their favor on this application.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 383-84 (1989) (failure to argue in brief in opposition is a waiver of argument).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                                    PAGE 38 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 45 of 48

penalty actions for non-compliance with the statute during litigation); *Pacific Coast*, 451 F.2d at 717 (Federal Maritime Commission could not issue or enforce statutory penalties during judicial proceedings).  This is not a "get out of jail free card" as CBP claims—it is a well-recognized component of due process that CBP asks this Court to ignore.

Second, there is no evidence of "harm" to anyone in this case except Plaintiffs, third-parties involved with the Bayside Program, and American workers and consumers. (*See supra* pp. 13-17 and Dkt. 5 at 46-47).  Plaintiffs' competitors arguably may benefit if Plaintiffs and others involved in the Bayside Program supply chain are driven out of business.  (*See* Dkt. 38 at 42 (citing declarations of various competitors claiming, without any evidence, that the Bayside Program causes them "harm")).  But even if CBP's enforcement actions serve some narrow special interests, heavy-handed government action that arbitrarily picks winners and losers while violating constitutional rights is not in the public interest.

Third, an injunction is not contrary to the intent of either the Jones Act or Third Proviso.  The intent of the Third Proviso is plain on its face—to allow for non-coastwise shipment under certain circumstances, all of which Plaintiffs meet here.  Indeed, the existence of the Third Proviso in the Jones Act is the clearest evidence of Congressional intent to allow non-coastwise vessels to be used in coastwise trade.  *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("We have stated time and again that

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                            PAGE 39 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 46 of 48

courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").[29]

Moreover, the Penalty Notices will do nothing but hurt American companies and consumers in the short and long term. CBP's destruction of Alaskan fishing businesses, destruction of American food processing and related jobs, and destruction of the American food supply surely do not further the Jones Act's purpose.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

---

[29] Whether the "intent" of the Third Proviso was to avoid disturbing "established routes" prior to 1920 (*see* Dkt. 41) is irrelevant because the wording of the statute does not make any distinction about "established" routes versus "new" routes. *See* 46 U.S.C. § 55116. As the plain language of the Third Proviso provides no refuge for CBP, they seek support in statutory intent by now asserting implicitly that its prior rulings on the Third Proviso were inconsistent with that intent, but the outmoded history and vestiges of an earlier regime no longer support CBP's new and unpublished interpretation, if it ever did.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                                    PAGE 40 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 47 of 48

## <u>CONCLUSION</u>

Based on the foregoing the reasons set forth in Plaintiffs' moving papers, Plaintiffs' respectfully request that the Court grant their motion for a temporary restraining order and preliminary injunction.

DATED this the 14th day of September, 2021.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiffs


By:     /s/ David Karl Gross
        David Karl Gross, ABA #9611065

KASOWITZ BENSON TORRES LLP
Edward E. McNally, ABA #9203003
Marc E. Kasowitz (Pro Hac Vice)
David J. Abrams (Pro Hac Vice)
David E. Ross (Pro Hac Vice)
Hector Torres (Pro Hac Vice)
Kim Conroy (Pro Hac Vice)


<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the  14th  day of September, 2021, a true and correct copy of the foregoing was served via the Court's CM/ECF electronic filing system, on the following:

Seth M. Beausang, Asst. U.S. Attorney
Christine Dollerhide, Asst. U.S. Attorney
U.S. Attorney's Office
seth.beausang@usdoj.gov
christine.dollerhide@usdoj.gov

BIRCH HORTON BITTNER & CHEROT

By:     /s/ David Karl Gross

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY MEMORANDUM OF LAW                                PAGE 41 OF 41
01122704.DOCX

Case 3:21-cv-00198-SLG   Document 47   Filed 09/14/21   Page 48 of 48