# U.S. CUSTOMS AND BORDER PROTECTION
# Department of Homeland Security

*1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229*

JAN 21 2004

VES-3-17 RR:IT:EC
116021 CK

Mr. Myles J. Ambrose
Mr. Ronald Gerdes
Mr. David Cohen
Sandler, Travis & Rosenberg, P.A.
1300 Pennsylvania Ave, N.W.
Washington, DC 20004-3002

RE:  Request to revoke/modify CBP Headquarters Ruling Letter (HRL) 115446;
     Third Proviso to 46 U.S.C. App. §883

Dear Sirs:

This is in response to your letter dated July 21, 2003 on behalf of your client, Horizon Lines, LLC. We further note that you made various additional submissions after your initial letter in conjunction with a meeting we held at your request on September 4, 2003. You request that U.S. Customs and Border Protection (CBP) modify/revoke Headquarters Ruling Letter (HRL) 115446, dated August 9, 2001. As you know, HRL 115446 was issued to Sunmar Shipping, Inc.,("Sunmar") and involved the transportation of frozen fish products from fishing vessels and shore plants in Dutch Harbor, Alaska on chartered foreign-flag vessels and then by intermodal carriage via the New Brunswick Southern Railway ("NBS Railway"), a Canadian rail line, for ultimate delivery, via a through bill of lading, to cold storage facilities in Boston or Gloucester and other points in the United States. We held that such transportation of the frozen fish indirectly between coastwise points, in part via both chartered foreign-flag vessels and Canadian rail, is in accord with the Third Proviso to 46 U.S.C. App. §883 (hereinafter "Third Proviso").

You contend that HRL 115446 should be revoked/modified because the movement described therein fails to comply with the requirements of the Third Proviso, for the following reasons. First, you state that Sunmar failed to comply with the Third Proviso's tariff-filing requirements. Second, you state that regardless of the tariff-filing requirements, the route utilized by Sunmar is commercially absurd and a purposeless diversion from the "through" or "direct" route the Third Proviso also requires.

*Vigilance* ★ *Service* ★ *Integrity*

**EXHIBIT 1**
**Page 1 of 5**

USCBP 0007

The determinative facts quoted from HRL 115446 are as follows:

> Sunmar will charter foreign-flag non-coastwise-qualified vessels from foreign owners (the "Vessels"). The products loaded onto the Vessels in the Dutch Harbor area will be unitized for intermodal carriage and handling under the through bill of lading. The Vessels will then move the cargo from Dutch Harbor to New Brunswick, Canada.
>
> When the Vessels arrive in New Brunswick, Canada, the products will be discharged to the Bayside Food Terminal near Bayside, New Brunswick, where they will be staged for intermodal carriage. At the Bayside terminal, the products will be transferred into intermodal reefer trailers. The loaded trailers will be hauled by truck to either McAdam, New Brunswick or Saint John, New Brunswick, where the trailers will be loaded onto rail flat cars.
>
> The rail cars will then be moved by the NBS Railway over rail trackage in Canada, either from McAdam to Saint John, or Saint John to McAdam. At either of these rail-truck transfer facilities, the NBS Railway truck trailers will be offloaded and then driven from there into the United States via the St. Stephen, New Brunswick/Calais, Maine, border crossing. After entry, the trailers will be trucked to a cold storage facility in the United States. Sunmar will be documented as the shipper, while each respective customer is the consignee and the Canadian rail carrier will be NSB Railway.

Title 46, United States Code Appendix, § 883 (46 U.S.C. App. §883, the merchandise coastwise law often called the "Jones Act") prohibits the transportation of merchandise between United States coastwise points, either directly or via a foreign port, or for any part of the transportation, in any vessel other than a vessel built in and documented under the laws of the United States and owned by persons who are citizens of the United States (i.e., a coastwise-qualified vessel).

The "Jones Act" contains several exceptions to the general prohibition against the transportation of merchandise in coastwise trade by non-qualified vessels, including what is known as the Third Proviso. The Third Proviso provides that:

> [T]his section shall not apply to merchandise transported between points within the continental United States, including Alaska, over through routes heretofore or hereafter recognized by the Surface Transportation Board for which routes rate tariffs

> have been or shall hereafter be filed with the Board when such
> routes are in part over Canadian rail lines and their own or other
> connecting water facilities.

46 U.S.C. App. §883.

In light of your first argument regarding Sunmar's failure to comply with the Third Proviso's rate tariff filing requirements, we sent a written request for an opinion on this issue to the Secretary, Surface Transportation Board (STB) on September 24, 2003. By letter dated December 4, 2003, we received an "Informal Opinion on the filings of 'Routes Rates Tariffs' as described in 46 U.S.C. App. 883" from the Director, Office of Compliance and Enforcement, STB. The aforementioned opinion provides in pertinent part, as follows:

> Although such water carriers must file tariffs with the STB, no
> tariffs are currently being filed with the STB or have been filed
> with the STB bearing the description 'routes rates tariffs' that is
> used in the 'Third Proviso' of the Jones Act. Tariffs filed with the
> STB are rate tariffs but are not route-specific. Thus, the tariff
> rate applies to the movement between the origin and destination
> without regard to the route taken. . . .
>
> . . . .
>
> In my informal opinion, which is not binding on the Board, the
> statute continues to provide for the filing of tariffs by water
> carriers operating in the U.S. noncontiguous domestic trade.
> Thus, notwithstanding the regulatory exemptions issued by the
> Board's predecessor, the ICC, or the statutory changes repealing
> the tariff filing requirements for rail and most motor carrier
> operations in interstate commerce, water carriers are required to
> file, and do file, non-route-specific tariffs for their operations in
> the U.S. noncontiguous domestic trade.

However, in regard to the specific facts presented in HRL 115446, which involved the <u>chartering</u> of foreign-flagged vessels, it is noteworthy that this STB opinion provided:

> This requirement that water carriers file tariffs with the Board
> applies only to such carriers who are common carriers, meaning
> that they are carriers that hold out their services to the public
> generally, and does not apply to private carriage.
>
> . . . .

4

> Finally, I should note that in the ruling you provided with your letter Sunmar is described as the shipper using <u>chartered</u> vessels. Therefore Sunmar's operations could be considered private carriage and non-jurisdictional to the STB for tariff filing purposes. (Emphasis added)

Hence, we agree with your assertion, in accordance with the above opinion of the STB, that when a non-coastwise-qualified vessel is used to move merchandise in the noncontiguous domestic trade and in part over a Canadian rail line in order to utilize the exemption to the "Jones Act" as provided in the Third Proviso, rate tariffs should be filed with STB, only for informational purposes. However, as the STB opinion clearly states, since the facts in HRL 115446 indicate that Sunmar is using chartered foreign-flagged vessels, which are private carriage, Sunmar's operations are not within the jurisdiction of the STB. Sunmar, utilizing private carriage, cannot file rate tariffs with the STB for any purpose, even informational. Thus, in HRL 115446 it was not possible for Sunmar to comply with the rate tariff filing requirements in the Third Proviso.

The inability of Sunmar to comply with STB filing requirements because private carriage is outside the jurisdiction of the STB should not result in a <u>de facto</u> exclusion of all chartered non-coastwise-qualified vessels from transporting merchandise coastwise in compliance with those remaining requirements of the Third Proviso. Such exclusion would be tantamount to administratively repealing the Third Proviso for all chartered vessels. Although the statute specifies the filing of tariffs with the STB, mechanistic adherence to that requirement for private carriage which is not within the jurisdiction of the STB is unjustified. Thus, the only reading that gives full effect to the Third Proviso for all vessels is that non-chartered non-coastwise-qualified, or in other words vessels that are public (i.e. common) carriers, are required to file rate tariffs with the STB, even if only for informational purposes, and chartered vessels (i.e., private carriers) are thus exempted from such filing.

This interpretation was first applied in HRL 112085, dated March 10, 1992, when the ICC designated frozen seafood as an exempt commodity for which no rate tariff is required under agency procedures. In that ruling we stated, "although the statute specifies the filing of rate tariffs with the Interstate Commerce Commission, mechanistic adherence to that requirement in the present climate of deregulation would leave to an absurd result which cannot be justified."

In HRL 114407, dated July 23, 1998, when discussing the abolition of the ICC and the abolition of filing requirements for rail, we stated that although the legislation terminating the ICC did not address the ramifications of the aforementioned abolition on the administration of the Jones Act, there was no indicia that the new regulatory authority should be interpreted other than in <u>pari materia</u> with the Third Proviso. Thus, our conclusion that private carriage, which is not within the jurisdiction of the STB, is not precluded from utilizing the Third

5

Proviso because it may not file its rates with the STB is consistent with our previous interpretations of the Third Proviso.

Your second argument is that the route utilized by Sunmar is commercially absurd and a purposeless diversion from the "through" or "direct" route required by the Third Proviso. We note that the Third Proviso does not state a "direct" route should be used, it instead uses the term "through" route in part over Canadian rail lines. We have long held that "in part over Canadian rail lines" is any use of Canadian rail. The Third Proviso does not have a de minimus requirement for "in part over Canadian rail lines," nor has CBP in the last twenty years read such a de minimus requirement into the statute." See, HRL 105604, dated April 30, 1982; HRL 111987, December 2, 1991; HRL 112085, March 10, 1992; HRL 113141, dated June 29, 1994; HRL 113365, dated March 10, 1995; HRL 114407, dated July 23, 1998, and HRL 115124, dated August 11, 2000. Furthermore, the clause in the Third Proviso requiring "through routes" recognized by the STB must be read in conjunction with the clause "for which routes rate tariffs have been or shall hereafter be filed." Therefore, based on the above discussion, private carriage, which is not within the jurisdiction of the STB and for which rate tariffs cannot be filed, is not confined to any "through" route recognized by the STB in order to utilize the Third Proviso.

Based on the above analysis we do not agree that HRL 115446 should be either modified or revoked as contrary to law or policy. HRL 115446 is consistent with the policy established over the last twenty years of CBP's administration of the "Jones Act" and the Third Proviso. However, we do agree that parties are bound to use Canadian rail lines in order to avail themselves of the Third Proviso. A party that fails to utilize Canadian rail lines, while ostensibly operating pursuant to the Third Proviso, is in violation of the "Jones Act." It is our policy to refer allegations of violations of the "Jones Act" to the Bureau of Immigration and Customs Enforcement (ICE) for investigation. Please be assured that if ICE provides us with evidence that Sunmar has failed to utilize Canadian rail lines in the movement of the frozen fish discussed in HRL 115446, we will take appropriate action.

Sincerely,

*[signature: Glen E. Vereb]*

Glen E. Vereb
Chief
Entry Procedures and Carriers Branch

**EXHIBIT 1**
**Page 5 of 5**