# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

KLOOSTERBOER INTERNATIONAL
FORWARDING LLC, *et al.*,

    Plaintiffs,

    v.

UNITED STATES OF AMERICA, *et al.*,

    Defendants.

Case No. 3:21-cv-00198-SLG

## ORDER RE MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Before the Court at Docket 4 is Plaintiffs Kloosterboer International Forwarding LLC and Alaska Reefer Management LLC's (collectively, "Plaintiffs") Motion for Temporary Restraining Order and Preliminary Injunction. Defendants the United States of America, U.S. Department of Homeland Security, U.S. Customs and Border Protection ("CBP"), and Troy A. Miller, in his official capacity as the Acting Commissioner of CBP (collectively, "Defendants"), responded in opposition at Docket 38, to which Plaintiffs replied at Docket 47. Oral argument was held on September 17, 2021. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

Kloosterboer International Forwarding LLC ("KIF") is an Alaskan wholly-owned subsidiary of Alaska Reefer Management LLC ("ARM").[1]  KIF and ARM arrange transportation and related services for the movement of frozen seafood products, in particular frozen pollock, from Alaska to the eastern United States on behalf of their customers.[2]

Since 2012, Plaintiffs' transportation route for the frozen seafood has been as follows:[3]  After seafood products are harvested and processed at sea by American Seafood Company ("ASC"), the frozen products are stored in KIF's Dutch Harbor, Alaska cold storage facility.  The U.S.-bound product is then loaded onto non-coastwise-qualified vessels (i.e., foreign-flagged vessels), which are procured by ARM for shipment of the product to the Port of Bayside in New Brunswick, Canada.  On arrival at Bayside, the seafood is unloaded from the vessels and moved directly into KIF's Bayside cold storage facility.  KIF then arranges with third-party trucking transportation services to deliver the product to Plaintiffs' customers in the eastern United States.  Once the trailer trucks are loaded with product, they are driven directly onto a flat rail car on the Bayside

---

[1] Docket 5 at 14 (Mem.).

[2] Docket 5 at 14–15 (Mem.).

[3] Unless otherwise noted, the following information is gathered from Plaintiffs' Complaint at Docket 1 and the Memorandum at Docket 5.  The facts are generally not in dispute.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 2 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 2 of 25

Canadian Rail ("BCR") rail trackage, a registered Canadian railroad. The BCR is approximately 100 feet in length and located entirely within the Port of Bayside. Each truck travels the length of the BCR and back—in other words, from Point A to Point B then back to Point A. After a truck is driven off the BCR—at the same location it was driven onto the BCR—the truck proceeds directly to the Calais, Maine border crossing, where the driver submits a bill of lading to CBP and enters the United States. The frozen seafood products are then delivered to Plaintiffs' customers in the eastern United States. The Court refers to this transportation route as the "BCR Route."

Prior to using the BCR route, beginning in late 2000, ASC itself transported the frozen seafood from Dutch Harbor to the Port of Bayside on foreign-flagged vessels, then eventually on to Calais, Maine by truck. Beginning in 2009, ASC contracted with ARM to provide the transportation of the product on that same route.[4] However, beginning in 2000 and continuing until 2012, when the product arrived at the Port of Bayside, it was first trucked away from the Port of Bayside to a rail terminal of the New Brunswick Southern Railway ("NBSR"). The NBSR carried the frozen seafood product to a separate rail terminal—not just back and forth like the BCR—over distances of approximately 34 and 91 miles, depending

---

[4] KIF joined the operation in 2018. *See* Docket 7 at 3, ¶ 7 (Brautaset Decl.) ("ARM acquired KIF in September 2018."); Docket 9 at 9–10, ¶ 22 (Andreassen Decl.) ("In 2018, ASC began directly contracting with KIF for its transportation needs.").

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 3 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 3 of 25

on the destination terminal.[5]  The product then travelled by truck to the border crossing at Calais, Maine.  The Court refers to this transportation route as the "NBSR Route."

In 2017, CBP, the federal agency responsible for interpreting and enforcing the cabotage laws of the United States, began investigating Plaintiffs' BCR Route.[6]  As a result of the investigation, CBP determined that Plaintiffs' route violated the Jones Act because, according to CBP, the BCR Route did not fall within an exemption to the Jones Act, known as the Third Proviso.[7]  In August of this year, CBP began issuing numerous "Notices of Penalty" to KIF and other companies involved in the BCR Route supply chain—shippers, trucking firms, and storage facilities.[8]  As of the date of the filing of Plaintiffs' Complaint, KIF had received Notices of Penalty totaling approximately $25 million, and other companies in Plaintiffs' supply chain had received Notices of Penalty totaling approximately $325 million.[9]

---

[5] Docket 39 at 4–5, ¶ 8 (Hebert Decl.).  The pre-2012 route moved the product dozens of miles *away* from the American border.  *See, e.g.*, Docket 57-1 (map showing Saint John to McAdam, New Brunswick, NBSR rail segment).

[6] Docket 38 at 11–12 (Opp'n).

[7] For further discussion of the Jones Act, *see infra* pp. 12–13.

[8] Docket 38 at 12 (Opp'n); *see, e.g.*, Docket 8-9 at 2–3 (Notice of Penalty issued to KIF).

[9] Docket 5 at 12 (Mem.).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 4 of 25

After some discussions between Plaintiffs and CBP concerning the Notices of Penalty, Plaintiffs filed the instant action on September 2, 2021. In short, Plaintiffs assert that CBP's "shocking and unconstitutional overreach[]" by assessing penalties for purported Jones Act violations "has crippled" the shipment of frozen seafood from Dutch Harbor to the eastern United States because Plaintiffs and "other companies critical to shipping this seafood are now unable to, and will not, resume shipping" due to the potential for "additional massive penalties."[10] Plaintiffs seek a temporary restraining order and preliminary injunction from this Court barring CBP from imposing further penalties on Plaintiffs and other companies in the supply chain during the pendency of this litigation.

## LEGAL STANDARD

The standard for obtaining a temporary restraining order is "substantially identical" to that for a preliminary injunction.[11] In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.[12]

---

[10] Docket 5 at 10 (Mem.).

[11] *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

[12] 555 U.S. 7, 20 (2008).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 5 of 25

Following *Winter*, the Ninth Circuit addressed the first element—the likelihood of success on the merits—and held that the Circuit's "serious questions" approach to preliminary injunctions was still valid "when applied as a part of the four-element *Winter* test."[13] Accordingly, if a plaintiff shows "that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'"[14] "Serious questions are 'substantial, difficult, and doubtful,' as to make them a fair ground for litigation and thus for more deliberative investigation."[15] They "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance on the merits.'"[16]

All four *Winter* elements must still be satisfied under this approach,[17] but analyses of the last two elements—harm to the opposing party and consideration

---

[13] *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).

[14] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[15] *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988)); *see also Fyock v. City of Sunnyvale*, 25 F. Supp. 3d 1267, 1273 (N.D. Cal. 2014) ("'Serious questions' refers to questions 'which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo . . . .'" (quoting *Gilder*, 936 F.2d at 422)).

[16] *Gilder*, 936 F.2d at 422 (quoting *Marcos*, 862 F.2d at 1362).

[17] *All. for the Wild Rockies*, 632 F.3d at 1135 ("Of course, plaintiffs must also satisfy the other *Winter* factors."); *see also Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (describing standard for preliminary injunction).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 6 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 6 of 25

of the public interest—merge when the government is the opposing party.[18]

Additionally, "[t]he  first factor—likelihood of success on the merits—'is the most important' factor."[19]  "If a movant fails to establish likelihood of success on the merits, [a court] need not consider the other factors."[20]

Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[21]

## DISCUSSION

## I.    Constitutional Tolling Doctrine

In Count VI of their Complaint, Plaintiffs request that this Court invoke the "constitutional tolling doctrine" and enjoin CBP from collecting or imposing penalties during the pendency of this litigation.   Plaintiffs rely primarily on *Oklahoma Operating Co. v. Love*, 252 U.S. 331 (1920), and *United States v. Pacific Coast European Conference*, 451 F.2d 712 (9th Cir. 1971).[22]  According to Plaintiffs, "[u]nder the constitutional tolling doctrine, [they] are protected from non-

---

[18] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[19] *California by & through Becerra v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020) (quoting *Winter*, 555 U.S. at 20).

[20] *Id.* (citing *Winter*, 555 U.S. at 20).

[21] *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987).

[22] Docket 5 at 27–30 (Mem.); Docket 47 at 15–19 (Reply).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 7 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 7 of 25

compliance with statutory and regulatory provisions during the entire period they are judicially challenging the validity of penalties issued under those laws—regardless of the ultimate outcome of their challenge—provided they have raised substantial questions as to the constitutionality of CBP's actions."[23]  Primarily relying on *United States v. Louisiana-Pacific Corp.*, 967 F.2d 1372 (9th Cir. 1992), Defendants respond that the Court should not apply constitutional tolling because Plaintiffs are not contesting the validity of the Jones Act; rather, they are contesting CBP's interpretation of the Act.[24]  In short, while the parties seem to agree that the constitutional tolling doctrine exists, they dispute its applicability to the instant case.

In *Love*, the plaintiff challenged the constitutional validity of an Oklahoma "legislative order" that set laundry rates with no opportunity for judicial review, unless the plaintiff violated the order and contempt proceedings were initiated against it.[25]  The Supreme Court held that "[o]bviously a judicial review beset by such deterrents does not satisfy the constitutional requirements" and determined that the plaintiff was entitled to a temporary injunction precluding the enforcement of penalties during the pendency of the litigation.[26]  Similarly, in *Pacific Coast*

---

[23] Docket 5 at 27 (citing *Wadley S. Ry. Co. v. Georgia*, 235 U.S. 651 (1915) and *United States v. Pac. Coast Eur. Conf.*, 451 F.2d 712, 717 (9th Cir. 1971)).

[24] Docket 38 at 35–38 (Opp'n) ("There is no authority for the Court to enter such an extraordinary injunction.").

[25] 252 U.S. at 332–34, 337–38.

[26] *Id.* at 337.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 8 of 25

*European Conference,* the defendants were challenging the constitutional validity of both the underlying statute, which had been recently enacted, and the order that gave rise to the penalties in that case.[27]   The Ninth Circuit held that the "[d]efendants ought not to have to pay a statutory penalty for non-compliance with the [underlying statute] during the time they were judicially testing the validity of that" statute.[28]

Here, in contrast, Plaintiffs' constitutional challenges are directed only at CBP's conduct—alleged violations of due process and the imposition of purportedly excessive fines.  Plaintiffs do not challenge the constitutional validity of the Jones Act; rather, they challenge only CBP's statutory interpretation of the Act as applied to Plaintiffs' BCR Route.

Plaintiffs also cite to *Wadley Southern Railway Co. v. State of Georgia*, 235 U.S. 651 (1915).  But that case upheld the imposition of the penalty because the plaintiff there had "failed to resort to the safe, adequate and available remedy by which it could test in the courts" the validity of the penalty.[29]  Here, too, Plaintiffs failed to resort to the safe, adequate, and available remedy of an administrative ruling by not seeking a "ruling letter" from CBP back in 2012 when Plaintiffs

---

[27] 451 F.2d at 713–18.

[28] *Id.* at 717.

[29] 235 U.S. at 669.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 9 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 9 of 25

switched to using the BCR Route.[30]  And if Plaintiffs had disagreed with the CBP's determination in the letter ruling, they could have sought judicial review of the ruling.[31]  In sum, the Court finds the cases that Plaintiffs cite to be distinguishable.

However, the Court also finds the case Defendants cite, *Louisiana-Pacific Corp.*, to be distinguishable.  The plaintiff in that case agreed to the entry of a voluntary consent order with the government that included a waiver of the right of judicial review.  The plaintiff did not contest the legal validity of the consent order; rather, it contested the agency's decision to deny the plaintiff's petition to reopen the consent order. The court denied the plaintiff's request to impose constitutional tolling.[32]  Here, Plaintiffs have not entered into an agreement with CBP that precludes judicial review.  *Louisiana-Pacific Corp.* is therefore factually distinguishable.

The Court is disinclined to apply a sparse, unsettled, and ill-defined doctrine. Together, the parties only cite a handful of Supreme Court and Ninth Circuit cases over the last century, none of which are directly on point to the instant matter.

---

[30] *See* 19 C.F.R. § 177.  Upon request from importers and other interested parties, CBP will issue "ruling letters" that provide "a definitive interpretation of applicable law, or other appropriate information" with respect to a particular transaction.  *See What are Ruling Letters?*, U.S. Customs & Border Prot., https://www.cbp.gov/trade/rulings/ruling-letters (last modified Mar. 18, 2020).

[31] *See, e.g.*, *Horizon Lines, LLC v. United States*, 414 F. Supp. 2d 46, 51–54 (D.D.C. 2006) (holding that district court had jurisdiction and shipping competitor had standing to challenge letter ruling interpreting the Third Proviso).

[32] *Louisiana-Pac. Corp.*, 967 F.2d at 1374–75, 1378.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 10 of 25

Additionally, Plaintiffs' attempt to invoke this doctrine appears to stem from the fact that the doctrine ostensibly requires a lesser showing of success on the merits. But these lesser showings—"substantial questions"[33] or "reasonable ground[s]"[34]—are left undefined by the case law; and Plaintiffs do not materially distinguish these standards from *Winter's* likelihood of success on the merits or the Ninth Circuit's serious questions test.[35] *Winter* and subsequent case law provide the parties and the Court with a well-established and clear standard for determining whether preliminary equitable relief enjoining agency action is warranted. Plaintiffs have not persuaded the Court that it should deviate from this traditional mechanism. For the foregoing reasons, the Court declines to impose the constitutional tolling doctrine and finds that Plaintiffs have not demonstrated that they are likely to succeed on Claim VI for that reason.[36]

---

[33] *Pac. Coast Eur. Conf.*, 451 F.2d at 717.

[34] *Love*, 252 U.S. at 338.

[35] *See Kansas-Nebraska Nat. Gas Co. v. Dep't of Energy*, Case No. 79-4055, 1979 WL 998, at *9 (D. Kan. July 31, 1979) ("[T]he 'substantiality of the challenge' test would appear to be a relaxed version of the 'success on the merits' test[.]").

[36] *Id.* at *10 ("We hold that plaintiff's request for a stay of penalties should be judged by the criteria traditionally applied to any request for interlocutory injunctive relief.").

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 11 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 11 of 25

## II.  Likelihood of Success on Counts I through V

### A. Jones Act Third Proviso

In Count I, Plaintiffs seek a declaratory judgment from this Court that Plaintiffs' BCR Route falls within the Third Proviso exception to the Jones Act.[37]

The Jones Act generally prohibits a maritime vessel from providing any part of the transportation of merchandise by water—or by land and water—between points in the United States, either directly or via a foreign port, unless the vessel is "coastwise-qualified,"[38] i.e., U.S.-built, U.S.-registered, and U.S-owned. The Jones Act was enacted, in part, to ensure a vibrant U.S. maritime industry.[39]

There is no dispute that Plaintiffs' BCR Route utilizes non-coastwise-qualified (i.e., foreign-flagged) vessels when transporting seafood merchandise from one U.S. coastwise point—Dutch Harbor, Alaska—to another coastwise point—Calais, Maine and subsequent U.S. destinations. This case arises from Plaintiffs' reliance on a statutory exemption, known as the Third Proviso, to the Jones Act's general prohibition.

The Third Proviso provides that the prohibition on non-coastwise-qualified vessels "does not apply to the transportation of merchandise between points in the continental United States, including Alaska, over through routes in part over

---

[37] Docket 5 at 33–45 (Mem.); Docket 47 at 25–35 (Reply).

[38] *See* 46 U.S.C. § 55102(b) (formerly 46 U.S.C. app. § 883).

[39] *See* 46 U.S.C. § 50101.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 12 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 12 of 25

Canadian rail lines and connecting water facilities if the routes are recognized by the Surface Transportation Board and rate tariffs for the routes have been filed with the Board."[40]  The Third Proviso exception thus establishes a three-part test:

1) the "transportation" of merchandise must utilize "through routes in part over Canadian rail lines . . .";

2) the routes must be "recognized" by the Surface Transportation Board ("STB"); and

3) rate tariffs for the routes must have been filed with the STB.

For the following reasons, the Court finds that Plaintiffs have not demonstrated any likelihood of success with respect to the third element, and therefore, does not address whether the other two elements have been met at this juncture.

In 2006, ASC—ARM's predecessor—filed a rate tariff with STB for the NBSR route it was then using.[41]  While the rate tariff, effective until cancelled, applies to the transport of frozen seafood by "water/rail transportation and related services" from Dutch Harbor to "named places in the eastern United States," it identifies ASC—not ARM—and the NBSR railroad—not the BCR railroad—as the participating carriers.[42]

ASC's 2006 tariff filing came about in the wake of the ruling issued earlier that year by the District Court for the District of Columbia in *Horizon Lines, LLC v.*

---

[40] 46 U.S.C. § 55116.

[41] *See* Docket 6-16 (ASC Rate Tariff).

[42] Docket 6-16 at 1, 5 (ASC Rate Tariff).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 13 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 13 of 25

*United States.*[43]  In that case, Horizon Lines, LLC, a Jones Act-qualified shipper who competed with non-qualified shippers, challenged CBP's determination that a route by a non-qualified shipper that was "nearly identical" to ASC's NBSR Route was compliant with the Third Proviso.[44]  Indeed, ASC was permitted to intervene in the case to "protect its interest" in the NBSR Route.[45]  The district court upheld CBP's interpretation of the Third Proviso to not contain an "implied prohibition on sham or commercially impractical Canadian rail movement to achieve technical compliance with the literal terms of the statute."[46]  But the district court disagreed with CBP's position that non-coastwise-qualified private shippers did not need to file a rate tariff to fall within the Third Proviso, and instead held that the statute unequivocally required a tariff to be filed.[47]  The following year, CBP wrote to ASC's attorney, apprising him that CBP intended to "abide by the court's decision" and noting that ASC had recently  filed the rate tariff with the STB, which had accepted it for filing.[48]

---

[43] 414 F. Supp. 2d 46 (D.D.C. 2006).

[44] *Id.* at 48–49.

[45] *Id.* at 48.

[46] *Id.* at 55 n.6 (internal quotation marks omitted).

[47] *Id.* at 60.

[48] Docket 6-15 at 1 (Letter from Glen E. Vereb, Cargo Security, Carriers and Immigration Branch, U.S. Customs and Border Protection, to Michael K. Tomenga, Counsel to American Seafoods LLC (June 13, 2007)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 14 of 25

Plaintiffs advance two arguments with respect to the tariff-filing requirement of the Third Proviso. First, Plaintiffs assert that "[w]hen ARM took over the vessel chartering operation in 2009 from ASC . . . , it stepped into ASC's shoes as the shipper in the tariff," and, therefore, the rate tariff on file with the STB is valid with respect to ARM and the current BCR Route.[49]  Second, Plaintiffs alternatively assert that "CBP has consistently held that no rate tariff filing is required and did not modify or revoke their interpretive rulings on that issue in the wake of *Horizon*," and, therefore, ARM was not required to amend or file a new rate tariff with STB when it took over the transportation of frozen seafood from ASC, at least according to CBP's own guidance.[50]

First, Plaintiffs offer no legal authority for the proposition that ARM "steps into the shoes" of ASC with respect to the 2006 rate tariff filed by ASC. This Court declines to conclude that, as a matter of law, a company that assumes a shipping route from another company automatically receives the benefit of a previously filed tariff, especially when the successor company did not amend the tariff to reflect the new company and other participating carriers. The Court finds that the 2006 rate tariff on file is legally deficient with respect to ARM. 49 U.S.C § 13702(b)(2)(A) requires that "at a minimum [rate] tariffs must identify plainly . . . the carriers that

---

[49] Docket 5 at 40 (Mem.); Docket 47 at 30 (Reply).

[50] Docket 5 at 40–41 (Mem.); Docket 47 at 30–33 (Reply).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 15 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 15 of 25

are parties to it."[51]  The 2006 rate tariff does not apply to ARM and BCR because it identifies ASC and NBSR—not ARM and BCR—as the participating carriers.[52]  Accordingly, the Court finds that the 2006 rate tariff filed by ASC is not valid as to ARM and the current BCR Route.

Second, Plaintiffs accurately assert that CBP has not amended or revoked its previously issued ruling letters that held that the filing of a rate tariff was not necessary for compliance with the Third Proviso, even though the *Horizon* court had found that guidance legally invalid.[53]  However, irrespective of whether the *Horizon* court remanded the ruling letter to CBP without vacatur, the district court's decision in *Horizon* "had the effect of modifying all of [CBP's] previous rulings, decisions, and treatment" of the tariff-filing requirement in the Third Proviso.[54]  In

---

[51] *See also* 49 C.F.R. § 1312.1(c) (2020) (defining "Carrier's tariff" to mean "a tariff filed in the name of a carrier"); *id.* § 1312.6(b)(3) (providing for filing of correction to list of participating carriers in tariff); *id.* § 1312.8(a)(2) (specifying that every tariff publication filed with the STB shall include "[t]he name of the issuing carrier or agent"); *id.* § 1312.9 (requiring title page of each tariff to include complete name and address of issuing carrier or agent); *id.* § 1312.15(a) (providing that when there is a change in carrier, "all affected tariffs must be amended to reflect the change").

[52] The Court acknowledges there is some merit to Plaintiffs' contention that "requiring rigid technical compliance [with § 13702(b)(2)(A)]—where rate tariffs serve no regulatory purpose and are only required to satisfy the Third Proviso—is inappropriate and unnecessary."  Docket 47 at 34 (Reply).  However, the Court's duty is to enforce the law as written, not as it should be.  And, as Plaintiffs acknowledged at oral argument, there is no reason that they cannot now file a rate tariff that complies with the law.  *See* Sept. 17, 2021 Hr'g Tr. at 7:22–23.

[53] *Horizon*, 414 F. Supp. 2d at 60.

[54] *Sea-Land Serv., Inc. v. United States*, 239 F.3d 1366, 1372 (Fed. Cir. 2001) (holding no notice-and-comment requirement under 19 U.S.C. § 1625(c) when any change in CBP's position was mandated by judicial decision).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 16 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 16 of 25

addition, CBP clearly informed Plaintiffs' predecessor that it intended to abide by the district court's decision in *Horizon*.[55]  Accordingly, this Court finds that Plaintiffs have not established that they are likely to succeed on their contention that they can rely on CBP's pre-*Horizon* ruling letters with respect to the tariff requirement in the Third Proviso.

For the foregoing reasons, the Court finds that Plaintiffs have not established a likelihood of success on Count I because they have not demonstrated that there is a valid rate tariff currently on file with the STB for the BCR route, as required by the Third Proviso.

## B. CBP's Interpretive Rulings and Regulatory Guidance

In Counts II and III, Plaintiffs contend that CBP's issuance of the Notices of Penalty constitutes a proposed revocation or modification of CBP's prior interpretative ruling letters that held that any use of Canadian rail satisfied the first requirement of the Third Proviso.  Plaintiffs maintain that CBP issued the penalty notices without providing the statutorily-mandated public notice and comment, in violation of 19 U.S.C. § 1625(c).[56]

19 U.S.C. § 1625(c) provides that:

A proposed interpretive ruling or decision which would—

---

[55] *See* Docket 6-15 at 1 (Letter from Glen E. Vereb, Cargo Security, Carriers and Immigration Branch, U.S. Customs and Border Protection, to Michael K. Tomenga, Counsel to American Seafoods LLC (June 13, 2007)).

[56] Docket 5 at 45 (Mem.).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 17 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 17 of 25

(1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

## 1.     § 1625(c)(1)

In Count II, Plaintiffs assert that CBP's penalty notices violate § 1625(c)(1) because "[a]bsent any revision or revocation of its Ruling Letters, CBP is prohibited from altering its enforcement practices as to the Third Proviso specifically addressed in those letters."[57]  Defendants respond that "[t]here is no evidence that CBP modified or revoked a prior interpretive ruling, decision, or treatment.  Rather, it was Plaintiffs that modified and revoked their prior business operations when [ARM and ARM's affiliates] abandoned the use of the NBSR and began using the BCR . . . .  CBP's prior Ruling Letters never sanctioned the use of the BCR to meet the Third Proviso.  All of those letters predated even the existence of the BCR."[58]

---

[57] Docket 5 at 47 (Mem.).

[58] Docket 38 at 24 (Opp'n) (emphasis omitted).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 18 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 18 of 25

The Court finds that subsection (c)(1) is inapplicable to the current dispute. That statutory provision would appear to apply when CBP seeks to modify or revoke a letter ruling as to a particular entity or transaction. For much the same reasons that this Court found that Plaintiffs cannot stand in the shoes of ASC with respect to the tariff-filing requirement, Plaintiffs also cannot maintain a claim against CBP under subsection (c)(1) because CBP has never issued a prior interpretative ruling with respect to the BCR Route. Therefore, the Court finds Plaintiffs are not likely to succeed on Count II.

### 2. § 1625(c)(2)

In Count III, Plaintiffs assert that CBP's conduct violates § 1625(c)(2) because Plaintiffs' BCR Route is a "substantially identical" transaction to those that were authorized in previous CBP ruling letters and thus would have the effect of modifying the treatment previously accorded to those transactions.[59] Defendants respond that the prior ruling letters "dealt with facts significantly different. Specifically, the rail lines subject to the previous rulings involved established routes used to move rail cars in a continuous manner from one facility to another over many miles."[60] As such, Defendants assert that the BCR Route is not substantially identical to the routes approved in the letter rulings, maintaining that the rail segment of the BCR Route is not "transportation," and that the BCR rail segment

---

[59] Docket 5 at 48–50 (Mem.); Docket 47 at 35–38 (Reply).

[60] Docket 38 at 24 (Opp'n).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 19 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 19 of 25

is not a continuous carriage of goods such that it does not constitute a "through route."[61]

The Court finds that Plaintiffs have made a showing of at least serious questions going to the merits on this claim. As CBP stated in one of its letter rulings in 2004, "We have long held that 'in part over Canadian rail lines' is any use of Canadian rail."[62] Clearly, the BCR Route includes, in part, the use of a rail in Canada. At least in terms of functionality, the BCR rail line would appear to be substantially identical to other Canadian rail lines on which merchandise is carried solely to comply with the Third Proviso. And it is undisputed that CBP did not accord any notice or comment period prior to issuing the penalty notices in this case.

### C. Fifth Amendment Due Process

In Count IV, Plaintiffs assert that CBP's "new, secretively implemented interpretive guidance" concerning the Third Proviso failed to provide KIF with fair

---

[61] Docket 38 at 15–21 (Opp'n). To the extent that CBP's regulations appear to limit subsection (2)'s applicability solely to identical transactions, the Court agrees with the Federal Circuit's decision in *California Industrial Products, Inc. v. United States*, 436 F.3d 1341 (Fed. Cir. 2006), that such an interpretation is directly at odds with the statute itself.

[62] Docket 53-1 at 5 (CBP Ruling Letter No. 116021 (Jan. 21, 2004)) ("The Third Proviso does not have a *de minimus* requirement for 'in part over Canadian rail lines,' nor has CBP in the last twenty years read such a *de minimus* requirement into the statute." (collecting previous ruling letters)). While the *Horizon* court remanded Ruling Letter No. 116021 with respect to CBP's interpretation regarding the tariff-filing requirement, it upheld CBP's interpretation of the Third Proviso to not contain a prohibition on sham or commercially impractical Canadian rail movement. *See* 414 F. Supp. 2d at 55, n.6.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 20 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 20 of 25

notice of forbidden conduct as required by the Fifth Amendment's Due Process clause.[63]

Under the Due Process Clause, "laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."[64] "In the absence of notice—for example, where the regulation is not sufficiently clear to warn a party about what is expected of it—an agency may not deprive a party of property by imposing civil or criminal liability."[65] "To provide sufficient notice, a statute or regulation must 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly.'"[66]

While Plaintiffs have presented what could be considered valid questions with respect to CBP's interpretation of what constitutes "transportation" over a "through route," the same cannot be said with respect to the Third Proviso's rate-tariff requirement. For the reasons discussed above, a person of ordinary intelligence had a reasonable opportunity to know, especially in the wake of the *Horizon* litigation, that a rate tariff needed to be filed with the STB to comply with

---

[63] Docket 5 at 50–52 (Mem.); Docket 47 at 38–41 (Reply).

[64] *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).

[65] *Gen. Elec. Co. v. U.S. E.P.A.*, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995).

[66] *United States v. Approximately 64,695 Pounds of Shark Fins*, 520 F.3d 976, 980 (9th Cir. 2008) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 21 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 21 of 25

the Third Proviso.[67]   Plaintiffs even likely had direct knowledge of the tariff requirement and still failed to act accordingly.[68]   Accordingly, the Court finds that Plaintiffs have not demonstrated a likelihood of success on their due process claim at this time.[69]

### D. Eighth Amendment Excessive Fines

In Count V, Plaintiffs assert that the approximately $25 million in the Notices of Penalty issued to KIF violates the Excessive Fines Clause of the Eighth Amendment.[70]

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."[71]   "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some

---

[67] *See supra* pp. 12–17.

[68] *See* Docket 9 at 9–10, ¶ 22 (Andreassen Decl.) (declaring that ASC began contracting with ARM in 2009, only a few years after the *Horizon* court issued its 2006 decision regarding the rate-tariff-filing requirement).

[69] The Court reserves the question of whether CBP's ruling letter guidance regulations—and Plaintiffs' failure to seek that guidance with respect to the BCR Route—were sufficient to provide fair notice of conduct that is prohibited or otherwise factors into Plaintiffs' due process claim.  *See* 19 C.F.R. § 177.

[70] Docket 5 at 53 (Mem.).

[71] U.S. Const. amend. VIII.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 22 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 22 of 25

relationship to the gravity of the offense that it is designed to punish."[72]  "A fine is unconstitutionally excessive if . . . the payment is grossly disproportionate to the gravity of the defendant's offense."[73]

To assess Plaintiffs' claim, this Court must engage in a proportionality analysis between the size of the payment and the gravity of Plaintiffs' offense.  But it would be speculative for this Court to engage in that analysis when the underlying facts have not been established.  At this time, the Notices of Penalty are merely that—"notice[s] of a penalty incurred . . . and demand for payment."[74]  Plaintiffs state they intend to file a petition for remission or mitigation with CBP, which may result in penalties being remitted or decreased.[75]  And to actually obtain any

---

[72] *United States v. Bajakajian*, 524 U.S. 321, 334 (1998); *see id.* at 336 ("[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature."); *see also* 46 U.S.C. § 55102(c) (providing that "an amount equal to the value of the merchandise . . . may be recovered from any person transporting the merchandise or causing the merchandise to be transported" in violation of the Jones Act).

[73] *United States v. Mackby*, 261 F.3d 821, 829 (9th Cir. 2001).

[74] *See* Dockets 8-9, 8-10.

[75] Docket 5 at 13 (Mem.) ("KIF promptly will file a Petition for Remission or Modification with CBP challenging the Penalty Notices issued to it . . . ."); *see* 19 U.S.C. § 1618 (remission or mitigation of penalties); *see also* 46 U.S.C. § 55102(c) (noting that CBP "may" recover a penalty).

The Court notes that Plaintiffs, as of the date of oral argument, which was over a month after the first Notice of Penalty was issued to KIF, stated they had not yet filed a petition with CBP. *Compare* Docket 8-10 at 3 (Aug. 11, 2021 Notice of Penalty), *with* Sept. 17, 2021 Hr'g Tr. at 15:13–16.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 23 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 23 of 25

eventual payment from Plaintiffs, CBP will likely need to institute a collection action.[76]  Further, the gravity of Plaintiffs' offense, if any, is not known at this time.

For the foregoing reasons, Plaintiffs have not demonstrated on the current record a likelihood of success on their Eighth Amendment claim.[77]

### III.   The Remaining *Winter* Factors

The second *Winter* factor is whether Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief.[78]  The final two factors—balance of equities and the public interest—merge when the government is the opposing party.[79]

Plaintiffs raise valid questions as to whether CBP's Notices of Penalty are irreparably harming Plaintiffs' supply chain, jobs, and good will with customers, among other alleged injuries.[80]  However, even assuming, without deciding, that Plaintiffs have been irreparably harmed as a causal result of CBP's conduct,

---

[76] Docket 38 at 32 (Opp'n) ("This is not a collection action.").

[77] *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) ("A claim is fit for decision if the issues raised are primarily legal, *do not require further factual development*, and the challenged action is final." (emphasis added) (quoting *U.S. W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999))).

[78] *Winter*, 555 U.S. at 20.

[79] *Nken*, 556 U.S. at 435.

[80] Plaintiffs also contend that the deprivation of their constitutional rights under the Fifth and Eighth Amendments necessarily constitutes irreparable harm.  Docket 5 at 54 (Mem.).  However, Plaintiffs have not demonstrated a likelihood of success on their Fifth Amendment claim at this time, and their Eighth Amendment claim is premature.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 24 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 24 of 25

Plaintiffs have not demonstrated that they are in compliance with the Jones Act insofar as they have not demonstrated that a tariff for the BCR Route has been filed with the STB. In addition, the record indicates that Plaintiffs are not diligently pursuing all available administrative remedies. In these circumstances, the balance of equities and public interest tip decidedly against Plaintiffs, and the entry of a preliminary injunction is not warranted at this time.

## CONCLUSION

In light of the foregoing, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction at Docket 4 is DENIED without prejudice to renew at such time that Plaintiffs can demonstrate that they have filed a rate tariff for the BCR Route with the STB and that Plaintiffs are diligently pursuing available administrative remedies.

DATED this 28th day of September, 2021, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Temporary Restraining Order and Preliminary Injunction
Page 25 of 25

Case 3:21-cv-00198-SLG   Document 64   Filed 09/28/21   Page 25 of 25