# NEVILLE PETERSON LLP

1400 16ᵗʰ Street, N.W.  ▪  Suite 350  ▪  Washington, D.C.  20036
Telephone: (202) 861-2959  ▪  Fax: (202) 861-2924

MICHAEL K. TOMENGA
Direct:  (202) 776-1148
District of Columbia Bar
mtomenga@npwdc.com
www.npllptradelaw.com

October 1, 2021

**BY FEDEX AND EMAIL**
william.p.policano@cbp.dhs.gov

Mr. William P. Policano
Fines, Penalties & Forfeitures Officer
U.S. Customs & Border Protection
Department of Homeland Security
155 Gannett Drive, Room 55
South Portland, ME 04106-4110

Re:   **KLOOSTERBOER INTERNATIONAL FORWARDING LLC –
      PETITION Against Jonesport Penalty Case Nos. 2021-0122-300235-01
      (DUNCAN ISLAND), 2021-0122-300301-01 (GREEN COSTA RICA),
      and 2021-0122-300303-01 (UNKNOWN)**

Dear Mr. Policano:

On behalf of Kloosterboer International Forwarding LLC ("KIF"), we are filing this petition, pursuant to 19 U.S.C. § 1618 and 19 C.F.R. Part 171, against 3 penalty claims, referenced above, dated August 11, 17, and 26, 2021, respectively, issued to KIF for alleged violations of the prohibition against the coastwise transportation of merchandise in part by a non-coastwise qualified vessel prescribed by 46 U.S.C. § 55102, commonly known as the Jones Act.  Copies of the Penalty Notices issued on August 11 and 17, 2021, concerning the transportation of frozen seafood using the non-coastwise qualified vessels, DUNCAN ISLAND and GREEN COSTA RICA, respectively, are set forth at Exhibit ("Ex.") 1.  The total amount of the three claims is $29,863,182.55 ($14,748,549.51 + $10,184,801.77 + $4,929,831.27).

KIF never received a copy of the Penalty Notice dated August 26, 2021. KIF only just learned the penalty case number and claim amount of the August 26, 2021 claim from its surety who had no copy of the notice.  Without a copy of the Penalty Notice, KIF is unable to provide any substantive response.

New York Office
One Exchange Plaza
55 Broadway, Suite 2602
▪ New York, NY  10006

Philadelphia Office
Two Logan Square
100 N. 18ᵗʰ Street, Suite 333
Philadelphia, PA 19103

Seattle WA Office
999 Third Avenue, Suite 2525
Seattle, WA  98104

**EXHIBIT 1**
**Page 1 of 44**

Based on communications with other persons, we understand that U.S. Customs & Border Protection ("Customs" or "CBP") has issued at least 15 separate penalty claims against 15 different persons totaling more than $80,365,174.19, more than five times the amount of the $14.7 million claim against KIF, for merchandise transported on the vessel DUNCAN ISLAND.[1]

CBP has issued at least 12 separate penalty claims against 12 different persons totaling more than $54,867,822.77, also more than five times the amount of the $10.1 million claim against KIF for merchandise transported on the vessel GREEN COSTA RICA.[2]

Due to the lack of receipt of CBP's third Penalty Notice against KIF, and the lack of complete information about CBP's Penalty Notices issued separately against other parties for the same transportations, we are unable to determine whether and how much CBP's third claim against KIF may be duplicated by claims against others.

KIF is aware that CBP has issued at least 183 penalty claims against 29 different persons. The issuance of penalty case number *303* to KIF suggests that CBP may have issued as many as 303 or more overlapping penalty claims with similar substantive and procedural flaws as are described herein.

## I.     SUMMARY OF KIF's POSITION

The Penalty Notices received are factually defective, legally erroneous, in excess of statutory authority, and in violation of the 8th Amendment. Moreover, CBP is legally precluded from establishing a violation as to liquidated entries because CBP is bound by its admissibility determination that became final in liquidation. In addition, to the extent that CBP may be predicating its claims on an unpublished information reporting requirement, i.e., the voluntary

---

[1]     Penalty Notices concerning the vessel DUNCAN ISLAND have been issued to _____, penalty claim 2021-0122-300216-01 (*216*); _____ (*234*); KIF (*235*); _____ (*217*); _____ (*218*); _____ (*226*); _____ (*219*); _____ (*220*); _____ (*221*); _____ (*223*); _____ (*227*); _____ (*230*); _____ (*231*); _____ (case no. unknown); and _____ (*215*).

[2]     Penalty Notices concerning the vessel GREEN COSTA RICA have been issued to _____, penalty claim 2021-0122-300231-01 (*231*); _____ (*278*); KIF (*301*); _____ (*270*); _____ (*241*); _____ (*248*); _____ (*210*); _____ (*249*); _____ (*273*); _____ (*272*); _____ (*274*); and _____ (case no. unknown).

KIF customer and vendor names  redacted as  confidential business information and trade secrets

**EXHIBIT 1**
**Page 2 of 44**

filing of a rate tariff with another agency, the Surface Transportation Board ("STB"), that exempts the private transportations here from a rate tariff requirement, any penalty claim is barred by the Paperwork Reduction Act in the absence of the approval of the Office of Management and Budget. Furthermore, evidence demonstrates that CBP has known of the intended and actual transportation of the merchandise over the Bayside Canadian Railroad ("BCR") from an onsite visit and Bills of Lading presented on arrival since the BCR was constructed in 2012.

More specifically, the Penalty Notices should be withdrawn and cancelled, for the following reasons:

1. **The Penalty Notices Are Facially Defective.** The Penalty Notices lack the material facts required by 19 C.F.R. § 162.31(b) and allege facts that are inconsistent and nonsensical thus depriving KIF of a meaningful opportunity to respond to facts allegedly constituting the violation;

2. **The Exemption Under the Third Proviso of the Jones Act Applies**. No violation of the Jones Act occurred because the transportations at issue fall within the so-called Third Proviso exemption to the Jones Act prescribed by Congress in 46 U.S.C. § 55116 for transportations over Canadian rail, as interpreted by CBP in its long-standing administrative precedent;

3. **The Penalties Must Be Canceled Because Their Issuance Violates the Requirements of 19 U.S.C. § 1625**. The instant Penalty Notices represent the effective revocation of numerous CBP rulings and practices without providing notice and an opportunity to comment, in violation of 19 U.S.C. § 1625;

4. **CBP's Claims Exceed the Value of the Merchandise in Violation of Statute and the 8th Amendment**. The Jones Act monetary penalty is rooted in an in rem proceeding which limits CBP to one recovery not exceeding the value of the merchandise. CBP's separate penalty claims against different petitioners for the same transactions, are duplicative resulting in claims for amounts over five times the amounts authorized by statute. CBP lacks authority to issue such overstated penalty claims and such claims constitute a violation of the 8th Amendment to the U.S. Constitution as excessive fines;

5. **The Finality of CBP's Admissibility Decision in Liquidation is Binding on the Agency Precluding Establishment of a Jones Act Violation**. CBP's decision not to refuse admission or seize the merchandise and to admit it into U.S. commerce is an admissibility determination subsumed in the liquidation of the pertinent entries of merchandise that is final and binding on the agency pursuant to 19 U.S.C. § 1514(a). Having made a determination that the merchandise is admissible, CBP

is bound by that determination and is legally precluded from taking the position that the merchandise was inadmissible as transported in violation of the Jones Act;

6. **The Paperwork Reduction Act Bars Collection of a Penalty**. To the extent that CBP would now take the position that a rate tariff was required to be filed for information purposes with the STB covering the private carriage involved here, the Paperwork Reduction Act operates as a bar to collection of any penalty because such an information collection requirement lacked the approval of the Office of Management and Budget; and

7. **CBP's Actual Knowledge and Contributory Error Require Complete Remission.** To the extent that any violation may have occurred, complete remission of the penalties is required because the transportations were made with CBP's actual knowledge of complete and accurate facts of the transportation and contributory CBP error.

## II.    PERTINENT FACTS

CBP Headquarters' long-standing administrative precedent interpreting the Third Proviso to the Jones Act approves the transportation of merchandise between Alaska and the continental United States by non-coastwise qualified vessel when the transportation is in part over Canadian rail lines.[3] These rulings include approval of transportation from Bayside, New Brunswick, Canada, over Canadian rail lines to places in the eastern United States. All of the merchandise transported via the DUNCAN ISLAND and the GREEN COSTA RICA was transported between coastwise points in Alaska and the continental United States in part over Canadian rail lines. The Canadian rail line employed was the BCR. CBP officials examined the BCR during its construction in 2012[4] and approved its route and every bill of lading submitted with an entry of merchandise transported in part using a non-coastwise qualified vessel identified the BCR as the Canadian rail carrier.

## III.    CBP'S CLAIMS

CBP's Penalty Notices claim violation of the Jones Act, 46 U.S.C. § 55102 and the Customs Regulations, 19 C.F.R. § 4.80(b), for use of non-coastwise qualified vessels to transport frozen seafood from Anchorage, Alaska where the merchandise was allegedly laden

---

[3]    *See Customs Headquarters' Ruling Letters ("HRL") 112085*, March 10, 1992; *114012*, July 29, 1998; *114407*, July 23, 1998; *114507*, October 26, 1998; *114825*, October 14, 1999; *115124*, August 11, 2000; *115446*, August 9, 2001; *116021*, January 21, 2004; and *116185*, March 28, 2005.

[4]    *See* Declaration of M. Christy McManus at Ex. 2.

**EXHIBIT 1**
**Page 4 of 44**

# NEVILLE PETERSON LLP

on the vessel, then carried from Anchorage to Calais, Maine, where the merchandise was allegedly unladen from the vessel. The facts allege a single date as both the date of the transportation and the date of the first entry of the merchandise. In the case of the DUNCAN ISLAND, the date of transportation and first entry date is allegedly August 28, 2019. In the case of the GREEN COSTA RICA, the date of transportation and first entry date is allegedly March 9, 2020.

Inconsistent with the alleged transportation by vessel directly from Anchorage to Calais, both Penalty Notices go on to allege that the merchandise was laden at Dutch Harbor, Alaska, carried to Bayside, New Brunswick, Canada, and subsequently transported to Calais, Maine.

KIF is identified as having stored the merchandise at its cold storage facility at an unnamed location and is further named as a violator who transported the merchandise or caused the merchandise to be transported. KIF's role in the transportation or causing the transportation is unstated. No other violators are identified in the Penalty Notices.

The Penalty Notices assert that the penalty amount represents the appraised value of the merchandise. No entry numbers, entry dates, or appraised values per entry are provided to support the calculation alleged. The Penalty Notices do not inform KIF that claims for different amounts have been issued to other persons alleged to be violators for the same transportations or explain why penalty amounts claimed against other persons on the same transportations are different if also based on the appraised value of the merchandise. Assuming that CBP's assertion is correct that the claims against KIF represent the appraised value of the merchandise transported by the DUNCAN ISLAND and the GREEN COSTA RICA, then CBP is seeking to collect more than five times the appraised value of the merchandise by issuing separate and duplicative claims against so many alleged violators.

## IV.    THE PENALTY NOTICES ARE FACIALLY DEFECTIVE

CBP's Penalty Notices should be withdrawn because they are defective as a matter of law depriving KIF of its due process rights to be informed of the facts of CBP's claims allowing it to provide a complete, accurate, and meaningful response to CBP's claims. Customs Regulations prescribe the content of penalty notices. Pursuant to 19 C.F.R. § 162.31(b), penalty notices are to contain:

> (1) The provisions of law alleged to have been violated;
> (2) A description of the specific acts or omissions forming the basis of the alleged violations;
> (3) If the alleged violations involve the entry or attempted entry of merchandise;
>> (i) A description of the merchandise and the circumstances of its entry or attempted entry, and

(ii) The identity of each entry, if specific entries are involved; and
(4) If the alleged violations involve a loss of revenue,
(i) The total loss of revenue and how it was computed, and
(ii) The loss of revenue attributable to each entry, if readily susceptible to calculation.

The Penalty Notices issued to KIF lack two critical elements of proper notice of a penalty as prescribed in Customs Regulations, (1) a description of the acts or omissions forming the basis of the alleged violations under the circumstances and (2) the circumstances and identity of entry. More specifically, the Penalty Notices lack a description of the specific acts or omissions forming the basis of the violations when, as CBP is well-aware from the bills of lading presented with every entry, the merchandise has been transported over Canadian rail lines, namely the Bayside Canadian Railroad, in accordance with the terms of 46 U.S.C. § 55116, the recodification of the Third Proviso to the Jones Act, formerly codified at 46 U.S.C. § 883. *See* representative bills of lading at Ex. 3.

Section 55116 provides:

> Section 55102 of this title [which prescribes the penalty alleged] does not apply to the transportation of merchandise between points in the continental United States, including Alaska, over through routes in part over Canadian rail lines and connecting water facilities if the routes are recognized by the Surface Transportation Board and rate tariffs for the routes have been filed with the Board.

The enforcement mechanism to exclude from admission merchandise transported in violation of the Jones Act is seizure in accordance with the terms of section 55102(c) ("Merchandise transported in violation of subsection (b) is liable to seizure and forfeiture to the Government.").[5] The Penalty Notices lack any allegation of fact that the exemption from penalty liability under section 55102 provided by the Third Proviso does not apply to the

---

[5]     The seizure and forfeiture remedy makes merchandise transported in violation of the Jones Act "prohibited merchandise." *See HRL W231396*, February 5, 2007 ("Prohibited merchandise is that which cannot be lawfully imported into the United States under any circumstances.") and 19 C.F.R. § 146.1(a)(13) defining prohibited merchandise for foreign trade zone purposes ("'Prohibited merchandise' is merchandise the importation of which is prohibited by law on grounds of public policy or morals, or any merchandise which is excluded from a zone by order of the Board.").

**EXHIBIT 1**
**Page 6 of 44**

transportations involving the DUNCAN ISLAND and the GREEN COSTA RICA when the merchandise was transported over Canadian rail lines.

The Penalty Notices issued to KIF lack any identification of the other persons who CBP alleges participated in the violation occasioned by the transportation of the merchandise by the DUNCAN ISLAND and the GREEN COSTA RICA and the role of each of the other violators in transporting or causing the merchandise to be transported in violation of the Third Proviso of the Jones Act. By issuing separate penalties against each alleged violator for the same act, and by seeking duplicative penalty amounts from each one, CBP is abusing its administrative process, effectively withholding facts material to a defense from other alleged violators, and denying due process rights.[6]

To the extent that CBP alleges facts in the Penalty Notices, the facts are inconsistent and defy common sense. For example, each Penalty Notice identifies only a single date which is inconsistently characterized as both (1) the date the vessel engaged in transportation from Anchorage to Calais and (2) the first date of entry of the merchandise transported. The alleged voyage from Anchorage to Calais was purportedly via vessel, yet CBP's asserted single transportation and entry date would only fit a one-day trip by air. If CBP's claim against an Anchorage to Calais noncoastwise qualified vessel transportation is accurate, then it has issued its claim against the wrong person. KIF has never been involved with a noncoastwise qualified vessel transportation from Anchorage to Calais.

According to the Penalty Notices, the vessels engaged in both (a) an Anchorage to Calais transportation and (b) a Dutch Harbor to Bayside transportation, at the same time on the same day. The vessels purportedly both called upon the port of Calais and unloaded there and called upon Bayside New Brunswick, Canada and unloaded there. It is unstated whether the cargo was reloaded after unloading to accommodate the unloading at the second port. CBP's Penalty Notices have no statement of fact how the merchandise reached Calais from Bayside. The role of KIF in the transportation, apart from storing merchandise, is unstated.

---

[6]    CBP's abuse of process extends to its issuance of penalty claims against good-faith owners of the cargos of duty-free Products of American Fisheries who have posted entry bonds with CBP and are exempt from penalty pursuant to the terms of 46 U.S.C. § 502. CBP has also issued penalty claims not authorized by law against persons who did not cause a Jones Act violation, *i.e.*, a transportation between two coastwise points via a noncoastwise qualified vessel, including storage companies in Dutch Harbor and Bayside, who do not transport the merchandise, owners of vessels that unlade in Canada and truckers who only carry containers from Canada to the United States and do not transport the merchandise between coastwise points. Unfortunately, for these persons, the Government has not waived its sovereign immunity for claims grounded in tort, such as abuse of process. *See* 28 U.S.C. §§ 1346(a) and 1491(a).

As to the circumstances and identity of each entry, the Penalty Notices provide none of the circumstances of entry or entry numbers, as required, to accompany the date of first entry. Nor do they provide all of the pertinent entry numbers and dates as required by section 162.31(b)(3). To the extent that the absence of entry numbers implies that no entries were filed, CBP has issued its claims against the wrong person. KIF's understanding is that all of the merchandise transported through Bayside was properly entered.

In short, the Penalty Notice allegations, on their face, are inaccurate, self-contradictory, nonsensical, and grossly incomplete with respect to the sets of facts alleged to constitute a Jones Act violation. Accordingly, the Penalty Notices should be withdrawn immediately because the defects in the Penalty Notices deprive KIF of its due process rights leaving KIF unable to provide an accurate, complete, and meaningful response to CBP's demands for payment.

## V. THE EXEMPTION UNDER THE THIRD PROVISO TO THE JONES ACT APPLIES

When Alaska was granted statehood, Congress recognized the need to make special accommodations so that the state would be on an equal footing with other states notwithstanding its geographical location. The purpose of the Alaska Statehood Act was to assure that the new state would be economically viable. Alaska Statehood Act, § 1, et seq., 48 U.S.C. preceding section 21. *United States v. Atlantic Richfield Co*., 435 F.Supp. 1009 (D.AK. 1977). As part of the Alaska Statehood Act, in section 27, Congress amended the Third Proviso to the Jones Act, then codified at 46 U.S.C. § 883, to continue a previously granted exception to its reservation of the coastwise trade to U.S.-flag, U.S.-built vessels that were never sold foreign. The use of non-coastwise vessels was particularly important because virtually all goods had to be moved to and from Alaska by vessel and the availability of coastwise vessels and their cost would impose a serious economic disadvantage on the state. Thus, the Third Proviso was a grant of trade to noncoastwise qualified vessels limited only by the requirement that their voyages would terminate in Canada for connection to Canadian rail lines. Congress was concerned about ensuring that existing rail routes would be preserved to avoid a reduction in service and constriction of the transportation channel. The Federal Maritime Commission ("FMC"), and later the Interstate Commerce Commission ("ICC") regulated service and reductions in service. Existing rail lines recognized by the FMC were grandfathered into the law. But Congress did not limit the Canadian rail lines to existing rail lines recognized by the FMC. Congress allowed additional rail lines to be so recognized in the future using the language "for which routes rate tariffs have been or shall hereafter be filed". The purpose of the Third Proviso is thus clear from its terms -- Congress was ensuring that service over Canadian rail lines would be broadly allowed. Any Canadian rail line having once been recognized by the FMC would be permissible for satisfaction of the terms of the Third Proviso. The FMC could prevent termination of service to the disadvantage of users upon their objection.

In the era of deregulation, with the transfer of authority from the ICC to the STB and the exemption of transportations from STB regulatory jurisdiction, CBP properly interpreted the Third Proviso to achieve its intended broad effect to ensure economical trade with Alaska through the use of noncoastwise qualified vessels. Consistent with that purpose, since 1992, CBP has consistently interpreted the language in 46 U.S.C. § 55116, the recodified Third Proviso to the Jones Act, to allow merchandise to be transported over Canadian rail lines when the merchandise is exempt from the filing of a rate tariff under STB regulations.

The principles established in CBP's rulings are, among others:

**No rate tariff need be filed with the STB for a transportation subject to an STB filing exemption. Third Proviso is satisfied as long as the merchandise is transported over Canadian rail.** *See Customs Headquarters Ruling Letter ("HRL") 112085*, March 10, 1992; *HRL 114012*, July 29, 1998; *HRL 114407*, July 23, 1998; *HRL 114507*, October 26, 1998; *HRL 114825*, October 14, 1999; *HRL 115124*, August 11, 2000; *HRL 115446*, August 9, 2001; *HRL 116021*, January 21, 2004; and *HRL 116185*, March 28, 2005.

**The Third Proviso has no *de minimis* distance requirement**. *See HRL 105604*, April 30, 1982; *HRL 113141*, December 2, 1991; *HRL 113365*, March 10, 1995; *HRL 114407*, July 23, 1998; and *HRL 115124*, August 11, 2000.

In 2005, Horizon Lines raised an administrative and judicial challenge to CBP's rulings issued to Sunmar objecting to the position that no rate tariff need be filed with the STB when the transportations were exempt from tariff filing by the STB. *See Horizon Lines v. United States*, 414 F. Supp. 2d 46 (D.D.C. 2006) ("*Horizon I*"). Horizon Lines obtained a judicial decision in *Horizon I* that rejected CBP's legal reasoning and the accuracy of its factual basis for the *Sunmar* rulings and ordered the case remanded to CBP for further proceedings.[7] Significantly, the *Horizon I* Court expressly did not vacate the Sunmar rulings and similar rulings. . *See Horizon I, 414 F. Supp. 2d at 54*, fn.5 ("Moreover, the *Sunmar* rulings retain legal effect even if Sunmar does not make use of the rights conferred therein, as evidenced by

---

[7]     In its decision on a request for reconsideration, the Court made clear that its objection was not to the conclusion reached by CBP, but rather to its reasoning:

> [t]he extent of the inconsistency and error throughout CBP's *Sunmar* rulings rendered the Court unable to conclude that the agency had "examine[d] the relevant data and articulated a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Horizon Lines LLC v. United States*, 429 F.Supp. 2d 92, 99 (D.D.C. 2006) ("*Horizon II*").

the fact that any substantially identical CBP's ruling will be revoked if the Court vacates the *Sunmar* rulings."). Notably, the Court remanded the case without vacating the rulings.

The remedy of judicial remand without vacatur leaves the agency's decision in effect to allow the agency to provide a better explanation for its action. *See*, Tatham, Stephanie J., Attorney Advisor, Administrative Conference of the United States, *The Unusual Remedy of Remand Without Vacatur*, Final Report, January 3, 2014 at 1 ("Judicial remand of an agency decision that permits the action to remain in place is known as remand without vacatur. *** By the early 2000s, this remedial technique had become a 'familiar feature of administrative law practice.'"; citing Ronald M. Levin, *"Vacation" at Sea: Judicial Remedies and Equitable Discretion in Administrative Law*, Duke L.J. 291, 295 (2003).[8]

---

[8]     *Cf. Kloosterboer International Forwarding LLC, et al v. United States of America*, Order Re Motion for Temporary Restraining Order and Preliminary Injunction, ECF 64, Case No.3:21-cv-00198-SLG ("*Kloosterboer*"), citing *Sea-Land Service, Inc. v. United States*, 239 F.3d 1366, 1372 (Fed. Cir. 2001) ("*Sea-Land*") (holding no notice-and-comment requirement under 19 U.S.C. § 1625(c) when any change in CBP's position was mandated by judicial decision). The *Kloosterboer* Court's reliance on the *Sea-Land* decision is misplaced. In contrast to the *Horizon I* decision, brought under the Administrative Procedures Act and decided on the agency record, the appellate decision of the U.S. Court of Appeals for the Federal Circuit in *Sea-Land* followed a trial *de novo* in the U.S. Court of International Trade which decided the law on a summary judgment motion in the absence of disputed material facts. The Federal Circuit in *Sea-Land* found no 1625(c) proceeding necessary because the Court's earlier decision in *Texaco Marine Services, Inc. v. United States*, 44 F.3d 1539, 1534-44 (Fed. Cir. 1994) ("*Texaco*"), also following a trial *de novo* and decided on a summary judgment motion on undisputed material facts, overturned the legal interpretation at issue, deciding the law. Unlike *Horizon I*, *Texaco* was decided under a <u>different standard of review</u> and did not involve a remand without vacatur and an order for further agency proceedings in light of <u>factual questions</u> and inconsistent reasoning. Further, *Horizon I* did not result in a final decision subject to appeal, as was the case in *Sea-Land* and *Texaco*. Thus, in *Texaco*, the Federal Circuit was not limited to an administrative record and review of agency conduct under *Skidmore* deference and reasonableness standards. The Federal Circuit in *Texaco* decided the law on certain facts, explicitly overturning CBP's legal position. By remanding the matter for CBP's further proceedings, the *Horizon I* Court left CBP free to find and confirm facts and articulate alternative reasoning for its legal position. Significantly, the *Horizon I* Court's finding that the STB might accept a voluntary rate filing for informational purposes did not answer the additional questions (1) whether a rate tariff filed with the STB for informational purposes is allowed in light of other statutory constraints and (2) whether a rate tariff filed with the STB for informational purposes is required for compliance with the Third Proviso as properly interpreted. An appealable final remand decision or a section 1625(c) proceeding was required

# NEVILLE PETERSON LLP

The *Horizon I* Court imposed no deadline on CBP to complete its further proceedings. CBP was free to reaffirm its *Sunmar* rulings on different grounds, modify its position on whether and when a rate tariff need be filed with the STB for compliance with the Third Proviso, or withdraw the rulings. CBP chose a fourth option, to do nothing. Despite its private (unpublished) advice to present counsel, by letter of June 13, 2007, of its intent to "abide by" the *Horizon I* opinion in the future, CBP did not ever formalize and publish that position. It conducted no further proceedings and did not issue a remand decision to the *Horizon I* Court. CBP did not modify or revoke the *Sunmar* rulings or similar rulings pursuant to the procedures prescribed in 19 U.S.C. § 1625(c) or even without pursuing such proceedings. CBP left the rulings on its CROSS website with no indication they were modified or revoked for the importing community and CBP internally to read and rely on. Accordingly, the *Sunmar* rulings and similar rulings remained in full legal effect.

Article I, Section 8 of the U.S. Constitution establishes the principle of uniformity in duties, imports, and excises throughout the United States. That principle extends throughout CBP's administration of the Tariff Act and Navigation Laws. In the face of concerns raised by the importing community about a lack of transparency and uniformity in the application of CBP's changes of position, Congress, in the Customs Modernization Act, amended 19 U.S.C. § 1625 to require CBP to provide the "advice necessary for importers and exporters to comply with the Customs laws." *See* 19 U.S.C. 1625(e). "Informed compliance" means that "[i]mporters have the right to be informed about Customs' rules and regulations, and its interpretive rulings and directives, and to expect certainty that the ground rules would not be unilaterally changed by Customs without the proper notice and opportunity to respond." *Precision Specialty Metals*, 25 CIT at 1388, 182 F. Supp. 2d at 1328 (quoting *Customs Modernization and Informed Compliance Act: Hearing on H.R. 3935* Before the Subcomm. on Trade of the H. Comm. on Ways and Means, 102d Cong. 91 (1992) (statement of Commissioner Carol Hallett, United States Customs Service)).

By regulation, the principles in CBP's rulings are binding on the agency in transactions involving the same circumstances until modified or revoked. *See* 19 C.F.R. § 177.9(a). To this day, these rulings appear published in CBP's CROSS [Customs Rulings Online Search System] database without any annotation that the rulings have been modified or revoked. Notably, the

---

for CBP to formalize whatever change in position (or not) that CBP might decide. CBP's failure to provide public notice of any change in its legal position in the ensuing 15 years bars CBP's claims here to the extent CBP relies on *Horizon I*.

very purpose of the CROSS database is to fulfill CBP's responsibility under the Customs Modernization Act to promote informed compliance among the importing community.[9]

The *Horizon I* Court objected to CBP's reasoning and fact finding supporting its position in the *Sunmar* Rulings. But it stopped short of vacating those rulings and similar rulings. The Court did not object to CBP's position, only its fact-finding and its reasoning. If CBP wishes to change its position in the *Sunmar* rulings and similar rulings, CBP is obligated to follow the procedures in section 1625 which it has not done. Having elected not to transmit amended rulings to the *Horizon I* Court for its approval, which might have led to a judicial revocation pursuant to 19 C.F.R. § 177.12(a)(iv), CBP was required to follow section 1625(c).

Under the circumstances, the *Sunmar* rulings and similar rulings bind CBP to its holding that no rate tariff need be filed when the transportations are exempt from the STB's rate tariff filing requirement. The transportations of merchandise by the DUNCAN ISLAND and the GREEN COSTA RICA involved private carriage negotiated in contracts and did not occur as a result of a carrier holding itself out as a common carrier. Thus, the transportations were not subject to regulation by the STB and were exempt from rate tariff filing requirements. *See Horizon II*, 429 F.Supp. 2d at 95.

## VI. THE PENALTIES MUST BE CANCELED BECAUSE THEIR ISSUANCE VIOLATES THE REQUIREMENTS OF 19 U.S.C. § 1625

The instant penalty and others issued to parties participating in the Bayside Route program are unlawful because they represent the effective revocation of numerous CBP Rulings and practices without providing notice and an opportunity to comment, in violation of Section 625 of the Tariff Act, as amended [19 U.S.C. §1625].

Numerous published CBP rulings indicate that transportation operations substantially identical to the Bayside Route program comply with the Third Proviso to the Jones Act, and that the ocean leg of transportation may be performed by non-coastwise-qualified vessels. *See,*

---

[9] "U.S. Customs and Border Protection **(CBP) issues binding advance rulings and other legal decisions** in connection with the importation of merchandise into the United States. **Advance rulings provide the international trade community with a transparent and efficient means of understanding how CBP will treat a prospective import or carrier transaction**. * * * With a view to promoting transparency, **CBP also makes available to the public various other guidance including the following: the Customs Rulings On-Line Search System (CROSS – a database of published rulings)**, the Customs Bulletin and Decisions, pertinent Federal Register Notices, CBP Directives and Handbooks, Informed Compliance Publications, and a summary of laws enforced by CBP." Emphasis added. *See* Customs webpage "Rulings and Legal Decisions" available at https://www.cbp.gov/trade/rulings , last visited September 29, 2021.

*e.g.*, *HRL 116185 of March 8, 2015; HRL 116021 of January 21, 2004; HRL 115446 of August 9, 2001; HRL 115124 of August 11, 2000.* These rulings (save for *HRL 116021*, which is referenced) appear on CBP's CROSS rulings database, available at https://rulings.cbp.gov/home. There is nothing to indicate that any of the rulings have been revoked or modified in any way.

Section 177.9(a) of the Customs Regulations [19 C.F.R. §177.9(a)] indicates that published CBP Rulings "represent[] the official position of the Customs Service with respect to the particular transaction or issue described therein and [are] binding on all Customs Service personnel in accordance with the provisions of this section until modified or revoked." That regulation further provides that "In the absence of a change of practice or other modification or revocation which affects the principle of the ruling set forth in the ruling letter, that principle may be cited as authority in the disposition of transactions involving the same circumstances". CBP published its binding rulings on the CROSS system as part of its statutory obligation, under the Customs Informed Compliance and Simplification Act of 1993, to make available information necessary for "informed compliance", so that importers and others may exercise "reasonable care" in the conduct of Customs business. This statutory obligation is codified at Section 625(a) of the Tariff Act of 1930, *as amended* [19 U.S.C. §1625(a)]:

> (a) Publication
>
> Within 90 days after the date of issuance of any interpretive ruling (including any ruling letter, or internal advice memorandum) or protest review decision under this chapter with respect to any customs transaction, the Secretary shall have such ruling or decision published in the Customs Bulletin or shall otherwise make such ruling or decision available for public inspection.

Thus, petitioner (or any other interested party) seeking guidance concerning whether transportation over the Bayside Route using foreign flagged vessels was in compliance with the Third Proviso to the Jones Act would have concluded that the transportation was lawful and permissible. That is true of anyone who consults the CROSS system today.

The Courts have long recognized that CBP and other agency rulings are one of the principal means by which the Jones Act and its provisos are administered. *See, e.g.*, *Shipbuilders Council of America v. United States*, 868 F.2d 452 (D.C. Cir. 1989); *Shipbuilders' Council of America v. United States*, 673 F. Supp. 2d 438 (E.D. Va. 2009); *International Raw Materials Ltd. v. Baker*, 19 U.S. Dist. LEXIS 4560 (E.D. Pa. 1988). Indeed, so important are rulings to the administration of the Jones Act, that long before 19 U.S.C. §1625(a) was enacted in its current form, the Court of Appeals for the District of Columbia Circuit, in *American Maritime Association v. Blumenthal*, 590 F.2d 1156, 1165 (D.C. Cir. 1978) indicated that because of the severe consequences for violation of the Jones Act, the requirement that "persons

should receive clear and unequivocal warning before facing exposure to harsh penalties is especially applicable here, where the penalty for noncompliance is enormous.".

Moreover, Section 177.9(b)(4) of the Customs Regulations [19 C.F.R. §177.9(b)(4)] indicates that:

> (4) Carrier rulings. Each ruling letter setting forth the applicability of the navigation laws to a vessel will be applied only with respect to transactions involving operations identical to those set forth in the ruling letter. Each ruling letter setting forth a determination as to whether or not the primary object of a contemplated voyage is coastwise transportation in violation of 46 U.S.C. 289 will be binding on the United States Customs Service with respect to any transaction identical to the facts and circumstances described in the ruling request and undertaken in reliance on the ruling letter.

CBP rulings are also dispositive with respect to transactions which are substantially identical to those described in the ruling itself. In this regard, in *Kloosterboer Int'l Fwdg v. United States*, Court No. 3:21-cv-00198 (D. Ak.)(September 28, 2021), the United States District Court for the District of Alaska held that carriage of fish along the Bayside Route is functionally identical to the situations described in the published Customs Headquarters Rulings noted above. ["At least in terms of functionality, the BCR rail line would appear to be substantially identical to other Canadian rail lines on which merchandise is carried solely to comply with the Third Proviso. And it is undisputed that CBP did not accord any notice or comment period prior to issuing the penalty notices in this case"].

In addition to establishing the importance of publishing rulings for the guidance of the public, Section 625 of the Tariff Act imposes strict "notice and comment" requirements before CBP rulings, or practices based on them, may be revoked or modified. Section 625(c) of the Act [19 U.S.C. §1625(c)] provides:

> **(c) Modification and revocation**
>
> A proposed interpretive ruling or decision which would—
>
>> (1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or
>>
>> (2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;
>
> shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After

consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

In this case, CBP did not provide any advance notice, or opportunity for public comment, regarding any revocation or modification of the Customs Headquarters Rulings noted above, nor any practice based on those rulings. In this regard, actions taken by CBP in contravention of those rulings – including the instant penalty assessment and similar penalty assessments on parties involved in the Bayside Route system, are contrary to the statutory requirement and are null and void.

To show a violation of §1625(c)(2), petitioner must meet a four-part test. *See Kahrs Int'l, Inc. v. United States*, 33 C.I.T. 1316, 1354 (2009). First, a "treatment [was] previously accorded by the Customs Service." Id.; 19 U.S.C. § 1625(c)(2). Second, the subject entries at issue here are "substantially identical transaction[s]" to the previous treatment. *Kahrs Int'l, Inc. v. United States*, 33 C.I.T. 1316, 1354 (2009). Third, that CBP has made a "'proposed interpretive ruling or decision' that would have the effect of modifying the previous treatment with respect to the entries in question." *Id*. Fourth, that the proposed interpretive ruling or decision violated the notice and comment requirements of Section 1625(c). *Id*.; *see also Int'l Custom Prods., Inc. v. United States*, 33 C.I.T. 79, 86-87 (2009).

All of these requirements are met in the instant case. CBP has previously accorded Third Proviso treatment to goods imported into the United States after being transported along the Bayside Route, allowing their admission continuously since 2012 without question. Second, as the Court noted in *Kloosterboer, supra*, transactions using the Bayside Route are substantially identical to those circumstances described in prior, published rulings. Third, the seizure of cargoes transported along the Bayside Route, or the assessment of penalties for the value of those cargoes, clearly has the effect of modifying the treatment of these transactions. Fourth, it undisputed that no notice and comment proceedings were had as required by 19 U.S.C. §1625(c).

The consequences of failing to follow the "notice and comment" ruling revocation or modification procedures set out in Section 1625(c) are clear; any actions taken in derogation of the rulings is null and void. In *International Custom Products Inc. v. United States*, 748 F.3d 1182 (Fed. Cir. 2014), an importer held a CBP ruling providing a certain tariff classification for its sauce product. CBP assessed the products with a higher rate of duty, notwithstanding that it had taken no action to publicly revoke or modify the ruling in accordance with 19 U.S.C.§1625(c). The Court of International Trade held that CBP's failure to accord the importer the procedural safeguards guaranteed by §1625(c) invalidated CBP's assessments. That was sufficient ground to invalidate CBP's action; the CIT did not consider the merits of the classification involved. The Federal Circuit upheld the CIT's decision.

**EXHIBIT 1**
**Page 15 of 44**

Similarly, the imposition of the instant penalty represents a derogation from the prior treatment accorded to imports of merchandise transported over the Bayside Route. CBP issued no interpretive decision, nor did it revoke any of the other published rulings on which petitioner and similarly situated persons relied upon as their basis for "informed compliance". The penalty should be canceled on that ground alone.

Finally, certain of the rulings referenced above were reviewed by the United States District Court for the District of Columbia in *Horizon Lines LLC v. United States*, 414 F. Supp. 2d 46 (D.D.C. 2006). The Court there found that the rulings were incorrect, to the extent they held that persons invoking the Third Proviso were excused from the requirement of filing a rate tariff with the Surface Transportation Board (STB) of the Department of Transportation. However, the Horizon court did not revoke or set aside the rulings, but remanded the matter to CBP, with directions for CBP to take action consistent with the court's opinion. Presumably, CBP would or should have amended the rulings to require the filing of a tariff with the STB[10]. CBP, curiously, took no action. However, it is important to note that nothing done by the *Horizon* court could reasonably be interpreted as "judicial decision which has the effect of overturning the Customs position" pursuant to 19 C.F.R. §177.12(a)(iv).

The penalty should be avoided because its issuance violates 19 U.S.C. § 1625.

## VII. CBP'S CLAIMS EXCEED THE VALUE OF THE MERCHANDISE IN VIOLATION OF STATUTE AND THE 8TH AMENDMENT TO THE U.S. CONSTITUTION

As noted above, the Jones Act, prohibits, with certain exceptions, the transportation of goods between two coastwise points by foreign-flag vessels. The statute prescribes penalties for violations:

(c) Penalty.—

Merchandise transported in violation of subsection (b) is liable to seizure by and forfeiture to the Government. Alternatively, an amount equal to the value of the merchandise (as determined by the Secretary of Homeland Security) or the actual cost of the transportation, whichever is greater, may be recovered from any person transporting the merchandise or causing the merchandise to be transported.

46 U.S.C. §55102(c).

In this case, and other penalty cases initiated in August 2021 relating to the movement of merchandise over the Bayside Route, the government has elected to pursue monetary

---

[10]     As of September 30, 2021, a rate tariff has been filed with the STB respecting the Bayside Route.

penalties in lieu of forfeiture of goods allegedly carried in violation of the Jones Act. However, CBP has to date made more than 183 penalty assessments, for aggregate amounts in excess of $400 million – far in excess of the value of the merchandise subject to CBP's claims, which are understood to extend to transactions over the past five years.[11]

The harmful effect of CBP's heavy-handed approach has been well-documented. An essential trade route for Alaskan seafood which has been in operation for over 20 years has effectively ground to a halt. Frozen fish inventories are piling up in Canadian warehouses, and on-board vessels, and there is no other route with capacity to handle the trade. Motor carriers have refused to transport the seafood to the United States, fearful of being assessed with penalty. American fish-processing plants have been forced to idle and placed in danger of closing.[12]

Assessing fines in excess of the value of the merchandise carried on the Bayside route is both violative of statute and excessive, in violation of the Eighth Amendment to the United States Constitution.

The Jones is Act descended from a maritime forfeiture statute, which permitted the seizure of cargoes transported in foreign bottoms in violation of the Act's proscription. Congress, in allowing for the assessment of an *in personam* monetary penalty, clearly did not intend to permit CBP, by eschewing forfeiture for monetary penalties, to acquire assets of greater value than the merchandise transported. Indeed, 46 U.S.C. §55102(c) indicates that, as an alternative to forfeiture, CBP may pursue "an [singular] amount equal to the value of the merchandise". The law does not provide for attempting to recover multiples of the value of the merchandise, as CBP seeks to do here. That CBP directs its assessments to multiple parties involved in transportation along the Bayside Route does not change this fact; it merely inflicts statutory and constitutional injury against all of the recipients of the penalty notices.

Furthermore, interpreting an asset forfeiture statute as allowing recovery of multiple penalties on a "joint and several" liability theory, or as allowing multiple recoveries of an amount equal to the value of property subject to forfeiture, contravenes the United States Supreme Court's decision in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017). In that case, the government sought penalties under the Comprehensive Forfeiture Act of 1984 for the sale of a methamphetamine precursor from two brothers – one, the owner of a store which sold the materials, and the other an employee of the store with no ownership interest. Specifically, the government sought forfeiture judgments of $269.751 against each brother, such amount representing "any property constituting, or derived from, any proceeds the person obtained,

---

[11]  *See also,* Seafood Source News, *"CBP Issues USD 350 Million in Jones Act Fines, Threatening Alaskan Seafood Trade"* September 3, 2021, available at CBP issues USD 350 million in Jones Act fines, threatening Alaskan seafood trade (seafoodsource.com).

[12] *See Id*.

directly or indirectly, as the result of" certain drug-related crimes. The brother who owned the store pleaded guilty and agreed to pay $200,000. The brother who was an employee of the store, and who did not profit from the illegal transactions, merely drawing a salary from the store, pleaded not guilty and was convicted at trial. The government sought to recover $69,751 from the second brother.

The Supreme Court unanimously ruled that the Comprehensive Forfeiture Act did not contemplate the recovery of the value of forfeitable property from more than one person, nor did it contemplate the recovery of more than the value of forfeitable property. The Court noted that when forfeiture statutes allowing the seizure of certain property are amended to incorporate *in personam* penalty elements, there was no expansion of liability beyond the value of forfeitable property:

> Traditionally, forfeiture was an action against the tainted property itself and thus proceeded in rem; that is, proceedings in which "[t]he thing [was] primarily considered as the offender, or rather the offence [was] attached primarily to the thing." *The Palmyra*, 12 Wheat. 1, 14, 6 L.Ed. 531 (1827). The forfeiture "proceeding in rem st[ood] independent of, and wholly unaffected by any criminal proceeding in personam " against the defendant. Id., at 15. Congress altered this distinction in enacting § 853 by effectively merging the in rem forfeiture proceeding with the in personam criminal proceeding and by expanding forfeiture to include not just the "thing" but "property ... derived from ... any proceeds" of the crime. § 853(a)(1). But as is clear from its text and structure, §853 maintains traditional in rem forfeiture's focus on tainted property unless one of the preconditions of § 853(p) exists. For those who find it relevant, the legislative history confirms as much: Congress altered the traditional system in order to "improv[e] the procedures applicable in forfeiture cases." S.Rep. No. 98–225, p. 192 (1983). By adopting an in personam aspect to criminal forfeiture, and providing for substitute-asset forfeiture, Congress made it easier for the Government to hold the defendant who acquired the tainted property responsible. Congress did not, however, enact any "significant expansion of the scope of property subject to forfeiture." *Ibid*.

137 S. Ct. at 1635-36.

Similarly, there is no indication that in amending the Jones Act to allow recovery of monetary amounts in lieu of the forfeiture of cargo, Congress anticipated any "significant expansion of the scope of property subject to forfeiture". Because CBP assessments relating to the Bayside Route are, in the aggregate, many multiples of the value of the merchandise allegedly transported contrary to law, all of the assessments, including the instant one, are excessive in violation of the statute.

"Because of the punitive nature of the penalty, the Jones Act must be strictly construed." *See Am. Mar. Ass'n v. Blumenthal*, 590 F.2d 1156, 1165 (D.C. Cir. 1978) ("It is well understood

that statutes imposing a forfeiture, particularly the horrendous penalty of forfeiture of an entire cargo worth millions of dollars, are to be construed strictly"). In this and other penalty claims related to transport over the Bayside Route, CBP has adopted an expansive, unwarranted interpretation of the statute, one which is refuted by the language of the statute itself and by the principle set out by the Supreme Court in *Honeycutt, supra.*

And, indeed, by issuing penalties in an aggregate amount which exceeds the value of the merchandise allegedly transported in violation of the Jones Act, CBP has arguably violated the Eighth Amendment of the Constitution of the United States, which provides:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

As indicated in judicial proceedings regarding the instant penalties, the gravamen of CBP's complaint is that the operators of the seafood transportation route relied upon *HRL 115124* of August 11, 2000, which held that the transportation of seafood from Dutch Harbor, Alaska to Calais, Maine, using foreign-flag vessels, and with rail transportation in Canada, was authorized under the Third Proviso to the Jones Act. That ruling remains in effect, unrevoked and unmodified, and accessible on CBP's CROSS rulings database. CBP argued in court that the operators of the route should have reported to the agency the change in rail carrier effected in 2012.

However, it is likely that, had the change been reported, the transportation would have been allowed to continue uninterrupted. Quite recently, in *Kloosterboer Int'l Fwdg v. United States*, Court No. 3:21-cv-00198 (D. AK.)(September 28, 2021), the United States District Court for the District of Alaska held:

> The Court finds that Plaintiffs have made a showing of at least serious questions going to the merits on this claim. As CBP stated in one of its letter rulings in 2004, "We have long held that 'in part over Canadian rail lines' is any use of Canadian rail." Clearly, the BCR Route includes, in part, the use of a rail in Canada. At least in terms of functionality, the BCR rail line would appear to be substantially identical to other Canadian rail lines on which merchandise is carried solely to comply with the Third Proviso. And it is undisputed that CBP did not accord any notice or comment period prior to issuing the penalty notices in this case.

Assuming that any violation occurred in this case – and petitioner denies any violation or liability of any kind – it was a matter of reporting. The Supreme Court has already spoken to the influence of the Eighth Amendment in the context of reporting violations.

In *United States v. Bajakajian,* 524 U.S. 321 (1998) ("*Bajakajian*"), the Supreme Court ruled that a forfeiture penalty of $357,144, imposed upon an international traveler for failure to

declare that he was carrying $10,000 or more in cash or negotiable instruments, was held to violate the Eighth Amendment. The court noted that the claimed violation, of failing to make a report as required by the Bank Secrecy Act, did not deprive the government of anything other than the information sought. The traveler was guilty of no unlawful activity; had he reported the presence of the cash, he would have been free to go on his way, cash in hand. The Supreme Court held that imposition of the full forfeiture penalty was an excessive fine, noting that the penalty "must bear some relationship to the gravity of the offense it is designed to punish." 524 U.S. at 324.

Assuming a violation occurred in this case, the Jones Act already speaks to the maximum penalty – forfeiture of the merchandise or its value. By imposing penalties aggregating a multiple of the maximum allowable penalty, CBP is violating the Eighth Amendment and seeking to impose an excessive fine. If a forfeiture penalty was ruled excessive in *Bajakajian*, surely the instant multi-confiscatory assessments being made to those involved in transportation of fish over the Bayside Route, is excessive and unconstitutional.

Nor is it a defense that the penalties have not been collected, or that suits have not been commenced for their collection. The Eighth Amendment prohibits the "imposition" of Excessive Fines. CBP is engaged in a serious deprivation of Eighth Amendment rights to petitioner and to every other entity to whom a notice of penalty relating to the Bayside Route was issued.

In *Helwig v. United States*, 188 U.S. 605 (1903), CBP imposed monetary fines for alleged violations of the Customs laws. The Supreme Court rejected the notion that the assessments were anything other than a penalty, noting "the amount imposed was so large in proportion to the value of the merchandise imported, as to show beyond doubt that it was a sum imposed not, in fact, as a duty upon an imported article, but as a penalty and nothing else." *Id* at 611. In this case, the sums demanded are admittedly styled as penalties making application of the Eighth Amendment beyond contestation.

The penalty demand must be revoked as excessive, unlawful, and unconstitutional

## VIII. THE FINALITY OF CBP'S ADMISSIBILITY DECISION IN LIQUIDATION IS BINDING

CBP's claims are barred as to liquidated entries. Any claimed amounts relating to liquidated entries should be cancelled accordingly. This is because the finality of liquidation bars CBP from establishing a violation of the Jones Act with respect to merchandise admitted under entries that have liquidated. CBP cannot collect a penalty the establishment of which is barred by law.

The merchandise transported by the DUNCAN ISLAND and the GREEN COSTA RICA was carried in containers from the BCR to the U.S. port of entry by truck. Each bill of lading presented at the time of arrival of the trucks specifically identified the BCR and its route. *See* Ex. 3. It is estimated that CBP received some 15,000 such bills of lading since the BCR has been in operation. Furthermore, CBP officials visited the BCR at Bayside while it was under construction in 2012 and knew the route, length, and facilities involved. *See* Ex. 2 – McManus Declaration. As a consequence, CBP had actual knowledge of the transportations over the BCR and accurate and complete information in the documents presented at the time of entry for the admission of the merchandise. In the face of this knowledge and documentation, CBP did not seize the merchandise transported on the DUNCAN ISLAND and the GREEN COSTA RICA but rather admitted it into U.S. commerce.

The U.S. Court of Appeals for the Federal Circuit has held that the admissibility determinations of CBP are subsumed into CBP's decision on liquidation. *United States v. Utex International Inc.*, 857 F.2d 1408, 1409-10 (Fed. Cir. 1988) ("It is long-standing customs law that when goods are finally liquidated, they are deemed admissible … citations omitted]".) Liquidation is "final and binding" on CBP pursuant to the terms of 19 U.S.C. § 1514(a). With exceptions not relevant here, section 1514(a) provides "**decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to**" \*\*\* "**the liquidation of an entry**" \*\*\* "**shall be final and conclusive upon all persons (including the United States and any officer thereof**) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title." Emphasis added.

Assuming a normal liquidation cycle of 314 days, merchandise covered by entries imported in August 2019 or March 2020 would be liquidated. Accordingly, CBP would be barred by the finality of liquidation from collecting any penalty and the claims should be dismissed.

## IX. THE PAPERWORK REDUCTION ACT BARS COLLECTION OF A PENALTY

To the extent that CBP would take the position that a rate tariff must be filed voluntarily with the STB on exempt transportations, we point out that such a requirement would be an information collection requirement for which the Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3512, precludes collection of any penalty absent approval of the information collection requirement by the Office of Management and Budget ("OMB"). While OMB has approved the STB's rate tariff filing requirements where the STB has jurisdiction to regulate the transportations, OMB has not approved a CBP requirement that rate tariffs be filed with the STB on transportations exempt from regulation.

Title 44, U.S.C. section 3502(3)(A) defines the term "collection of information" to mean "the obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for either—"

   i. answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons, other than agencies, instrumentalities, or employees of the United States; or

   ii. answers to questions posed to agencies, instrumentalities, or employees of the United States which are to be used for general statistical purposes; and [(b) shall not include a collection of information described under section 3518(c)(1) [not applicable]".

More than 10 persons can be involved in one transportation reliant on the Third Proviso to the Jones Act whose information may need to be reported in a rate tariff for information purposes only. The Third Proviso, by its terms, is not limited to merchandise transported in common carriage. Merchandise may be transported in common carriage or private carriage at separate times over the same Canadian rail lines or at the same time in the same or separate rail car or the same or separate containers. The STB's position is clear that it does not regulate private carriage. But assuming that CBP's Penalty Notices indicate some agency decision that a rate filing with the STB is required, it is unclear from the Penalty Notices who must file a rate tariff. It is unclear whether CBP's position is that only one rate tariff per route need be filed with the STB or whether its position is that any person who wants to rely on the Third Proviso must file a rate tariff regardless of the existence of a filing already covering the intended route. By its issuance of penalty claims to more than 10 persons for each transportation in the instant cases, CBP may be taking the position that any person who is a participant to a Third Proviso transportation must file a separate rate tariff for informational purposes for the portion of service it provides even if the service is performed outside the United States. Because CBP is imposing a claim against KIF on the basis of cold storage of the merchandise transported, it would appear that CBP may consider each person against whom a penalty claim has been issued must file voluntarily a rate tariff for information purposes on exempt transportations or service. The PRA flatly prohibits a penalty for an information collection requirement without OMB approval. 44 U.S.C. § 3512 states:

(a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if—

(1) the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or

**EXHIBIT 1**

(2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.

(b) **The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto**.

44 U.S.C. § 3512, emphasis added.

The terms of the PRA make clear that even if CBP sought to predicate its claims on an obligation on KIF of which CBP has published no notice, the PRA would operate as a complete bar to any penalty.

## X. CBP'S ACTUAL KNOWLEDGE AND CONTRIBUTORY ERROR REQUIRE COMPLETE REMISSION

Complete remission of the penalty claims is required because the alleged violations result solely from CBP's errors. CBP has issued guidelines for mitigation of a Jones Act penalty when a violation occurs for reasons other than "commercial expedience." *See Customs Administrative Enforcement Process: Fines, Penalties, Forfeitures and Liquidated Damages*, Informed Compliance Publication Feb. 2004). Greater mitigation is appropriate where additional mitigation factors are present. Mitigation factors include contributory Customs' error; and Customs' knowledge is an extraordinary mitigating factor. *See e.g.*, *Customs Administrative Enforcement Process: Fines, Penalties, Forfeitures and Liquidated Damages* (February 2004) at 28.

No Jones Act violation occurred here because the DUNCAN ISLAND and GREEN COSTA RICA transportations were compliant with the requirements of the Third Proviso as interpreted in CBP's published binding rulings. To the extent that CBP internally believed its formal position had changed, any noncompliance with CBP's unpublished interpretation is entirely a result of CBP's error. CBP bears the blame for its failure to publish any modification of its own longstanding published administrative precedent and for leaving its longstanding precedent resident on its CROSS database for 15 years after *Horizon I*, with no annotation of modification or revocation, as legal authority to guide the actions of the public and its own officials. Moreover, with respect to the transportation at hand, CBP had actual knowledge of accurate and complete facts about the construction and use of the BCR from an onsite visit and the commercial documentation. *See* Exs. 2 and 3. The purported violations alleged, i.e., the unlading at a second coastwise point, could not have occurred but for CBP's contributory error in admitting the merchandise. CBP has admitted merchandise transported in the same manner for nearly 30 years. At any point in time, the refusal of admission of one entry of merchandise would have brought any unpublished change in CBP's legal position to light. Instead, CBP

Mr. William P. Policano, FP&F Officer
October 1, 2021
Page 24

failed in its responsibility to determine whether the merchandise was admissible under its unpublished interpretation of the law and waited years longer to act before asserting excessive penalties of more than five times the value of the shipments to a range of persons across the supply chain, grinding that supply chain to a halt with the issuance of over 300 penalty claims. Such abusive penalty actions against a major industry sector are unprecedented in the 230-year history of the agency and incompatible with the agency's responsibilities established by Congress under the Customs Modernization Act. Immediate and complete remission is appropriate under the circumstances.

## XI.    CONCLUSION

For the host of reasons discussed above, CBP's claims should be withdrawn and cancelled. CBP's claims, as stated, are legally defective. Even more though, no factual basis exists for the violations alleged inasmuch as the transportations at issue complied with the Third Proviso as interpreted by CBP in precedent that continues to bind the agency. Even assuming for sake of argument that a violation occurred, the manner of issuance of CBP's claims, which duplicate the value of the merchandise in separate penalty notices issued to many persons, results in grossly excessive claims that contravene the terms of the Jones Act penalty provision and the prohibition of the 8th Amendment on the imposition of excessive fines. Both the finality of liquidation and the Paperwork Reduction Act operate as bars to collection of any penalty as to liquidated entries and to any claims predicated on the lack of a rate tariff filed with the STB. Complete remission of any penalty properly alleged is also appropriate given CBP's actual knowledge of the operations of the BCR and its participation in the transportations involved, CBP's failure to publish any public notice of a modification or revocation of its position after *Horizon I and II*, even without notice and opportunity for comment as required by section 1625(c), and in light of CBP's admission of the merchandise when presented with complete and accurate information as to the transportation of the merchandise with every entry filed.

## NEVILLE PETERSON LLP

In the event that CBP would disagree with any of the positions of the petitioner, we request the opportunity for a meeting to make a further presentation.

Respectfully submitted,

By:     Michael K. Tomenga, Esq.
         John M. Peterson, Esq.

Exhibits

cc:     Paul Pizzeck, Esq., Chief, Penalties Branch, Border Security and Trade Compliance Division, Regulations & Rulings, Office of Trade, CBP HQ (by     email: paul.pizzeck@cbp.dhs.gov )
Charles R. Steuart, Esq., Director, Border Security and Trade Compliance Division, Regulations & Rulings, Office of Trade, CBP HQ (by email: charles.r.steuart@cbp.dhs.gov )
portlandmainejonesact@cbp.dhs.gov

**KLOOSTERBOER INTERNATIONAL FORWARDING LLC**

**Petition Against Customs Jonesport Penalty Case Nos.**

**2021-0122-300235-01**
**2021-0122-300301-01**
**2021-0122-300303-01**

## TABLE OF EXHIBITS

1. Penalty Notices in Case Nos. 2021-0122-300235-01 and 2021-0122-300301-01

2. Declaration of M. Christy McManus on Customs onsite visit to the Bayside Canadian Railroad ("BCR")

3. Representative Bills of Lading stating the use of the BCR

| DEPARTMENT OF HOMELAND SECURITY U.S. CUSTOMS AND BORDER PROTECTION **NOTICE OF PENALTY OR LIQUIDATED DAMAGES INCURRED AND DEMAND FOR PAYMENT 19 USC 1618 AND 19 USC 1623** | **Case Number** 2021012230023501 |
|---|---|
| | **Port Code and Name** 0122 JONESPORT |
| | 91207377100 |

**TO:  KLOOSTERBOER INTERNATIONAL FORWARDING LL**
2025 1st Ave
Ste 1205
Seattle, WA 98121-3135

Demand is hereby made for payment of <u>$14,748,549.51</u> , representing ☑ Penalties ☐ Liquidated damages assessed against you for violation of law or regulation, or breach of bond, as set forth below:

On 08/28/2019, the vessel Duncan Island with country of flagging BAHAMAS, which is not documented for the coastwise trade, engaged in the transportation of the following merchandise Frozen Seafood between ANCHORAGE where the merchandise was laden and CALAIS where it was unladen, both points in the United States. You are liable for a civil monetary penalty for this activity equal to the value of the merchandise transported or the value of the transportation, whichever is greater.

The subject merchandise, which was stored at your cold storage facility, was originally laden onto a non-coastwise qualified vessel at Dutch Harbor, Alaska, United States; shipped by the non-coastwise qualified vessel to Bayside, New Brunswick, Canada; and subsequently transported to Calais, Maine, United States. Both Dutch Harbor and Calais are points embraced within the coastwise laws of the United States. Accordingly, you transported or caused the transportation of merchandise between coastwise points in the United States by way of a foreign port in violation of 46 U.S.C. § 55102 and 19 C.F.R. § 4.80. The violation date noted above is the first date the merchandise was entered at the port of Calais, Maine. The penalty amount represents the appraised value of the merchandise. Original documents should be mailed to the address indicated below. You may also contact CBP regarding this notice at portlandmainejonesact@cbp.dhs.gov. 1902 35-21.

| LAW OR REGULATION VIOLATED | | | BOND BREACHED |
|---|---|---|---|
| 46 USC 55102, 19 CFR 4.80(b), 19 CFR 113.64 | | | **Bond Activity Type: 3** **Bond #:** 9912DV216 |
| **Description of Bond** International Carrier | **Bond Type** 8 | **Amount** $100000.00 | **Bond Effective Date** 06/08/2012 |

**Name and Address of Principal on Bond**
KLOOSTERBOER INTERNATIONAL FORWARDING LL
2025 1st Ave
Ste 1205
Seattle, WA 98121-3135

| **Name and Address of Surety on Bond** American Alternative Insurance 1475 E Woodfield Rd Ste 500 Schaumburg, IL 60173-4903 | **Surety Identification No** 036 |
|---|---|

| DEPARTMENT OF HOMELAND SECURITY | Case Number |
|---|---|

# DEPARTMENT OF HOMELAND SECURITY
# U.S. CUSTOMS AND BORDER PROTECTION
### NOTICE OF PENALTY OR LIQUIDATED DAMAGES INCURRED
### AND DEMAND FOR PAYMENT
### 19 USC 1618 AND 19 USC 1623

**Case Number**
2021012230023501

**Port Code and Name**
0122 JONESPORT

91207377100

**TO:  KLOOSTERBOER INTERNATIONAL FORWARDING LL**
2025 1st Ave
Ste 1205
Seattle, WA 98121-3135

If you feel there are extenuating circumstances, you have the right to object to the above action. Your petition should explain why you should not be penalized for the cited violation. Write the petition as a letter or in legal form; submit in duplicate, addressed to the Fines, Penalties and Forfeitures Officer at: **FPF OFFICE, 155 GANNETT DRIVE, RM 55, SOUTH PORTLAND, ME 04106-4110.**

Unless the amount herein demanded is paid or a petition for relief is filed with the FP&F officer within the indicated time limit, further action will be taken in connection with your bond or the matter will be referred to the Justice Department. Payment may be made through pay.gov or by remitting to the address above. Any partial payments will not be considered an accord and satisfaction of the claim.

**TIME LIMIT FOR PAYMENT OR FILING PETITION FOR RELIEF**

60 days from the date of this notice

| Signature **WILLIAM POLICANO** | Title **FPF Officer (207) 771-3600** | Date **08/11/2021** |
|---|---|---|

| DEPARTMENT OF HOMELAND SECURITY<br>U.S. CUSTOMS AND BORDER PROTECTION<br>NOTICE OF PENALTY OR LIQUIDATED DAMAGES INCURRED<br>AND DEMAND FOR PAYMENT<br>19 USC 1618 AND 19 USC 1623 | **Case Number**<br>2021012230030101 |
|---|---|
| | **Port Code and Name**<br>0122 JONESPORT |
| | 91207377100 |

**TO:** KLOOSTERBOER INTERNATIONAL FORWARDING
LL
2025 1st Ave
Ste 1205
Seattle, WA 98121-3135

Demand is hereby made for payment of $10,184,801.77 , representing ☑ Penalties ☐ Liquidated damages
assessed against you for violation of law or regulation, or breach of bond, as set forth below:

On 03/09/2020, the vessel Green Costa Rica with country of flagging BAHAMAS, which is not documented for
the coastwise trade, engaged in the transportation of the following merchandise Frozen seafood between
ANCHORAGE where the merchandise was laden and CALAIS where it was unladen, both points in the United
States. You are liable for a civil monetary penalty for this activity equal to the value of the merchandise
transported or the value of the transportation, whichever is greater.

The subject merchandise, which was stored at your cold storage facility, was originally laden onto a non-
coastwise qualified vessel at Dutch Harbor, Alaska, United States; shipped by the non-coastwise qualified vessel
to Bayside, New Brunswick, Canada; and subsequently transported to Calais, Maine, United States. Both Dutch
Harbor and Calais are points embraced within the coastwise laws of the United States. Accordingly, you
transported or caused the transportation of merchandise between coastwise points in the United States by way of
a foreign port in violation of 46 U.S.C. § 55102 and 19 C.F.R. § 4.80. The violation date noted above is the first
date the merchandise was entered at the port of Calais, Maine. The penalty amount represents the appraised
value of the merchandise. Original documents should be mailed to the address indicated below. You may also
contact CBP regarding this notice at portlandmainejonesact@cbp.dhs.gov. 2001 37-17

| LAW OR REGULATION VIOLATED | | BOND BREACHED | |
|---|---|---|---|
| 46 USC 55102, 19 CFR 4.80(b), 19 CFR 113.64 | | **Bond Activity Type:** 3<br>**Bond #:** 9912DV216 | |
| **Description of Bond**<br>International Carrier | **Bond Type**<br>8 | **Amount**<br>$100000.00 | **Bond Effective Date**<br>06/08/2012 |
| **Name and Address of Principal on Bond**<br>KLOOSTERBOER INTERNATIONAL FORWARDING LL<br>2025 1st Ave<br>Ste 1205<br>Seattle, WA 98121-3135 | | | |
| **Name and Address of Surety on Bond**<br>American Alternative Insurance<br>1475 E Woodfield Rd<br>Ste 500<br>Schaumburg, IL 60173-4903 | | **Surety Identification No**<br>036 | |

CBP Form 5955A

EXHIBIT 1

| DEPARTMENT OF HOMELAND SECURITY U.S. CUSTOMS AND BORDER PROTECTION | Case Number 2021012230030101 |
|---|---|
| **NOTICE OF PENALTY OR LIQUIDATED DAMAGES INCURRED AND DEMAND FOR PAYMENT** **19 USC 1618 AND 19 USC 1623** | **Port Code and Name** 0122 JONESPORT |
| | 91207377100 |

**TO:**  KLOOSTERBOER INTERNATIONAL FORWARDING LL
2025 1st Ave
Ste 1205
Seattle, WA 98121-3135

If you feel there are extenuating circumstances, you have the right to object to the above action. Your petition should explain why you should not be penalized for the cited violation. Write the petition as a letter or in legal form; submit in duplicate, addressed to the Fines, Penalties and Forfeitures Officer at: FPF OFFICE, 155 GANNETT DRIVE, RM 55, SOUTH PORTLAND, ME 04106-4110.

| Unless the amount herein demanded is paid or a petition for relief is filed with the FP&F officer within the indicated time limit, further action will be taken in connection with your bond or the matter will be referred to the Justice Department. Payment may be made through pay.gov or by remitting to the address above. Any partial payments will not be considered an accord and satisfaction of the claim. | **TIME LIMIT FOR PAYMENT OR FILING PETITION FOR RELIEF** 60 days from the date of this notice |
|---|---|
| **Signature** WILLIAM POLICANO | **Title** FPF Officer (207) 771-3600 | **Date** 08/17/2021 |

David Karl Gross, ABA #9611065
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
Telephone: 907.276.1550
dgross@bhb.com

Edward E. McNally, ABA #9203003
Marc E. Kasowitz *(Admitted Pro Hac Vice)*
Hector Torres *(Admitted Pro Hac Vice)*
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Telephone: 212.506.1700
emcnally@kasowitz.com
mkasowitz@kasowitz.com
htorres@kasowitz.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KLOOSTERBOER INTERNATIONAL ‍)
FORWARDING LLC and ALASKA ‍)
REEFER MANAGEMENT LLC, ‍)
‍)
    Plaintiffs, ‍)
‍)
    vs. ‍)    Case No.: 3:21-cv-00198-SLG
‍)
UNITED STATES OF AMERICA, ‍)
U.S. DEPARTMENT OF HOMELAND ‍)
SECURITY, U.S. CUSTOMS AND ‍)
BORDER PROTECTION, and TROY A. ‍)
MILLER, U.S. Customs and Border ‍)
Protection Acting Commissioner, in his ‍)
official capacity, ‍)
‍)
    Defendants. ‍)

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-cv-00198-SLG
DECLARATION OF M. CHRISTY MCMANUS    PAGE 1 OF 1

EXHIBIT 1

## DECLARATION OF M. CHRISTY MCMANUS

Pursuant to 28 U.S.C. § 1746, I, M. Christy McManus, declare as follows:

1.      I am the General Manager of Storage and Service Solutions in Bayside, New Brunswick, Canada. I have been the General Manager of Storage and Service Solutions since 2015.

2.      From 1989 until early 2015, I worked at Woodstock Cold Storage [1990] Ltd. ("WCS"), now operating as Kloosterboer Bayside Cold Storage ("KBB"). I became Operations Manager of KBB in 2006, and General Manager of KBB in or about 2010. I served as General Manager of KBB from in or about 2010 until my departure in early 2015. Peter and Beverly Frye, the owners of WCS before its sale to KBB, were my parents.

3.      I have personal knowledge of the facts set forth in this declaration.

4.      During my time as General Manager of KBB, U.S. Customs and Border Protection ("CBP") officers were on site at KBB and on site at the Bayside Canadian Railway ("BCR"), which is located adjacent to KBB, more than once.

5.      CBP officers were on site before, during, and after construction of the BCR in Bayside. CBP did some observation one morning after the BCR had been operating for a couple of months. The ramp that would have allowed the trucks to exit the flat rail cars was not installed once the BCR learned from CBP that as soon as the rail cars touched the stops on the south end of the rail trackage, their destination had been reached. Thus, it was deemed irrelevant where the trucks were discharged. The driver

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
DECLARATION OF M. CHRISTY MCMANUS                                          PAGE 1

had to exit the truck during the rail movement to ensure that it was just the truck and trailer being transported in accordance with standard rail safety procedures.

6. At no time did the CBP ever express any issues or concerns with the use, length, or directionality of the BCR. It is my understanding that the CBP was aware that the BCR was being used for purposes of compliance with the Jones Act.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Bayside, New Brunswick, Canada
September 17, 2021

M. Christy McManus

**EXHIBIT A**
**Page 3 of 3**

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198-SLG
DECLARATION OF M. CHRISTY MCMANUS                                    PAGE **EXHIBIT 1**
**Page 33 of 44**

Case 3:21-cv-00198-SLG   Document 65-1   Filed 10/02/21   Page 33 of 44

# Kloosterboer Bayside

| | | | |
|---|---|---|---|
| Trucker: **TLC** | | Truck B/L#: **C 9** | |
| Tractor: **JOHN COOK** | | Trailer: **TIH745 NB** | |
| Time: | | Date: **9-Apr-12** | |

## STRAIGHT BILL OF LADING - ORIGINAL - NOT NEGOTIABLE
[Issued in accordance with the regulations made under the public Commercial Vehicle Act]

| TEMPERATURE |
|---|
| **-4 DEG.** |
| (FAHRENHEIT) |
| Seal Number |
| **584862** |

Shipper: **AMERICAN SEAFOODS COMPA**  Vessel: **CHAITEN**  Voyage: **1201**

Address: **2025 First Ave. Suite 900, Seattle  WA  98121**

Received at point of origin on this date from shipper, subject to classifications and tariffs filled by the carrier in effect on the date of receipt by the carrier.  The goods herein described, in apparent good order, except as noted [content and condition of contents of the packages unknown] consigned and destined as shown herein, which the said carrier [the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under contract] agrees to carry at its filled rate, and deliver to the consignee at the destination indicated herein, if within the scope of its own lawful authority.  Otherwise to deliver to another carrier to deliver to said destination.

It is agreed as to each carrier of all or any of the goods over all or any portion of the route to destination, and to each party at any time interested in all or any of the goods, that each service to be performed hereunder shall be subject to all terms, conditions and limitations [which are hereby incorporated by reference in this short form bill of lading and have the same force and effect as if the same were severally, fully and specifically set forth herein.]

1. Of the form of straight bill of lading prescribed by the regulations in force as of the date of this contract and made pursuant to the Public Commercial Vehicle Act, R.S.O. 1970, ch 375 when the said goods are transported by carrier subject to that act and regulations or

2. Of Bill of Lading form RT-200 approved by the Quebec Transportation Board, August 5th, 1960, when applicable, and in accordance with the bill of lading, relevant tariffs or provincial regulations of other provinces in Canada, when said goods are carried by motor carrier

| Routing: | Kloosterboer Bayside  to | Bayside Canadian Railway North | JOHN COOK |
|---|---|---|---|
| | Bayside Canadian Rai to | Bayside Canadian Railway South | BCR B/L#  **0406202** |
| | Bayside Canadian Rai to | NEW BEDFORD, MA | |

| | |
|---|---|
| Consigned to: **AMERICAN SEAFOODS INT'L** | Ship B/L#: **CH1201-BAY-10  C** |
| ~~AMERICAN SEAFOODS COMPANY~~ | M/R#: **30/ROV 12-02** |
| Street Address: **AMERICAN SEAFOODS INTERNATIONAL** | F/V: **OCEAN ROVER** |
| **40 HERMAN MELVILLE BLVD** | P.O.#: **051794, d/o#85000505** |
| Town/Province: **NEW BEDFORD, MA** | Phone: **508-997-0103** |
| | **Nancy** |

| Pieces | Description of Goods | Marks | Size | Weight |
|---|---|---|---|---|
| 1150 | **FROZEN POLLOCK BLOCK DEEPSKIN** | **AS2678** | **DS** | **56,917 LBS NET** |
| | **ON 23 PALLETS** | | | |
| | | | | |
| | | | | |
| | | | | |
| | Loaded Temperature: **-4 F** | | | |
| 1150 | BROKER: DERINGER | | | |

| Pallets: | IN: | **0** | TYPE: | **4-Way** | OUT: | **23** | COST EACH | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | **56,917 LBS NET** |

1. Any agreement covering transportation of the goods described herein with other than due dispatch, or for specific time, must be endorsed on this bill of lading and signed by both parties.

2. When a shipment is at "OWNER'S RISK" the words "A T  O W N E R ' S  R I S K" must be entered and initialled by both parties thereto.

| Bill to: |
|---|
| TRANSPORT LOGIS CONS |
| **TLCL00006526 1**  FILER CODE **SSI** |

Declared valuation  $ _____  maximum liability $1.50 per pound unless declared valuation states otherwise.

SHIPPER:  TRUCKER:  RECEIVER:

**EXHIBIT 2**
**EXHIBIT 1 of 5**
**Page 34 of 44**
Case 3:21-cv-00085-SLG Document 73-3  Filed 10/07/21  Page 34 of 44

COMBINATION: INVOICE - DECLARATION BY FOREIGN SHIPPER

| 1. EXPORTER, SHIPPER, SELLER, AND MAILING ADDRESS | 2. SHIPPER'S REF. NO. |
|---|---|
| AMERICAN SEAFOODS CO.<br>C/O   KLOOSTERBOER BAYSIDE<br>BAYSIDE NB E5B 2Y2<br>FDA# 1525256B312<br>TEL. NO. | 051794, d/o#850- |

**⊒DERINGER**

| 3. CONSIGNEE AND MAILING ADDRESS |
|---|
| AMERICAN SEAFOODS INT'L<br>AMERICAN SEAFOODS INTERNATIONAL<br>40 HERMAN MELVILLE BLVD<br>NEW BEDFORD, MA<br>IRS NO. |

| 4. CONSIGNEE'S OR BUYER'S REF. NO. | 5. FREIGHT AMOUNT, IF ANY, |
|---|---|
| CH1201-BAY-10   C | INCLUDED IN PRICES BELOW $ |

| 6. BUYER ( IF OTHER THAN CONSIGNEE) | 7. TERMS OF SALE - DELIVERY - PAYMENT |
|---|---|
| AMERICAN SEAFOODS COMPANY<br>2025 First Ave.  Suite 900<br>Seattle  WA        98121<br>AMESEA0002 | F.O.B.( )  PLANT ( )  DESTINATION ( )   OR |

| 8 |  |
|---|---|
| | ☐ SHIPPER (INC.) ☐ SHIPPER (NOT INC.) ☒ BUYER ☐ CONSIGNEE |

| 9. LOCAL CARRIER | 10. PARTIES TO THE TRANSACTION ARE: | Deringer to provide Cargo Insurance ? |
|---|---|---|
| TLC | ☒ RELATED ☐ NOT RELATED | Or for the account of. ☐ Yes ☐ No |

| 11. EXPORTING CARRIER | 12. FROM CITY/PROVINCE OF LADING | 14. INVOICE DATE | 15. DATE OF SALE |
|---|---|---|---|
| TLC | BAYSIDE NB | 4/9/2012 | |

| 13. U.S. PORT OF ENTRY | 16. EXCHANGE RATE | 17. CURRENCY OF VALUE |
|---|---|---|
| CALAIS ME | | US FUNDS |

DECLARATION BY FOREIGN SHIPPER (COMPLETE IF GOODS DESCRIBED BELOW ARE OF U.S ORIGIN AND VALUE EXCEEDS $1000.00

I, _____ , DECLARE THAT TO THE BEST OF MY KNOWLEDGE AND BELIEF THE ARTICLES HEREIN SPECIFIED ARE PRODUCTS OF 5THE UNITED STATES, THAT THEY WERE EXPORTED FROM THE UNITED STATES, FROM THE PORT OF _____ ON OR ABOUT _____ AND THAT THEY ARE RETURNED WITHOUT HAVING BEEN ADVANCED IN VALUE OR IMPROVED IN CONDITION BY ANY PROCESS OF MANUFACTURE OF OTHER MEANS.

SIGNATURE _____  CAPACITY _____

| country of manufacture or growth | MARKS AND NUMBERS | NUMBER AND KIND OF PACKAGES | | SHIPPING WEIGHT |
|---|---|---|---|---|
| ⬇ | 30/ROV 12-02 | 1,150 cs | | 26,450 GROSS KG |

| | DESCRIPTION OF GOODS | HTS NUMBER | QUANTITY | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|---|
| US | FROZEN POLLOCK BLOCK DEEPSKIN<br>FDA 16AFD28<br>Kloosterboer Bayside B/L    **# 9**<br>CHAITEN<br>F/T OCEAN ROVER  FDA 117 269 0395<br>Caught and Produced at Sea by<br>US Flagged Vessels. Products of<br>American Fisheries. Origin USA. | 9815002000 | 25,817 NET KG | 3.8586 | $99,618.76 |

| TRANSPORT LOGIS CONS | Filer Code |
|---|---|
| **TLCL00006526 1** | 551 |

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

If the production of these goods involved furnishing goods or services to the seller (e.g. assists such as dies,molds,tools,engineering work, and the value is notincluded in the invoice price. give explanation, if no assists state so. This invoicemust specifically state that the applicable duty or feefor ANT. Dumping duties,countervailing duties,merchandise processing fees,harbor maintenance fees,beef,pork and honey feesare included in the invoice price.

SHOW DISCOUNTS ABOVE
ABOVE PRICES INCLUDE
DUTY  CLEARANCE  FREIGHT

| ESTIMATED FREIGHT CHARGES | NAME OF RESPONSIBLE EMPLOYEE OR EXPORTER (PRINT) |
|---|---|
| TO POINT OF EXIT $   150       OR TO DESTINATION $ | Cheryl R. Anthony |
| GIVE NAME AND ADDRESS IF DIFFERENT FROM EXPORTER BOX ABOVE | SIGNATURE _____ |

To the best of his knowledge and belief of the preparer this invoice is true and complete and discloses the true prices, values, quantities,rebates,drawbacks,fees,commissions ____

DS-080 REV. 03/96 1238838                                                                 FORM SUPPLIED BY A. N. DERINGER, INC.

EXHIBIT 2
EXHIBIT 2 of 5
Page 35 of 44

Case 3:12-cv-01198-SEC Document 87-1 Filed 10/10/21 Page 35 of 44

# ACE Electronic Manifest Cover Sheet
## JOHN W COOK TRUCKING

**Trip Number:** TLCL04061202

**Port of Entry:** 0115 - CALAIS, ME

**Driver's Name:** (Person in Charge) DARRELL MELVIN COOK

**Crew Member(s):**

**Date Crossing:** 04/09/2012 **ETA: 8:00 AM** (Eastern Standard / Daylight Time)

**Conveyance Plate Info:** TRACTOR (SEMI), 5KJJABAV87PY54360, PTA544, NB, CA

**Seal Number(s):**

**Additional Conveyance Plate Info:**

**Equipment Plate Info:** CONTROLLED TEMPERATURE TRAILER, TIH745, NB, CA

**Seal Number(s):**

**Additional Equipment Plate Info:**

| Shipment Control Number | Pieces and Gross Weight of Packages | | Entry Number |
|---|---|---|---|
| TLCL000065261 | 1150 CTN | 56917 LB | |

Cheryl Anthony 467-5410

## ACE ELECTRONIC MANIFEST
**FAST ID = 42700009042701**

Page: 1 of 1

EXHIBIT 2
Exhibit 3 of 5
Case 3:12-cv-00185-GEG Document 63 Filed 10/02/21 Page 36 of 44
Page 36 of 44

# ACE ELECTRONIC MANIFEST
## FOR VESSEL UNDER FIVE TONS, FERRY, TRAIN, CAR, VEHICLE, ETC

19 CFR 123.4, 123.7, 123.61

Approved OMB No. 1651-0001

| CBP Manifest | / In Bond Number |
|---|---|
| 04061202 | / |
| Page No. | 1 of 1 |

| 1. Name or Number and Description of Importing Conveyance | 2. Name of Master or Person in Charge | |
|---|---|---|
| TRACTOR (SEMI), 5KJJABAV87PY54360, PTA544, NB, CA<br>Seal Number(s): | DARRELL MELVIN COOK | |
| **3. Name and Address of Owner**<br>JOHN W COOK TRUCKING, 24 STEEVES CRESCENT, WELLS, NB, CA | **4. Foreign Port of Lading**<br>Bayside, NB | **5. U.S. Port of Destination**<br>CALAIS, ME |
| **6. Port of Arrival**<br>CALAIS, ME | **7. Date of Arrival**<br>4/9/2012 8:00:00 AM   Trip #: TLCL04061202 | |

| Column No. 1 | Column No. 2 | Column No. 3 | Column No. 4 | Column No. 5 |
|---|---|---|---|---|
| Bill of Lading or Marks & Numbers or Address of Consignee on Package | Plate and Equipment Number | Number and Gross Weight (in Kilos or Pounds) of Packages and Description of Goods | Name of Consignee | For Use By CBP Only |
| TLCL000065261 | TIH745 / 939 TIH745 | 1150 CTN   56917 L    FROZEN POLLOCK BLOCK DEEPSKIN | AMERICAN SEAFOODS INTERNATIONAL, 40 HERMAN MELVILLE BLVD., NEW BEDFORD, MA, US, 02741 | |

## CARRIER'S CERTIFICATE

To the Port Director of CBP, Port of Arrival:

The undersigned carrier hereby certifies that _____ of _____

is the owner or consignee of such articles within the purview of section 484, Tariff Act of 1930.

I certify that this manifest is correct and true to the best of my knowledge.

Date _____. Master or Person in charge _____

(Signature)

**EXHIBIT 2**



# Intermodal Bill of Lading

| | | | |
|---|---|---|---|
| **Date:** | 9 April , 2012 | **Time:** | 08:45:00 |
| **Trailer#:** | TIH 745 NB | **Carrier:** | John Cook |
| **Truck B/L #:** | C9 | **Movement Ref:** | 04061202 |

**Bayside, NB -** *North Bayside #1* **-TO-** *South Bayside #2* _ *And return*

**Consignee**

American Seafoods International
40 Herman Mellville Blvd
New Bedford, MA
02741-2087

**Shipper**

American Seafoods Company
2025 First Ave, Suite 900
Seattle, WA
98121

*Freight Bill Party - Bill to Shipper*

**SLC - Shipper Load and Count**

**Shippers Weight Agreement**
**Gross:** 71,917
**Tare:** 15,000
**Net** 56,917 Prepaid

**In Bond Type:**

**Cargo Description:** Frozen Fish in Packages

**Cargo Piece Count:** *1150* ctn    Seal(s): 584862

Protective Services:

Protect Car - Protect to -4 FA

Reference Numbers at back of Trailer - BN - Booking Number; Car Numbers: 20 361 90

**EXHIBIT 2**
**Exhibit 5 of 5**



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

**EXHIBIT 1**
**Page 39 of 44**

| | |
|---|---|
| **From:** | Michael Tomenga |
| **Sent:** | Friday, October 1, 2021 4:51 PM |
| **To:** | william.p.policano@cbp.dhs.gov |
| **Cc:** | paul.pizzeck@cbp.dhs.gov; charles.r.steuart@cbp.dhs.gov; portlandmainejonesact@cbp.dhs.gov |
| **Subject:** | Kloosterboer International Forwarding LLC - Petition for Relief |
| **Attachments:** | KIF Jones Act Penalty Petition.pdf; Table of Exhibits.pdf; Ex 1 - Penalty Notice Case No. 2021012230023501.pdf; Ex 1 - Penalty Notice Case No. 2021012230030101.pdf; Ex 2 - McManus Declaration.pdf; Ex 3 - Representative Sample Bills of Lading.pdf |

Mr. Policano,

On behalf of Kloosterboer International Forwarding LLC, we are submitting a Petition for relief, copy attached, in accordance with 19 U.S.C. 1618 and 19 C.F.R. Part 171, in Jonesport Case Nos. 2021-0122-300235-01, 2021-0122-300301-01, and 2021-0122-300303-01 alleging violations of the Jones Act, 46 U.S.C. 55102. A hard copy is being sent to your office by FedEx for delivery Monday morning.

We would appreciate receiving a confirmation from your office and from Messrs. PIzzeck and Steuart that each of you has received the Petition.

Please contact us if there are any questions.

Respectfully submitted,
Michael Tomenga

Michael K. Tomenga
Neville Peterson LLP
1400 16th Street, N.W., Suite 350
Washington, DC 20036-2227
202.776.1148 direct
202.861.2924 fax
202.669.6887 cell
www.npllptradelaw.com

This electronic message transmission contains information which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

1

**Michael Tomenga**

| | |
|---|---|
| **From:** | Microsoft Outlook |
| **To:** | william.p.policano@cbp.dhs.gov; paul.pizzeck@cbp.dhs.gov; charles.r.steuart@cbp.dhs.gov; portlandmainejonesact@cbp.dhs.gov |
| **Sent:** | Friday, October 1, 2021 4:51 PM |
| **Subject:** | Relayed: Kloosterboer International Forwarding LLC - Petition for Relief |

## Delivery to these recipients or groups is complete, but no delivery notification was sent by the destination server:

william.p.policano@cbp.dhs.gov (william.p.policano@cbp.dhs.gov)

paul.pizzeck@cbp.dhs.gov (paul.pizzeck@cbp.dhs.gov)

charles.r.steuart@cbp.dhs.gov (charles.r.steuart@cbp.dhs.gov)

portlandmainejonesact@cbp.dhs.gov (portlandmainejonesact@cbp.dhs.gov)

Subject: Kloosterboer International Forwarding LLC - Petition for Relief

**Michael Tomenga**

| | |
|---|---|
| **From:** | POLICANO, WILLIAM P <WILLIAM.P.POLICANO@cbp.dhs.gov> |
| **Sent:** | Friday, October 1, 2021 4:51 PM |
| **To:** | Michael Tomenga |
| **Subject:** | Automatic reply: Kloosterboer International Forwarding LLC - Petition for Relief |

I am out of the office and will return on Wednesday October 6, 2021.    Please direct any property seizure questions to SPS Darin Murphy via email or cell 207-771-3639.  Should an FP&F matter require immediate attention contact APD Christopher Collins.  I can be reached via cell at 207-776-8697.

**Michael Tomenga**

| | |
|---|---|
| **From:** | PIZZECK, PAUL <PAUL.PIZZECK@CBP.DHS.GOV> |
| **Sent:** | Friday, October 1, 2021 4:51 PM |
| **To:** | Michael Tomenga |
| **Subject:** | Automatic reply: Kloosterboer International Forwarding LLC - Petition for Relief |

I am out of the office on leave, returning Monday, October 4. Becky
De Jesus will be acting as Branch Chief in my absence (REBECCA.DEJESUS@CBP.DHS.GOV).

**Michael Tomenga**

| | |
|---|---|
| **From:** | STEUART, CHARLES R <CHARLES.R.STEUART@CBP.DHS.GOV> |
| **To:** | Michael Tomenga |
| **Sent:** | Friday, October 1, 2021 4:52 PM |
| **Subject:** | Read: Kloosterboer International Forwarding LLC - Petition for Relief |

Your message

  To:
  Subject: Kloosterboer International Forwarding LLC - Petition for Relief
  Sent: Friday, October 01, 2021 3:52:10 PM (UTC-06:00) Central Time (US & Canada)

was read on Friday, October 01, 2021 3:52:07 PM (UTC-06:00) Central Time (US & Canada).

**EXHIBIT 1**
**Page 44 of 44**