David Karl Gross, ABA #9611065
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, AK 99501
Telephone: 907.276.1550
dgross@bhb.com

Edward E. McNally, ABA #9203003
Marc E. Kasowitz *(Pro Hac Vice)*
Hector Torres *(Pro Hac Vice)*
David J. Abrams *(Pro Hac Vice)*
Kim Conroy *(Pro Hac Vice)*
David E. Ross *(Pro Hac Vice)*
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
Telephone: 212.506.1700
emcnally@kasowitz.com
mkasowitz@kasowitz.com
htorres@kasowitz.com
dabrams@kasowitz.com
kconroy@kasowitz.com
dross@kasowitz.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, U.S. Customs and Border Protection Acting Commissioner, in his official capacity,<br><br>Defendants. | Case No.: 3:21-cv-00198-SLG |

# DECLARATION OF MIKEL DURHAM

Pursuant to 28 U.S.C. § 1746, I, Mikel Durham, declares as follows:

1. I am the Chief Executive Officer of American Seafoods Group LLC ("ASG") and have been in this role since January of 2017.

2. Plaintiff Alaska Reefer Management LLC ("ARM") is a subsidiary of ASG, and Plaintiff Kloosterboer International Forwarding LLC ("KIF") is a subsidiary of ARM.

3. I submit this declaration in further support of Plaintiffs' Renewed Motion for Temporary Restraining Order and Preliminary Injunction. I have personal knowledge of the facts set forth in this declaration.

4. When I became aware of the enormous penalty notices issued by the United States Customs and Border Protection ("CBP") on KIF, and on the customers of ARM and KIF and other strategic third-party partners in the Alaska-Maine frozen seafood supply chain, I immediately authorized our agents to initiate direct discussions with CBP, to determine the precise basis for the issuance of the penalty notices and to attempt to expeditiously resolve the alleged issues. I also initiated scenario planning for alternatives upon learning about some generic, but unspecified concern by CBP regarding the use of the Bayside Canadian Railway ("BCR") in connection with the Alaska-Maine frozen seafood transportation route.

5. One of the contingency options we considered and evaluated – once CBP refused to disclose its express concern with the BCR or withdraw its objection to the

continued use of the BCR – was to revert to using the Canadian rail line that was used before the BCR – the New Brunswick Southern Railway Company Limited ("NBSR"). We particularly considered this option because of the extremely urgent need to deliver to Plaintiffs' customers approximately twenty-six million pounds of frozen seafood that has long been stranded in Bayside, New Brunswick, Canada, and another eleven million pounds of product that has been stranded in Dutch Harbor, Alaska because of the threat of additional enormous CBP penalties. Plaintiffs' representatives reached out to the principals of the NBSR to determine the status of the previously-utilized route and the feasibility of reverting to the use of that rail line.

6. Plaintiffs' representatives ultimately were informed that the NBSR was not currently a viable railway option for use as an alternative to the BCR. As detailed in the Reply Declaration of Per K. Brautaset (Dkt. 49), the NBSR representatives indicated that (i) the section of the NBSR that previously was utilized is no longer active, (ii) the infrastructure and equipment necessary to load, unload and transport the trucks and their cargo are not readily available, and (iii) recreating the previous railway in St. John, assuming approvals could be obtained, could require the creation of a rail bridge. (*See* Dkt. 49 at 19.)

7. As a result, I investigated further and learned that the owner of the NBSR was a Canadian company, J.D. Irving, Limited ("J.D. Irving"), and that Wayne Power, Group Vice President of the Transportation and Logistics Division of J.D. Irving, seemed to be the senior executive authorized to engage in more strategic discussions concerning

the NBSR. I contacted Mr. Power via LinkedIn on September 13, 2021 and spoke with him on September 15, 2021. He confirmed that he indeed was the J.D. Irving executive responsible for the NBSR. I explained the situation to him, proposing that we arrange for a group to evaluate potentially available options to utilize the NBSR, either returning to the prior route or investigating new options. Mr. Power listened, and stated that he needed to consult his attorneys and business colleagues "due to the circumstances."

8. Two days later, on September 17, 2021, Mr. Power sent me a cursory email stating: "we are not able to assist you with this matter." In response to my request for clarification of this response, Mr. Power sent a follow-up email message indicating that the NBSR was pursuing other strategies and stating: "[w]e do not have a set-up, ramp or capacity to handle this and are entirely focused on other activity."

9. Subsequently, I learned that, on May 20, 2021, CBP had announced that, after "a rigorous, multi-layered process to evaluate selectees' proposals and ensure compatibility with CBP's mission priorities[,]" the NBSR had been selected tentatively to become a partner in CBP's Reimbursable Services Program ("RSP"). (Ex. A at 2.) (A notice from CBP's official website announcing the selection and a description of the RSP from CBP's official website are attached hereto as Exhibit A and B respectively.) As set forth on CBP's website (https://www.cbp.gov/border-security/ports-entry/resource-opt-strategy/public-private-partnerships/reimbursable-services-program/program-and-partners), the RSP enables partnerships between CBP and private sector entities that allow private sector entities to reimburse CBP for expanded services for incoming

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-cv-00198-SLG
DECLARATION OF MIKEL DURHAM                                          PAGE 4 OF 6

Case 3:21-cv-00198-SLG    Document 89    Filed 10/08/21    Page 4 of 6

commercial and cargo traffic. (Ex. A at 1; Ex. B at 1.) Those services can include customs, immigration, agricultural processing, border security, or support at any facility where CBP provides services, and may cover costs such as salaries, benefits, overtime expenses, administration, and transportation costs. (Ex. B at 1.)

10. NBSR may be concerned that working with Plaintiffs and allowing the use of the NBSR to transport the frozen seafood will jeopardize their ultimate selection for and participation in CBP's RSP or otherwise adversely impact their public-private partnership with CBP.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Seattle, Washington
October 8, 2021

*Mikel Durham*

Mikel Durham