# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

KLOOSTERBOER INTERNATIONAL
FORWARDING LLC, *et al.*,

        Plaintiffs,

        v.

UNITED STATES OF AMERICA, *et al.*,

        Defendants.

Case No. 3:21-cv-00198-SLG

## ORDER RE PLAINTIFFS' RENEWED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND DEFENDANTS' MOTION TO CONSOLIDATE

Before the Court at Docket 65 is Plaintiffs Kloosterboer International Forwarding LLC ("KIF") and Alaska Reefer Management LLC's ("ARM") (collectively, "Plaintiffs") Renewed Motion for Temporary Restraining Order and Preliminary Injunction. Defendants the United States of America, U.S. Department of Homeland Security, U.S. Customs and Border Protection ("CBP"), and Troy A. Miller, in his official capacity as the Acting Commissioner of CBP (collectively, "Defendants"), responded in opposition at Docket 77, to which Plaintiffs replied at Docket 84.[1]

Also before the Court at Docket 69 is Defendants' Motion to Consolidate Plaintiffs' Renewed Motion for Temporary Restraining Order and Preliminary

---

[1] *See also* Docket 5 (Mot.); Docket 6 (Mem.); Docket 38 (Opp'n); Docket 47 (Reply).

Injunction with Plaintiffs' Claims Under the Administrative Procedure Act, and Establish a Briefing Schedule. Plaintiffs responded in opposition at Docket 72.

## FACTUAL & PROCEDURAL BACKGROUND

The Court set out the relevant facts in its previous order, and they are only briefly summarized here.[2]

KIF and ARM arrange transportation and related services for the movement of frozen seafood product, in particular frozen pollock, from Alaska to the eastern United States on behalf of their customers. Since 2012, Plaintiffs have shipped frozen seafood from Dutch Harbor, Alaska to the Port of Bayside in New Brunswick, Canada on non-coastwise-qualified vessels (i.e., foreign-flagged vessels). At Bayside, the frozen seafood is eventually loaded onto trucks and driven directly onto a flat rail car on the Bayside Canadian Rail ("BCR") rail trackage, a registered Canadian railroad. The BCR is approximately 100 feet in length and located entirely within the Port of Bayside. Each truck travels the length of the BCR and back. After a truck is driven off the BCR, the truck proceeds directly to the Calais, Maine border crossing and enters the United States. The frozen seafood product is then delivered to customers in the eastern United States. The Court refers to this transportation route as the "BCR Route."

---

[2] *See* Docket 64 at 2–5 (Order).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 2 of 24

In 2017, CBP, the federal agency responsible for interpreting and enforcing the cabotage laws of the United States, began investigating whether Plaintiffs' BCR Route violated the Jones Act. CBP eventually determined that the route violated the Jones Act and, in August of this year, began issuing numerous "Notices of Penalty" to KIF and other companies involved in the BCR Route supply chain. Plaintiffs indicate that the total amount sought in the Notices of Penalty exceeds $350 million.[3] On September 2, 2021, Plaintiffs filed the instant action, alleging CBP invalidly interpreted the Jones Act as applied to Plaintiffs' BCR Route, among other claims.

Plaintiffs maintain that there are currently 26 million pounds of frozen seafood product that have been stranded at the Port of Bayside due to the issuance of the Notices of Penalty and that CBP has indicated that it intends to issue notices for an additional $41 million in penalties if Plaintiffs proceed with transporting this product into the United States using the BCR trackage.[4] Plaintiffs and their business partners in the supply chain have been unwilling and/or unable to take on the risk of such additional penalties, and Plaintiffs have indicated there is no apparent transportation alternative. Thus, the product remains stranded at

---

[3] Docket 1 at 19 (Complaint). By comparison, Plaintiff ARM indicates that its annual net income is approximately $1.6 million and that the total annual value of the seafood processed through Bayside is approximately $150 million. Docket 7 at 15.

[4] Docket 84 at 8 (Reply to Renewed Mot.).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 3 of 24

Bayside. Plaintiffs have submitted with their filings the declarations of multiple business partners and customers involved in the BCR Route supply chain who describe the significant economic impact that the lack of shipments is causing to their businesses.[5]

On September 28, 2021, the Court denied Plaintiffs' original motion for preliminary injunctive relief without prejudice "to renew at such time that Plaintiffs can demonstrate that they have filed a rate tariff for the BCR Route with the [Surface Transportation Board ("STB")] and that Plaintiffs are diligently pursuing available administrative remedies."[6] On October 1, 2021, Plaintiffs renewed their

---

[5] *See, e.g.*, Docket 86 at 5, ¶ 9 (Connelly Aff.) ("Because of the lack of available raw material, our [National Fisheries Institute] processor members have begun to reduce work hours, some by up to 60%. Reduction in works hours means American families go without paychecks. More than 100 workers are not working as a result of this raw material catastrophe. Work hours will be further reduced without a quick resolution to this problem. To be blunt: No raw material means no processing. No processing means no work hours. No work hours means no paychecks for American workers."); Docket 87 at 3, ¶ 4 (Johnson Aff.) ("The harmful effect or shutting down the shipment of [Glacier Fish Company, LLC's] products out of Bayside for this extended period of time and GFC's inability to meet its supply commitments to its customers as a result will be long-term and irreparable. Our customers cannot replace the frozen product stuck in Bayside in the quantities and on the timeline that they require, and they report this disruption is having a substantial negative impact on their businesses as well."); Docket 88 at 4, ¶ 9 (Zaffiro Aff.) ("Failure to provide our products to customers will likely lead to a loss of certain key commercial accounts. Loss of any key accounts also means that we may be required to lay off employees in our Braintree, Massachusetts facility."); Docket 91 at 3–4, ¶ 11 (Alexander Aff.) ("The inability to receive our scheduled Alaska pollock shipments in order to begin shipments of our fish sandwich product in December is causing immediate harm to the operations of King & Prince's Georgia production facility, the viability of its fish sandwich product line, and will lead to reputational damage for King & Prince and a loss of its overall ability to service its customers, including its ability to make future sales of other products to these customers.").

[6] Docket 64 at 25 (Order).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 4 of 24

motion for preliminary injunctive relief, asserting that they have now filed a rate tariff with the STB and have also filed a petition seeking administrative remedies with CBP.[7] On October 8, 2021, Defendants filed an opposition to the renewed motion, to which Plaintiffs replied that same day.

Plaintiffs seek an order enjoining Defendants from (1) enforcing any of the Notices of Penalty issued to date; (2) issuing or enforcing any new Notices of Penalty for alleged violations of the Jones Act related to the BCR Route that occurred at any time, including prior to the entry of a preliminary injunction and continuing through the entry of a final judgment in this action; and (3) pursuant to the constitutional tolling doctrine, *ever* issuing or enforcing any new Notices of Penalty for alleged violations of the Jones Act related to the BCR Route that occur from the date of the entry of a preliminary injunction through the entry of a final judgment in this action, regardless of the outcome of the action.[8]

## LEGAL STANDARD

In *Winter v. Natural Resources Defense Council, Inc.*, the United States Supreme Court held that plaintiffs seeking preliminary injunctive relief must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of

---

[7] *See* Docket 65 (Renewed Mot.).

[8] *See* Docket 65-1 at 2–3 (Proposed Order).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 5 of 24

equities tips in their favor; and (4) a preliminary injunction is in the public interest.[9] Subsequent to *Winter*, the Ninth Circuit explained that if a plaintiff demonstrates "'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor.'"[10]

The Court's prior order sets forth additional aspects of the Supreme Court's and Ninth Circuit's articulation of this legal standard and are not repeated here.[11]

## DISCUSSION

### I. Constitutional Tolling Doctrine

Plaintiffs continue to ask that this Court invoke the "constitutional tolling doctrine" to enjoin CBP from ever issuing or enforcing any new Notices of Penalty for alleged violations of the Jones Act that may occur going forward during the pendency of this litigation, regardless of which party ultimately prevails.[12] To the extent that the Court's previous order could be read to conflate the constitutional tolling doctrine with the Court's equitable powers, the Court acknowledges a lack of precision on that point. Constitutional tolling, when applicable, may permanently

---

[9] 555 U.S. 7, 20 (2008).

[10] *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

[11] *See* Docket 64 at 5–7 (Order).

[12] *See* Docket 65-1 at 3 (Proposed Order).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 6 of 24

preclude the issuance or collection of penalties accrued during pending litigation. Such relief is not generally available in a preliminary injunction under Federal Rule of Civil Procedure 65.[13]

The Court has considered the filings of the parties and additional cases they have cited on this doctrine and finds, for the reasons discussed below, that application of constitutional tolling is warranted in this case such that the Court will preclude CBP from seeking any additional penalties for alleged Jones Act violations from the date of this order until this Court enters final judgment or otherwise orders.

Defendants cite to *Nichiro Gyogyo Kaisha, Ltd. v. Baldrige*, 594 F. Supp. 80 (D.D.C. 1984), in support of their position against constitutional tolling. There, the plaintiffs sought preliminary injunctive relief barring the assessment of any civil penalties against them until the litigation was concluded. In denying that relief, the court reasoned:

> The plaintiffs here have simply been assessed a fine for failure to comply with the dictates of [50 C.F.R.] § 611.9. There is nothing unusual in this situation; indeed, it is a garden-variety administrative action. That plaintiffs disagree with the agency's interpretation of § 611.9 does not alter this fact. Plaintiffs are afforded ample opportunity to contest the agency's interpretation of § 611.9 before liability for any fine attaches. . . . The mere "assessment" of a fine prior to review of

---

[13] *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 7 of 24

plaintiff's challenge to the interpretation of § 611.9 is not sufficient to invoke the *Ex Parte Young* doctrine.[14]

But the fine at issue in that case totaled $350,000, and the "government represented to the Court that no additional fines will be assessed against plaintiffs pending resolution of the present dispute."[15] Indeed, in finding the dictates of due process satisfied without constitutional tolling, the district court expressly noted that it had not been presented "with a case where plaintiffs have been assessed massive or cumulative fines which mount as litigation of their rights is pursued."[16] But that is precisely the case before this Court—massive fines have already been assessed and CBP is threatening to assess additional cumulative fines if Plaintiffs resume using the BCR Route.

Defendants also cite to *Duquesne Light Co. v. E.P.A.*, 698 F.2d 456 (1983). There, the D.C. Circuit rejected the petitioner's assertion that "allowing [Clean Air Act] penalties to accrue from the date of the notice of noncompliance, throughout the period of administrative and judicial review, is an unconstitutional deprivation of property without due process of law."[17] The D.C. Circuit distinguished the *Ex*

---

[14] 594 F. Supp. at 83.

[15] 594 F. Supp. at 82.

[16] *Id.* at 83, n.4.

[17] 698 F.2d at 469, n.14 ("Unlike the penalties in *Ex parte Young*, which were triggered by any effort to seek review of the underlying legal requirement, the section 120 noncompliance penalties are simply penalties that accrue during the period in which the alleged violator

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 8 of 24

*Parte Young* line of cases, noting that under that statutory scheme, if a petitioner was penalized for violating a Clean Air Act standard and at the same time challenging the standard and ultimately prevailed, the petitioner would be entitled to a refund of the penalty. This Court is unaware of any similar refund provision in the Jones Act. More importantly, unlike the instant case, there is no indication that the potential penalties were so onerous that the petitioner had to shut down its operations while pursuing litigation so as to avoid the risk of additional penalties.

In *Life & Casualty Co. of Tennessee v. McCrary*, 294 U.S. 566, 574 (1934), Justice Cardozo described when constitutional tolling was warranted as follows: "The price of error may be so heavy as to erect an unfair barrier against the endeavor of an honest litigant to obtain the judgment of a court. In that event, the Constitution intervenes and keeps the courtroom open." The Supreme Court contrasted that to more modest penalties that "may be no more than the fair price of the adventure." Here, the threat of additional large cumulative penalties have prevented Plaintiffs from transporting seafood products from Alaska using the BCR Route for several weeks and it appears that, if Plaintiffs are taken at their word, unless the Court precludes the imposition of any additional penalties for the

_____

contests his liability to the penalty. Such penalties are common; for example, penalties for violations of the Occupational Safety and Health Act accrue during the period of judicial review of liability, 29 U.S.C. § 666(d), (I) (1976). They are valid, assuming the source is accorded adequate opportunity to challenge their assessment at the administrative level before payment must begin.").

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 9 of 24

duration of this litigation, the entire BCR Route shipping Alaskan seafood products to the United States will be shut down. That would effectively moot this case; meaning, the courtroom door would be closed.

In *Wadley Southern Railway Company v. Georgia*, 235 U.S. 651, 662–63, the Supreme Court explained:

> A statute, therefore, which imposes heavy penalties for violation of commands of an unascertained quality is, in its nature, somewhat akin to an *ex post facto* law, since it punishes for an act done when the legality of the command had not been authoritatively determined. Liability to a penalty for violation of such orders, before their validity has been determined, would put the part[y] affected in a position where he himself must, at his own risk, pass upon the question.

The Court recognizes that the validity of the Jones Act and its penalty provision are not at issue here. And Plaintiffs did elect to take the risk that their BCR Route would be found invalid under the Jones Act by not seeking a letter ruling in 2012; hence, they will continue to face potential liability for the Notices of Penalty that have already been issued. But the validity of those notices has not been authoritatively determined and, as this Court has previously noted, the penalty notices appears to be at odds with CBP's rulings in other transactions that may well be substantially identical.

The Court also notes that some of the cases that have declined to apply constitutional tolling have stressed the fact that a robust administrative review

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 10 of 24

Case 3:21-cv-00198-SLG   Document 95   Filed 10/10/21   Page 10 of 24

followed by judicial review were available to the litigant.[18]  Certainly Plaintiffs had the option back in 2012 to obtain a letter ruling as to whether the BCR Route complied with the Jones Act Third Proviso; and for whatever reason they elected not to do so at that time.  But Plaintiffs have not yet had any opportunity to present their position to the agency, either prior to or following the issuance of the Notices of Penalty.  And at least some courts have held that the agency's penalty mitigation decisions, like Plaintiffs are now pursuing before the CBP, "are committed to agency discretion and unreviewable."[19]  Hence, this case may represent Plaintiffs' only meaningful opportunity to be heard on the validity of the BCR Route.

The Court's prior order distinguished *U.S. v. Pacific Coast European Conference*, 451 F. 2d 712 (9th Cir. 1971), in which the Ninth Circuit applied constitutional tolling to the accrual of penalties.  This Court distinguished that case because the defendants there were "judicially testing the validity" of a statute, whereas Plaintiffs' challenge here focuses on CBP's statutory interpretation of the Jones Act.[20]  But on closer examination, what appears to have been central to the Circuit's decision in *Pacific Coast* to toll the penalties was that the defendants had

---

[18] *See, e.g., Nichiro Gyogyo Kaisha*, 594 F. Supp. at 83–84.

[19] *Furie Operating Alaska, LLC v. U.S. Dept. of Homeland Security*, Case No. 3:12-cv-00158-JWS, 2015 WL 4076843, at *6 (D. Alaska July 6, 2015) (citing *United States v. One 1970 Buick Riviera,* 463 F.2d 1168, 1170 (5th Cir. 1972); *Gen. Finance Co. of La. v. United States,* 45 F.2d 380 (5th Cir. 1930); *Assocs. Inv. Co. v. United States,* 220 F.2d 885, 888 (5th Cir. 1955)).

[20] Docket 64 at 9.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 11 of 24

Case 3:21-cv-00198-SLG   Document 95   Filed 10/10/21   Page 11 of 24

acted promptly and vigorously to challenge the validity of the agency's action, and that they had raised substantial, non-frivolous questions in their challenge.[21] Here, too, Plaintiffs have acted promptly and vigorously to challenge CBP's actions, and as this Court has previously found, they have raised serious questions going to the merits.[22]

The Court also finds *Aminoil, Inc. v. U.S. E.P.A.*, 599 F. Supp. 69 (C.D. Cal. 1984), instructive. There, the district court entered a preliminary order that enjoined the agency from assessing daily penalties during the pendency of the case. The district court reasoned that the plaintiffs were likely to prevail on their due process challenge to the validity of the penalty provision, because the statutory penalty scheme there did not provide the plaintiff an opportunity for a hearing prior to the issuance of the penalty order. The district court quoted the following from the Second Circuit: "One has a due process right to contest the validity of a legislative or administrative order affecting his affairs without necessarily having to face ruinous penalties if the suit is lost."[23] Here, Plaintiffs should be accorded the

---

[21] 451 F. 2d at 717-18.

[22] Docket 64 at 17–18, 19–20 (Order).

[23] 599 F. Supp. 69 (1984) (quoting *Brown & Williamson Tobacco Corp. v. Engman*, 527 F. 2d 1115, 1119 (2d Cir. 1975)). In *Brown*, the Second Circuit rejected the application of constitutional tolling because "the risk of penalties began to accrue only after the appellants entered into consent decrees which acknowledged the validity of the decree." There has not been any consent decree in this case.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 12 of 24

right to test the validity of the Notices of Penalty without having to face the risk of large additional penalties if they do not prevail in this case.

Defendants assert that by seeking to apply constitutional tolling, "Plaintiffs ask this Court for a get-out-of-jail-free card for them and everyone they deal with in transporting seafood to Bayside."[24] There is some merit to this contention; but the Court is not addressing the validity of the penalties already assessed in this order. Hence, while Plaintiffs may avoid additional penalties during the pendency of this case even if they do not prevail, they could well be liable for the sizeable penalties already noticed if they do not prevail.

Defendants also assert that constitutional tolling should not apply when a party is only challenging the agency's interpretation of a statute, as opposed to the validity of the statute itself. Defendants cite to *United States v. Vineland Chemical Co.*, 692 F. Supp. 415, 418 (D.N.J. 1988).[25] Defendants are correct that one of the reasons the district court gave there for rejecting constitutional tolling when the case was on appeal was that the parties' dispute focused on the agency's interpretation of an admittedly valid statute, and therefore, "due process does not necessitate a stay of statutory penalties during the appeal." But the district court also acknowledged that "the difference between the validity of a regulation and the

---

[24] Docket 38 at 35 (Opp'n).

[25] Docket 77 at 4.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 13 of 24

validity of the interpretation of that regulation is not always clear in practice."[26] More significantly, the primary reason the district court identified for its refusal to toll the penalties on appeal was that "irreparable damage to the environment could be done if every litigant continued its EPA-condemned acts while exhausting its appeals." And in that case, unlike here, there was no indication that the approximate 15 months of $25,000/day penalties that the agency sought to collect from the chemical company defendant would be financially ruinous to the defendant's business.

In sum, the Court finds that constitutional tolling applies to preclude the imposition of additional penalties related to the BCR Route until entry of final judgment by this Court.

## II.    Preliminary Injunctive Relief

The Court next considers whether the *Winter* factors warrant granting preliminary injunctive relief at this time.

### A. Likelihood of Success on the Merits

In Count III of their Complaint, Plaintiffs assert that CBP's issuance of the Notices of Penalty violates 19 U.S.C. § 1625(c)(2) because Plaintiffs' BCR Route is a "substantially identical" transaction to those that were authorized in previous CBP ruling letters and thus CBP's actions would have the effect of modifying the

---

[26] 592 F. Supp. at 418.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 14 of 24

Case 3:21-cv-00198-SLG    Document 95    Filed 10/10/21    Page 14 of 24

treatment previously accorded to those transactions.[27]    As discussed in the September 28, 2021 order, the Court has found that Plaintiffs have made a showing of at least serious questions going to the merits on this claim.[28]    As the Court need only find such a showing on one claim to grant a preliminary injunction, Plaintiffs' likelihood of success on their remaining claims will not be further analyzed at this time.[29]

### B. Irreparable Harm

Plaintiffs assert that as a result of CBP's Notices of Penalty, their "entire supply chain" has been brought to "a complete standstill."[30]  By example, Plaintiffs proffer that "two of KIF's primary trucking partners have informed KIF that they will no longer transport goods via the [BCR Route] absent assurance they will not incur further penalties."[31]  Plaintiffs maintain that this abrupt halt in their supply chain is damaging their business reputation and good will with customers, pushing cold

---

[27] Docket 1 at 28–29 (Compl.); Docket 5 at 48–50 (Mem.); Docket 47 at 35–38 (Reply).

[28] Docket 64 at 17–18, 19–20 (Order).

[29] *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 760 (9th Cir. 2014).

[30] Docket 5 at 55 (Mem.).

[31] Docket 5 at 55 (Mem.).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 15 of 24

storage facilities to near capacity with frozen seafood products, and potentially threatening employees' job security, among other claims of harm.[32]

Defendants respond with three main arguments. First, Defendants contend that relief from this Court is unnecessary given Defendants' settlement offer, in which Defendants propose to agree to never impose penalties on the two trucking companies for the shipment of product, within an eight-week period, currently on hold in Bayside.[33] Second, "Plaintiffs' irreparable harm, if any, seems to be caused by their insistence that they use the low-cost BCR route and no other method to keep the Bayside route intact, and ultimately their insistence on using foreign-flagged vessels to ship product to Bayside."[34] Defendants assert, for example, that Plaintiffs could resume the "already sanctioned" NBSR Route, utilize different Canadian railroads, or explore other means of transportation.[35] Third, Defendants also contend that Plaintiffs' Bayside operation is not at a complete halt because Plaintiffs have recently began shipping Russian-origin frozen seafood through the Port of Bayside to Calais, Maine.[36]

---

[32] *See, e.g.*, Docket 5 at 12–13, 22, 56 (Mem.).

[33] Docket 77 at 11–12, 14 (Opp'n to Renewed Mot.).

[34] Docket 38 at 40 (Opp'n); *accord* Docket 77 at 14–15 (Opp'n to Renewed Mot.).

[35] Docket 38 at 38–40 (Opp'n); *accord* Docket 77 at 14–15 (Opp'n to Renewed Mot.).

[36] Docket 77 at 15–16 (citing Docket 79 at 2–4, ¶¶ 5–7 (Chambers Decl.)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 16 of 24

Case 3:21-cv-00198-SLG   Document 95   Filed 10/10/21   Page 16 of 24

The fact that Plaintiffs may have the option for some relief from Defendants does not preclude them from seeking separate relief from this Court. And while Defendants note that Plaintiffs' supply chain is not at a "complete standstill,"[37] the Court also finds that enjoining the issuance of additional Notices of Penalty during this litigation and precluding enforcement actions against third parties would be likely to ameliorate Plaintiffs' immediate harm by allowing the resumption of the BCR Route while this case is pending. Given the sudden issuance of significant penalties to Plaintiffs and their partners, including what appear to be questionable cumulative penalties on the same shipment,[38] the Court finds Plaintiffs' assertions of likely irreparable harm to their business operations if additional penalty notice are issued to be credible. In fact, Defendants do not materially dispute Plaintiffs' assertions in this regard.

The Court also finds that if CBP were to pursue enforcement actions against third parties involved in the BCR Route while this case was pending that it would be likely to cause additional irreparable harm to Plaintiffs' reputation.[39] However,

---

[37] At least with respect to the import of Alaskan-origin frozen seafood, the supply chain does appear to be at a complete standstill.

[38] *See* 46 U.S.C. § 55102(c) (providing that "an amount equal to the value of the merchandise . . . may be recovered from any person transporting the merchandise or causing the merchandise to be transported" in violation of the Jones Act).

[39] *See* Docket 8 at 15–16, ¶ 33 (Adamski Decl.) ("KIF has also incurred and continues to incur serious and increased reputational risk. The sudden imposition of hundreds of millions of dollars in penalties upon KIF, its customers, and strategic third-party service partners has become public knowledge, and already has harmed KIF's relationships with its third-party

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 17 of 24

Case 3:21-cv-00198-SLG   Document 95   Filed 10/10/21   Page 17 of 24

with respect to pursuing enforcement proceedings solely against Plaintiffs at this time for the Notices of Penalty already issued, the Court finds that Plaintiffs would not face additional irreparable harm. To the contrary, for the reasons explained by Defendants, permitting such proceedings to go forward against Plaintiffs only at this time could preserve judicial economy as well as the parties' resources.[40]

### C. The Remaining *Winter* Factors

The final two factors—balance of equities and the public interest—merge when the government is the opposing party.[41] The "balance of equities" concerns the burdens or hardships to Plaintiffs compared with the burden on Defendants if

---

strategic partners, which are integral and indispensable to the Bayside Program. Even if the penalties are determined to be unfounded (as Plaintiffs intend to demonstrate), the harm to the future of KIF, ARM, its customers and their U.S. end-customers' business and income stream will be unavoidable and will increase absent immediate relief allowing operations to resume."); Docket 7 at 17, ¶ 42 (Brautaset Decl.) ("ARM and KIF also have incurred serious reputational risk. The cryptic nature of CBP's sudden issuance of notices of the massive penalties being imposed on the companies in the supply chain – which do not specify the precise basis of the alleged violations – has caused and is continuing to cause great uncertainty and instability in the supply chain. Even if the penalties are determined to be unfounded (as Plaintiffs intend to demonstrate), the harm to the future of ARM and KIF's businesses is imminent and cannot await the time necessary for judicial review of CBP's conduct. Indeed, without judicial intervention, ARM and KIF are at risk of incurring new penalties and its strategic partners will continue to claim that ARM is liable for payment of these penalties, potentially jeopardizing its relationship with third-party providers of services essential to continue the current Bayside Program.").

[40] Docket 77 at 8 (Opp'n to Renewed Mot.).

[41] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 18 of 24

an injunction is ordered.[42]  The "public interest" mostly concerns the injunction's "impact on non-parties rather than parties."[43]

With respect to the balance of equities, the Court recognizes the negative impact on Defendants of an injunction temporarily prohibiting the enforcement of the Jones Act, as interpreted by Defendants, when the enforcement of the Jones Act is Defendants' responsibility.[44]  However, this impact is significantly outweighed by the hardships Plaintiffs would face from additional Notices of Penalty being issued to them and others during the course of this action and the hardship to Plaintiffs that would ensue if Defendants are permitted to commence enforcement actions against third parties involved in the BCR Route at this time. Accordingly, the Court finds that the balance of equities tips sharply in Plaintiffs' favor in granting limited preliminary relief.

As to the public interest, the Court recognizes that companies operating or building coast-wise vessels have a strong interest in ensuring that their competitors comply with the Jones Act.  On the other hand, Plaintiffs' supply chain transports

---

[42] *See Winter*, 555 U.S. at 24–31; *accord Porretti v. Dzurenda*, 1037 F.4th 1050–51 (9th Cir. 2021).

[43] *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003) (quoting *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002), *abrogated on other grounds by Winters*, 555 U.S. at 22); *accord Porretti*, 11 F.4th at 1050–51.

[44] While the Court disagrees with Plaintiffs that Defendants waived this issue, *see* Docket 47 at 45 n.28 (Reply), it also notes the lack of any specific argument by Defendants.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 19 of 24

millions of pounds of frozen seafood to the east coast, and has done so for many years.[45]  Without immediate injunctive relief, businesses dependent on Plaintiffs' supply chain are likely to temporarily shutter factories,[46] jobs are likely to be lost,[47] and the supply chain for USDA food bank and school lunch programs is likely to be disrupted.[48]  Additionally, there is a significant public interest in ensuring that Defendants comply with the law;[49] and the Court has already determined that there are serious questions as to whether Defendants have violated the law in at least one instance with respect to 19 U.S.C. § 1625(c)(2).  Accordingly, the Court finds that the broader public interest strongly weighs in favor of granting a preliminary injunction.

In conclusion, the Court finds that Plaintiffs have established serious questions going to the merits on their § 1625(c)(2) claim and a likelihood of

---

[45] Docket 8 at 14, ¶ 27 (Adamski Decl.) ("By September 2, 2021, approximately twenty-six million pounds of seafood product . . . will be on hold at Bayside awaiting transport into the U.S.").

[46] Docket 11 at 3, ¶ 8 (O'Hara Decl.) ("If the shipments currently in KB's cold storage and currently on ARM trampers are not able to clear through to New Bedford, MA quickly, part of the Eastern Fisheries' factory are at risk of ceasing operations due to a lack of raw material supply.").

[47] Docket 14 at 3, ¶ 7 (Zaffiro Decl.) ("I anticipate that we would need to lay off approximately 50% of our workforce in the first 30 days after our supply of Alaskan Pollock runs out.").

[48] Docket 14 at 2, ¶ 3 (Zaffiro Decl.) ("Channel is also one of the largest suppliers to the USDA food bank and school lunch programs utilizing Wild Alaskan Pollock.").

[49] *See Portland Audobon Soc'y v. Lujan*, 795 F. Supp. 1489, 1509 (D. Or. 1992), *aff'd sub nom. Portland Audubon Soc'y v. Babbitt*, 998 F.2d 705 (9th Cir. 1993); *Pac. Rivers Council v. Thomas*, 30 F.3d 1050, 1057 (9th Cir. 1994).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 20 of 24

irreparable harm absent a preliminary injunction. The Court also finds that the balance of hardships tips sharply in Plaintiffs' favor and that the public interest weighs in favor of issuing a preliminary injunction.

## III.    Scope of Injunctive Relief

The Court finds that constitutional tolling should apply in this case so as to preclude Defendants from ever imposing any additional penalties against Plaintiffs or others in the BCR Route supply chain effective from the date of this order until entry of final judgment or further order of this Court. In addition, the Court will enjoin Defendants from issuing any new Notices of Penalty for any alleged violations of the Jones Act by Plaintiffs or any others involved in the BCR Route during the pendency of this case, regardless of the date of the alleged violation. The Court will further enjoin Defendants from taking any enforcement actions against third parties other than Plaintiffs during the pendency of this litigation with respect to the Notices of Penalty already issued regarding the BCR Route.

## IV.    Defendants' Motion to Consolidate

Pursuant to Federal Rule of Civil Procedure 65(a)(2), Defendants move to consolidate Plaintiffs' renewed motion with Plaintiffs' merits claims under the Administrative Procedure Act.[50] Given the Court's ruling herein that the entry of preliminary injunctive relief is warranted at this time, Defendants' motion is denied.

---

[50] *See* Docket 69 (Defs.' Mot.).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 21 of 24

However, the Court fully recognizes the need for an expedited resolution on the merits. Accordingly, the parties shall promptly confer and propose an expedited merits briefing schedule—or separate schedules in the event that they cannot agree—to be filed by the close of business on Friday, October 15, 2021.

## CONCLUSION

In light of the foregoing, Defendants' Motion to Consolidate at Docket 69 is DENIED, except insofar as this Court shall expedite a resolution of this case on the merits. The parties shall promptly confer and propose an expedited merits briefing schedule—or separate schedules in the event that they cannot agree—to be filed by close of business on **Friday, October 15, 2021**.

Plaintiffs' Renewed Motion for Temporary Restraining Order and Preliminary Injunction at Docket 65 is GRANTED as follows:

IT IS HEREBY ORDERED THAT:

Defendants and their officers, agents, servants, employees, and attorneys and all others acting on their behalf or in concert with them (hereinafter, "Defendants") are enjoined during the pendency of this litigation or further order of this Court from:

1. Enforcing any of the Notices of Penalty for any alleged violations of the Jones Act relating to shipments of seafood products from Alaska to U.S. destinations through Bayside via the BCR Route issued to any

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 22 of 24

Case 3:21-cv-00198-SLG   Document 95   Filed 10/10/21   Page 22 of 24

company or person in the chain of supply, transportation, and distribution of frozen seafood products from Alaska to U.S. destinations; excepting only that Defendants may seek to enforce the Notices of Penalty issued to Plaintiff KIF and further except that any administrative challenges by any third party to the Notices of Penalty that have been issued may proceed;[51] and

2. Issuing and enforcing any new Notices of Penalty for any alleged violations of the Jones Act relating to shipments of seafood products from Alaska to U.S. destinations through Bayside via the BCR Route made at any time.

IT IS FURTHER ORDERED that pursuant to the constitutional tolling doctrine, Defendants and all others acting on their behalf or in concert with them are enjoined from ever issuing and enforcing any new Notices of Penalty for alleged violations of the Jones Act relating to shipments from Alaska to U.S. destinations through Bayside via the BCR Route commenced or completed at any time from the date of this order until the date of the final judgment in this action, and regardless of the outcome of the action, on Plaintiff KIF and/or any other company or person in the chain of supply, transportation, and distribution of frozen seafood products from Alaska to U.S. destinations through Bayside, via the BCR

---

[51] *See, e.g.*, Docket 67-1 (Petition Against Notices of Penalty).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 23 of 24

Case 3:21-cv-00198-SLG   Document 95   Filed 10/10/21   Page 23 of 24

Route, including any such products that are in ocean transit or in cold storage facilities in Alaska or Bayside.

Neither party addressed whether security should be required; accordingly, the Court finds that no security is required under Federal Rule of Civil Procedure 65(c) at this time.[52]

DATED this 10th day of October, 2021, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[52] *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'") (emphasis omitted) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir.1999)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Renewed Motion Temporary Restraining Order and Preliminary Injunction and Defendants' Motion to Consolidate
Page 24 of 24