E. BRYAN WILSON
Acting United States Attorney

SETH M. BEAUSANG
Assistant U.S. Attorney
U.S. Attorney's Office, District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: Seth.Beausang@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, U.S. Customs and Border Protection Acting Commissioner, in his official capacity, <br><br> Defendants. | Case No. 3:21-cv-00198-SLG <br><br> **UNITED STATES' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

The Court is familiar with the facts of this case and the parties' prior

arguments. Through this motion, the Government requests that the Court rule that Plaintiffs' claims, also asserted as affirmative defenses to the Government's penalty enforcement action, are meritless as a matter of law. Should the Court so rule, it should also dissolve the injunction.

The Government has attempted to emphasize, and not simply repeat, its prior arguments, which are incorporated in this motion. The Government appreciates the opportunity to brief these issues on a somewhat less-expedited basis. The Court entered its injunction based in part on its conclusion that Plaintiffs had shown at least serious questions going to the merits of their claim that U.S. Customs and Border Protection ("CBP") violated 19 U.S.C. § 1625(c)(2). [Dkt. 95 at 14-15] The Government expects that after receiving fuller briefing, the Court will conclude that this claim, and Plaintiffs' other claims, are all meritless.

## FACTUAL BACKGROUND

Defendants incorporate the facts stated in the opposition to Plaintiffs' motion for a temporary restraining order and preliminary injunction, [Dkt. 38 at 3-12], and emphasize the following facts.

It is common, and encouraged, for members of the trade community to request administrative rulings from CBP under 19 C.F.R. Part 177. [AR 41-89] CBP issues thousands of ruling letters every year. [AR 48] The purpose of

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 2 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 2 of 47

ruling letters "is to enable the trade to make business decisions that are dependent on how their goods will be treated on importation." [AR 48] CBP has published guidance on obtaining Jones Act rulings in particular, including instructions on how to request a ruling, what information a request should include, and who can rely on the ruling after issuance. [AR 90-118] In the guidance, CBP is clear that only the "requester or entities with *identical* circumstances may rely on the ruling." [AR 110 (emphasis added)]; *see also infra* at 27-30.[1]

The record shows that CBP has issued several ruling letters addressing whether various manners of shipping seafood from Alaska to the eastern United States qualify for the Third Proviso exception to the Jones Act. That is not surprising, since, again, CBP encourages the public to request rulings, it is a common practice, and rulings only apply to the requesters or entities with identical circumstances.

## A.    HQ 114407.

For example, on July 23, 1998, CBP issued ruling letter HQ 114407 to Sunmar Shipping, Inc., addressing a proposal by Sunmar to transport seafood from Dutch Harbor to Canada (Bayside, New Brunswick or Shelburne, Nova

---

[1] As explained *infra* at 30-37, the "substantially identical" statutory standard in 19 U.S.C. § 1625(c)(2) applies to "treatment," not ruling letters.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 3 of 47

Scotia) by a foreign-flag vessel, after which the seafood would be transported by railcars over the New Brunswick Southern Railroad ("NBSR") to St. John, Newfoundland, and then over the Canadian Pacific Railroad to the U.S.-Canada border crossing at Calais, Maine, through Maine to Quebec, and then to Albany, New York. [AR 16-19] CBP concluded that Sunmar's proposed rail movement met the Third Proviso's requirement that the merchandise be transported over through routes which are in part "over Canadian rail lines," because CBP determined that the statutory language " 'over Canadian rail lines' means over rail trackage in Canada." [AR 17]

The remainder of the ruling letter dealt with the Third Proviso's requirements that the route be recognized by the Interstate Commerce Commission ("ICC") and a rate tariff for the route be filed with the ICC, and the effect of Congress's having abolished the ICC and replaced it with the Surface Transportation Board ("STB") in 1995. [AR 18-19] CBP concluded that notwithstanding the replacement of the ICC with the STB, which no longer accepted rate tariffs for rail transportation, and the failure of Congress to make conforming amendments to the Third Proviso, the Third Proviso remained in effect and no rate tariff needed to be filed with the STB to qualify for the Third Proviso. [AR 19]

**B.     HQ 115124.**

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 4 of 47

On August 11, 2000, CBP issued ruling letter HQ 115124 to American Seafoods Corporation ("ASC") on a different but similar proposal to transport seafood from Alaska to the eastern United States and rely on the Third Proviso. [AR 20-25] ASC proposed to also transport the seafood to Bayside by a foreign-flag vessel, and then over the NBSR. [AR 21] This time, however, the seafood would move by truck to St. John, where it would be loaded onto railcars and transported over the NBSR "to a subsequent Canadian rail junction located nearer the U.S. border," where it would be driven by truck to Calais. [AR 21] CBP again concluded that the proposed rail movement met the applicable Third Proviso requirement, and that no rate tariff needed to be filed for the route. [AR 22-25]

## C. HQ 115446.

On August 9, 2001, CBP issued ruling letter HQ 115446 to Sunmar addressing another variation of the shipping manner. [AR 26-31] Sunmar proposed to transport the seafood to Bayside by a foreign-flag vessel, and then transport the seafood by truck to either McAdam, New Brunswick, or Saint John, New Brunswick, where the seafood would be loaded onto rail cars and transported over the NBSR either from McAdam to Saint John, or from Saint John to McAdam, after which the seafood would be driven by truck to Calais. [AR 27] CBP again concluded that the proposed rail movement met the

applicable Third Proviso requirement, and that no rate tariff needed to be filed for the route. [AR 27-31]

On January 21, 2004, CBP rejected a request by Horizon Lines, LLC, to modify or revoke HQ 115446. [Dkt. 53-1] Among Horizon's arguments was that the route utilized by Sunmar was "commercially absurd and a purposeless diversion from the 'through' or 'direct' route required by the Third Proviso." [Dkt. 53-1 at 5; *see also* Dkt. 57-1 (showing the diversion through Canada before the seafood was transported to Calais)] CBP rejected Horizon's argument, concluding that "the Third Proviso does not state a 'direct' route should be used, it instead uses the term 'through' route in part over Canadian rail lines." [*Id.*] It was in that context that CBP stated that "[t]he Third Proviso does not have a <u>de minimus</u> [sic] requirement for 'in part over Canadian rail lines.' " [*Id.*] The claim by Horizon was that the NBSR route was unnecessarily *long*, and therefore not one the Third Proviso should exempt from the Jones Act, but CBP's opinion was that there was no requirement in the Third Proviso that the Canadian rail portion of the through route be as short, or as direct, as possible (i.e., no "<u>de minimus</u> requirement"). It could be unnecessarily long. CBP was not asked to opine in its ruling letter, and did not opine, whether movement of merchandise back and forth over a specially constructed 100-foot

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 6 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 6 of 47

railway would qualify as "transportation" over a "through route."[2]

## D.  *Horizon* litigation.

As the Court is aware, in 2006 Horizon Lines challenged CBP's determination that Sunmar's NBSR route complied with the Third Proviso. *Horizon Lines, LLC. v. United States*, 414 F. Supp. 2d 46, 48 (D.D.C. 2006). Primarily at issue in that case was CBP's conclusion whether a rate tariff filing was required. The district court disagreed with CBP's position that non-coastwise-qualified private shippers did not need to file a rate tariff to qualify for the Third Proviso, and instead held that the statute unequivocally required that a tariff be filed. *Id.* at 60. The following year, CBP wrote to ASC's attorney, apprising him that CBP intended to "abide by the court's decision," and noting that ASC had recently filed the rate tariff with the STB, which had accepted it for filing. [Dkt. 6-15 at 1] ASC's rate tariff filing identified the NBSR as the Canadian rail carrier used in the transportation of frozen seafood products from Dutch Harbor to Maine, via Bayside. [AR 170, 174]

A collateral issue in the case was the question about the "through route" itself. Horizon (not CBP) had argued that the Third Proviso precludes the use

---

[2] As explained *infra* at 20-21, CBP has also issued ruling letters on proposals to use Canadian rail lines in British Columba and qualify under the Third Proviso.

of a "sham or commercially impractical Canadian rail movement to achieve technical compliance with the literal terms of the statute." *Id.* at 61 n.6. In response, the district court noted in a footnote that "[i]f Congress wishes to limit the use of the Third Proviso to specific routes or to require the STB to evaluate the commercial soundness of a proposed route, it has the authority to do so, but the Third Proviso as currently written contains no such requirement." *Id.*

The district court recognized, however, that for the Third Proviso to apply there must still be transportation of goods over a through route. *Id.* The district court accepted the U.S. Supreme Court's definition of a "through route" as "an arrangement, express or implied, between [transportation providers] for the continuous carriage of goods from the originating point on the line of one carrier—to destination on the line of another." *Id.* (quoting *St. Louis Sw. Ry. Co. v. United States*, 245 U.S. 136, 139 n. 4 (1917)).

### E. Plaintiffs' failure to seek a letter ruling or file a rate tariff for the BCR Route.

In 2012, Kloosterboer Bayside Cold Storage ("KBB"), which is an entity that Plaintiffs contract with to facilitate the transportation of seafood from Alaska, ceased using the NBSR to save costs and for other business reasons, and began using the BCR Route. [Dkt. 38 at 8-9] The BCR is located entirely

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 8 of 47

within the Bayside port next to the cold storage facility. [Dkt. 8 ¶ 5]

Plaintiff Kloosterboer International Forwarding LLC ("KIF") was aware and supportive of this change because its customers, when the NBSR was in use, experienced difficulties in reliably providing timely delivery to end-customers and extremely high transportation fees. [Dkt. 8 ¶ 15] No new rate tariff was filed with the STB for the new route, and no entity sought a ruling letter from CBP for the new, drastically different, manner of transportation.

## F. CBP's investigation of the Plaintiffs' use of the BCR Route.

In April 2017, CBP's Jones Act Division of Enforcement (JADE) received a letter from a third party alleging potential violations of the Jones Act. [AR 166-169] The complainant asserted that ASC's tariff filing with the STB was inadequate for purposes of the Third Proviso because it had no expiration date, was outdated regarding rates quoted therein, did not expressly encompass the identified violators or their movements of merchandise, and failed to describe the rail route or routes used. [AR 166-169] Based upon these allegations, JADE began a review of the transportation in question, including Plaintiffs' use of the BCR Route. [AR 203-204]

As part of its review, JADE obtained video and aerial photographs of the BCR. [AR 225-226, 235-236] JADE discovered that the BCR was drastically different from the NBSR. [AR 223-224; Dkt. 39 ¶ 5] In contrast to the NBSR,

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 9 of 47

the BCR leads nowhere, is contained entirely within the KBB facility, and appears to have been constructed for no reason other than to move trucks forward and back approximately 100 feet. [AR 202-237, 504]

As such, JADE determined that the only apparent purpose for the BCR was to circumvent the Jones Act (which Plaintiffs admit). [AR 202-237; Dkt. 47 at 11] JADE further determined that neither Plaintiffs nor any other person involved in the operation had requested or received a ruling from CBP related to the BCR Route. [AR 223-224] JADE also confirmed that there was no rate tariff on file with the STB relating to the BCR Route. [AR 223-224] For all of these reasons, JADE determined that Plaintiffs' transportation of seafood via the BCR Route did not meet the requirements of the Third Proviso, and that Plaintiffs and others had violated the Jones Act. [AR 211-213, 218-222] JADE referred the matter to internal CBP components for the initiation of a penalties action. [AR 226-227]

CBP's Office of Field Operations gathered and reviewed documents associated with each vessel involved in the BCR Route since 2017, including bond information, entry documentation, bills of lading and other records relating to the entities involved in the importation process for each resulting shipment that entered the U.S. [AR 247-732] These penalty packages were then submitted to CBP's Penalties Branch for additional review and approval

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 10 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 10 of 47

to move forward with issuing notices of penalty. [AR 733-1314] In 2021, CBP determined that Plaintiffs and other entities were liable to the United States for Jones Act civil penalties equal to the appraised value of the frozen seafood that had been transported via the BCR Route. [AR 1008-1040, 1292-1314]

On August 9, 2021, CBP began issuing notices of penalty to parties involved in transporting the frozen seafood in violation of the Jones Act. [AR 1315-1330] CBP issued two notices of penalty to KIF. The first notice, issued on August 11, 2021, related to frozen seafood transported utilizing the vessel Duncan Island, and was in the amount of $14,748,549.51. [AR 1315-1322] The second notice, issued on August 17, 2021, related to frozen seafood transported utilizing the vessel Green Costa Rica, and was in the amount of $10,184,801.77. [AR 1323-1330] CBP issued numerous other notices of penalty to entities who are not parties to this suit but which were involved in transporting seafood via the BCR Route.

## PROCEDURAL HISTORY

On September 2, 2021, Plaintiffs filed the instant complaint and a motion seeking injunctive relief related to the CBP's issuance of the notices of penalty. [Dkt. 1] On September 28, the Court denied Plaintiffs' motion without prejudice until such time as "Plaintiffs demonstrate that they have filed a rate tariff and are diligently pursuing available remedies," namely, a petition for

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 11 of 47

remission or mitigation of the penalties. [Dkt. 64]

On October 1, Plaintiffs renewed their motion for injunctive relief, asserting that they had filed the required rate tariff with the STB on September 30, and submitted a petition relating to the notices of penalty to CBP on October 1. [Dkt. 65]

On October 10, the Court granted Plaintiffs' motion, and enjoined Defendants from issuing any new notices of penalty, or enforcing the already issued notices, except with respect to KIF, for the pendency of this case or until further order of the Court. [Dkt. 95 at 22-23] The Court's injunction further enjoins Defendants, pursuant to the constitutional tolling doctrine, from ever issuing or enforcing any new notices of penalty relating to shipments via the BCR Route commenced or completed during this litigation. [Dkt. 95 at 23-24]

On October 15, the parties submitted proposed expedited briefing schedules for cross-motions for summary judgment. [Dkt. 97 & 98] Both parties proposed a deadline for the Government to prepare an administrative record. Plaintiffs also proposed that they be entitled to limited discovery, without identifying what discovery they needed to resolve the issues of law presented by Plaintiffs' complaint. [Dkt. 98]

On October 20, the Court entered a scheduling order for expedited briefing on cross-motions for summary judgment. [Dkt. 101] The Court's order

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 12 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 12 of 47

required the Government to serve and file an administrative record by November 15, which the Government did. [Dkt. 106] The Court also stated that it did "not intend to preclude a request to permit extra-record discovery at some future time if Plaintiffs are able to articulate the precise discovery they are seeking and why they maintain it is necessary to assert their claims." [Dkt. 101 at 1-2] Plaintiffs subsequently filed a motion to supplement the administrative record. [Dkt. 111]

Notwithstanding KIF's pending petition for remission, the Government filed an enforcement action to collect the penalties owed by KIF as a counterclaim in this case. [Dkt. 105] On November 22, Plaintiffs filed an answer to the Government's counterclaim. The answer asserts as affirmative defenses to the Government's counterclaim all of the claims that Plaintiffs asserted against the Government in the complaint. [Dkt. 108 Aff. Def. ¶ 6]

## ARGUMENT

### I. Standard and scope of review.

For this motion the Court need only determine whether Plaintiffs' claims constitute valid legal defenses to CBP's attempt to collect Jones Act penalties from KIF. Whether the Government can establish, as a factual matter, that KIF actually owes the penalties alleged will be determined later in this case.

### A. Basis for Plaintiffs' claims.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 13 of 47

Plaintiffs contend that the complaint "asserts constitutional and statutory claims" that are purportedly not brought under the Administrative Procedure Act ("APA"). [Dkt. 111 at 2] The APA provides both a cause of action and a waiver of sovereign immunity for claims that final agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(A) & (B); 5 U.S.C. § 702. The Government does not contest that a plaintiff may bring a colorable constitutional claim under certain circumstances independent of the APA. It is not the case, however, that a plaintiff may simply invoke the presence of "statutory" claims to evade the ordinary mechanisms (and limitations) of APA review. *See, e.g.*, *Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1097 (D.C. Cir. 2017) ("If the text of a statute does not provide a cause of action, there ordinarily is no cause of action."); *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive law itself, private rights of action to enforce federal law must be created by Congress.").[3]

---

[3] Courts have also allowed plaintiffs to assert a claim that a government officer acted *ultra vires* their statutory authority without bringing an action under the APA. To assert such a claim, it is not sufficient for a plaintiff to assert that the officer made an "error in the exercise of that power." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1949). Rather, the plaintiff must allege facts sufficient to establish that the officer was acting "without any

The Court need not delve into these complex issues to determine the precise basis for Plaintiffs' claims. Now that the Government has brought a counterclaim in this case to recover the penalties owed by KIF, the Court has jurisdiction to decide the merits of Plaintiffs' defenses to that counterclaim, which raise parallel issues of law, even if those defenses are also couched as affirmative claims for declaratory and injunctive relief.

### B. CBP's statutory interpretations are entitled to deference.

Plaintiffs' claims (or defenses) implicate CBP's interpretation of the Jones Act, including the Third Proviso, and 19 U.S.C. § 1625(c). An agency's interpretation of a statute it administers may be entitled to deference. *See United States v. Mead Corp.*, 533 U.S. 218, 221 (2001); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

Plaintiffs suggest that "the more deferential standard of review that may be applicable to [APA cases]" does not apply in this case. [Dkt. 109 at 4] Plaintiffs are mistaken. Even if Plaintiffs are raising meritless *ultra vires*

---

authority whatever," or without any "colorable basis for the exercise of authority." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11 (1984) (internal quotations omitted). To the extent Plaintiffs are claiming that CBP acted *ultra vires* its statutory authority in issuing the notices of penalty or pursuing an enforcement action, Plaintiffs' claims are meritless.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 15 of 47

claims, such deference would apply. *See, e.g.*, *New York v. Trump*, 490 F. Supp. 3d 225, 241 (D.D.C. 2020) (in an action brought to enjoin an agency's alleged *ultra vires* acts, stating: "In this as in other settings, courts owe a measure of deference to the agency's own construction of its organic statute, but the ultimate responsibility for determining the bounds of administrative discretion is judicial.") (quoting *Nat'l Ass'n of Postal Sup'rs v. U.S. Postal Serv.*, 602 F.2d 420, 432 (D.C. Cir. 1979)). Such deference would also apply to whatever are Plaintiffs' so-called "statutory" claims.

To determine whether an agency's interpretation of a statute warrants deference, the Court must first determine whether the statute is unambiguous as to the question at issue. *See, e.g.*, *McMaster v. United States*, 731 F.3d 881, 889 (9th Cir. 2013). If it is unambiguous, then the Court must give effect to Congress's intent, regardless of what the agency determined. *Id.*

If, on the other hand, the statute is ambiguous, the Court must decide how much weight to give the agency's interpretation. *Id.* An agency's interpretation of an ambiguous statute should be accorded a high level of deference under *Chevron* if "Congress delegated authority to the agency generally to make rules carrying the force of law, and [] the agency interpretation claiming deference was promulgated in the exercise of that authority." *Mead*, 533 U.S. at 226-27. When *Chevron* deference applies, the

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 16 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 16 of 47

Court should uphold an agency's statutory interpretation if it is "based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. To the extent there is any ambiguity in the statutes at issue in this case, CBP interpretations embodied in regulation are entitled to *Chevron* deference.

An agency statutory interpretation that does not warrant *Chevron* deference may still warrant "respect proportional to its 'power to persuade.'" *McMaster*, 731 F.3d at 889 (quoting *Mead,* 533 U.S. at 235 & *Skidmore*, 323 U.S. at 140). When *Skidmore* deference applies, the Court should determine what weight to give the agency's interpretation based on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and [any other] factors which give it power to persuade." *Id.* (quoting *Skidmore*, 323 U.S. at 140). CBP's statutory interpretations set forth in ruling letters are entitled to *Skidmore* deference. *See Mead*, 533 U.S. at 235; *see also Furie Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.*, 2014 WL 1289581, at *6 (D. Alaska Mar. 27, 2014) (holding that at least *Skidmore* deference applied to a CBP statutory interpretation embodied in a Ruling Letter); *Horizon Lines*, 414 F. Supp. 2d at 54 (same).

## II.    Background of the Jones Act and the Third Proviso.

The objective of the Jones Act is to promote a domestic merchant marine, which is "necessary for the national defense and the development of the

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 17 of 47

domestic and foreign commerce of the United States." 46 U.S.C. § 50101(a); *see also Novak v. U.S.*, 795 F.3d 1012, 1016 (9th Cir. 2015) ("The purpose of the Jones Act is to support this country's merchant marine and its shipbuilding and repair facilities, at least in part so they may be available in times of war or national emergency").

The fundamental proscription of the Jones Act is the prohibition on transporting merchandise by water, or by land and water, between points in the United States, in any vessel that was not built in and documented under U.S. law, owned by U.S. citizens, and permitted to engage in coastwise trade. 46 U.S.C. § 55102. The prohibition applies to merchandise transported either directly or via a foreign port. *Id.*

The Third Proviso, 46 U.S.C. § 55116, is an exception to that prohibition.[4] The wording of the Third Proviso has changed little since its enactment in the Merchant Marine Act of 1920. As an exception to a fundamental tenant of the Jones Act, the Third Proviso should be construed narrowly. [Dkt. 38 at 15]

---

[4] The Third Proviso states:

> Section 55102 of this title does not apply to the transportation of merchandise between points in the continental United States, including Alaska, over through routes in part over Canadian rail lines and connecting water facilities if the routes are recognized by the Surface Transportation Board and rate tariffs for the routes have been filed with the Board.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 18 of 47

The U.S. Supreme Court has explained that the purpose of the Third Proviso was to avoid disturbance of established routes that were recognized to be in the public interest. As explained in the prior briefing [Dkt. 38 at 20-21], and by the U.S. Supreme Court:

> [The exception's] evident purpose was to avoid disturbance of established routes, recognized by the Interstate Commerce Commission as in the public interest, between the northwestern and eastern states through the lake ports. In these routes foreign owned water carriers participated as well as Canadian and American rail lines…. The proviso obviously would enable American carriers, participating in such through routes, to retain the benefits of the traffic which in some instances might otherwise be diverted to all water transportation by foreign owned vessels between points in Canada and the United States.

*Central Vermont Transp. Co. v. Durning*, 294 U.S. 33, 39 (1935).

These established routes were commonly understood to be the "through routes" that were intended to fall within the Third Proviso: routes operated by different carriers but as part of a continuous journey from one coastwise point to another, in part over the Great Lakes and in part over rail within Canadian territory. [Dkt. 38 at 20-21] CBP has likewise historically recognized the Third Proviso to be a "grandfather clause" intended "to avoid disturbance of established routes … between the northwestern and eastern states through the lake ports, using vessels which had heretofore been qualified to engage in the coastwise trade." [Dkt. 6-13 (Letter from Leonard Lehman, Assistant

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 19 of 47

Commissioner, Regulations and Rulings, to The Honorable John M. Murphy, Chairman Committee on Merchant Marine and Fisheries, House of Representatives, dated June 27, 1978)]

## III. The United States is entitled to summary judgment on Count I.

The Government incorporates its prior arguments that the BCR is not part of a "through route" and does not provide for "transportation" for purposes of the Third Proviso, and that Plaintiffs also failed to satisfy the requirements of the Third Proviso during the time they lacked an STB filing for the BCR Route. [Dkt. 38 at 15-23] The Government adds the following additional points.

As explained, the Third Proviso was intended to apply to "established routes" that served the "public interest," not specially built rail lines that have no purpose other than to evade the prohibitions of the Jones Act. The through routes that CBP has approved as meeting the requirements of the Third Proviso each used established rail lines like what was contemplated by Congress when it enacted the Third Proviso. Those rail lines were used to move merchandise in a continuous manner from one destination to another over many miles. These prior rulings can be grouped into three categories.

First, CBP has approved through routes that included merchandise transported over rail lines operated by the NBSR and the Canadian Pacific Railway between the Canadian rail terminals of Saint John, McAdam, and

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 20 of 47

Saint Stephen. Depending on which terminals the particular shipment was moving between, these routes involved rail movements of approximately 34 to 91 miles or more. [AR 16-31; Dkt. 39 ¶ 7-8]

Second, CBP has approved a through route that included merchandise transported by Canadian rail from Vancouver, British Columbia, to an unspecified location in the United States. Assuming entry to the closest U.S. port of entry in Blaine, Washington, the movement over the Canadian rail lines was likely a minimum distance of 16 miles and up to 40 or more miles. [AR 4-7; Dkt. 39 ¶¶ 7, 9]

Third, CBP has approved a through route that included ore transported by Canadian rail from Vancouver to Montana. The exact distance of the rail movement is not stated in the ruling letters, but the minimum distance from Vancouver to the Montana border is approximately 470 miles. [AR 1-3, 10-12; Dkt. 39 ¶¶ 7, 9]

Unlike these routes, the BCR Route includes only 100 feet of track, all within the Bayside port facility, that goes from point A to point B, then back to point A. The BCR was constructed for no purpose other than to evade the prohibitions of the Jones Act. It does not provide for transportation to or from anywhere. It certainly does not provide for a "continuous carriage of goods from the originating point on the line of one carrier—to destination on the line of

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 21 of 47

Case 3:21-cv-00198-SLG  Document 115  Filed 12/03/21  Page 21 of 47

another." *St. Louis Sw. Ry.*, 245 U.S. at 139 n. 4. A 100-foot rail line with pointless movement, specially constructed, is unlike anything CBP has ever approved, and is not the kind of established rail line serving the public interest that the Third Proviso was enacted to protect. Plaintiffs admit that the BCR was specially built in an attempt to evade the Jones Act prohibition on using foreign-flag vessels for domestic trade. [Dkt. 47 at 11][5]

CBP has approved through routes involving rail movements over the NBSR that were criticized as "commercially absurd." But unlike the BCR, the NBSR was an established rail line over which merchandise was transported from one destination to another. Indeed, Plaintiffs began using the BCR Route in order to avoid having to use the "commercially absurd" NBSR route (because the NBSR route was too costly). In issuing the notices of penalty, CBP has not changed its view that the Third Proviso does not have a "commercial

---

[5] Plaintiffs make much of their allegation that the BCR is "a registered Canadian railroad and a member of the Railway Association of Canada." [Dkt. 1 ¶ 31; Dkt. 47 at 11] The BCR does not appear to be listed as a Federal railway company by the Canadian Transportation Agency. https://otc-cta.gc.ca/eng/federal-railway-companies The BCR appears to be registered with the Railway Association of Canada, a trade association, as an "associate member," which the association describes as "either railways that operate exclusively on industrial sites (industrial railways), or suppliers that provide essential products and services to railways in Canada—everything from technology, to equipment and parts, training and education, and environmental, management, engineering and construction services." https://www.railcan.ca/who-we-are/rac-associate-members/

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 22 of 47

soundness" requirement. Rather, CBP determined that the inherent nature of the BCR itself does not meet the statutory requirements of the Third Proviso.

While importers may structure transactions for "the express purpose" of qualifying under the customs laws, they may not escape duties "by resort to disguise or artifice." *United States v. Citroen*, 223 U.S. 407, 415 (1912); *see also Merritt v. Welsh*, 104 U.S. 694, 704-05 (1881) (stating that "it might be held to be a fraud on the revenue" if "after … sugars are manufactured, especially after being put up in packages, coloring matter is artificially imposed," giving the sugars "a different color from that which belonged to them when manufactured"). Here, Plaintiffs used foreign-flag vessels to transport seafood from Alaska to Maine, a clear violation of the Jones Act, and are relying on an artifice—a specially built 100-foot rail line—that they falsely claim is part of the through route and includes transportation over Canadian rail lines.

### A. Plaintiffs' arguments that the BCR Route involves "transportation" over Canadian rail lines as part of a "through route" are meritless.

Plaintiffs appear to make four arguments that the BCR is part of a through route involving transportation over Canadian rail lines. First, Plaintiffs argue that the BCR Route involves "transportation" of merchandise because seafood is transported from Dutch Harbor to the eastern United States. [Dkt. 47 at 25] Second, Plaintiffs argue that CBP has improperly

attempted to insert the term "continuous" into the text of the Third Proviso. [Dkt. 47 at 26] Third, Plaintiffs argue that the BCR Route is a through route because it involves intermodal transportation. [Dkt. 47 at 27] Fourth, Plaintiffs rely on a straw man argument that the BCR Route meets the requirements of the Third Proviso because it need not be direct or commercially sound. [Dkt. 47 at 26-30] Each argument is meritless.

First, the fact that Plaintiffs are utilizing the BCR Route to transport merchandise from Dutch Harbor to the eastern United States is irrelevant, because the Third Proviso requires "transportation of merchandise … over through routes in part over Canadian rail lines." 46 U.S.C. § 55116. Under the statute, the Canadian rail line must be "part" of the through route, and there must be "transportation of merchandise" over the rail line. As Plaintiffs use the BCR Route, merchandise is not transported "in part over Canadian rail lines." The movement of merchandise begins and ends at the same point. And the BCR is not part of a through route because it does not connect to anything or provide a "continuous carriage of goods" from one point to another. [Dkt. 38 at 15-21]

This concept of "transportation" as requiring the movement of merchandise from one place to another is reflected in 19 C.F.R. § 4.80b, which provides that "a coastwise transportation of merchandise takes place, within

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 24 of 47

the meaning of the coastwise laws, when merchandise laden at a point embraced within the coastwise laws ("coastwise point") is unladen at another coastwise point, regardless of the origin or ultimate destination of the merchandise." In ruling letters CBP has consistently held that when movement of merchandise "begins and ends at the same coastwise point," there is no "transportation of merchandise between two coastwise points." [AR 14, 37] While the regulation and rulings focus on coastwise points, the concept is that moving an item from one place and returning it to the exact same place is not transportation between two coastwise points under the Jones Act. Similarly, Plaintiffs' movement of merchandise back and forth to the same place over the BCR is not "transportation … over Canadian rail lines."

Second, the concept of "continuous" transportation, which Plaintiffs appear to concede is not present over the BCR Route [Dkt. 47 at 28], comes from the definition of "through route" adopted by the U.S. Supreme Court and accepted by Plaintiffs. [Dkt. 5 at 35 n.10 (quoting *St. Louis Sw. Ry.*, 245 U.S. at 139 n. 4)] The Court should therefore reject Plaintiffs' argument that CBP is improperly attempting to insert the term "continuous" into the text of the Third Proviso.

Third, Plaintiffs argue that the BCR Route is a through route because it involves intermodal transportation. [Dkt. 47 at 27] Plaintiffs' argument is

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 25 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 25 of 47

meritless. While the BCR Route involves intermodal transportation, it omits any actual "transportation … over Canadian rail lines."

Fourth, Plaintiffs' arguments about the commercial soundness of the BCR are irrelevant. As explained, the BCR is an artifice that does not meet the statutory requirements of the Third Proviso.

**B. The BCR Route did not meet the requirements of the Third Proviso prior to Plaintiffs' STB filing on September 30, 2021.**

The Court was correct to conclude that Plaintiffs are not able to prove that the BCR Route met the requirements of the Third Proviso for the time that there was no rate tariff on file with the STB for the route, i.e., prior to September 30, 2021. [Dkt. 64 at 16] The Government incorporates its prior arguments on this issue. [Dkt. 38 at 21-23] Even if the Court were to find that the BCR Route otherwise meets the requirements of the Third Proviso, the Court should grant summary judgment and allow the Government to pursue Jones Act penalties for merchandise transported prior to Plaintiffs' STB filing.

**IV. The United States is entitled to summary judgment on Count II because CBP's pursuit of Jones Act penalties against KIF does not violate 19 U.S.C. § 1625(c)(1).**

In Count II, Plaintiffs allege that CBP's notices of penalty improperly modified or revoked various CBP administrative rulings that had been in effect for more than 60 days without providing notice and an opportunity to

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 26 of 47

comment. [Dkt. 1, ¶¶ 66-71] The Court correctly held that Plaintiffs "cannot maintain a claim against CBP under subsection (c)(1) because CBP has never issued a prior interpretative ruling with respect to the BCR Route." [Dkt. 64 at 18-19]

## A. There is no CBP ruling letter concerning the BCR Route for CBP to have modified or revoked.

Notice and comment under subsection (c)(1) is required only when CBP proposes a new interpretive ruling or decision that would modify or revoke a prior interpretive ruling or decision that has been in effect for more than 60 days. *Motorola v. United States*, 509 F.3d 1368, 1372 (Fed. Cir. 2007). For carrier rulings (which include Jones Act rulings), the public is on notice that CBP will only apply the ruling "with respect to transactions involving operations identical to those set forth in the ruling letter." 19 C.F.R. § 177.9(b)(4); *see also* 19 C.F.R. § 177.9(a) (ruling letters may only "be cited as authority in the disposition of transactions involving the same circumstances"). Third parties to whom rulings were not issued should not "rely on the ruling letter or assume that the principles of that ruling will be applied in connection with any transaction other than the one described in the letter." 19 C.F.R. § 177.9(c).

CBP issues ruling letters based on a detailed description of the relevant

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 27 of 47

transaction, which determines the proper application of the customs laws. *See* 19 C.F.R. § 177.2(b)(1) ("Each request for a ruling must contain a complete statement of all relevant facts relating to the transaction … and a description of the transaction itself, appropriate in detail to the type of ruling requested"); 19 C.F.R. § 177.2(b)(2)(i) ("The Customs transaction to which the ruling request relates must be described in sufficient detail to permit the proper application of relevant customs and related laws"). As indicated above, there is no CBP ruling letter addressing the BCR route itself. Plaintiffs' argument that CBP violated subsection (c)(1) when it issued the notices of penalty is therefore meritless.

## B. The Court should again reject Plaintiffs' arguments that CBP violated § 1625(c)(1).

Plaintiffs appear to make two arguments in support of their claim that CBP violated § 1625(c)(1). First, Plaintiffs argue that the BCR Route is indistinguishable from the NBSR except for its "shorter length." [Dkt. 47 at 36] Second, Plaintiffs appear to argue that the notices of penalty violate the "rationale" in prior ruling letters that "in part over Canadian rail lines" means "any" use of Canadian rail, and that there is no de minimis or commercial soundness requirement in the Third Proviso. [Dkt. 47 at 36-37] Plaintiffs' arguments are meritless.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 28 of 47

As explained, subsection (c)(1) only applies when CBP proposes a decision that would modify or revoke a prior ruling letter involving the "same circumstances" and "identical" operations. As Plaintiffs concede, the BCR Route involves a different rail line than any addressed in a prior ruling letter. Prior to issuing the notices of penalty, CBP researched prior ruling letters but found none that was identical to the BCR Route. [AR 224] Thus, the notices of penalty did not modify or revoke any prior ruling letters.

Moreover, Plaintiffs are incorrect that the only distinguishing fact between the BCR Route and the routes addressed in those prior ruling letters is the BCR's "shorter length." Prior to issuing the notices of penalty, and in this litigation, CBP's conclusion that the BCR Route does not meet the requirements of the Third Proviso has not focused exclusively on the length of the BCR, but rather on other factors, such as the fact that the BCR goes nowhere. [AR 224 ("It appears as though the [BCR] … leads to nowhere (See Video)."); Dkt. 38 at 15-21] The extremely short length of the BCR is just one factor that supports CBP's conclusion that the BCR goes nowhere and is not "transportation" over a "through route."

For the same reasons, the Court should reject Plaintiffs' argument that the notices of penalty violated the "rationale" of prior ruling letters that the Third Proviso does not have a "commercial soundness" requirement. A claim

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 29 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 29 of 47

alleging a violation of subsection (c)(1) requires a proposed decision that would modify or revoke a prior ruling letter involving the "same circumstances" and "identical" operations. Whether Plaintiffs think the notices of penalty violated the "rationale" of a prior carrier ruling issued pursuant to a different set of facts is irrelevant. In any event, in issuing the notices of penalty CBP has not changed its view that the Third Proviso does not have a "commercial soundness" requirement. Rather, CBP has determined that the inherent nature of the rail operation itself does not meet the statutory requirements of the Third Proviso.

## V.  The United States is entitled to summary judgment on Count III because CBP's pursuit of Jones Act penalties does not violate 19 U.S.C. § 1625(c)(2).

Count III alleges that prior to issuing the notices of penalty, CBP was required to provide notice and comment under 19 U.S.C. § 1625(c)(2). Under subsection (c)(2), notice and comment is only required before CBP issues a ruling or decision that would modify "treatment previously accorded by [CBP] to substantially identical transactions." The Court previously held that Plaintiffs made a showing of at least serious questions going to the merits of this claim, accepting Plaintiffs' argument that transactions authorized in previous CBP ruling letters are substantially identical to the BCR Route transaction. [Dkt. 64 at 19-20] The Court should grant summary judgment on

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 30 of 47

Count III in the Government's favor for the following reasons.

First, Plaintiffs are incorrect when they argue that ruling letters are "treatment" for purposes of subsection (c)(2). [Dkt. 47 at 35] "Treatment" is a legal term of art and CBP's regulations specify what it means and how a claim of treatment must be proven. It is well-settled that ruling letters are not treatment.

Second, Plaintiffs have not demonstrated that CBP accorded treatment to any transactions to which they would compare the BCR Route transactions that are the subject of CBP's notices of penalty.

Third, even if Plaintiffs could demonstrate treatment, they cannot demonstrate treatment of transactions substantially identical to BCR Route transactions.

### A.    Overview of 19 U.S.C. § 1625(c)(2).

Subsection (c)(2) is meant to "ensure that the interested public has notice of a proposed change in Customs' policy and can modify any current practices that were based in reliance on Customs' earlier policy." *Am. Fiber & Finishing, Inc. v. United States,* 121 F. Supp. 3d 1273, 1286 (Ct. Int'l Trade 2015) (internal quotation marks omitted). "Under section 1625(c)(2), CBP must follow notice and comment procedures before it issues an 'interpretive ruling or decision which would . . . have the effect of modifying [a] treatment previously accorded

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 31 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 31 of 47

by [Customs] to substantially identical transactions.'" *Am. Fiber*, 121 F. Supp.

3d at 1279 (quoting § 1625(c)(2)).

The CIT has identified four elements that must be established in making

a claim under subsection (c)(2):

> To establish a violation of § 1625(c)(2), [an importer] must show
> that: (1) an interpretative ruling or decision; (2) effectively
> modified; (3) a 'treatment' previously accorded by Customs to
> 'substantially identical transactions'; and (4) the interpretative
> ruling or decision had not been subject to the notice and comment
> process set forth in § 1625(c)(2).

*Motorola v. U.S.,* 462 F. Supp. 2d 1367, 1372 (Ct. Int'l Trade 2006) (citations

omitted).

Assuming, without conceding, that penalty notices constitute

interpretive rulings or decisions under the statute, Plaintiffs' subsection (c)(2)

claim fails because they cannot satisfy the second and third requirements—

and failure to meet those requirements renders the fourth requirement moot.

CBP regulations implementing subsection (c)(2) address what an

importer must demonstrate to establish that "treatment" was previously

accorded by CBP to substantially identical transactions. 19 C.F.R. § 177.12(c)

states, in relevant part:

> (c) Treatment previously accorded to substantially identical
> transactions –
>
> (1) General. The issuance of an interpretive ruling that has the

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 32 of 47

effect of modifying or revoking the treatment previously accorded by Customs to substantially identical transactions must be in accordance with the procedures set forth in paragraph (c)(2) of this section. The following rules will apply for purposes of determining under this section whether a treatment was previously accorded by Customs to substantially identical transactions of a person:

(i) There must be evidence to establish that:

(A) There was an actual determination by a Customs officer regarding the facts and issues involved in the claimed treatment;

(B) The Customs officer making the actual determination was responsible for the subject matter on which the determination was made; and

(C) Over a 2-year period immediately preceding the claim of treatment, Customs consistently applied that determination on a national basis as reflected in liquidations of entries or reconciliations or other Customs actions with respect to all or substantially all of that person's Customs transactions involving materially identical facts and issues[.]

19 C.F.R. § 177.12(c)(1)(i)(A)-(D).

The regulations further state that CBP will determine whether treatment occurred on a case-by-case basis, with a focus on whether the transactions were reviewed by CBP:

(ii) The determination of whether the requisite treatment occurred will be made by Customs on a case-by-case basis and will involve an assessment of all relevant factors. In particular, Customs will focus on the past transactions to determine whether there was an examination of the

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 33 of 47

> merchandise (where applicable) by Customs or the extent to
> which those transactions were otherwise reviewed by
> Customs to determine the proper application of the Customs
> laws and regulations. For purposes of establishing whether
> the requisite treatment occurred, Customs will give
> diminished weight to transactions involving small quantities
> or values, and Customs will give no weight whatsoever to
> informal entries and to other entries or transactions which
> Customs, in the interest of commercial facilitation and
> accommodation, processes expeditiously and without
> examination or Customs officer review[.]

19 C.F.R. § 177.12(c)(1)(ii).

Additionally, "Customs will not find that a treatment was accorded to a person's transactions if … [t]he person made a material false statement or material omission in connection with a Customs transaction or in connection with the review of a Customs transaction and that statement or omission affected the determination on which the treatment claim is based[.]" 19 C.F.R. § 177.12(c)(1)(iii)(C).

The regulations further specify that the burden of proof rests on the party claiming treatment:

> The evidentiary burden as regards the existence of the previous
> treatment is on the person claiming that treatment. The evidence
> of previous treatment by Customs must include a list of all
> materially identical transactions by entry number (or other
> Customs assigned number), the quantity and value of merchandise
> covered by each transaction (where applicable), the ports of entry,
> the dates of final action by Customs, and, if known, the name and
> location of the Customs officer who made the determination on
> which the claimed treatment is based. …

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 34 of 47

19 C.F.R. § 177.12(c)(1)(iv).

The Federal Circuit has found this regulation to be a reasonable interpretation of the statute, and one that is entitled to deference under *Chevron*. *Motorola*, 509 F.3d at 1371-72; *Motorola, Inc. v. United States*, 436 F.3d 1357, 1365-67 (Fed. Cir. 2006).

**B.    Ruling letters are not treatment.**

Plaintiffs argue that "it cannot reasonably be disputed that the Ruling Letters constitute a 'treatment previously accorded by the Customs Service.'" [Dkt. 5 at 39] Plaintiffs are incorrect.

Section 1625(c) is subdivided into two subsections: subsection (1) dealing with instances where a prior ruling exists, and subsection (2) where there is no prior ruling, but there is a pattern of conduct by CBP which rises to the level of "treatment." If, as Plaintiffs claim, ruling letters constitute treatment, there would be no need to have a separate subsection for "treatment" in the statute. Accordingly, courts have held that rulings—even those covering substantially identical merchandise—are not considered when conducting a subsection (c)(2) treatment analysis.

For example, in the *Motorola* litigation the Federal Circuit held that ruling letters do not establish a pattern of treatment, stating: "Allowing an

importer to rely on subsection (c)(2) merely because it had secured multiple [ruling letters] covering 'substantially identical' merchandise would create a fictitious catchall in subsection (c)(2), thereby gutting the strict identity requirement of the PRL [pre-classification ruling letter] system and rendering subsection (c)(1) superfluous." *Motorola*, 509 F.3d at 1372.

In *Motorola*, the Federal Circuit affirmed the CIT's decision, in which the CIT agreed with CBP that "Congress intended subsections (c)(1) and (c)(2) to have the same impact, but under different situations, the former when a prior interpretative ruling ... has been issued, and the latter when no previous interpretative ruling or decision has been issued." *Motorola*, 462 F. Supp. 2d at 1380. The CIT also agreed with CBP that "[r]eading subsection (c)(2) as including interpretative rulings … would render subsection (c)(1) redundant." *Id*. at 1380. The CIT further explained that "[s]ubsection (c)(2) pertains solely to 'treatment' by Customs," which "involves a pattern of action by Customs involving, inter alia, a sufficient degree of examination or review for classification purposes." *Id*. at 1381.

Likewise, in *Precision Specialty Metals, Inc. v. United States*, the CIT recognized that the term "treatment" is "distinct from the terms 'ruling' and 'decision.'" 116 F. Supp. 2d 1350, 1043 (Ct. Int'l Trade 2000). The court noted that "[t]he bases for relief set forth in § 1625(c)(1) and (2) exist independent of

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 36 of 47

each other." *Id.* n. 25.

Plaintiffs misconstrue the Federal Circuit's decision in *California Industrial Products, Inc. v. U.S.*, 436 F.3d 1341, 1351 (Fed. Cir. 2006) in arguing that ruling letters constitute treatment. [Dkt. 5 at 39] In *California Industrial Products*, the Federal Circuit did not hold that ruling letters constitute treatment. Rather, the court held that the term "interpretive ruling or decision" in § 1625(c) encompasses "a protest review decision" and "a ruling letter." *Id.* at 1351. This question—whether CBP issued an "interpretive ruling or decision"—was a threshold issue that the court needed to address before it could examine whether such an "interpretive ruling or decision" modified the treatment previously accorded by CBP to substantially identical transactions. While the court found that the protest review decision and ruling letter were an "interpretive ruling or decision," the court did not determine that such interpretive ruling or decision *constituted* treatment. Rather, the court determined whether the interpretive ruling or decision *modified* the treatment. Whether ruling letters could constitute treatment under 19 U.S.C. § 1625(c)(2) was not even a question before the court.

### C. Plaintiffs have not demonstrated that CBP accorded treatment to any transactions to which they would compare the BCR Route transactions.

Plaintiffs appear to claim that they have established treatment through

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 37 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 37 of 47

CBP's purported approval of transactions utilizing the NBSR Route. [Dkt. 47 at 37] Plaintiffs are incorrect.

In *Motorola*, the CIT rejected a similar claim. In that case, CBP had issued ruling letters to Motorola classifying certain circuits under a duty free tariff provision, and Motorola, relying on those ruling letters, had declared that more than 900 entries of circuits were duty free, the majority of which CBP liquidated duty free pursuant to its bypass procedures, i.e., without examination or review. *Motorola*, 462 F. Supp. 2d at 1370. CBP then issued a different ruling letter to Motorola declaring that the circuits were subject to a duty. *Id.* Motorola contended that the subsequent ruling letter was issued without notice and comment, and had the effect of modifying or revoking prior treatment in violation of subsection (c)(2). *Id.*

The CIT never even examined whether the subsequent ruling letter and the prior entries involved substantially identical transactions because the court concluded that Motorola had failed to establish that the liquidation of those prior entries constituted treatment. *Id.* at 1372. Applying 19 C.F.R. § 177.12(c)(1)(i)(A), the court held that Motorola had failed to establish that a CBP officer "examined or reviewed the particular entries to a sufficient enough degree." *Id.* at 1374-79. The Federal Circuit affirmed the CIT's conclusion. *Motorola*, 509 F.3d at 1372 (agreeing that "there was never an actual

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 38 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 38 of 47

examination or determination that any of these transactions" qualified under the relevant customs schedule); *see also Kent Int'l, Inc. v. U.S.*, 17 F. 4th 1104 (Fed. Cir. 2021) ("It is reasonable to conclude that goods which are admitted pursuant to representations by the importer and are not independently examined or reviewed … are not 'treated' by Customs."). Motorola argued on appeal that the prior ruling letters were themselves treatment, but, as noted, the Federal Circuit rejected that argument. *Id.*

Here, Plaintiffs have not even attempted to show that a CBP officer actually examined any relevant transactions, much less make a determination whether the transaction complied with the Third Proviso. Nor have they shown that CBP consistently applied any such determinations "on a national basis" for the "2-year period immediately preceding" the notices of penalty. 19 C.F.R. § 177.12(c)(1)(i)(C). Thus, Plaintiffs have not shown treatment and cannot establish a violation of subsection (c)(2).

To the extent Plaintiffs intend to argue that CBP accorded treatment when it allowed trucks to enter the U.S. with the merchandise from the BCR Route, the Court should reject that argument for several reasons. First, allowing the trucks to enter the U.S. only demonstrated that the merchandise (the frozen seafood) was admissible. It does not show that CBP was given an opportunity to examine the facts of the BCR Route to determine compliance

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 39 of 47

with the Third Proviso. Plaintiffs purposefully circumvented the proper avenue for seeking such a determination from CBP (requesting an administrative ruling), seemingly to deprive CBP of an opportunity to examine the use of the rail. Plaintiffs' assertions that CBP knew about the BCR through bills of lading is meritless because CBP does not rely upon bills of lading to provide the type of detailed facts necessary to determine if a particular operation complies with the Third Proviso. [Dkt. 38 at 25; Dkt. 39 ¶ 10]

Second, even assuming there was a determination, Plaintiffs have not shown and could not show that CBP made determinations about the BCR Route on a "national basis." 19 C.F.R. § 177.12(c)(1)(i)(C). The BCR exists only in one location—the port of Bayside—and it appears that all the merchandise which from the BCR Route comes in through a single port: Calais, Maine. [Dkt. 5 p. 7-8.] Such an isolated determination, if there even was a determination, could never form the basis of a "treatment" claim.

Third, even if Plaintiffs could prove all of that, their claim would still be meritless because Plaintiffs made material omissions concerning their transactions. *See* 19 C.F.R. § 177.12(c)(1)(iii)(C). It is undisputed that Plaintiffs switched to using the BCR Route without notifying CBP that the BCR is a specially built mini-rail track that goes nowhere. As demonstrated by this case, that was a material omission.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 40 of 47

**D.    Plaintiffs cannot demonstrate treatment of transactions "substantially identical" to the BCR Route transactions.**

This Court's preliminary finding that the BCR appears to be "substantially identical to other Canadian rail lines on which merchandise is carried solely to comply with the Third Proviso" must be revisited, because it appears to focus on the ultimate outcome—purported compliance with the Third Proviso—rather than the unique facts of the transactions (the railways) at issue. [Dkt. 64, p. 20] CBP's analysis of the unique facts of any given transaction is fundamental to whether the particular outcome will be the same, or not, compared to either other interpretive rulings and decisions, or the "treatment" that might have been accorded to past transactions. A change in the underlying facts of the transaction can influence CBP's determination of the ultimate outcome. Even Plaintiffs appear to agree that the BCR Route is not substantially identical to the NBSR Route as a factual matter—Plaintiffs stopped using the NBSR Route because it was too long and expensive. [Dkt. 38 at 8-9]

The CIT has interpreted the "substantially identical" requirement under subsection (c)(2) as follows: "The plain meaning of the phrase 'substantially identical' can be discerned from the dictionary definitions of each term. The term 'substantial' is defined as 'being of considerable importance, value,

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 41 of 47

degree, amount or extent.' The term 'identical' is defined as '[b]eing the same[,] exactly equal and alike[,] [h]aving such similarity or near resemblance as to be fundamentally equal or interchangeable.'" *Motorola v. U.S.*, 350 F. Supp. 2d 1057, 1074 (Ct. Int'l Trade 2004) (citations omitted) (brackets in original), *aff'd in relevant part*, *Motorola*, 436 F.3d at 1367.

Application of the above-quoted plain meaning definition of the terms "substantially" and "identical" demonstrates the significant differences between the BCR and the rail lines that CBP has said meet the requirements of the Third Proviso. To be "substantially identical," the items must, to a considerable degree, resemble each other "as to be fundamentally equal or interchangeable." *Id*. The specially built BCR, on which the merchandise is moved from point A to point B and back to point A, all within the same port facility, is clearly not equal to or interchangeable with the established rail lines previously approved by CBP.

In *Motorola*, the CIT held that the importations of four circuit models were not substantially identical transactions to importations of other, previously entered circuits for purposes of establishing "treatment" under subsection (c)(2). 350 F. Supp. 2d at 1074. In making its determination, the CIT analyzed the characteristics of the circuits at issue, which were used with lithium-ion battery cells, and the characteristics of the other circuits, which

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 42 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 42 of 47

were used with nickel-based batteries. The CIT said:

> Although the Lithium-ion Chemistry Assemblies and the Nickel Assemblies may be made in much the same manner and serve similar purposes, the two sets of assemblies fall short of being identical. … Principally, one set of assemblies are used with lithium-ion battery cells while the others are used with nickel-based batteries. Consequently, Customs did not violate 19 U.S.C § 1625(c)(2) with respect to the Lithium-ion Chemistry Assemblies.

*Motorola*, 350 F. Supp. 2d at 1074.

Because the circuits were not "substantially identical," the Federal Circuit affirmed the CIT's decision that CBP did not violate subsection (c)(2) by applying a Headquarters Ruling to those four circuit models and classifying them under a different subheading than the other circuits. The Federal Circuit held that "it was reasonable for the trial court to hold that the nickel chemistry parts were 'substantially identical' to the bypass parts, but that the lithium chemistry parts were not." *Motorola*, 436 F.3d at 1368; *compare California Industrial Products*, 436 F.3d at 1351 (holding that transactions were "substantially identical" when they both were based on drawbacks for "scrap").

*Motorola* is instructive in that the CIT held that the circuits were not "substantially identical" for the purposes of section 1625(c)(2), despite being "made in much the same manner" and "serving similar purposes" – being used in cell phone battery packs. *Motorola*, 350 F. Supp. 2d at 1060. Similar to the

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 43 of 47

nickel and lithium circuits, which are both used in cell phone battery packs, the BCR and the established rail lines that CBP approved in the past are rail lines on Canadian soil that were being used in an attempt to qualify for the Third Proviso. However, just as nickel circuits are not "substantially identical" to lithium ones, the BCR, which is a mere 100 feet of track that goes nowhere, created to reduce the Third Proviso to a technicality, is not "substantially identical" to the routes which CBP approved in the past, which involved miles of established, existing rail lines used for actual transportation of merchandise. While superficial similarities may exist between the BCR and the rail tracks that meet the Third Proviso, there are significant differences, such as distance, purpose, and compliance with the fundamental tenants of the Jones Act – including the purpose of the Third Proviso, which was to preserve existing routes that met a need at that time which Congress was not going to disrupt.

## VI.    The United States is entitled to summary judgment on Count IV.

Count IV alleges that Plaintiffs did not have fair notice that the BCR Route would not meet the requirements of the Third Proviso, such that Plaintiffs were denied due process. The Court correctly rejected this claim, holding "a person of ordinary intelligence had a reasonable opportunity to know, especially in the wake of the Horizon litigation, that a rate tariff needed to be filed with the STB to comply with the Third Proviso." [Dkt. 64 at 21-22]

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 44 of 47

The Government incorporates its prior arguments on this issue. [Dkt. 38 at 27-31]

The Court also stated that Plaintiffs "have presented what could be considered valid questions with respect to CBP's interpretation of what constitutes 'transportation' over a 'through route.' " [Dkt. 64 at 21] However, Plaintiffs have clarified that they are *not* alleging that the terms of the Third Proviso are impermissibly vague. [Dkt. 47 at 39] Rather, Plaintiffs' due process claim is premised on the allegation that CBP purportedly "*changed* [without notice] its more than fifteen-year-old, consistent interpretive guidance concerning the Third Proviso." [Dkt. 47 at 39] Thus, Plaintiffs' clarified due process claim appears to mirror their "statutory" claim under 19 U.S.C. § 1625(c)(1). which the Court correctly found to be meritless. [Dkt. 64 at 19]

## VII. The Court should dismiss Count V.

Plaintiffs agree that their Eighth Amendment claim is not ripe. [Dkt. 109 at 5] "If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990). That is especially true if—as Plaintiffs assert—their Eighth Amendment claim depends on whether and to what extent CBP pursues enforcement actions with respect to the notices of penalty CBP has issued, or may issue, to numerous unnamed non-parties. [Dkt. 109 at

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 45 of 47

5 n.2] The Government has only brought an enforcement action for Jones Act penalties related to this case against KIF, brought as a counterclaim in this case, and the agency is presently enjoined from bringing other similar enforcement actions.

Moreover, Plaintiffs lack standing to assert Eighth Amendment violations committed against numerous unnamed non-parties. *See Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) ("The rights protected by the Eighth Amendment are personal rights and only the person subject to the violation has standing to bring suit.").

For all of these reasons, the Court should dismiss Count V.

## VIII. The United States is entitled to summary judgment on Count VI.

The Government incorporates all of its previous arguments about why an injunction, especially a constitutional tolling injunction, should not have issued in this case. [Dkt. 38 at 35-42; Dkt. 77] When and if Court determines that Plaintiffs' defenses to the Government's penalty enforcement action are meritless as a matter of law, the Court should dissolve the injunction.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 46 of 47

Case 3:21-cv-00198-SLG   Document 115   Filed 12/03/21   Page 46 of 47

## CONCLUSION

For all of these reasons, the Court should grant the Government's motion for summary judgment and dissolve the Court's injunction.

RESPECTFULLY SUBMITTED this 3rd day of December 2021, in Anchorage, Alaska.

E. BRYAN WILSON
Acting United States Attorney


s/ Seth M. Beausang
Assistant U.S. Attorney
Attorney for the Defendant


**CERTIFICATE OF SERVICE**
I hereby certify that on December 3, 2021,
a copy of the foregoing was served electronically on:

David Karl Gross, ABA #9611065
Edward E. McNally, ABA #9203003
Marc E. Kasowitz *(Pro Hac Vice)*
David J. Abrams *(Pro Hac Vice)*
David E. Ross *(Pro Hac Vice)*
Hector Torres (Pro Hac Vice)
Kim Conroy *(Pro Hac Vice)*
Attorneys for Plaintiffs

s/ Seth M. Beausang
Office of the U.S. Attorney


Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 47 of 47