E. BRYAN WILSON
Acting United States Attorney

SETH M. BEAUSANG
Assistant U.S. Attorney
U.S. Attorney's Office, District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: Seth.Beausang@usdoj.gov

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC, | ) ) ) ) |
| Plaintiffs, | ) Case No. 3:21-cv-00198-SLG ) |
| vs. | ) ) **UNITED STATES'** |
| UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, U.S. Customs and Border Protection Acting Commissioner, in his official capacity, | ) **OPPOSITION TO PLAINTIFFS'** ) **MOTION FOR PARTIAL** ) **SUMMARY JUDGMENT** ) ) ) ) ) ) |
| Defendants. | ) ) |

## INTRODUCTION

The Court is familiar with the facts of this case and the parties' prior

arguments. The Court should deny Plaintiffs' motion for summary judgment, and grant Defendants' motion for summary judgment.

## FACTUAL BACKGROUND

Defendants incorporate the facts stated in the opposition to Plaintiffs' motion for a preliminary injunction, [Dkt. 38 at 3-12], and in Defendants' motion for summary judgment, [Dkt. 115 at 2-11]. Defendants add the following points in response to Plaintiffs' "Statement of Facts," much of which is argument. [Dkt. 117 at 17-37]

Plaintiffs refer throughout their motion to the "Bayside Route," by which they appear to mean any transportation of seafood through the Bayside port. [Dkt, 117 at 12] The Court correctly recognized that the BCR Route, which Plaintiffs have utilized since 2012, involves the Bayside Canadian Railway ("BCR") and is distinct from the NBSR Route, which Plaintiffs and other shippers utilized prior to 2012, and which involved the New Brunswick Southern Railway ("NBSR"). [Dkt. 64 at 2-4; *see also* Dkt. 57-1 (showing the NBSR Route)] Defendants use the Court's terms in this brief.

Plaintiffs argue that CBP did not give notice whether it intended to modify or revoke the pre-*Horizon* ruling letters, or what it meant when CBP wrote an attorney for American Seafoods Company ("ASC") in 2007 and stated that the agency would "abide by the court's decision" in *Horizon Lines, LLC. v.*

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 2 of 43

*United States*, 414 F. Supp. 2d 46, 55 (D.D.C. 2006). [Dkt. 117 at 14-15] That is incorrect. CBP was clear in its letter to ASC, and CBP also wrote an attorney for Horizon Lines, LLC, in 2007 (the "Horizon letter," attached as Ex. A), and stated that:

> CBP henceforth will require that a water carrier operating in the noncontiguous domestic trade have a rate tariff on file with the STB for any through route (coastwise transportation) described in section 55116 [the Third Proviso], in order for the water carrier to lawfully employ a non-coastwise-qualified vessel in transporting merchandise over such route.

[Ex. A at 1-2]

CBP further stated in the Horizon letter that "as to your concern that others may rely on rulings invalidated by the [*Horizon*] court, we believe that the court's decision constitutes public notice that the rulings were invalidated by the court." [Ex. A at 2]

CBP sent a copy of the Horizon letter to ASC in 2007. [Dkt. 6-15 at 1]

Plaintiffs allege, without citing any evidence, that when trucks arrive at the Calais, Maine, port of entry from the Bayside port, there is an "active review" by "CBP personnel," and they imply that review includes CBP determining whether the seafood was transported in accordance with the Third Proviso. [Dkt. 117 at 23] There is no evidence to support these allegations. While Plaintiffs claim that at the time of entry CBP "issues" a CBP Form 7501

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 3 of 43

[Dkt. 8 ¶ 12], the form says nothing about the Jones Act or the Third Proviso.[1] CBP is responsible for enforcing hundreds of laws and regulations.[2] As this case demonstrates, determining a potential Jones Act violation involving the Third Proviso can require an in-depth review that cannot be completed by a CBP officer at the time of entry, as well as proper disclosure of the relevant facts. *See* 19 U.S.C. § 1484 (requiring importers to use reasonable care in providing CBP with the information necessary to establish compliance with applicable laws).[3]

CBP does not use bills of lading to determine whether an importer has met the requirements of the Third Proviso. [Dkt. 39 ¶ 10] Rather, it is a common practice, and importers are encouraged by CBP, to request a prospective ruling to determine compliance with the Jones Act and Third Proviso when the facts concerning the transportation are not identical to those considered in a prior CBP ruling. [Dkt. 39 ¶ 11; AR 41-118] In other words, the

---

[1] *See* https://www.cbp.gov/sites/default/files/assets/documents/2021-Sep/CBP%20Form%207501.pdf CBP does not "issue" a CBP Form 7501. Members of the trade can provide entry information to CBP electronically, which information will populate the data fields of a CBP Form 7501. *See* https://www.cbp.gov/trade/programs-administration/entry-summary/cbp-form-7501/

[2] *See, e.g.*, https://www.cbp.gov/trade/rulings/summary-laws-enforced/us-code.

[3] Plaintiffs appear to have the "reasonable care" concept backwards, believing it is CBP's responsibility to ensure importers use "reasonable care" rather than an obligation of importers. [Dkt. 117 at 62]

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 4 of 43

Case 3:21-cv-00198-SLG   Document 134   Filed 12/17/21   Page 4 of 43

way to obtain a review by CBP of a Jones Act question is not by making an entry, but by requesting a ruling letter [AR 110-111], just as numerous other shippers did when they wanted to rely on the Third Proviso to transport merchandise from Alaska to the Lower 48. [Dkt. 115 at 20-21]

Plaintiffs state that the *Horizon* court "approved of CBP's ruling on the 'sham' issue," implying that CBP had issued a ruling that "sham" railways comply with the Third Proviso. [Dkt. 117 at 31] That is incorrect. The *Horizon* court was addressing an argument by the plaintiff in that case that the "Third Proviso contains an implied prohibition on 'sham or commercially impractical Canadian rail movement to achieve 'technical compliance' with the literal terms of the statute," by which the plaintiff meant and argued that "the term 'through routes' as used in the Third Proviso means the most 'direct' route." *Horizon*, 414 F. Supp. 2d at 55 n.6. CBP had concluded the Third Proviso did not require that a "direct" route be used—that was, in context, the meaning of CBP's statement in its ruling letter that the "Third Proviso does not have a <u>de minimus</u> requirement for 'in part over Canadian rail lines.' " [Dkt. 53-1 at 5] The *Horizon* court affirmed CBP's conclusion that the Third Proviso does not require that the most direct route be used. *Horizon*, 414 F. Supp. 2d at 55 n.6 ("If Congress wishes to limit the use of the Third Proviso to specific routes or to require the STB to evaluate the commercial soundness of a proposed route,

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 5 of 43

it has the authority to do so, but the Third Proviso as currently written contains no such requirement."). CBP has never found, and the *Horizon* court did not hold, that "sham" rail movements meet the requirements of the Third Proviso.

Plaintiffs' suggestion that CBP has concluded that the BCR Route is commercially unreasonable is curious given that Plaintiffs also assert that the "BCR rail line is economically and logistically far more efficient" compared to the NBSR Route. [Dkt. 117 at 15] Indeed, by evading the requirements of the Jones Act with their sham "through route" and rail line, Plaintiffs have gained an unfair competitive advantage over other pollock producers that comply with the law. [Dkt. 80 ¶¶ 6-7] The BCR Route therefore appears to be commercially *advantageous* to Plaintiffs, even though it is used for unlawful conduct. A decision in favor of Plaintiffs will undoubtedly encourage others to copy Plaintiffs' tactic and frustrate the purposes of the Jones Act.

Without citing to the record, Plaintiffs claim that the STB apprised CBP that, "as freight forwarders, KIF and the other companies were exempt from any tariff-filing requirement under the Third Proviso." [Dkt. 117 at 35] That is incorrect. The STB stated that it is "not charged with administering the Jones Act," and that "CBP is 'responsible for interpreting and enforcing the ... Jones Act.'" [AR 216] While the record includes an email from the STB stating that

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 6 of 43

the STB does not that require rate tariffs be filed for private contracts or freight forwarders, that email says nothing about the Third Proviso. [AR 218] Which is not surprising, as the STB does not enforce the Jones Act. CBP was unable to locate a rate tariff on file with the STB that applied to the BCR Route. [AR 218-222]

Plaintiffs also refer to two memoranda prepared by CBP's Jones Act Division of Enforcement ("JADE") during CBP's early investigation into the allegations it had received about the BCR Route. [AR 223-27] Plaintiffs claim the memoranda do not discuss the tariff-filing requirement. [AR 36] Plaintiffs are incorrect.

JADE stated that it had conferred with the STB "to determine if rate tariffs were filed and if the route was approved by STB." [AR 227] As noted, JADE was unable to locate an applicable rate tariff filing. [AR 218-222]

JADE further stated that it was looking for any indication that the BCR was part of any of the "primary railway systems," such as the Canadian National Railway or the Canadian Pacific Railway, and that JADE had not identified any such active railways being in Bayside Canada. [AR 223; *see also* AR 227-237 (CBP presentation on investigation)] JADE noted that there used to be a railway spur operated by the Canadian Atlantic Railway into Bayside, but that was abandoned in 1994. [AR 223] JADE also noted that past ruling

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 7 of 43

Case 3:21-cv-00198-SLG   Document 134   Filed 12/17/21   Page 7 of 43

letters opined about routes that utilized the NBSR, but that there "is no [NBSR] railway at or near the Kloosterboer Bayside storage facility." [AR 224] Therefore, those ruling letters did not apply. [AR 224] JADE performed a web search for the BCR but could not obtain any further information. [AR 224] JADE noted that CBP's Air and Marine unit had performed a flyover of the Kloosterboer Bayside facility and "did not see any active rail lines near the Kloosterboer Bayside storage facility." [AR 223] Based on all of that, and on a video it obtained of the BCR in use, JADE concluded that "[i]t appears as though the [BCR] is approximately 3 tracks with 2 railcars that leads to nowhere" and a "sham." [AR 224, 227]

## ARGUMENT

### I.    Standard and scope of review.

The Government incorporates its arguments in its motion for summary judgment concerning the standard and scope of review as also applicable to Plaintiffs' motion. [Dkt. 115 at 13-17]

### II.    Defendants are entitled to summary judgment on Count I.

#### A.    As an exception to the general prohibition of the Jones Act, the Third Proviso should be narrowly construed.

Plaintiffs cite *American Maritime Association v. Blumenthal*, 590 F.2d 1156, 1165 (D.C. Cir. 1978), what they call a "leading decision," in support of

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 8 of 43

their argument that the Court should strictly construe the Jones Act in this case. [Dkt. 117 at 15, 38] The Court should reject that argument for two reasons.

First, the Court's resolution of Count I does not depend on an interpretation of the Jones Act's general prohibition, as in *Blumenthal*, but rather on an interpretation of the Third Proviso, which Plaintiffs agree is an exception to that general prohibition. [Dkt. 117 at 38] Statutory exceptions to general statements of policy are usually read narrowly. *See, e.g.*, *Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989) ("In construing [statutes] in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). Indeed, the U.S. Supreme Court construed the Third Proviso narrowly in *Central Vermont Transportation Company v. Durning*, 294 U.S. 33 (1935). *See also Horizon Lines, LLC. v. United States*, 414 F. Supp. 2d 46, 60 (D.D.C. 2006) ("[T]here is no indication that Congress ever intended the agency to interpret the Third Proviso to apply to as many vessels as possible.").

Second, the Third Circuit has persuasively rejected the D.C. Circuit's analysis in *Blumenthal*, explaining that "statutes of a regulatory nature are usually construed broadly," and that the conclusion in *Blumenthal* that the Jones Act is punitive is undercut by subsequent U.S. Supreme Court decisions

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 9 of 43

Case 3:21-cv-00198-SLG  Document 134  Filed 12/17/21  Page 9 of 43

requiring the "clearest proof" before a court construes a forfeiture provision as punitive. *Conoco, Inc. v. Skinner*, 970 F.2d 1206, 1228-29 (3d Cir. 1992) (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 365 (1984)). Because there is no such proof that the Jones Act is anything but a regulatory statute, the *Skinner* court construed it broadly. *Id.* The Court should follow *Skinner* and not *Blumenthal* on this issue.[4]

### B. The BCR is not part of a "through route."

For the Third Proviso to apply, there must be "transportation" over "through routes in part over Canadian rail lines and connecting water facilities." 46 U.S.C. § 55116. As the Government has explained, the BCR is not part of a "through route." [Dkt. 38 at 15-21; Dkt. 115 at 17-26]

Plaintiffs have two arguments in response. First, Plaintiffs argue that what they term the "Bayside Route" is a through route because it involves intermodal transportation from Alaska to the eastern United States, i.e., from an origin to a destination. [Dkt. 117 at 39] Second, Plaintiffs argue that CBP's ruling letters "establish that Plaintiffs' current use of the BCR rail line as part of the Bayside Route complies with the Third Proviso." [Dkt. 117 at 40] Each

---

[4] Plaintiffs cite no authority for their suggestion that the Court should interpret the Third Proviso broadly because Congress amended the Third Proviso in the Alaska Statehood Act, to encompass transportation of merchandise from Alaska. [Dkt. 117 at 17-19]

argument is meritless.

To the first argument, assuming that a through route consisting of intermodal water and truck carrier components exists between Alaska and the eastern United States, the BCR is not "part" of that through route. The BCR, over which merchandise moves an extremely short distance, never leaves the Bayside port facility, and then returns to its starting place, is not "transportation" over a "through route" because it is not part of a "continuous carriage of goods from the originating point on the line of one carrier to destination on the line of another." *St. Louis Sw. Ry. Co. v. United States*, 245 U.S. 136, 145 (1917). The BCR simply does not advance the merchandise along the route from Alaska to the eastern United States. Even with the NBSR, over which merchandise traveled an indirect path from Bayside to Calais, goods continued to be advanced along a route. The cases Plaintiffs rely on all involve route components that, no matter how short, operate to advance merchandise or passengers as part of a continuous journey from an origin to a destination. *See, e.g.*, *Sea-Land Serv., Inc. v. Fed. Mar. Comm'n*, 404 F.2d 824, 827 (D.C. Cir. 1968) (holding that for purposes of determining whether route components form a through route, there is "no distinction between a thousand miles and a few blocks, *as long as both motor and water carriers are performing a joint through service*") (emphasis added). The tap line rail lines considered to be part

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 11 of 43

of through routes in *United States v. Louisiana & P.R. Co.*, with some rail components as short as 25 feet, also involved rail movements that advanced lumber from an origin to a destination, namely, the mill. 234 U.S. 1, 5, 7 (1914) ("The lumber companies load the logs and switch them over the logging spurs to connection with the tap line which hauls them to the mill, an average distance of 30 miles, for which no charge is made.").

To the second argument, while CBP has previously agreed that rail movements need not follow the most direct route to be part of a through route, the agency has never determined that back-and-forth rail movements all within the same port facility like those over the BCR can be considered part of a "through route." Plaintiffs appear to be inventing reasons why CBP issued the notices of penalty—supposedly because the movement over the BCR is commercially unnecessary, because Plaintiffs are using the BCR solely for the purpose of complying with the Third Proviso, or because the rail track is too short—and then attacking those straw man arguments. Plaintiffs fail, however, to explain how back-and-forth rail movements are part of a "continuous carriage of goods" from an origin to a destination. In upholding CBP's interpretation of the Third Proviso as allowing commercially unnecessary rail movements, the *Horizon* court still made clear that there must be "transportation" over a "through route." *See Horizon*, 414 F. Supp. 2d

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 12 of 43

Case 3:21-cv-00198-SLG   Document 134   Filed 12/17/21   Page 12 of 43

at 55 n.6 ("Plaintiff can point to no case in which the intent of the shipper, *other than to transport goods according to the route described*, was relevant to the determination of whether a through route existed."); *see also Central Vermont*, 294 U.S. at 39 ("An interpretation of the proviso which would enable foreign owned vessels to carry merchandise in coastwise traffic [without complying with its terms] would go beyond its purpose and in large measure defeat the prohibition of section 27.").

### C. Plaintiffs do not use the BCR for "transportation."

Plaintiffs' also fail to explain how movement of merchandise over the BCR involves the "transportation" of that merchandise. "Transportation implies the taking up of persons or property at some point and putting them down at another." *Gloucester Ferry Co. v. Pennsylvania*, 114 U.S. 196, 203 (1885). Plaintiffs have no response to this argument. Instead, Plaintiffs argue that the BCR is "Canadian" and a "rail line," and that there is no "minimum-length requirement for a Canadian rail line for purposes of satisfying the Third Proviso." [Dkt. 117 at 41-44] Those points are irrelevant to the question of whether "transportation" of merchandise occurs in connection with Plaintiffs' use of the BCR. Merchandise that moves over the BCR simply goes back and forth, and is not transported anywhere. [Dkt. 115 at 20-26]

Plaintiffs argue that the statutory language pertinent to Canadian rail

lines has no "caveats, qualifications[,] or restrictions." [Dkt. 117 at 42] But in *Central Vermont*, the U.S. Supreme Court rejected a similar hyper-technical argument that the Third Proviso broadly applied to transportation over through routes that were "in part over Canadian rail lines," even if the actual transportation was not over those Canadian rail lines. 294 U.S. at 38. The Supreme Court rejected that broad construction because it did "violence to the words of the statute *and would thwart its purpose*." *Id.* (emphasis added). The Supreme Court further stated that the purpose of the Third Proviso was to "avoid disturbance of established routes," and to allow American carriers to "retain the benefits of the traffic which in some instances might otherwise be diverted to all water transportation by foreign owned vessels between points in Canada and the United States." *Id.* at 39. Here, also, Plaintiffs' broad reading of the Third Proviso to include routes with sham rail movements would thwart the overall policy of the Jones Act "to provide for the promotion and maintenance of an American merchant marine" by greatly expanding the ability of shippers to use non-coastwise-qualified (including foreign-flag) vessels for domestic trade. *Id.* at 38.

> **D. The Court correctly concluded that Plaintiffs could not succeed on the merits of Count I because there was no rate tariff for the BCR Route on file with the STB prior to September 30, 2021.**

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 14 of 43

Plaintiffs devote a large portion of their motion for summary judgment to re-arguing that the rate tariff that ASC filed with the STB in 2006 applies to the BCR Route, and alternatively that a rate tariff did not need to be filed for the BCR Route for transportation of merchandise over it to comply with the Third Proviso. [Dkt. 44-61] The Court correctly rejected both arguments when it denied Plaintiffs' motion for a temporary injunction without prejudice.

First, the Court correctly concluded that there was no authority for the proposition that Plaintiffs could "step[] into the shoes" of ASC with respect to ASC's rate tariff. [Dkt. 64 at 15] The Court also held that ASC's rate tariff was legally deficient as applied to the BCR Route because it did not identify all the carriers that are a party to the BCR Route as required by 49 U.S.C § 13702(b)(2)(A). [Dkt. 64 at 15-16]

Second, the Court correctly held that the Third Proviso requires that a rate tariff be filed with the STB for the applicable through route. The Court recited the Third Proviso's three-part test, which includes the requirement that "rate tariffs for the routes must have been filed with the STB." [Dkt. 64 at 13] To Plaintiffs' argument that they were entitled to rely on CBP's pre-*Horizon* ruling letters relating to the tariff-filing requirement, the Court correctly concluded that the "district court's decision in *Horizon* 'had the effect of modifying all of [CBP's] previous rulings, decisions, and treatment' of the

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 15 of 43

tariff-filing requirement in the Third Proviso." [Dkt, 64 at 16 (quoting *Sea-Land Serv., Inc. v. United States*, 239 F.3d 1366, 1372 (Fed. Cir. 2001))][5]

Plaintiffs appear to have four arguments, some old and some new, why no rate tariff was required to be filed for the BCR Route. First, Plaintiffs argue that ASC's tariff filing applies to the BCR Route. [Dkt. 117 at 44-48] Second, Plaintiffs argue that they were entitled to rely on CBP's pre-*Horizon* ruling letters regarding the tariff-filing requirement. [Dkt. 117 at 49-53] Third, Plaintiffs argue that they are exempt from the tariff-filing requirement because they are "freight forwarders." [Dkt. 117 at 53-57] Fourth, Plaintiffs argue that they are exempt from the tariff-filing requirement because they are private carriers. [Dkt. 117 at 57-61] Each argument is meritless.

## 1. ASC's filing does not apply to the BCR Route.

Plaintiffs appear to make two arguments why ASC's rate tariff should apply to the BCR Route. First, they argue that a through route only refers to an origin and a destination, not the "intermediate part of the journey," and that the ASC rate tariff describes the same origin and destination as the BCR

---

[5] Plaintiffs attempt to distinguish the *Sea-Land* decision because the underlying judicial decision in that case did not involve a remand without vacatur. [Dkt. 117 at 53 n.30] The Court correctly held that the *Horizon* decision had the effect of modifying CBP's prior rulings on the tariff-filing requirement "irrespective of whether the Horizon court remanded the ruling letter to CBP without vacatur." [Dkt. 64 at 16]; *see also infra* at 25-26.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 16 of 43

Route. [Dkt. 117 at 44-47] Second, they argue that despite the requirement in 49 U.S.C § 13702(b)(2)(A) that a rate tariff "must identify plainly … the carriers that are parties to it," a "holistic analysis of the controlling statute and regulations demonstrates the absence of any requirement that all carriers must be identified on rate tariffs." [Dkt. 117 at 47-49] Each argument is meritless.

Even the case that Plaintiffs cite makes it clear that the existence of a "through route" depends on and encompasses the connections between the originating point and the destination. *See Thompson v. United States*, 343 U.S. 549, 556 (1952) ("A 'through route' is an arrangement, express or implied, *between connecting railroads* for the continuous carriage of goods from the originating point on the line of one carrier to destination on the line of another.") (emphasis added). The ASC rate tariff did not describe a route with a connection to the BCR. The BCR did not even exist when that tariff was filed. Under Plaintiffs' misconception of a through route, a westerly route from Alaska to the eastern United States, circling the globe, could be considered the same through route as one from the same origin to the same destination but following an easterly path. Plaintiffs offer no support for their curious understanding of a through route.

Plaintiffs point out that the STB has not invalidated the ASC rate tariff,

and that the Third Proviso only requires that a rate tariff for the through route "have been filed" irrespective of who filed it. [Dkt. 117 at 44-46] Both points are irrelevant. Plaintiffs' ability to utilize the Third Proviso depends not on the continuing validity of ASC's rate tariff, but on whether it applies to the BCR Route. And though a rate tariff for the BCR Route need not have been filed by Plaintiffs, a rate tariff covering the BCR Route needed to have been filed by *someone* for the route to qualify for the Third Proviso. As the party seeking to utilize the Third Proviso to evade the general Jones Act prohibition, Plaintiffs would have been the obvious party to file such a rate tariff—just as ASC did for the NBSR Route.

Plaintiffs' "holistic" argument that a rate tariff need not identify the carriers that are parties to it is equally meritless. Because 49 U.S.C § 13702(b)(2)(A) requires that the rate tariff "identify plainly … the carriers that are parties to it," a regulation such as 49 C.F.R. § 1312.3 cannot override that clear congressional intent. *See, e.g.*, *California Indus. Prod., Inc. v. United States*, 436 F.3d 1341, 1356 (Fed. Cir. 2006) ("[W]e must give effect to this clear intent of Congress."); *United States v. Doe*, 701 F.2d 819, 823 (9th Cir. 1983) ("Where an administrative regulation conflicts with a statute, the statute controls."). Section 1312.3 is best interpreted as stating the "essential criteria" for tariffs that the STB requires in addition to the statutory minimum

requirements. *See* 49 U.S.C. § 13702(b)(2) ("The Board may prescribe any specific information and charges to be identified in a tariff, *but at a minimum tariffs must identify plainly … the carriers that are parties to it*") (emphasis added).

Plaintiffs are also misreading the other STB regulations they rely on. Section 1312.16 allows a carrier to substitute "the services of a carrier of a different transportation mode … for part of its movement of a shipment" under certain circumstances, but that regulation does not allow a rate tariff to omit the names of the carriers that are a party to it. Moreover, the substitution Plaintiffs are seemingly attempting to make, the BCR for the NBSR, is not a substitution "of a different transportation mode." 49 C.F.R. § 1312.16.[6]

Plaintiffs' reliance on § 1312.14 fares no better. Plaintiffs argue that under that regulation the Court should overlook the fact that the ASC tariff does not name the BCR as a carrier because, allegedly, ASC granted ARM, which granted KIF, a "concurrence" to rely on the 2006 rate tariff. Plaintiffs are misreading that regulation.

Section 1312.14 states that the "[r]ates and services of a carrier must be

---

[6] Plaintiffs do not allege that the other requirements of § 1312.16 are met here, and they are not. *See, e.g.*, § 1312.16(a) (requiring for Carrier A to substitute the services of Carrier B, the shipment must "move[] on the bill of lading that would be used if Carrier A were performing the service").

filed in a tariff *issued in that carrier's name* unless" either of two conditions are met (emphasis added). First, such rates and services need not be filed in that carrier's name if the first carrier's rates and services are filed "[i]n an agent's tariff when the carrier has executed a power of attorney authorizing that individual or entity to serve as its tariff agent." Second, if the carrier's rates and services are filed "[i]n a tariff of another carrier through issuance of a concurrence to the latter carrier authorizing the first carrier's participation in joint rates and through routes." Plaintiffs appear to argue that § 1312.14 allows a tariff to omit the name of a carrier that is a party to it in violation of 49 U.S.C. § 13702(b)(2). However, by its plain terms, the regulation only addresses the circumstances when the rates and services of a carrier need not be "issued in that carrier's name."

ASC's 2006 rate tariff is illustrative. Although ASC's tariff was issued in the name of ASC [AR 170], it identified an additional carrier: the NBSR [AR 174] The ASC tariff identified a single through rate for shipment of frozen seafood, with an additional surcharge for water transportation. [AR 176] Under § 1312.14, because the NBSR's "rates and services" were filed in the "tariff of another carrier," i.e., ASC's tariff, the NBSR did not need to also have a tariff issued in its own name if, for example, the NBSR had issued a "concurrence to [ASC] authorizing [NBSR's] participation in joint rates and

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 20 of 43

Case 3:21-cv-00198-SLG   Document 134   Filed 12/17/21   Page 20 of 43

through routes." But nothing in § 1312.14 would allow the rates and services of the NBSR to be unnamed in *any* tariff. To the contrary, in addition to the statutory requirement, the plain terms of subsection (a)(2), upon which Plaintiffs appear to rely, require that a carrier's rates and services be named in *some* tariff, either one issued in that carrier's name, or in another carrier's tariff. Plaintiffs' interpretation of § 1312.14 is not only unsupported by the language of the regulation and contrary to the governing statute, it would defeat the purpose of the tariff to provide notice to the public of a carrier's rates. *See* 49 U.S.C. § 13702(a) (a "carrier may not charge or receive a different compensation for the transportation or service than the rate specified in the tariff"); *see also Revision of Tariff Reguls., All Carriers*, 1 I.C.C.2d 404, 404 (I.C.C. Sept. 24, 1984) ("The function of tariffs is to disclose each carrier's prices for the services it provides. This function is mandated by statute.").[7]

_____

[7] Numerous portions of the *Revision* cited by Plaintiffs make clear that their interpretation of § 1312.14 is incorrect. For example, in the *Revision*, the STB explained that when a concurrence is "amended or revoked, corresponding tariff revisions must be made." 1 I.C.C.2d at 408. That requirement would make no sense if, as Plaintiffs contend, through issuance of a concurrence a carrier's rate need not be named in any tariff. The STB further explained that "in the future we will view the naming of rail carriers as participating carriers in joint rate tariffs as their acceptance of the tariff," further reiterating that even when carriers accept the joint rates listed in another tariff those carriers still must be named in the tariff (which demonstrates their acceptance). *Id.* at 408. Plaintiffs' suggestion that they actually relied on their "concurrence" theory in deciding whether to file a rate tariff prior to September 30, 2021,

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 21 of 43

### 2. The *Horizon* decision had the effect of modifying CBP's pre-*Horizon* ruling letters.

The Third Proviso requires that transportation be over through routes "recognized by the [STB] and [that] rate tariffs for the routes have been filed with the Board." 46 U.S.C. § 55116. The STB agrees that "the filing of a tariff with the agency constitutes recognition." [AR 216] There should be no dispute that a rate tariff needs to be filed for a through route to qualify for the Third Proviso, regardless of whether the STB requires a particular entity to file a rate tariff. *Cf. Central Vermont*, 294 U.S. at 40 (holding that no part of the Jones Act is "to be erased from the statute because the Interstate Commerce Commission was not given authority to enforce it").

Plaintiffs argue that they "properly relied" on pre-*Horizon* ruling letters that concluded rate tariffs did not need to be filed to meet the requirements of the Third Proviso, and that these pre-*Horizon* ruling letters remain in effect. [Dkt. 117 at 49-53] Plaintiffs' reliance argument appears to mimic their claims under 19 U.S.C. § 1625(c). However it is characterized, Plaintiffs' argument is

---

[Dkt. 117 at 80 n.58], is completely unsupported. Plaintiffs never even raised their "concurrence" theory until now. Finally, even if Plaintiffs' argument had any merit, which it does not, their attempt to prove through declarations the existence of a concurrence, which must be in writing and "provided to any person upon request," 49 C.F.R. § 1312.14(b), runs afoul of the best evidence rule in Fed. R. Evid. 1004.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 22 of 43

meritless.

In *Horizon*, the plaintiff, Horizon Lines, challenged a CBP ruling letter that permitted Sunmar to transport merchandise from Alaska through the Bayside port to the eastern United States under the Third Proviso, even though Sunmar had not filed a rate tariff for that route, because CBP concluded that Sunmar was engaged in private carriage and therefore could not file tariffs with the STB. 414 F. Supp. 2d at 50. CBP argued in that case that "the only way to honor congressional intent both in deregulating transportation and in [maintaining] the Third Proviso was to approve the Sunmar shipment, despite the lack of a rate tariff." *Id.* at 55.

The district court rejected CBP's argument. The district court held that "[i]t makes just as much sense, and is more consistent with the statute and accepted principles of statutory interpretation, to limit the scope of the Proviso to comport with the STB's current rate filing requirements." *Id.* at 58-59. Under that reading of the statute, no carrier engaged in private carriage, like Plaintiffs, could transport merchandise under the Third Proviso. The district court's ultimate holding was more limited: it held that permitting "a non-coastwise-qualified private shipper to engage in noncontiguous domestic trade without filing a rate tariff with the STB" would " ignore[] both plain language of the [Third Proviso] and the congressional intent in enacting it." *Id.* at 60.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 23 of 43

The district court therefore remanded the case to CBP "for further proceedings consistent with the Court's Memorandum Opinion issued this date." *Id.* at 61.

 ASC subsequently filed a rate tariff for the NBSR Route. [AR 170-193] CBP then wrote to ASC's counsel on June 13, 2007, stating that the agency "recognized the correctness of the [*Horizon*] court's decision as was evidenced by the subsequent filing of a rate tariff by ASC with the … [STB], and that agency's acceptance of such filing." [Dkt. 6-15 at 1] CBP told ASC that it "will abide by the court's decision." [*Id.* at 2]

CBP was even more explicit in the Horizon letter, which was also sent to ASC [Ex. A; Dkt. 6-15 at 1 (stating that the Horizon letter was sent to ASC pursuant to a Freedom of Information Act request)]. In the Horizon letter, CBP stated that "henceforth" it would require all water carriers to have a rate tariff on file with the STB for any through route for which the Third Proviso was invoked. [Ex. A at 1-2] CBP was also clear that the agency's pre-*Horizon* ruling letters were "invalidated" by the court's decision. [Ex. A at 2]

Plaintiffs' argument that they continued to rely on the pre-*Horizon* ruling letters despite this clear message from CBP to ASC, their "predecessor" which purportedly gave them a concurrence to use the NBSR Route [Dkt. 117

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 24 of 43

at 48-49], is baffling.[8] Even if that were correct, Plaintiffs' ignorance of 19 C.F.R. § 177.12(d)(1)(iv), under which no notice is required after "the rendering of a judicial decision which has the effect of overturning the Customs position" in a ruling letter, does not excuse Plaintiffs' failure to file a rate tariff with the STB and their resulting violation of the Jones Act. *See, e.g.*, *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947) ("Men must turn square corners when they deal with the Government") (citation omitted); *Barlow v. United States*, 32 U.S. 404, 411 (1833) ("it is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally").

Plaintiffs make much of the fact that the *Horizon* court did not vacate CBP's prior ruling letters. [Dkt. 117 at 50-53] The Court correctly rejected Plaintiffs' arguments when it held that "irrespective of whether the *Horizon* court remanded the ruling letter to CBP without vacatur" the court's decision had the effect of modifying CBP's ruling letters on the Third Proviso's tariff-filing requirements. [Dkt. 64 at 16-17] Vacatur or not, the *Horizon* court was clear that CBP's interpretation of the Third Proviso as not containing a tariff-filing requirement "ignore[d] both the plain language of the statute and the

_____

[8] Plaintiffs do not allege that ASC is their "predecessor" in a legal sense, but purport that ASC is a corporate affiliate of Plaintiffs, all of which are directly or indirectly owned by American Seafoods Group LLC. [Dkt. 117 at 32-33]

congressional intent in enacting it." *Horizon*, 414 F. Supp. 2d at 60. The *Horizon* court did not undergo the normal analysis of why it remanded without vacatur. *Compare Nat'l Fam. Farm Coal. v. U.S. Env't Prot. Agency*, 966 F.3d 893, 929-30 (9th Cir. 2020). Regardless, after the decision, which instructed that CBP's further proceedings be "consistent with the Court's Memorandum Opinion," CBP was not at liberty to allow transportation of merchandise pursuant to the Third Proviso without a rate tariff having been filed with the STB for the applicable through route. CBP agreed to abide by the *Horizon* decision and advised Horizon and ASC that "henceforth" it would require all water carriers to have a rate tariff on file with the STB for any through route for which the Third Proviso exemption was claimed. [Ex. A at 1-2]

### 3. Whether Plaintiffs are "freight forwarders" is irrelevant.

Plaintiffs argue that the Court should exempt them from having to file a rate tariff to comply with the Third Proviso because they are "freight forwarders." [Dkt. 117 at 53-57] The STB exempts freight forwarders from its tariff filing requirements. 49 C.F.R. § 1319.1. Plaintiffs' argument is meritless.

The STB's regulations concerning freight forwarders do not amend the requirements of the Third Proviso. As the STB itself stated: "we are not charged with administering the Jones Act." [AR 216] The *Horizon* court was

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 26 of 43

also clear that CBP could not read the tariff-filing requirement out of the Third Proviso based on the statutes and regulations that govern the STB's operations. *Horizon*, 414 F. Supp. 2d at 58-59; *see also Central Vermont*, 294 U.S. at 40. Plaintiffs' argument that they can utilize the Third Proviso exception without having a rate tariff on file with the STB, because they are freight forwarders, is no different than the argument already persuasively rejected by the *Horizon* court concerning the lack of tariff-filing requirement for private carriers. Whether the STB would require *Plaintiffs* to file a rate tariff is also irrelevant because the Third Proviso requires that a rate tariff *have been filed* for the relevant through route.

4. **Whether Plaintiffs are private carriers is irrelevant.**

For the same reasons, the Court should reject Plaintiffs' argument that the Court should exempt them from having to file a rate tariff to comply with the Third Proviso because they are private carriers. [Dkt. 117 at 57-61] The *Horizon* court persuasively rejected the same argument.[9]

---

[9] Plaintiffs also appear to imply that the Court should read the rate-tariff filing requirement out of the Third Proviso on the ground that, after the abolition of the Interstate Commerce Commission, many tariffs filed with the STB are " 'nothing more' than a form of contract." [Dkt. 117 at 19-21] The *Horizon* court persuasively rejected the same argument. *See also Central Vermont*, 294 U.S. at 40.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 27 of 43

## III.  Defendants are entitled to summary judgment on Count II.

Count II alleges that the penalty notices and CBP internal memoranda are "decisions" that modified or revoked "a prior interpretive ruling or decision that has been in effect for at least 60 days," in violation of 19 U.S.C. § 1625(c)(1). [Dkt. 117 at 67-71] According to Plaintiffs, these decisions revoked three interpretations of the Third Proviso found in a series of CBP ruling letters. First, Plaintiffs argue that CBP revoked its prior interpretation that the "Third Proviso's Canadian rail requirement is satisfied provided there is 'any use of Canadian rail.' " [Dkt. 117 at 68] Second, Plaintiffs argue that CBP has revoked its prior interpretation that the Third Proviso has no "minimum length rail requirement." [Dkt. 117 at 69] Third, Plaintiffs argue that CBP has revoked its prior interpretation that there is no requirement under the Third Proviso that a "rail line be 'commercially reasonable.' " Each argument is meritless.

First of all, as explained, CBP cannot have violated subsection (c)(1) because there is no prior ruling letter addressing the BCR Route to revoke. [Dkt. 115 at 28-30] A claim alleging a violation of subsection (c)(1) cannot succeed unless there is a proposed decision that would modify or revoke a prior ruling letter involving the "same circumstances" and "identical" operations. [*Id.*] CBP did not assess whether the BCR Route complied with the Third

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 28 of 43

Proviso through a request for a ruling letter with full disclosure of the facts, as it normally would have, because Plaintiffs devised this scheme and began using the BCR Route without requesting a ruling letter. It is not possible for a non-existent ruling letter on the BCR Route to have been modified or revoked by CBP. The Court's prior conclusion to this effect was correct. [Dkt. 64 at 19][10]

Second, even if subsection (c)(1) applied when CBP issues a decision that would revoke a prior CBP "rationale," which it does not, Plaintiffs' claim would still be meritless. CBP has not revoked its prior ruling letters stating that " 'in part over Canadian rail lines' is any use of Canadian rail." [Dkt. 53-1 at 5] Those prior ruling letters did not address rail movements identical to those over the BCR. Nor did those rulings address the BCR's deficiencies, namely, that it is not part of a through route, and not used for transportation. The BCR

---

[10] *California Industrial* did not invalidate any part of 19 C.F.R. § 177.9, as Plaintiffs imply. [Dkt. 117 at 63-64 n. 38] Rather, in *California Industrial*, the court found that 19 C.F.R. § 177.12(c)(1)(iii)(A), which states that CBP "will not find that a treatment was accorded to a person's transactions if … [t]he person's own transactions were not accorded the treatment in question over the 2-year period immediately preceding the claim of treatment[,]" was contrary to Congressional intent and 19 U.S.C. § 1625(c). The court held that "Congress intended 'substantially identical transactions' forming a single 'treatment' to include the transactions of multiple parties." *California Industrial*, 436 F.3d at 1353-54. CBP does not dispute the court's conclusion that treatment can apply to transactions of other parties. 19 C.F.R. § 177.12(c)(1)(iii)(A). Plaintiffs provide no support, however, for their suggestion that the Court should disregard the provisions of 19 C.F.R. § 177.9.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 29 of 43

Route and those concepts were not at issue in those prior rulings. Still, CBP has been clear in its ruling letters that it will take "appropriate action" in response to attempts to evade the requirements of the Jones Act through the use of a sham or artifice:

> [W]e do agree that parties are bound to use Canadian rail lines in order to avail themselves of the Third Proviso. *A party that fails to utilize Canadian rail lines, while ostensibly operating pursuant to the Third Proviso, is in violation of the "Jones Act."* It is our policy to refer allegations of violations of the "Jones Act" to the Bureau of Immigration and Customs Enforcement (ICE) for investigation. Please be assured that if ICE provides us with evidence that Sunmar has failed to utilize Canadian rail lines in the movement of the frozen fish discussed in HRL 115446, we will take appropriate action.

[Dkt. 53-1 at 5 (emphasis added)] That is what CBP is doing in this case. The BCR is an artifice and movements over it are a sham intended to give the appearance of compliance with the Third Proviso. [Dkt. 115 at 23]

Nor has CBP revoked its "rationale" that the Third Proviso has no "minimum length rail requirement," because there is no ruling letter to that effect. As explained, CBP's statement that the Third Proviso does not have a "de minimis" requirement meant that a "through route" does not have to follow the most direct route. *See supra* at 5-6. Moreover, that CBP's internal memoranda mentioned the BCR's short length does not mean that length was the determining factor that caused CBP to issue the notices of penalty. The

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 30 of 43

memoranda also mentioned the back-and-forth movement over the BCR, completely within the port facility, leading "nowhere." [AR 223-224, 235] If a party can meet the requirements of the Third Proviso by constructing and using a mere 100 feet of track on Canadian soil that goes nowhere, many shippers will be able to easily evade the general Jones Act prohibition that is meant to promote the domestic merchant marine.

Finally, CBP has not revoked its conclusion that there is no requirement under the Third Proviso that a "rail line be 'commercially reasonable,' " again, because there is no ruling letter to that effect. Plaintiffs appear to argue that the Sunmar *II* Ruling Letter contains that "conclusion," but it does not. [Dkt. 53-1] The movement over the BCR does not involve "transportation" as part of a "through route" because of the inherent nature of the rail. [Dkt. 115 at 28-30] Whether the BCR is commercially reasonable is irrelevant.[11]

CBP's position in this case, that through routes must use established rail lines like what was contemplated by Congress when it enacted the Third Proviso, is not new. Rather, it is a continuation of a common thread woven throughout CBP's prior rulings, all of which assessed and only approved the

_____

[11] Plaintiffs attempt to merge the concept of "commercial soundness" with the concept of something being a "sham." There is a difference between a rail line that is commercially unsound and one that by its inherent nature is a sham that does not involve transportation over a through route. [Dkt. 38 at 18-19]

use of established rail lines as meeting the requirements of the Third Proviso. [Dkt. 115 at 20-23] For all of these reasons, CBP has not issued any "new interpretation" of the Third Proviso.

## IV. Defendants are entitled to summary judgment on Count III.

Count III alleges that the penalty notices "have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions" in violation of 19 U.S.C. § 1625(c)(2). [Dkt. 117 at 71-78] Plaintiffs argue that: (a) CBP's ruling letters are "treatment"; (b) CBP's admission of seafood imported by Plaintiffs was "treatment"; and (c) CBP's prior treatment was of "substantially identical transactions" as Plaintiffs' use of the BCR Route. Each argument is meritless.

### A. Ruling letters are not treatment.

As explained, ruling letters are not treatment. [Dkt. 115 at 35-37] Even the cases Plaintiffs cite make this point clear. *See, e.g.*, *Precision Specialty Metals, Inc. v. United States*, 24 C.I.T. 1016, 1043 (2000) ("The term 'treatment' looks to the *actions* of Customs, rather than its 'position' or policy. It is also distinct from the terms 'ruling' and 'decision.' "); *see also Motorola, Inc. v. United States*, 509 F.3d 1368, 1372 (Fed. Cir. 2007) (same).[12]

---

[12] As explained, Plaintiffs misconstrue the Federal Circuit's decision in *California Industrial*. [Dkt. 115 at 37] The treatment in that case was CBP's

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 32 of 43

**B.    CBP's admission of merchandise does not establish "treatment."**

Plaintiffs note that "CBP consistently has approved entry" of their seafood, which Plaintiffs argue means CBP accorded treatment that the seafood was transported in compliance with the Third Proviso. [Dkt. 117 at 73-75] Plaintiffs' argument is meritless.

As explained, under the applicable regulations and caselaw, Plaintiffs have the burden to establish treatment, which requires, among other things, that they demonstrate that "[t]here was an actual determination by a Customs officer regarding the facts and issues involved in the claimed treatment." 19 C.F.R. § 117.12(c)(1)(i)(A); *see also* [Dkt. 115 at 37-40] Plaintiffs have failed to establish that a CBP officer actually determined, when Plaintiffs' seafood was admitted, that their transportation of the seafood over the BCR Route met the requirements of the Third Proviso. Nor have Plaintiffs even attempted to establish the other elements of a treatment claim. [Dkt. 115 at 32-35][13] For example, as explained, even assuming there was a determination, Plaintiffs

_____

"earlier treatment of steel scrap as eligible for drawback" through CBP's liquidation of 145 entries for drawback on steel scrap, not a ruling letter. *California Industrial*, 436 F.3d at 1346.

[13] The Federal Circuit has found 19 C.F.R. § 177.12(c)(1)(i) to be a reasonable interpretation of the statute, and entitled to deference under *Chevron*. [Dkt. 115 at 35]

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 33 of 43

have not shown and could not show that CBP made determinations about the BCR Route on a "national basis." 19 C.F.R. § 177.12(c)(1)(i)(C). The BCR exists only in one location—the port of Bayside—and it appears that all the merchandise which from the BCR Route comes in through a single port: Calais, Maine. [Dkt. 5 p. 7-8.] Such an isolated determination, if there even was a determination, could never form the basis of a "treatment" claim.

The cases Plaintiffs rely on do not hold that simply establishing that entries were made can demonstrate a treatment. The issue in *American Fiber & Finishing, Inc. v. United States* was when the claim of treatment began, which the court held began when CBP re-classified the merchandise in the plaintiff's entry from duty-free to a dutiable provision. 121 F. Supp. 3d 1273, 1286-87 (Ct. Int'l Trade 2015). That date was important for establishing the 2-year lookback period for establishing treatment. *See* 19 C.F.R. § 117.12(c)(1)(i)(C). But the court was not asked to decide, and did not decide, whether CBP's classification of the merchandise in the plaintiff's entries during that 2-year period constituted treatment. Similarly, in *International Custom Products, Inc. v. United States*, the court did not find that allowing entry is treatment; instead, the court found genuine issues of fact about whether CBP's classifications of the merchandise in the plaintiff's entries constituted a treatment. 33 C.I.T. 79, 88-89 (2009).

Moreover, the Court should reject Plaintiffs' comparison of CBP's classification decisions, which depending on the facts might be a treatment, with CBP's decision to admit Plaintiffs' seafood. While a classification, if it involved an "actual determination" by a CBP officer, might constitute a treatment, there is no evidence that a CBP officer ever actually determined that Plaintiffs' seafood was transported in accordance with the Third Proviso when it was admitted. CBP "will not find that a treatment was accorded to a person's transactions if … [t]he issue in question involves the admissibility of merchandise[.]" 19 C.F.R. § 177.12(c)(1)(iii)(B). CBP has explained that this provision was "added to clarify the existence of the essential rule that the admissibility of merchandise is always determined at the time of importation and therefore cannot be the subject of a treatment for purposes of section 1625(c)." 67 Fed. Reg. 53,483, 53,494 (Aug. 16, 2002). Plaintiffs agree that the only issue for CBP when their seafood was admitted was the "admissibility of merchandise." [Dkt. 117 at 73-74 n. 50] That does not suffice to constitute treatment about whether the Third Proviso applies.[14]

---

[14] The Court should reject Plaintiffs' speculation that a PowerPoint presentation stating that "other issues" at the Calais point of entry are "Point to Point violations," somehow means that a CBP officer made an actual determination that Plaintiffs' seafood was transported in accordance with the Third Proviso. [Dkt. 117 at 75 n.53]

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 35 of 43

Plaintiffs criticize the cases CBP relied on in its motion because they involved bypass entries. [Dkt. 117 at 73-74 n. 50] They argue that CBP accorded the entries at issue here treatment because the seafood was "transported into the United States in individual truck-loads, all of which required a CBP official at the Calais border crossing to review the paperwork (including BOLs) provided by the trucking company to ensure that the merchandise was eligible to be admitted across the border." [*Id.*] But providing information to CBP on an entry summary, known as a CBP Form 7501, as Plaintiffs allege they did [Dkt. 8 ¶ 12], has also been found to be insufficient to constitute treatment. *See, e.g.*, *Kahrs Int'l, Inc. v. United States*, 33 C.I.T. 1316, 1356 (2009) (holding that there was no treatment where the entry consisted of providing information on a CBP Form 7501 and a CBP officer merely made a "comparison of the invoice description to the entered classification, without an actual physical review of samples or any other information"). The evidence is undisputed that CBP does not use bills of lading to determine whether routes comply with the Third Proviso. [Dkt. 115 at 40] Plaintiffs' claim that the BCR was used "openly and with extensive and consistent notice to CBP" [Dkt. 117 at 11] is without merit because Plaintiffs never submitted the information that CBP requires to analyze compliance with the Third Proviso. For all of these reasons, Plaintiffs have failed to establish treatment.

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 36 of 43

## C. The BCR Route is not substantially identical to the NBSR Route.

Even if Plaintiffs could establish treatment, the Court should reject their argument that transactions using the NBSR Route and approved by CBP in prior rulings are substantially identical to transactions using the BCR Route. [Dkt. 117 at 66-68] Defendants briefed this issue previously and incorporate their prior arguments [Dkt. 115 at 41-44], briefly summarized below.

The Court of International Trade ("CIT") has interpreted the "substantially identical" requirement under subsection (c)(2) as follows: "The plain meaning of the phrase 'substantially identical' can be discerned from the dictionary definitions of each term. The term 'substantial' is defined as 'being of considerable importance, value, degree, amount or extent.' The term 'identical' is defined as '[b]eing the same[,] exactly equal and alike[,] [h]aving such similarity or near resemblance as to be fundamentally equal or interchangeable.'" *Motorola v. United States*, 350 F. Supp. 2d 1057, 1074 (Ct. Int'l Trade 2004) (citations omitted) (brackets in original), *aff'd in relevant part*, *Motorola, Inc. v. United States*, 436 F.3d 1357, 1365-67 (Fed. Cir. 2006). Application of these definitions clearly demonstrates that the specially built BCR, on which the merchandise is moved from point A to point B and back to point A, all within the same port facility, is not equal to or interchangeable

with the established rail lines previously approved by CBP. [Dkt. 115 at 41-42]

*Motorola* is instructive in that the CIT held that nickel and lithium circuits used in cell phone battery packs were not "substantially identical" for the purposes of section 1625(c)(2), despite being "made in much the same manner" and "serving similar purposes"—being used in cell phone battery packs. *Motorola*, 350 F. Supp. 2d at 1060. [Dkt. 115 at 43] Like the nickel and lithium circuits, some superficial similarities may exist between the BCR and the NBSR. [Dkt. 115 at 43-44] They both consist of rail track located in Canada. However, there are significant differences such as distance, purpose, compliance with the fundamental tenants of the Jones Act, and using established routes as intended by the Third Proviso. [Dkt. 115 at 44] The BCR and NBSR are certainly much more dissimilar than nickel and lithium circuits which, again, were found to be not "substantially identical."

## V.      Defendants are entitled to summary judgment on Count IV.

Plaintiffs continue to argue that Defendants violated their due process rights by failing to provide notice that it was "abandoning and effectively reversing decades of consistent administrative rulings." [Dkt. 117 at 80] Plaintiffs' due process claim thus mirrors their claims under 19 U.S.C. § 1625(c), which are meritless. [Dkt. 115 at 45]

To the extent Plaintiffs are also claiming that the Jones Act is

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 38 of 43

unconstitutionally vague, the Court should also reject that argument. [Dkt. 38 at 27-31] As explained, "[a] statute is vague not when it prohibits conduct according 'to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *Botosan v. Paul McNally Realty*, 216 F.3d 827, 836 (9th Cir. 2000) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611 (1971)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (requiring only that "law give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly").

The standard for evaluating vagueness enunciated in *Grayned* must not be mechanically applied. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Under *Village of Hoffman*:

> The degree of vagueness the Constitution tolerates - as well as the relative importance of fair notice and fair enforcement - depends in part on the nature of the enactment. Thus economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe .... Finally, perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights. If for

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 39 of 43

example, the law interferes with the right of free speech or of association, a more stringent vagueness test should apply.

*Village of Hoffman*, 455 U.S. at 498-99 (all footnotes omitted).

Applying *Village of Hoffman* to the instant case, the standard for determining if CBP's definitions of "through route" and transportation" are unconstitutionally vague should be the least strict. No constitutionally protected rights are at risk; the statute regulates economic activity; the forfeiture (penalty, in this case) is civil, not criminal, in nature; and the "consequences of imprecision" do not include a loss of liberty. *See United States v. Search of Music City Marketing Inc.*, 212 F.3d 920,925 n.3 (6th Cir. 2000) ("Music City was subject to a seizure and a civil forfeiture proceeding, rather than a criminal prosecution, potentially reducing concerns of unconstitutional vagueness.").

But the most important factors from *Village of Hoffman* applicable to this case are that Plaintiffs are sophisticated corporate entities, participating in a heavily regulated enterprise, in which the common and encouraged practice was for shippers to "clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process" prior to attempting to utilize the Third Proviso. 455 U.S. at 498; *see* [Dkt. 115 at 2-3] There is no record of any other shipper risking penalties by attempting to utilize the Third Proviso

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 40 of 43

for shipments of merchandise from Alaska through the Bayside port to the eastern U.S. without requesting a ruling letter. Even Plaintiffs' "predecessor," ASC, with the Sunmar ruling letters in hand, requested a ruling letter for its tweak of the NBSR Route. [Dkt. 115 at 5] Plaintiffs had the opportunity for more process, but they declined to pursue it. This case is not like *United States v. Approximately 64,695 Pounds of Shark Fins*, in which the Ninth Circuit found that the agency's interpretation of a statute was unsupported by it's plain language, and the agency's regulations were best construed to mean the opposite of the agency's interpretation. 520 F.3d 976, 982-83 (9th Cir. 2008).

The Court would be justified, on this record and given the sham rail movements over the BCR, to infer that Plaintiffs decided not to seek a ruling letter for the BCR Route because they knew CBP would likely conclude that the route did not meet the terms of the Third Proviso—and they knew that CBP's conclusion would have been entitled to *Skidmore* deference. [Dkt. 115 at 17] When a defendant challenges the statute as applied to his own conduct, whether the statute is vague "turns on whether the statute provided adequate notice to him that his particular conduct was proscribed." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). If the defendant had actual notice that his conduct was prohibited, "there is no due process problem." *United States v. Backlund*, 689 F.3d 986, 997 (9th Cir. 2012). For all of these reasons,

Plaintiffs' due process claim is meritless. [Dkt. 38 at 27-31][15]

---

[15] The Court should also reject Plaintiffs' arguments in footnotes 59 and 60 of their motion. [Dkt. 117 at 82] First, the Court should reject Plaintiffs' suggestion that CBP violated their due process rights by bringing a counterclaim against KIF while Plaintiffs' petition for remission is pending. [Dkt. 117 at 82 n.60] The remission statute contemplates that an enforcement action can be brought notwithstanding a pending petition. *See* 19 U.S.C. § 1618 (stating that action on a petition can include "discontinuance of any prosecution relating thereto"). Moreover, it was *Plaintiffs* that brought this matter to court before they even filed a petition. "A petition for remission does not serve to contest the forfeiture, but rather is a request for an executive pardon of the property based on the petitioner's innocence." *LKQ Corp. v. United States Dep't of Homeland Sec.*, 369 F. Supp. 3d 577, 584 (D. Del. 2019) (collecting cases, quotation omitted). Plaintiffs cannot challenge CBP's decision on their petition in court. *Id.* Plaintiffs, who have not been deprived of any property through issuance of the notices of penalty, are receiving in this lawsuit the procedural due process they say is being deprived of them. Second, Plaintiffs' allegation that the penalty notices are "vague" is also meritless. [Dkt. 117 at 82 n.59] They contain all of the information required by 19 C.F.R. § 162.31(b) and notify Plaintiffs that the penalties were issued for transporting or causing to be transported merchandise in violation of the Jones Act. [Dkt. 48-2]

Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG  Page 42 of 43

## CONCLUSION

For all of these reasons, the Court should deny Plaintiffs' motion for summary judgment, and grant the Government's motion for summary judgment.

RESPECTFULLY SUBMITTED this 17th day of December 2021, in Anchorage, Alaska.

E. BRYAN WILSON
Acting United States Attorney


s/ Seth M. Beausang
Assistant U.S. Attorney
Attorney for the Defendant


**CERTIFICATE OF SERVICE**
I hereby certify that on December 17, 2021,
a copy of the foregoing was served electronically on:

David Karl Gross, ABA #9611065
Edward E. McNally, ABA #9203003
Marc E. Kasowitz *(Pro Hac Vice)*
David J. Abrams *(Pro Hac Vice)*
David E. Ross *(Pro Hac Vice)*
Hector Torres (Pro Hac Vice)
Kim Conroy *(Pro Hac Vice)*
Attorneys for Plaintiffs

s/ Seth M. Beausang
Office of the U.S. Attorney


Kloosterboer v. United States, et al.
Case No. 3:21-cv-00198-SLG   Page 43 of 43