David Karl Gross, ABA #9611065
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
Telephone: 907.276.1550
dgross@bhb.com

Edward E. McNally, ABA #9203003
Marc E. Kasowitz *(Pro Hac Vice)*
Hector Torres *(Pro Hac Vice)*
David J. Abrams *(Pro Hac Vice)*
Kim Conroy *(Pro Hac Vice)*
David E. Ross *(Pro Hac Vice)*
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
Telephone: 212.506.1700
emcnally@kasowitz.com
mkasowitz@kasowitz.com
htorres@kasowitz.com
dabrams@kasowitz.com
kconroy@kasowitz.com
dross@kasowitz.com

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) Case No.: 3:21-cv-00198-SLG |
| UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, U.S. Customs and Border Protection Acting Commissioner, in his official capacity, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

## PLAINTIFFS' RESPONSE TO UNITED STATES'
## MOTION FOR SUMMARY JUDGMENT

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ
01154853.DOCX

Case 3:21-cv-00198-SLG  Document 136  Filed 12/17/21  Page 1 of 66

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES..............................................................................iii

PRELIMINARY STATEMENT ....................................................................... 1

ARGUMENT..................................................................................................... 7

I.    The Court Should Review Plaintiffs' Claims *De Novo* and Give No
Deference to Defendants' Interpretation ................................................ 7

    A.    *De Novo* Review Applies to Each of Plaintiffs' Claims ............... 7

    B.    No Deference Should Be Given to CBP's Decision to Issue the
Penalty Notices........................................................................... 9

II.    Plaintiffs Should be Granted Summary Judgment on Count I ............... 12

    A.    The Third Proviso Does Not Include an "Established Route"
Requirement ............................................................................... 13

    B.    Defendants' Definitions of "Transportation" and "Through Route"
Are Not Supported by the Wording of the Third Proviso ........... 16

    C.    The BCR is a Canadian Rail Line ............................................. 21

    D.    Defendants "Artifice" Argument is Baseless .............................. 23

    E.    Plaintiffs Have Complied with the Rate Tariff Requirement...... 26

III.    Defendants' Arguments Against Plaintiffs' 19 U.S.C. § 1625(c)(1) Claim
are Based on Invalid Regulations and a Misreading of CBP's Third Proviso
Interpretive Rulings ........................................................................... 30

    A.    Defendants' Attempt to Mischaracterize its Prior Third Proviso
Interpretive Rulings is Baseless ................................................. 30

    B.    CBP's Regulations Interpreting and Applying § 1625(c)(1) are
Overly Restrictive and are Therefore Invalid.............................. 31

IV.    Plaintiffs are Entitled to Summary Judgment on Their Claim that
Defendants Violated 19 U.S.C. § 1625(c)(2) (Count III)....................... 34

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ    PAGE i OF viii
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 2 of 66

A.    Defendants' Argument Relies on CBP Regulations that Conflict with the Clear Language and Purpose of § 1625(c)(2) ........................................ 35

B.    Plaintiffs' Claim That CBP Violated § 1625(c)(2) is Supported by the Case Law ........................................................................................... 37

      1.    *California Industrial Products* Confirms CBP's Statutory Violation ............................................................................. 37

      2.    *Motorola* is Factually and Legally Inapposite ................................ 39

C.    Ruling Letters May Constitute "Treatments" for Purposes of § 1625(c)(2) ...................................................................................... 43

D.    Plaintiffs Have Demonstrated that CBP Accorded Treatments to Plaintiffs' Bayside Route Shipments Utilizing the BCR Rail Line ........... 43

E.    Defendants' Argument that Plaintiffs' Transactions are Not "Substantially Identical" to Any Other Transactions Afforded CBP Treatment is False ................................................................................ 48

V.    Plaintiffs are Entitled to Summary Judgment on Their Fifth Amendment Claim ................................................................................................. 49

VI.    Plaintiffs' Eighth Amendment Claim Should Be Stayed, Not Dismissed ............. 53

VII.    The Court Should Not Dissolve the Permanent Injunctive Relief It Ordered Based on the Constitutional Tolling Doctrine ........................................ 55

CONCLUSION ..................................................................................... 57

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ    PAGE ii OF viii
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 3 of 66

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ......................................................................... 53, 54

*Am. Mar. Assoc. v. Blumenthal,*
    590 F.2d 1156 (D.C. Cir. 1979) ........................................................ 25, 6a

*Anversa v. Partners Healthcare,*
    835 F.3d 167 (1st Cir. 2016) ................................................................. 54

*California Indus. Prod., Inc. v. United States,*
    436 F.3d 1341 (Fed. Cir. 2006) .......................................................*passim*

*Carpenter v. Mineta,*
    432 F.3d 1029 (9th Cir. 2005) ................................................................. 9

*Chen-Li Sung v. Doyle,*
    988 F.Supp.2d 1195 (D. Haw. 2013) ....................................................... 9

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) .........................................................................*passim*

*Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two,*
    249 F.3d 1132 (9th Cir. 2001) ................................................................. 7

*Furie Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.,*
    No. 3:12-CV-00158 JWS, 2013 WL 1628639 (D. Alaska Apr. 15, 2013) .................. 8

*Furie Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.,* No. 3:12-
    CV-00158 JWS, 2014 WL 1289581 (D. Alaska Mar. 27, 2014) .............................. 11

*Furie Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.,*
    No. 3:12-CV-00158 JWS, 2015 WL 4076843 (D. Alaska July 6, 2015) ............... 9, 51

*Gen. Elec. Co. v. U.S.E.P.A.,*
    53 F.3d 1324 (D.C. Cir. 1995) .......................................................... 50, 51

*Int'l Custom Prods., Inc. v. United States,*
    748 F.3d 1182 (Fed. Cir. 2014) ............................................................... 9

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ    PAGE iii OF vii
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 4 of 66

*John v. United States*,
No. 3:05-cv-0006-HRH, 2009 WL 10659579 (D. Alaska Sept. 29, 2009) ................... 8

*Kahrs Int'l, Inc. v. United States*,
33 C.I.T. 1316 (2009) ................................................................................................ 40

*Life & Cas. Co. of Tennessee v. McCrary*,
291 U.S. 566 (1934) ................................................................................................... 56

*Longview Fibre Co. v. Rasmussen*,
980 F.2d 1307 (9th Cir. 1992) ................................................................................... 34

*Medici v. Lifespan Corp.*,
239 F.Supp.3d 355 (D. Mass. 2017) .......................................................................... 54

*Merritt v. Welsh*,
104 U.S. 694 (1881) ................................................................................................... 24

*Motorola, Inc. v. United States*,
28 C.I.T. 1310 (2004) ......................................................................................... *passim*

*Motorola, Inc. v. United States*,
436 F.3d 1357 (Fed. Cir. 2006) .......................................................................... *passim*

*Orca Bay Seafoods v. Nw. Truck Sales, Inc.*,
32 F.3d 433 (9th Cir. 1994) ....................................................................................... 34

*Peerless Clothing Int'l, Inc. v. United States*,
33 C.I.T. 24 (2009) ..................................................................................................... 36

*Precision Specialty Metals, Inc. v. United States*,
116 F.Supp.2d 1350 (Ct. Int'l Trade 2000) ............................................................... 38

*Precision Specialty Metals, Inc. v. United States*,
182 F.Supp.2d 1314 (Ct. Int'l Trade 2001) ............................................................... 38

*Rapanos v. United States*,
547 U.S. 715 (2006) ................................................................................................... 33

*Ratzlaf v. United States*,
510 U.S. 135 (1994) ................................................................................................... 24

*Reliance Elec. Co. v. Emerson Elec. Co.*,
404 U.S. 418 (1972) ................................................................................................... 24

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE iv OF vii
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 5 of 66

*Rhines v. Weber,*
    544 U.S. 269 (2005) ................................................................................. 54

*Rodriguez v. Smith,*
    541 F.3d 1180 (9th Cir. 2008) ............................................................. 8, 10

*S. Pac. Transp. Co. v. City of Los Angeles,*
    922 F.2d 498 (9th Cir. 1990) .................................................................... 53

*Salisbury v. City of Santa Monica,*
    998 F.3d 852 (9th Cir. 2021) .................................................................... 13

*Scalia v. Dep't of Transp. & Pub. Facilities,*
    985 F.3d 742 (9th Cir. 2021) .................................................................... 11

*Sea-Land Servs., Inc. v. Fed. Mar. Comm'n,*
    404 F.2d 824 (D.C. Cir. 1968) .................................................................. 21

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) ......................................................................... *passim*

*St. Louis Sw. Ry. Co. v. United States,*
    245 U.S. 136 (1917) ................................................................................. 16

*Sun Moon Star Advanced Power, Inc. v. Chappell,*
    773 F.Supp. 1373 (N.D. Cal. 1990) ........................................................... 9

*The Bermuda,*
    70 U.S. 514 (1865) .................................................................................. 18

*United States v. Cuddy,*
    147 F.3d 1111 (9th Cir. 1998) .................................................................. 55

*United States v. Citroen,*
    223 U.S. 407 (1912) ................................................................................. 24

*United States v. Mead Corp.,*
    533 U.S. 218 (2001) ........................................................................... 11, 12

*United States v. Real Prop. Located at Incline Vill.,*
    976 F.Supp. 1327 (D. Nev. 1997) ............................................................ 56

*Zetwick v. Cnty. of Yolo,*
    850 F.3d 436 (9th Cir. 2017) ...................................................................... 7

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.        CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                       PAGE v OF vii
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 6 of 66

## Statutes, Regulations and Court Rules

5 U.S.C. § 704 ......................................................................................................... 8

5 U.S.C. § 706(2)(A) ............................................................................................... 8

19 C.F.R. § 4.80b ................................................................................................... 20

19 C.F.R § 177.9(a) ................................................................................................ 32

19 C.F.R. § 177.9(b)(2) .......................................................................................... 42

19 C.F.R. § 177.9(b)(4) .......................................................................................... 32

19 C.F.R. § 177.12 ........................................................................................... *passim*

19 U.S.C. § 1625(a) ............................................................................................... 32

19 U.S.C. § 1625(c) ........................................................................................ *passim*

19 U.S.C. § 1625(c)(1) .................................................................................... *passim*

19 U.S.C. § 1625(c)(2) .................................................................................... *passim*

46 U.S.C. § 55116 ................................................................................................. 13

49 C.F.R. § 1312.1(c) ............................................................................................ 29

49 C.F.R. § 1312.3 ................................................................................................. 29

49 C.F.R. § 1312.14 ............................................................................................... 28

49 C.F.R. § 1312.16 ............................................................................................... 28

Fed. R. Evid. 801(d)(2) .......................................................................................... 26

Fed. R. Evid. 803(3) ............................................................................................... 26

Shortline Railways Act, R.S.N.B. 2011, c. 220(1) (Can.)................................. 22, 23

Shortline Railways Act, S.N.B. 1994, c. S-8.1 (Can.). ......................................... 22

## Other Authorities

Canadian Transportation Agency, *Federal railway companies* (July 7, 2021),
      *available at* https://otc-cta.gc.ca/eng/federal-railway-companies ................................ 23

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.       CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ       PAGE vi OF vii
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 7 of 66

Canadian Transportation Agency, *How to Apply for Approval to Construct a Railway Line: A Guide For Federally Regulated Railway Companies* (Oct. 4, 2019), *available at* https://www.otc-cta.gc.ca/eng/publication/ how-apply-approval-construct-a-railway-line-a-guide ................................................. 23

United States International Trade Commission, *Annual Tariff Data*, *available at* https://dataweb.usitc.gov/tariff/annual (last visited Dec. 14, 2021) .......................................................................................................................... 40

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE vii OF vii
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 8 of 66

Plaintiffs Kloosterboer International Forwarding LLC ("KIF") and Alaska Reefer Management LLC ("ARM") submit this Response to the United States' Motion for Summary Judgment,[1] respectfully showing as follows:

## **PRELIMINARY STATEMENT**[2]

Defendants' summary judgment motion is largely a reprise of arguments submitted in opposition to Plaintiffs' preliminary injunction motion, combined with various newly-created purported bases for issuance of the penalty notices that are improper because the administrative record does not support their issuance based on any of these new justifications. In doing so, Defendants do not address key undisputed facts, virtually ignore the administrative record, and fail to demonstrate their entitlement to summary judgment.

<u>First</u>, Defendants contend that their summary judgment motion turns on whether Plaintiffs' claims are valid *defenses* to the enormous penalties Defendants imposed on Plaintiffs, and that such defenses should be evaluated under Administrative Procedure Act ("APA") review standards. Defendants are wrong. Plaintiffs' affirmative statutory and constitutional claims do not arise under the APA and are to be evaluated *de novo*, and even Defendants concede that the pending administrative Petition challenging the penalty notices remains undecided. Defendants' assertion that United States Customs and Border

---

[1]    Submitted herewith is (i) the Declaration of Neil Bickford ("Bickford Dec."), dated December 16, 2021; and (ii) the Declaration of David Karl Gross ("Gross Dec."), dated December 17, 2021.

[2]    Plaintiffs' Motion for Partial Summary Judgment (Dkt. 117) is referred to throughout as the "Motion." To the extent not defined herein, the definitions set forth in the Motion are the same in this Response. All emphasis is added unless otherwise noted.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                      PAGE 1 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 9 of 66

Protection's ("CBP") decision to issue the penalty notices is entitled to deference is likewise wrong because Defendants do not claim the Third Proviso is ambiguous. And even if the Court were to find any ambiguity, CBP's newly-concocted interpretations of that statute, contrary to more than 20 years of CBP's consistent interpretations in its Ruling Letters, should be given no deference.

Second, in challenging the legitimacy of the transportation of seafood on the Bayside Canadian Railway (the "BCR"), Defendants implicitly ask the Court to ignore decades of consistent CBP rulings and treatments of the Third Proviso's clear and unambiguous Canadian rail trackage clause. Defendants apply an unprecedented, unpublished, and vague "inherent nature" test in its place, to contend that the BCR is an invalid "train to nowhere" even though its use for Third Proviso compliance is functionally and legally identical to the New Brunswick Southern Railway (the "NBSR") rail use that CBP repeatedly has blessed. Defendants thus ask the Court to create an amorphous "I know it when I see it" test for the BCR rail line, hoping to avoid application of the express terms of the Third Proviso and CBP's unbroken chain of controlling and never-modified ruling letters posted on its CROSS system, all of which demonstrate the BCR's full compliance with the Third Proviso and CBP's Canadian rail line rulings.

Third, ignoring the evidence in the administrative record to the contrary, Defendants argue Plaintiffs employed "artifice and deception" in using the BCR without submitting a formal request for a letter ruling to CBP or filing a new tariff identifying the BCR. In support of this accusation Defendants submit nothing at all. No affidavit. No document. No evidence of a false statement. And Defendants simultaneously ask the Court to ignore

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.        CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                          PAGE 2 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 10 of 66

more than 15,000 official bills of lading that Plaintiffs and their supply chain partners presented and submitted at the Calais border to CBP's inspectors, in compliance with CBP's regulations and practices — which bills of lading clearly disclose both the use of the BCR as the rail trackage and the round-trip transportation of the merchandise on the BCR. This is the opposite of concealment by Plaintiffs.

To characterize Plaintiffs' behavior as nefarious — particularly after years of CBP's stealth investigation and refusal to provide any notice or clarification to Plaintiffs about its purported concerns resulting from its secretive reversal of its long-standing ruling letters — is itself reprehensible. It appears from the administrative record that a newly-formed CBP group — the Jones Act Division of Enforcement ("JADE") — moved forward with these unprecedented penalty cases based on minimal legal advice, and in contravention of every regulation, ruling letter and CBP guidance ever published on these subjects. It further appears that Defendants are now attempting to justify JADE's blitzkrieg using never-before articulated, disclosed or published statutory and regulatory interpretations. Regulation by ambush is not fair, lawful, or constitutional.

\*     \*     \*

As for Count I — Plaintiffs' declaratory judgment claim — Defendants double-down on their preliminary injunction opposition points and rely on newly-contrived, never-before published arguments, including that (i) the BCR is not part of an historical "established route"; (ii) that movement of merchandise on the BCR is not "transportation" nor is it "continuous carriage"; (iii) that the BCR is not a bona fide Canadian rail line because it is only regionally-licensed, not federally-licensed; and (iv) Plaintiffs were

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                            PAGE 3 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 11 of 66

required to but did not file a rate tariff at the time they began using the BCR. As detailed below and in Plaintiffs' motion for partial summary judgment, Defendants are wrong on each of these points because the BCR complies with the express words of the Third Proviso, not the warped reading Defendants now give to them, and under Defendants' consistent, long-held policy, no rate tariff was required to be filed in connection with the use of the BCR.

Specifically, as for the rate tariff issue, Defendants incorporate their prior briefing by reference and make no new arguments. Plaintiffs' Motion establishes several alternative bases on which Plaintiffs are entitled to prevail on the tariff issue, including the undisputed fact that a rate tariff filed for the Bayside Route by KIF's predecessor entity was in effect during the entire period covered by the penalty notices, and alternatively, that CBP's decades-long, official and published position that no tariff filing was required, applied to Plaintiffs under the STB's exemptions from tariff filing for freight forwarders and private carriers. Try as they might to back away from them, Defendants remain bound by their official published positions.

Defendants likewise distort their regulations beyond recognition to try to avert summary judgment in Plaintiffs' favor on Count II — alleging violation of § 1625(c)(1). First, Defendants argue that, under CBP's regulations, ruling letters only apply to the party receiving them and only to the identical facts covered in the ruling. As an initial matter, the ruling letters previously issued by CBP on which Plaintiffs rely deal with identical facts — the Bayside Route recognized by the STB and use of any Canadian rail line, without any *de minimis* length or commercial reasonableness requirements. Moreover,

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                    PAGE 4 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 12 of 66

CBP's argument that ruling letters may only be relied on by the parties to those rulings in circumstances with identical facts is incorrect because CBP's regulations, as interpreted by CBP in this case, contravene the plain language of § 1625. Further, even if CBP's regulations as applied to these transactions were valid — which they are not — the regulations affirmatively provide that ruling letters represent the "official position" of CBP on the "*issues*" they address and are "binding" on all of their personnel.

Further, Defendants argue that the BCR is not substantially similar to the NBSR, invoking the same distinctions-without-a-difference arguments relating to the BCR's short distance, roundtrip travel and "inherent nature." None of these arguments are responsive to, or excuse Defendants' failure to provide notice and opportunity to comment regarding CBP's undisclosed, newly-hatched interpretations of the Canadian rail requirement of the Third Proviso.

Defendants' sophistry continues with its response to Plaintiffs' claim for violation of § 1625(c)(2) (Count III). Defendants argue that Plaintiffs are not entitled to summary judgment on this claim because ruling letters are not "treatments," CBP has not accorded a "treatment" to any transactions involving the BCR, and Plaintiffs cannot demonstrate a treatment of transactions "substantially identical" to this one. Plaintiffs' Motion directly refutes each of these arguments. First, the Federal Circuit Court of Appeals has held that ruling letters may be considered treatments. Further, CBP's argument that it accorded no "treatment" here despite almost ten uninterrupted years of accepting over 15,000 shipments of merchandise with bills of lading showing the use of the Bayside Route, including the use of the BCR, is bureaucratic "doublespeak." CBP posits that its repeated practice of

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                  PAGE 5 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 13 of 66

treating shipments as compliant with the Third Proviso is not "treatment" and imposes such narrow constraints on what can be deemed a treatment as to write that statutory term out of existence. That cannot be — and is not — the law. As for the "substantially identical" issue, Defendants once again fall back on immaterial distinctions between the BCR and the NBSR because they have no cogent response to the fact that use of the two rail lines is functionally identical here — which is factually undeniable and legally dispositive.

The Court can also make quick work of Defendants' outdated challenge to the Fifth Amendment claim (Count IV). Defendants assert the claim necessarily fails because the Court did not find, on Plaintiffs' preliminary injunction motion, a likelihood of success on the tariff issue nor on the § 1625(c)(1) claim. But when this claim is assessed on a more complete record and with the additional facts and arguments set forth in Plaintiffs' Motion, the undisputed facts and controlling law demonstrate a deprivation of the constitutionally-required "fair notice" and "ascertainable certainty" prior to CBP's imposition of civil liability on Plaintiff KIF. Defendants' imposition of enormous civil penalties on Plaintiffs based on undisclosed, newly-invented, and unpublished interpretations of the Third Proviso and CBP's regulations, is the epitome of a Fifth Amendment due process violation.

For these reasons, as more fully detailed below, the United States' Motion for Summary Judgment should be denied in its entirety, and Plaintiffs' Motion for Partial Summary Judgment should be granted.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ      PAGE 6 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG    Document 136    Filed 12/17/21    Page 14 of 66

# ARGUMENT

## I.   THE COURT SHOULD REVIEW PLAINTIFFS' CLAIMS *DE NOVO* AND GIVE NO DEFERENCE TO DEFENDANTS' INTERPRETATION

### A.   *De Novo* Review Applies to Each of Plaintiffs' Claims

In addressing the applicable standard of review, Defendants first assert that the Court "need only determine whether Plaintiffs' claims constitute valid legal *defenses* to CBP's attempt to collect Jones Act penalties from KIF." (Dkt. 115 at 13). This is a mischaracterization of the nature of Plaintiffs' *affirmative* claims because Defendants evidently seek application of a deferential standard of review to CBP's interpretations of the Jones Act, rather than the appropriate *de novo* standard.[3]

Defendants' argument is based on their repeated contention that Plaintiffs' statutory and declaratory judgment claims are actually APA agency review actions in disguise. (*Id.* at 14). Defendants are mistaken. Plaintiffs have not made any claims under the APA. (*See* Dkt. 1). Agency action is only made reviewable under the APA "by statute and *final agency action* for which there is no other adequate remedy in a court." 5 U.S.C. § 704. As summarized by this Court in a case involving Jones Act penalties levied by CBP:

> Agency action is *final* if the action (1) "mark[s] the culmination of the agency's decisionmaking process" and (2) is "one by which rights or

---

[3]      In reviewing the cross-motions for summary judgment, the Court reviews the record to determine whether there is a genuine issue for trial and does not "'weigh the evidence and determine the truth of the matter.'" *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (quoting *Tolan v. Cotton*, 573 U.S. 650, 656 (2014)). The Court is obligated to review and consider each motion and the evidence presented in support of each motion on its own accord. *Fair Housing Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136–37 (9th Cir. 2001). Thus, even where both parties assert there are no uncontested issues of material fact, the court determines whether a disputed issue of material fact remains. *Id.*

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                    PAGE 7 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 15 of 66

obligations have been determined, or from which legal consequences will flow." Put in other terms, the court must consider "whether the agency has *completed* its decisionmaking process, and whether the result of that process is one that will directly affect the parties."

*Furie Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.*, No. 3:12-CV-00158 JWS, 2013 WL 1628639, at *4 (D. Alaska Apr. 15, 2013) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997) and *Indus. Customers of NW Utils. v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005)).

Here, there is no final agency action to review because CBP has not issued a decision on KIF's Petition. Accordingly, Plaintiffs' claims cannot properly be cast as APA "defenses" to Defendants' counterclaim — they are affirmative claims. All of Plaintiffs' claims are therefore entitled to *de novo* review — not the more deferential standard of review potentially applicable under the APA (*i.e.*, whether the agency action was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A)).

In general, claims involving statutory interpretation are entitled to *de novo* review by the court, even when asserted against the United States.[4] Plaintiffs' declaratory judgment claim (Count I) seeks a declaration that Plaintiffs' transportation of merchandise on the Bayside Route utilizing foreign-flagged vessels complies with the Jones Act and its

---

[4] *See Rodriguez v. Smith*, 541 F.3d 1180, 1183 (9th Cir. 2008) ("We review questions of statutory interpretation de novo"); *John v. United States*, No. 3:05-cv-0006-HRH, 2009 WL 10659579, at *11 (D. Alaska Sept. 29, 2009) ("To the extent that the issues before the court involve questions of statutory interpretation, those issues are also reviewed *de novo*"); *Sun Moon Star Advanced Power, Inc. v. Chappell*, 773 F.Supp. 1373, 1376-77 (N.D. Cal. 1990) (reviewing agency interpretation of a statute *de novo*).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ  PAGE 8 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 16 of 66

Third Proviso. (Dkt. 1 at ¶ 84). Resolution of that claim requires a *de novo* analysis of whether Plaintiffs' transportation operations comply with the plain language of the statute and with CBP's ruling letters. Plaintiffs are likewise entitled to *de novo* review of their statutory claims arising from 19 U.S.C. § 1625(c) (Counts II and III) [5] and their constitutional claims (Counts IV, V and VI). [6]

### B. No Deference Should Be Given to CBP's Decision to Issue the Penalty Notices

Defendants' assertion that CBP's newly-found interpretation of the Jones Act and its Third Proviso in this action is entitled to deference should be rejected. (Dkt. 115 at 15).

First, because the Third Proviso is unambiguous, the Court should review CBP's decision-making process entirely *de novo* without according any deference to CBP's interpretation. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).

---

[5]     *See Int'l Custom Prods., Inc. v. United States*, 748 F.3d 1182, 1186 (Fed. Cir. 2014) (applying *de novo* review to statutory interpretation of 19 U.S.C. § 1625(c)); *California Indus. Prod., Inc. v. United States*, 436 F.3d 1341, 1348-49 (Fed. Cir. 2006) [hereinafter *CIP*] (applying *de novo* review and rejecting claim that deference should be given to government's interpretation of 19 U.S.C. § 1625(c)).

[6]     *See, e.g., Carpenter v. Mineta*, 432 F.3d 1029, 1032 (9th Cir. 2005) (due process claims against the government reviewed *de novo* even when case is brought under the APA); *Chen-Li Sung v. Doyle*, 988 F.Supp.2d 1195, 1204 (D. Haw. 2013) (same); *accord Furie Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.*, No. 3:12-CV-00158 JWS, 2015 WL 4076843, at *7 (D. Alaska July 6, 2015) (constitutional claims are independent of APA claims and may persist even if the APA claim is dismissed).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                      PAGE 9 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 17 of 66

Second, Defendants do not clearly articulate the level of deference they contend should be applied. They refer to both *Chevron,* 467 U.S. 837, and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), each of which requires a different level of deference.

Third, while an agency may be entitled to *Chevron*-level deference if the case involves an "administrative agency's construction of a statute that it administers," the agency must first demonstrate that the statutory provision at issue is ambiguous. *See Rodriguez v. Smith*, 541 F.3d 1180, 1183-84 (9th Cir. 2008). Defendants here do not even attempt to make such a showing. Defendants instead request that the Court apply *Chevron*-level deference "to the extent there is any ambiguity in the statutes at issue in this case" without identifying which specific terms of the Third Proviso, if any, they claim are ambiguous. (Dkt. 115 at 15-17).

As demonstrated in Plaintiffs' Motion and discussed below, the language of the Third Proviso is unambiguous. Thus, the Court should give no deference to CBP's new interpretations, which are simply *post hoc* rationalizations intended to justify unprecedented penalties that contravene both the text and purpose of the Third Proviso and CBP's long-standing ruling letters interpreting the Third Proviso.[7]

Fourth, even assuming, *arguendo*, that any term in the Third Proviso is found to be ambiguous and that some degree of deference to CBP is therefore appropriate, the Court should apply the lower standard of *Skidmore* deference, which Defendants concede would

---

[7] *See Chevron*, 467 U.S. at 842 ("If the intent of Congress is clear, that is the end of the matter. . .").

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE 10 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 18 of 66

apply to the interpretation of CBP ruling letters. (Dkt. 115 at 17). Under the *Skidmore* standard, the Court determines how much weight, *if any*, should be given to the agency's interpretation of the statute based on "the *thoroughness evident in its consideration*, the *validity of its reasoning*, its *consistency with earlier and later pronouncements*, and [any other] factors which give power to persuade." *Furie Operating Alaska, LLC v. U.S. Dep't of Homeland Sec.*, No. 3:12-CV-00158 JWS, 2014 WL 1289581, at *3 (D. Alaska Mar. 27, 2014) (in challenge to final agency decision, agency interpretation in opinion letter or guideline not entitled to *Chevron*-level deference) (citing *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944); *see also United States v. Mead Corp.*, 533 U.S. 218, 230-32 (2001) (applying *Skidmore* rather than *Chevron* deference to agency classification rulings).

Here, even if the Court were to apply *Skidmore*, no weight or deference should be given to CBP's new interpretation of the Third Proviso in connection with Plaintiffs' transportation of frozen seafood via the Bayside Route. CBP's current view of the Third Proviso — asserted for the first time in this action — is inconsistent with its uninterrupted and unrevoked line of CBP rulings stating, among other things, "any Canadian rail trackage" is sufficient and that no tariff filing is required where a carrier is exempt from any requirement to file a rate tariff with the STB.[8] (Dkt. 117 at 68-69).

---

[8]    *See Scalia v. Dep't of Transp. & Pub. Facilities*, 985 F.3d 742, 748 (9th Cir. 2021) (federal agency's interpretation of a statute based on dictionary definitions, inconsistent or inapplicable regulations, and inconsistent opinion letters from another agency was not entitled to *Skidmore* deference).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                              PAGE 11 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 19 of 66

As addressed in the Motion (*id.* at 34-37), the administrative record makes clear that CBP failed to conduct a thorough review of the facts and the controlling regulations, and its reasoning in the issuance of the Penalty Notices was deeply flawed and inconsistent with over two decades of prior ruling letters.  As a result, CBP should be afforded no *Skidmore* deference — not even "respect proportional to its power to persuade" — in its interpretation of the Third Proviso.  *See Mead Corp.*, 533 U.S. at 220 (internal quotation marks omitted).

## II.  PLAINTIFFS SHOULD BE GRANTED SUMMARY JUDGMENT ON COUNT I

Plaintiffs are entitled to summary judgment as to their declaratory judgment claim (Count I) because, as demonstrated in the Motion (Dkt. 117 at 37-61), their transportation of frozen seafood on the Bayside Route fully complies with the plain language and purpose of every element of the Third Proviso and with CBP's own ruling letters interpreting those elements.  In their motion for summary judgment as to Count I, Defendants largely repeat their earlier injunction arguments concerning the BCR rail line and the Third Proviso.

As previously noted, the Third Proviso provides that the prohibition on non-coastwise qualified vessels:

> does not apply to the *transportation* of merchandise between points in the continental United States, including Alaska, over *through routes in part over Canadian rail lines* and connecting water facilities if the *routes are recognized* by the *Surface Transportation Board* and *rate tariffs for the routes have been filed with the Board*.

46 U.S.C. § 55116.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                      CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE 12 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 20 of 66

In order to defend against the plain language of the Third Proviso, Defendants consistently propose either to change its terms or attempt to add new language and new requirements that simply do not exist in the statute as written. Defendants' first claim is that the BCR is not an "*established route*" over which "merchandise was transported from one destination to another," but instead is an "*artifice* — a specially built 100-foot rail line." (Dkt. 115 at 20-26). On the tariff filing issue, Defendants make no new arguments and simply incorporate their injunction arguments. (*Id.* at 44-45). For the reasons set forth in Plaintiffs' Motion (Dkt. 117 at 37-61), and as summarized below, Defendants' Count I arguments are without merit.

## A.     The Third Proviso Does Not Include an "Established Route" Requirement

Defendants' argument that the BCR does not comply with the Third Proviso because it is not an "*established route*" is baseless. (Dkt. 115 at 19-20). The term "established" is not found in the Third Proviso (the actual terms used are "through route" and "Canadian rail lines"), and in any event, even if that term were included, Defendants' argument is baseless. In determining the meaning of a statutory provision, the analysis commences with the statutory language. "It is a fundamental canon that where the statutory text is plain and unambiguous, a court must apply the statute according to its terms." *Salisbury v. City of Santa Monica*, 998 F.3d 852, 858 (9th Cir. 2021) (internal citations and quotation marks omitted). Here, the plain language of the Third Proviso contains no limitation on "through route" other than the requirement that it be "in part over Canadian rail lines." Defendants

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                    PAGE 13 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 21 of 66

cite no legal basis to support adding new language to the Third Proviso's requirements when that language does not exist in the statute.

The fact that the Third Proviso, when originally enacted, may have served as a "grandfather clause" for existing historically-recognized through routes in part over the Great Lakes and in part over Canadian rail (Dkt. 115 at 19), does not mean that those established routes were intended to be the sole beneficiaries of the Third Proviso and that additional rail lines and routes would not be deemed compliant with the Third Proviso in the future. As explained below, Congress could not have intended to limit application of the current version of the Third Proviso only to routes that existed when the Jones Act and Third Proviso were first enacted in 1920.

To the contrary, an amendment to the Third Proviso after Alaska was granted statehood in 1958 demonstrates that Congress intended an expansive interpretation of the qualifying routes. In connection with the Alaska Statehood Act of 1958, Congress amended the Third Proviso to extend to Alaska the Third Proviso — to ensure that Alaska would be on a more equal commercial footing with other states.[9] Because the Third Proviso had never applied to transportation from Alaska before 1958, there were no established routes that could have been "grandfathered." Therefore, Defendants' position that the Third Proviso is limited to historical through routes using Canadian rails would make the 1958 amendment to the

---

[9]    See Gross Dec. at Ex. 2, H.R. Rep. No. 98-214, at 2 (1983) (May 23, 1983 report regarding proposed repeal of the Third Proviso, submitted by Committee on Merchant Marine and Fisheries, noted that "Alaska was included in the Third Proviso in an attempt to reduce transportation costs to that State").

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                PAGE 14 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 22 of 66

Third Proviso non-functional, and would entirely defeat the economic purpose of legislation expressly extending the Third Proviso to Alaska.[10]

Defendants' new "established route" requirement seems to be a disguised effort to argue — without using the words — that the BCR rail line is a "sham" because it is not commercially sound or otherwise viable.[11]  But Defendants know that any such argument is doomed.   As Defendants concede — and previously have declared in their Ruling Letters — the Third Proviso contains no "commercial soundness" requirement.  (Dkt. 115 at 22-23).  Defendants cannot, without complying with the statutory notice and comment requirements of § 1625(c), invent new and unsupported requirements revoking the Ruling Letters' consistent and unequivocal declaration that there is no requirement that the "use of Canadian rail" be commercially sound or otherwise meet a minimum length or any other applicable standard.  This is yet another example of Defendants' pattern of attempting to substitute or add terms to the Third Proviso that are not in the statute.

---

[10]     The same 1978 letter discussing the various exemptions to the Jones Act then in effect from Leonard Lehman, Assistant Commissioner, Regulations and Rulings, to the Chairman of the House of Representatives Committee on Merchant Marine and Fisheries, relied upon by Defendants to support their "established routes" claim, also specifically states that "[t]he Customs Service has since interpreted the words 'Canadian rail lines' to mean *any trackage in Canada.*"  (Dkt. 6-14 at 5).

[11]     CBP repeatedly referred to the BCR as a "sham" rail line during its investigation. *See, e.g.*, Dkt. 117 at 35-36 (noting portions of the Administrative Record where CBP refers to BCR as a "sham").

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE 15 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 23 of 66

**B.** **Defendants' Definitions of "Transportation" and "Through Route" Are Not Supported by the Wording of the Third Proviso**

Defendants likewise largely repeat their injunction argument that the Bayside Route does not constitute "transportation" of merchandise on a "through route" because it does not involve "continuous transportation" over a Canadian rail line or "actual transportation" over Canadian rails. The Third Proviso does not include either of the terms "continuous" or "actual." Defendants' argument should be rejected for the reasons set forth in Plaintiffs' Motion (Dkt. 117 at 38-41), which includes the following key points.

<u>First</u>, Defendants' argument ignores the plain meaning of the terms "through route" and "transportation" and proposes a novel interpretation of the Third Proviso that is inconsistent with decades of case law, CBP- ruling letters and CBP's declarations and admissions in the *Horizon* litigation. (*Id.*).

Defendants claim that the definition of the unambiguous phrase "through route" should focus on the concept of "continuous carriage" is derived from a century-old Supreme Court case decided in the wholly-unrelated context of determining whether a railroad freight rate was discriminatory or unreasonable. *See St. Louis Sw. Ry. Co. v. United States,* 245 U.S. 136 (1917) (defining through route as "an arrangement . . . between connecting railroads for the continuous carriage of goods from the originating point on the line of one carrier to destination on the line of another"). Relying on that decision, Defendants then contend that the BCR rail line does not provide "continuous carriage" because the frozen seafood is loaded onto the BCR rail line, moves along the railroad track and then back to its starting point. Defendants are mistaken. The reference in the Third

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ  PAGE 16 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG  Document 136  Filed 12/17/21  Page 24 of 66

Proviso to "through route" does not include the term "continuous," much less the new definition proposed by Defendants, and the definition of "continuous" relied on by CBP simply does not apply to the intermodal transportation at issue here. (Dkt. 117 at 39). Because the through route extends from its origin in Dutch Harbor to its ultimate destination in the eastern United States, it is irrelevant whether the transportation of the seafood stops, or includes travel back and forth at some intermediate point. (Dkt. 117 at 44-45).

Second, Defendants' argument that the BCR rail line fails to provide a "continuous carriage" of goods between two points is simply an alternative way of arguing that the use of the BCR rail line is not the most direct route, or otherwise commercially sound, because of its round-trip nature. But CBP's prior ruling letters on this precise issue compel rejection of this argument:

> [T]he Third Proviso does *not* state a 'direct' route should be used, it instead uses the term 'through' route in part over Canadian rail lines. We have long held that *'in part over Canadian rail lines' is any use of Canadian rail.*

(Dkt. 53-1 at 5 (citing Ruling Letters 105604, 111987, 112085, 113141, 113365, 114407, and 115124)). Not once in this series of Ruling Letters or any other ruling letters has CBP ever determined that any part of the "through route," including the Canadian rail portion, needs to be "continuous," or that a round trip component over the Canadian rail line would violate the Third Proviso.

For the same reasons, Defendants' references to examples of other CBP-approved through routes using Canadian rail lines (Dkt. 115 at 20-22) provide no support for the

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.        CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                        PAGE 17 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 25 of 66

argument that there is some minimum length rail use requirement. That position is directly contrary to CBP's ruling letters, which recognize that the Third Proviso does not have a *de minimis* requirement for "in part over Canadian rail lines," nor has CBP in the last 20 years read such a "de minimis requirement into the statute." (Dkt. 53-1 (citing Ruling Letters 105604, 113141, 113365, 114407, and 115124)). Indeed, the ASC Ruling Letter issued August 11, 2000 plainly states that over "Canadian rail lines" means over "rail trackage in Canada," without any reference to minimum length or other usage requirements. (Dkt. 6-8 at *4; *see also* Dkt. 117 at 17-21, 33-34).

Yet even if the Third Proviso could be construed to require "continuous" carriage, the round-trip nature of the carriage of frozen seafood on the BCR rail line complies with any such requirement. As CBP has noted in a ruling letter, "[a] transportation from one point to another remains continuous, so long as intent remains unchanged, no matter what stoppages or transshipments intervene." (*See* Gross Dec. at Ex. 1, CBP Ruling Letter HQ W116720 (Sept. 12, 2006) (citing *The Bermuda*, 70 U.S. 514, 553 (1865)). Here, the intent at all times was for the frozen seafood to be transported continuously from Dutch Harbor to the eastern United States and the round-trip carriage on the BCR rail line does not break any such continuity in the through route.

Third, Defendants' argument that the BCR "does not provide for 'transportation' for purposes of the Third Proviso" (Dkt. 115 at 20) is premised on the erroneous assumption that the "transportation" referenced in the Third Proviso relates solely to the rail portion of the through route. Defendants are wrong. The through route refers to the

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                  PAGE 18 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 26 of 66

entire intermodal transportation route, including both the land and sea components of the journey, from point of original to final destination. (Dkt. 117 at 39).

Fourth, Defendants also contend, without any support and contrary to the unambiguous meaning of the word, that under the Jones Act, round-trip transportation returning to the same point of origin is not "transportation" and that the use of the BCR is thus not "transportation . . . over Canadian rail lines." (Dkt. 115 at 24-25).

The contention that movement of cargo back and forth is not "transportation" is nonsensical. For example, would CBP argue that a truck that travels 200 feet across the Mexican border into the U.S. and then returns to its original departure point has not engaged in "transportation" across the border? Would CBP argue that a truck that exits the highway to park overnight at a truck stop and then returns to the highway via the same ramp has not engaged in "transportation" to and from the truck stop?

Defendants' newly-invented definition of "transportation over a through route" is also inconsistent and conflicts with Defendants' own admissions in *Horizon*. There, Defendants declared in a submission to the District Court "that the [Third Proviso] is satisfied by *any* movement of the cargo by Canadian rail, regardless of its length or direction." [12] Defendants further argued in *Horizon* that "the term 'through route' in American transportation law has long been a term of art with no requirement of being the shortest route, or a route devoid of deviation." *Id.* Indeed, in CBP's words,

---

[12]     *See* Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment, dated Oct. 17, 2005 at 11 ("*Horizon Government SJ Brief*") (Dkt. 6-17).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE 19 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 27 of 66

'through route' has invariably been interpreted by the courts, and the ICC, as referring to an agreement between transportation providers to provide a continuous cooperative movement of cargo from one point to another, *regardless of the directness or circuity of the route used*. It is hard to conceive Congress would have intended a different meaning for the term in the Third Proviso.

*Id.* at 13.

Likewise without any merit is Defendants' reliance on 19 C.F.R. § 4.80b to support its argument that "transportation" requires the movement of merchandise from one place to another. (Dkt. 115 at 24-25). That regulation, defining coastwise transportation, refers to whether merchandise loaded and unloaded at an identical location would be considered to have moved "between two *coastwise* points." That is a completely different test than the question of whether the movement constitutes "transportation" and provides no support for Defendants' argument. Here, there is no question that the transportation of seafood, loaded in Alaska and unloaded in the eastern United States (*see* Dkt. 7 at ¶ 9; Dkt. 8 at ¶ 8), was not loaded and unloaded at an identical point, and thus involves the movement of merchandise between two different coastwise points.[13]

In short, Defendants' new definitions of "through route" and "transportation" are unsupported by the language of the Third Proviso and may not be invoked to refute Plaintiffs' showing that its transportation complies with the Third Proviso.[14]

---

[13] For the same reasons, the CBP ruling letters cited by Defendants stating that the movement of merchandise that begins and ends at the same *coastwise* point is not "transportation of merchandise *between two coastwise points*" (Dkt. 115 at 25), are irrelevant.

[14] Defendants admitted in *Horizon* that the roles of the participating carriers in the through route did not "have to meet some threshold level of effort." In support of that proposition, Defendants provided the following case support and parenthetical

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                          PAGE 20 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 28 of 66

## C.     The BCR is a Canadian Rail Line

Another new argument proposed by Defendants — which appears nowhere in the administrative record as a basis for the assessment of the penalties — is the notion that the BCR rail line is somehow not a "Canadian rail line."  That argument is belied by the indisputable facts.  The BCR is a Canadian shortline railway that was established in 2012 pursuant to a Railway Operating Agreement (the "BCR Operating Agreement")[15] between the New Brunswick, Canada, Minister of Transportation and Infrastructure (the "Minister") and the Canadian company, Bayside Canadian Railway Company Limited (the "BCR Company"), the entity that owns and operates the BCR in Canada.  (Dkt. 8-2 at 1).[16]

The Minister from New Brunswick, Canada is authorized to enter into such agreements by New Brunswick's Shortline Railways Act, which was initially enacted in 1994[17] and later replaced by the 2011 Shortline Railways Act (the "Shortline Act").  The Shortline Act states that "[t]he Minister, with the approval of the Lieutenant-Governor in Council, may enter into agreements with railway companies for the purpose of establishing

---

descriptions, which plainly demonstrate the inconsistency with its present position:  *Sea-Land Servs., Inc. v. Fed. Mar. Comm'n*, 404 F.2d 824, 827 (D.C. Cir. 1968) ("[T]hrough routes have historically been validated in situations where one of the participating transporters activities have been *extremely minimal*"), and *In the Tapline Cases*, 234 U.S. 1 (1914) ("through routes allowable where tapline rail haul varied from 40 miles to as little as *25 feet*").  There is simply no basis for Defendants to take any different position with respect to the BCR rail line.

[15]     The BCR Operating Agreement can be found in the record at Dkt. 8-2.

[16]     *See also* Bickford Dec. at ¶ 8.  Mr. Bickford was the founding President of the BCR Company and a signatory to the BCR Operating Agreement.

[17]     *See* Shortline Railways Act, S.N.B. 1994, c. S-8.1 (Can.).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                      PAGE 21 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 29 of 66

and ensuring safe and efficient shortline railway operations within the Province."  Shortline

Railways Act, R.S.N.B. 2011, c. 220 (Can.).  Paragraph 4 of the BCR Operating Agreement

(Dkt. 8-2 at ¶ 4) provides that the BCR Company was authorized by the Minister to

"establish and operate a Shortline Railway in a safe and efficient manner on the Shortline

Lands in accordance with the Shortline Act and this Agreement."  (*Id.*)

The BCR indisputably is a Canadian "shortline railway" as that term is defined in

the Shortline Act:  the BCR is "a railway,[18] within the legislative jurisdiction of the

Province, operated by a railway company[19] for the carriage of passengers or freight, and

includes all railway lines that a railway company owns or proposes or is authorized to

construct."  Shortline Railway Act, R.S.N.B. 2011, c. 220(1) (Can.).

Defendants' sole support for their new argument that the BCR rail line is not a

Canadian rail line is their assertion that the BCR is not listed as a Federal railway company

by the Canadian Transportation Agency.  (Dkt. 115 at 22, n.5).  This argument displays a

lack of comprehension of the Canadian national and provincial rail systems and ignores the

plain language of the Third Proviso.  The Canadian Transportation Agency's website,

which provides a list of "Federal railway companies," includes only those that are

---

[18]     A "railway" is defined to include:  "(a) a part of a railway, (b) all lines, stations, depots, wharves, rolling stock, equipment, stores, property and works connected with a railway, (c) all bridges, tunnels and other structures used by a railway, and (d) any crossing used by a railway."  Shortline Railways Act, R.S.N.B. 2011, c. 220(1) (Can.).

[19]     A "railway company" is defined as: "a company that operates or intends to operate a shortline railway within the Province."  Shortline Railway Act, R.S.N.B. 2011, c. 220(1) (Can.).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                  PAGE 22 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 30 of 66

*federally*-regulated, [20] and not those that are authorized and governed by Canadian provincial governments.[21] Nothing in the Third Proviso, in the case law, or in any CBP ruling letter restricts or limits a qualifying "Canadian rail line" to those that have been registered as a Canadian *federal* railway company.

In short, there is no basis for Defendants' argument that the BCR is not a Canadian rail line for purposes of the Third Proviso.

### D. Defendants "Artifice" Argument is Baseless

Defendants also argue that the BCR "is an artifice that does not meet the statutory requirements of the Third Proviso" and that Plaintiffs "falsely claim" that it is "part of the through route and includes transportation over Canadian rail lines. (Dkt. 115 at 23, 26). In essence, Defendants argue, without a single supporting piece of evidence, that Plaintiffs somehow deceived CBP by relying on the BCR rail line to comply with the Third Proviso. The argument is baseless for several reasons.

First, as demonstrated above (*see supra* at II.C), the BCR is an authorized Canadian shortline railway that has been in operation since 2012 and was established pursuant to the Shortline Railway Act of New Brunswick, Canada. That single fact alone disproves Defendants' "artifice" claim.

---

[20]    A federally regulated railway company is one that, among other factors, operates across provincial, territorial, or international boundaries. Canadian Transportation Agency, *How to Apply for Approval to Construct a Railway Line: A Guide For Federally Regulated Railway Companies* (Oct. 4, 2019), *available at* https://www.otc-cta.gc.ca/eng/publication/how-apply-approval-construct-a-railway-line-a-guide.

[21]    *See* Canadian Transportation Agency, *Federal railway companies* (July 7, 2021), *available at* https://otc-cta.gc.ca/eng/federal-railway-companies.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE 23 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 31 of 66

Second, as Plaintiffs have argued, use of the BCR rail line is functionally identical to the use of the NBSR rail line on which merchandise was carried solely to comply with the Third Proviso and which CBP repeatedly blessed as in compliance with the Third Proviso. (Dkt. 117 at 24-25).

Third, there was nothing improper in Plaintiffs relying on the BCR rail line solely for purposes of complying with the Third Proviso. As Defendants concede, "importers may structure transactions for the 'express purpose' of qualifying with the law." (Dkt. 115 at 23). Compliance with the Third Proviso is based on an objective standard and it is entirely irrelevant whether Plaintiffs' intent in using the BCR was solely to comply with the Third Proviso. [22] *See Ratzlaf v. United States*, 510 U.S. 135, 144-46 (1994) ("structuring" of financial transactions to avoid a tax was legitimate); *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422-24 (1972) ("Liability cannot be imposed simply because the investor structured his transaction with the intent of avoiding liability" under securities laws).

Indeed, in *Horizon*, Defendants admitted that "the intent of the shipper to avoid the restrictions [under the Jones Act] is *irrelevant* so long as the statutory requirements

---

[22]    Defendants' reliance on the ancient cases of *United States v. Citroen*, 223 U.S. 407, 415 (1912) and *Merritt v. Welsh,* 104 U.S. 694, 704-05 (1881) (Dkt. 115 at 23) is misplaced. These cases are irrelevant to an interpretation of the Jones Act, which does not involve customs duties, and they do not rebut Plaintiffs' contention that it is entirely appropriate for a company to structure its transactions to avoid liability.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                  PAGE 24 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 32 of 66

are met."[23]  As Defendants themselves highlighted in *Horizon* from an earlier case cited

in *Blumenthal*,

> '[t]he purpose the parties had in view can make no difference with the
> interpretation of the statute.  They practiced no concealment or fraud upon
> the government.  Their acts were done openly.  They had the statute before
> them for their guidance. . . . They had the right to assume that the whole
> intention of Congress had been expressed in the words of the statute.'

(Dkt. 6-17 at 14).

Fifth, the notion of any deception by Plaintiffs here is further belied by the fact that

the identity of the BCR and its route was disclosed to CBP in thousands of bills of lading

for shipments since it first began operating nearly a decade ago.  (*See* Dkt. 8 at ¶¶ 11-13).

At no time did Plaintiffs seek to avoid disclosure of the BCR rail line, and its operations

were never hidden in any way.[24]  The contention that a duly licensed and operated short

---

[23]    *See Horizon Government SJ Brief* (Dkt. 6-17) at 14 (citing *Am. Mar. Assoc. v. Blumenthal*, 590 F.2d 1156, 1164 (D.C. Cir. 1979)).

[24]    Defendants' contention of "artifice" is also belied by the fact that CBP was apprised — *before* the commencement of construction of the BCR rail line — of the proposed BCR, that it would be used solely for purposes of complying with the Third Proviso, and that it would be a short rail line located entirely within the Bayside Port. (Bickford Dec. at ¶¶ 9-10).  CBP not only was apprised of the BCR rail line but also encouraged its development.  Bruce Mulholland, then Assistant Port Director for CBP at the Calais, Maine border crossing confirmed to Mr. Bickford, through CBP's "Legal Counsel" in South Portland, Maine, CBP's interpretation that, under the Third Proviso, there was no minimum rail length requirement.  Mr. Mulholland actively encouraged the development of the BCR because "he thought it very beneficial for shippers and truckers to have a shorter, more efficient, less delayed process of meeting the Canadian rail trackage requirement of the Jones Act" and would "permit [him] to hire more CBP employees . . . for the Calais border, which would be beneficial for all concerned."  (*Id.* ¶ 10).

As an opposing party's statement offered against that party, Mr. Mulholland's statements are not hearsay.  *See* Fed. R. Evid. 801(d)(2).  In addition, because Mr. Mulholland's statement is only being offered to show state of mind and their effect on

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                    PAGE 25 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 33 of 66

line railroad used by freight forwarders, multiple shippers and multiple trucking companies to transport tens of millions of pounds of seafood over a period of ten years — the identity of which repeatedly was disclosed to CBP in thousands of bills of lading — is an "artifice" makes no sense.[25]

In sum, Defendants "artifice" argument should be rejected because under the applicable objective test, the use of the BCR rail line on the Bayside Route complies with the Third Proviso, and Plaintiffs properly, lawfully and transparently structured the transportation of seafood using the BCR to ensure compliance with the Jones Act.

### E.  Plaintiffs Have Complied with the Rate Tariff Requirement

Defendants, as noted, make no new arguments concerning the tariff requirement and instead rely on their injunction arguments and the Court's initial decision denying injunctive relief and CBP's brief opposing such relief. (Dkt. 115 at 26). As set forth in detail in Plaintiffs' Motion, which will not be repeated here, additional facts, evidence and associated legal principles presented in the Motion, which were *not* previously available to the Court, establish that Plaintiffs have complied with the tariff requirement of the Third Proviso. (Dkt. 117 at 37-61).

---

the listener, Neil Bickford in his capacity as the President of the BCR Company, the statements are non-hearsay. *See id.* at 803(3).

25    The fact that Plaintiffs never sought a ruling letter from the CBP regarding the BCR rail line is not evidence of evasion of any obligation, nor is it a material omission. (*See* Dkt. 115 at 20-22, 40 (citing 19 C.F.R. § 177.12(c)(iii)(C))). A ruling letter is not a precondition for application of the Third Proviso, and Plaintiffs are entitled to rely on the issues decided in the applicable Third Proviso ruling letters and the governing principles stated in those rulings. (*See* Dkt. 117 at 25-32, 49-53).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                     CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                        PAGE 26 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG    Document 136    Filed 12/17/21    Page 34 of 66

First, a rate tariff has been in effect for the Bayside Route since 2006 when a tariff was filed by American Seafoods Company ("ASC") with the Surface Transportation Board ("STB"). The filing of the ASC Tariff satisfies the tariff requirement of the Third Proviso for any party that elects to ship merchandise on the same route, because the plain and unambiguous language of the Third Proviso only requires that rate tariffs "have been filed" with the STB. Thus, Plaintiffs have complied with this element of the Third Proviso.

Second, in its September 28, 2021 Order (Dkt. 64), the Court reasoned, based on the available record at that time, that the tariff requirement had not been met because (i) ARM could not step into the shoes of ASC; and (ii) that "all" participating carriers had to be listed on the tariff filed with the STB; and (iii) KIF and the BCR rail line were not identified in the ASC Tariff. (Dkt. 64 at 15-16). The facts and law submitted on the more complete record now before the Court, as explained in the Motion (Dkt. 117 at 17-37, 44-61), demonstrate that Plaintiffs have complied with the tariff requirement.

1. The evidence concerning the nature of the corporate relationship, delegations of responsibility and exchanges among ASC, ARM, KIF and their common parent American Seafoods Group ("ASG") demonstrates that Plaintiffs rightfully did step into the shoes of ASC with respect to the tariff. Specifically, Plaintiffs and ASC are corporate subsidiaries of common corporate parent ASG and corporate affiliates of one another, and at different points in time were involved in the logistics and transportation of frozen seafood on the Bayside Route from Alaska to Calais, Maine and other parts of the eastern United States. In 2009, three years after the 2006 filing of the ASC Tariff, ASG formed ARM for purposes of transferring to ARM responsibility for the transportation services

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ  PAGE 27 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG  Document 136  Filed 12/17/21  Page 35 of 66

that ASC had been providing. (Dkt. 118 at ¶¶ 5, 8, 12-14). Once those responsibilities and functions were transferred to ARM, ASC ceased its transportation-related activities and ARM, on behalf of ASC, continued to charter vessels for the transportation of ASC's frozen seafood and coordinate the delivery of its customers' products into the eastern United States, and in that process, ARM, and later KIF beginning in 2010, was granted the right to utilize the Bayside Route and rely on the ASC Tariff. (*Id.* at ¶¶ 13-14).

As explained in the Motion (Dkt. 117 at 48-49), the governing regulation[26] expressly allows the carrier identified in a tariff to be substituted by another carrier, a process referred to in the regulations as a "concurrence," without any requirement that the new carrier be identified in the tariff filed with the STB. *See* 49 C.F.R. § 1312.16 (where facts demonstrate "concurrence" to a later carrier, "rates and services of a carrier" need *not* be filed in the new carrier's name). Pursuant to this concurrence process, Plaintiffs stepped into the shoes of ASC for purposes of the tariff.

2. The STB regulatory regime also makes clear that Plaintiffs could rely on the ASC Tariff and that there was no requirement for either the BCR rail line or KIF to be identified in that tariff. The STB regulations do not require identification of *all* carriers because that is not considered essential information for the tariff to be valid. The precise regulation that sets forth the information that must be included in the tariff, 49 C.F.R. § 1312.3 — entitled "Tariff contents and standards; *Essential criteria*" — does *not* include the names of carriers, much less *all* carriers. (Dkt. 117 at 47-48). The regulations also

---

[26]    *See* Dkt. 117 at 47; *see also* 49 C.F.R. § 1312.14(a)(2)).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                   PAGE 28 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 36 of 66

allow substitution of carriers without any requirement that notice of that substitution be provided to the STB.  *See* 49 C.F.R. § 1312.3(a); s*ee also* 49 C.F.R. §§ 1312.14 and 16 (allowing for *substitution* of carriers without amendment to a tariff).

3.    The STB regulations also do not require the listing on the tariff of Canadian rail lines, such as the BCR, because the STB lacks any jurisdiction over rail lines in Canada and such rail lines do not qualify as "participating" carriers. [27]  As a result, pursuant to the governing STB tariff regulations, there was no requirement to list the BCR on the tariff.

Thus, this more complete factual and legal record demonstrates that Plaintiffs properly relied on the ASC Tariff and complied with the Third Proviso.

Third, and in the alternative, Plaintiffs have complied with all requirements in the applicable CBP ruling letters, which have never been revoked or modified by CBP or vacated by the *Horizon* court, and expressly provide that no tariff is required to be filed where, like here, a carrier is transporting private carriage or is otherwise exempt from the STB's tariff filing requirements.  The private carriage exception is still recognized by the STB, was not revoked by the *Horizon* court, and plainly applies to Plaintiffs.  As explained in the Brautaset Declaration (Dkt. 118 at ¶¶ 15, 18), Plaintiffs transport the frozen seafood of a limited number of customers pursuant to arms-length contracts, which are each individually negotiated and the rates for transportation vary based upon a variety of factors,

---

[27]    STB specifically identifies "carriers" as motor, water and/or freight forwarders over whom STB has jurisdiction.  49 C.F.R. § 1312.1(c).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                                        PAGE 29 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 37 of 66

including transport timing, availability, volume, and delivery time. (*See also* Dkt. 117 at 57-61).

Fourth, as CBP's administrative record now makes clear, Plaintiffs are freight forwarders and as such are also exempt from filing a tariff pursuant to the Third Proviso. (*See id.* at 53-61).

In sum, the new facts and law presented in the Motion and summarized above leave no doubt that Plaintiffs have complied with the tariff requirement of Third Proviso.

## III. DEFENDANTS' ARGUMENTS AGAINST PLAINTIFFS' 19 U.S.C. § 1625(C)(1) CLAIM ARE BASED ON INVALID REGULATIONS AND A MISREADING OF CBP'S THIRD PROVISO INTERPRETIVE RULINGS

### A. Defendants' Attempt to Mischaracterize its Prior Third Proviso Interpretive Rulings is Baseless

Defendants argue the Court should reject Plaintiffs' § 1625(c)(1) claim because (i) there is no ruling letter addressing the BCR; and (ii) the BCR is not substantially similar to the NBSR due to its "inherent nature." (Dkt. 115 at 28-30). On the first point, Plaintiffs demonstrated in their Motion that CBP's ruling letters are directly relevant to the Bayside Route, particularly because of the *material* similarities between the use of the BCR and NBSR rail lines.[28]

Further, Defendants' "inherent nature" and "goes nowhere" arguments concerning the BCR rail line (*Id.* at 23, 29-30, 40, 44) are nothing more than an attempt to reverse the position CBP has promulgated in its long-standing ruling letters. These ruling letters

---

[28]    *See* Dkt. 117 at 24-30, 67-71, and 75-76 (addressing the similarities between the NBSR and BCR rail lines and CBP ruling letters concerning the Third Proviso's Canadian rail requirement).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                           PAGE 30 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 38 of 66

confirm the absence of any commercial-soundness or *de minimis* requirements and sanction the use of *any* Canadian trackage for purposes of satisfying the Third Proviso while at the same time not acknowledging this complete, undisclosed reversal. (*Id.* at 29-30). Defendants cannot recast decades of CBP statutory guidance with semantic word games.

### B. CBP's Regulations Interpreting and Applying § 1625(c)(1) are Overly Restrictive and are Therefore Invalid

Defendants argue that *no one* may rely on any CBP ruling letter unless it involves the party who received the ruling letter with identical facts and issues, and that "carrier" ruling letters[29] will only apply "with respect to transactions involving operations *identical* to those set forth in the ruling letter." (*Id.* at 27 (quoting 19 C.F.R. § 177.9(b)(4) and citing § 177.9(a))). But the regulation cited by CBP in purported support of that argument, 19 C.F.R § 177.9(a), provides no such support. Specifically, that regulation provides as follows:

> A ruling letter issued by the Customs Service under the provisions of this part represents the *official position* of the Customs Service with respect to the particular transaction or *issue described therein* and is *binding on all Customs Service personnel* in accordance with the provisions of this section until modified or revoked.

19 C.F.R § 177.9(a). Nothing in that regulation states that it is binding only on the direct recipient of the ruling. To the contrary, the regulation provides that in connection with the *issue* that was the subject of the ruling letter, it is binding on *all* CBP officials. Here, CBP

---

[29] There is no statutory justification for treating "carrier" rulings differently than ruling letters involving other customs issues. *See* 19 C.F.R. § 177.9(b)(4). Section 1625 makes no distinction between the subject matter of ruling letters or decisions, and appears to apply equally to "*any* interpretive ruling (including *any* ruling letter . . .)." *See* 19 U.S.C. § 1625(a).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.
PLAINTIFFS' RESPONSE TO USA'S MSJ
01154853.DOCX

CASE NO. 3:21-cv-00198-SLG
PAGE 31 OF 58

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 39 of 66

has issued multiple ruling letters on the *issues* of whether there are *de minimis* or commercial-soundness requirements applicable to Canadian rail lines for purposes of the Third Proviso. (*See* Dkt. 117 at 25-30). Those ruling letters remain binding on CBP.

Defendants invoke specious reasoning in an attempt to support their argument that "[t]hird parties to whom rulings were not issued *should not* 'rely on the ruling letter or assume that the principles of that ruling will be applied in connection with any transaction other than the one described in the ruling letter.'" (Dkt. 115 at 27 (quoting 19 C.F.R. § 177.9(c))). This argument makes no sense in light of the public notice and public comment requirements in the statute and CBP's regulations, which provide that ruling letters cannot be revoked or modified unless notice is provided to the *public*. *See* 19 U.S.C. § 1625(c)(2); 19 C.F.R. § 177.12.

CBP's novel argument that ruling letters cannot be relied on by the public while at the same time acknowledging that it must notify the public when it modifies or revokes those same ruling letters — is internally inconsistent and clear evidence that CBP itself recognizes that the public is fully entitled to read, interpret and rely on those ruling letters until they are modified or revoked in accordance with statutory and regulatory requirements. CBP is adopting this stance now to validate its enforcement actions that are clearly inconsistent with its prior actions and guidance.

Further, if CBP construes its regulations as limiting the members of the public who may rely on CBP ruling letters, such construction would be contrary to the language and intent of the statute and therefore invalid.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                         PAGE 32 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 40 of 66

First, there is no statutory justification for regulations that effectively violate the express terms and statutory purpose of the enabling legislation – § 1625(c)(1). Section 1625(c) explicitly states that CBP must provide public notice and opportunity to comment to "*interested parties*" when it modifies or revokes a prior interpretive ruling or decision. The use of the words "interested parties" evidences clear Congressional intent that members of the public may rely on CBP interpretive rulings or decisions. *See CIP*, 436 F.3d at 1354 (invalidating CBP's regulation interpreting the terms "treatment" and "substantially identical transactions" because they departed from the clear intent of Congress and holding CBP was not entitled to *Chevron* deference because the statutory language was unambiguous). CBP's regulations, which unreasonably limit CBP's legal obligation to provide notice and the opportunity for public comment, are not based on a "permissible construction of the statute" and are therefore invalid.[30]

Second, any acceptance of CBP's prohibitively restrictive reading of its regulations would render § 1625(c)(1)'s notice and comment procedure meaningless and the statute purposeless. What purpose would be served by a statute mandating an agency to provide *public* notice and an opportunity to comment before modifying or revoking its *publicly* published interpretive rulings if only the *private* parties to the ruling being modified or revoked would be impacted? Courts "must examine the meaning of the words [in a statute]

---

[30]    *See Rapanos v. United States*, 547 U.S. 715, 739 (2006) (plurality opinion) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (rejecting the Army Corps' of Engineers regulation interpreting the phrase "the waters of the United States" under the Clean Water Act (33 U.S.C. § 1362(7)) as an impermissible construction of the statute).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                    PAGE 33 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 41 of 66

to see whether one construction makes more sense than the other as a means of attributing a rational purpose to Congress." *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1311 (9th Cir. 1992); *Orca Bay Seafoods v. Nw. Truck Sales, Inc.*, 32 F.3d 433, 436 (9th Cir. 1994) (holding invalid a regulation that did not give effect to the plain language Congress chose). The plain language reveals that the only rational purpose of § 1625(c) is that CBP ruling letters and decisions may be relied on by "interested parties," not just the parties that requested the ruling letter.[31]

Accordingly, Defendants' arguments based on CBP's overly restrictive and therefore invalid regulations, which limit the clear language and intent of § 1625(c)(1), should be rejected. Plaintiffs have demonstrated that Defendants, through their issuance of the penalty notices, have violated § 1625(c)(1) and are entitled to summary judgment on Count II.

## IV. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIM THAT DEFENDANTS VIOLATED 19 U.S.C. § 1625(C)(2) (COUNT III)

Defendants contend that they have not violated § 1625(c)(2) because: (i) the ruling letters are not "treatments" for purposes of § 1625(c)(2); (ii) CBP has not accorded a "treatment" to any transactions involving the BCR rail line; and (iii) Plaintiffs cannot demonstrate a treatment of transactions "substantially identical" to the transactions subject

---

[31] CBP's argument and regulations also ignore the "informed compliance" requirements of § 1625(c) and are contrary to, among many other things identified in Plaintiffs Motion, the Informed Compliance Publications issued by CBP, which states that "[a]ny importer that wishes to rely on a ruling letter *issued to someone else* should make sure that the letter has not been modified or revoked." (*See* Dkt. 117 at 63).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                          PAGE 34 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 42 of 66

to the penalty notices.  (Dkt. 115 at 30-31).  As Plaintiffs have demonstrated in their Motion

(Dkt. 117 at 71-78) and further explained below, each of these arguments is without merit.

### A.    Defendants' Argument Relies on CBP Regulations that Conflict with the Clear Language and Purpose of § 1625(c)(2)

Defendants rely primarily on CBP's own regulations interpreting the statutory terms

"treatment" and "substantially identical transactions" in arguing that Plaintiffs have not

met the elements necessary to support their § 1625(c)(2) claim.  (Dkt. 115 at 31-35).  But

these regulations and Defendants' associated arguments are inconsistent with the text and

intent of § 1625(c)(2) and are therefore invalid as applied to the facts in this case.

One of the regulations that conflicts with the statute and the case law provides that

"Customs will not find a treatment was accorded to a person's transactions if," among other

reasons, "the *person's own transactions* were not accorded the treatment in question over

the *2-year period* immediately preceding the claim of treatment."    19  C.F.R.

§ 177.12(c)(iii)(A).[32]  The limitation on the persons entitled to rely on CBP's "treatment"

of transactions conflicts with the plain language and purpose of § 1625(c)(2), which

expressly extends to all "*substantially identical transactions*."   It also conflicts with

decisions that have made clear that § 1625(c)(2) applies to transactions made by "*other*

*parties*."  *See, e.g., CIP*, 436 F.3d at 1355 ("[W]hen Congress wrote section 1625(c), it

---

[32]      Similar to the argument made *supra* at I.B, CBP is not entitled to *Chevron* deference
in promulgating regulations under § 1625(c) because (i) the statute is not ambiguous; or
(ii) CBP's regulations are not a permissible construction of the statute if various terms in
the statute, such as "treatment" are defined so narrowly as to exclude, *inter alia*, thousands
of entries of frozen seafood transported along the Bayside Route.  *See Chevron*, 467 U.S.
at 843.

knew that under Customs regulations, 'treatment' included 'substantially identical transactions' of '*other parties*,' making it unnecessary for it to specify that it was referring to 'substantially identical transactions' of a single party or multiple parties"); *Peerless Clothing Int'l, Inc. v. United States*, 33 C.I.T. 24, 36 (2009).

      Nor is there any reasonable basis for CBP's arbitrary, two-year limit to "treatments" that may be considered. Here, as shown in the Motion (Dkt. 117 at 22-30), the importation of frozen seafood transported on the Bayside Route over the past 20 years utilizing, in part, a Canadian rail line is identical, or at a minimum, "substantially identical," to Plaintiffs importation of seafood here. CBP repeatedly has ruled that the transportation and importation of seafood on the Bayside Route complies with the Third Proviso. Merely because the ASC and Sunmar shipments occurred beyond an arbitrary two-year period before the imposition of the penalty notices does not render the treatment of those transactions any less relevant or no longer "substantially identical." If Plaintiffs cannot rely on CBP's treatment of substantially identical operations — that CBP repeatedly blessed, defended in court, and never publicly revised — then § 1625(c)(2) is a nullity. Moreover, to the extent that CBP's regulations as applied would preclude Plaintiffs from relying on CBP's long-standing "treatment" of Bayside Route transportation operations, those regulations are invalid.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ      PAGE 36 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 44 of 66

**B. Plaintiffs' Claim That CBP Violated § 1625(c)(2) is Supported by the Case Law**

CBP cannot retroactively change its treatment allowing the liquidation of entries[33] of frozen seafood that is transported on the Bayside Route. "Treatments" under § 1625(c)(2) may include, among other things and as established by the Federal Circuit in *California Industrial Products* ("*CIP*"), ruling letters or prior entries involving similar issues and factual circumstances, and those treatments may be relied upon by third-parties. *See* 436 F.3d 1341. In opposing Plaintiffs' § 1625(c)(2) claim, as explained below, Defendants attempt to distinguish *CIP* in favor of *Motorola, Inc. v. United States*, 28 C.I.T. 1310 (2004), *aff'd in part, rev'd in part and remanded*, 436 F.3d 1357 (Fed. Cir. 2006), a factually inapposite case involving a distinguishable set of issues. (Dkt. 115 at 30-44).

**1. *California Industrial Products* Confirms CBP's Statutory Violation**

As noted, *CIP* confirms that an importer may rely on CBP's prior "treatments" afforded to third-party importers if those treatments involve transactions "substantially identical" to the importers' present transactions. Those importers are considered an "interested party" under § 1625, which means that CBP is required to revise its prior treatments afforded to the third-party transactions according to the notice and comment procedures set out in § 1625(c) *if* the transactions between the importer and the third-parties are substantially identical. *See CIP*, 436 F.3d 1341, 1350.

---

[33]    Liquidation is the process through which CBP completes its review of an entry and finalizes its position as to the duties.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE 37 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG    Document 136    Filed 12/17/21    Page 45 of 66

In *CIP*, a manufacturer ("California Industrial") sought to recover a portion of previously paid customs duties — called a "drawback" — for exported or destroyed iron and steel scrap metal under a regulation permitting drawbacks when the manufacturer substitutes the same "kind and quality" of goods for those that were originally imported. *CIP*, 436 F.3d at 1343. California Industrial sought a drawback determination from CBP on the basis of (i) 145 entries CBP liquidated for drawback on steel scrap issued to five *other* manufacturers; and (ii) multiple Treasury Decisions issued as interpretive rulings on the applicable statutes and regulations. *CIP*, 436 F.3d at 1345-46.[34] California Industrial challenged CBP's denial of its claims, arguing that CBP had, among other things, impermissibly changed its practice retroactively — specifically its treatment of the 145 liquidated entries given to *other* manufacturers *and* by unlawfully revising its Treasury Decision rulings. *See CIP*, 436 F.3d at 1347. The Federal Circuit found that California Industrial was entitled to rely on the Treasury Decisions *and* CBP's treatment of entries for third parties because they were "substantially identical" to the manufacturer's claims. *CIP*, 436 F.3d at 1356. The Court also found that California Industrial was an "interested party" under § 1625 and held that CBP was required to revise its prior treatments and guidance according to the notice and comment procedures set out in § 1625(c).[35]

---

[34] After CBP began denying drawback claims for other companies that were previously permitted to receive drawbacks, one of the other companies successfully challenged the denial of its drawback claims. *See Precision Specialty Metals, Inc. v. United States*, 116 F.Supp.2d 1350 (Ct. Int'l Trade 2000); *Precision Specialty Metals, Inc. v. United States*, 182 F.Supp.2d 1314 (Ct. Int'l Trade 2001).

[35] The manufacturer was denied drawbacks because, among other things, its bills of lading mentioned "scrap" which CBP interpreted to be "waste" and therefore not eligible

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                               PAGE 38 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 46 of 66

## 2. *Motorola* is Factually and Legally Inapposite

Attempting to challenge Plaintiffs' § 1625(c)(2) claim, Defendants rely heavily on *Motorola* to argue that (i) a ruling letter can never constitute a "treatment" under § 1625(c)(2) (Dkt. 115 at 35-37); (ii) thousands of previous Plaintiffs' customer's shipments into the United States do not constitute a "treatment" because the prior entries were "never examined" by CBP (*id.* at 37-40); and (iii) the term "substantially identical" requires an exact or near-exact identity between the previous transactions and the present ones (*id.* at 41-44). None of those arguments is valid because *Motorola* involves a hyper-technical customs product classification dispute and unique legal issues not applicable here.

*Motorola* concerned CBP's issuance of pre-classification ruling letters ("PRLs")[36] to Motorola and whether (i) CBP unlawfully modified or revoked the PRLs; and (ii) Motorola could rely on the PRLs and/or its prior entries of merchandise to avoid a customs duty. The PRLs at issue classified particular electronic circuits used in battery packs for cell phones as "hybrid integrated circuits" that could enter into the United States duty free. Motorola imported similar circuits pursuant to "bypass" entries, in which importers self-declare a value and tariff classification for their goods.[37]

---

for drawbacks. *CIP*, 436 F.3d at 1352. It appears, contrary to its position in this case, that CBP does actually review bills of lading when analyzing issues before it and will even rely on them when it is convenient for its position.

[36]  A PRL is a letter from CBP to an importer advising the importer of the tariff classifications for specific goods before the goods are imported into the country.

[37]  Pursuant to the tariff bypass entry system, CBP may allow entry of such merchandise without independently determining if the proper duty is paid or inspecting the

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                    PAGE 39 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 47 of 66

After a review of some of Motorola's previous entries, CBP rejected Motorola's proposed classification under the Harmonized Tariff Schedule — a byzantine set of customs classifications identifying the difference between all manner of imported goods.[38] CBP rejected Motorola's proposed classification and, in contrast to other Motorola circuits, determined the later-imported circuits were subject to a duty. *Motorola, Inc. v. United States*, 28 C.I.T. 1310, 350 F.Supp.2d 1057 (2004). Motorola initiated an action in the Court of International Trade ("CIT") challenging CBP's determination as violative of § 1625(c).

CIT issued a split decision on Motorola's claims and both parties appealed.[39] On appeal, among other things, the Federal Circuit found that the term "treatment" was ambiguous as to the "*bypass entries of the sort at issue in this case.*" *Motorola, Inc. v.*

---

entry. *Motorola*, 436 F.3d at 1362; *see also Kahrs Int'l, Inc. v. United States*, 33 C.I.T. 1316, 1334 (2009). ("Bypass" means that an entry is not reviewed by an import specialist (the review of the entry is bypassed) and the entry is liquidated 'as entered,' *i.e.*, with no change to the entry data originally submitted to Customs").

[38]   To get a sense of the hyper-specificity of the Harmonized Tariff Schedule, there currently are over 13,000 individual goods identified with their own classification code, including 370 entries related to "cheese," over 60 entries related to "tomatoes," and 85 entries related to "circuits." United States International Trade Commission, *Annual Tariff Data*, *available at* https://dataweb.usitc.gov/tariff/annual (last visited Dec. 14, 2021).

[39]   CIT held that CBP violated § 1625(c)(2) as to four of the eight circuits at issue because the nickel-chemistry based circuits imported by Motorola were substantially identical to over 900 other entries of nickel-chemistry based circuits, and CBP was thus required to publish an interpretive ruling that modified or revoked the treatment CBP accorded to those prior transactions. *Motorola*, 350 F.Supp. at 1073-74. However, CIT also held that the rest of the merchandise at issue in the PRLs was distinct from the other, lithium-chemistry based circuits imported by Motorola and, therefore, CBP did not violate § 1625(c) when it rejected Motorola's proposed classification. *Id.* at 1074-75.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE 40 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 48 of 66

*United States*, 436 F.3d 1357, 1365 (Fed. Cir. 2006). The court underscored that *bypass entries* present a unique issue because in such circumstances, based on an importer's designation, *CBP does not inspect* the entries. *Id.* The Federal Court also held that for purposes of determining whether "substantially identical transactions" exist, the test is "substantial" and not "exact." *Id.* at 1367.

The Federal Circuit remanded the issue of whether the PRLs and bypass entry review system constituted a "treatment" and held that CBP's interpretation that its allowance of other bypass entries did not constitute a treatment based upon 19 C.F.R. § 177.12(c)(1)(ii) was proper because the trial court reasonably determined that the lithium-chemistry based circuits at issue were not substantially identical to those at issue in the PRLs — which were nickel-chemistry based.[40] *Motorola*, 436 F.3d at 1366-67. However, the Federal Circuit specifically limited its holding and reasoning to a subsection of the regulation related to bypass entries of merchandise, which are not at issue here.[41]

---

[40] By contrast, in the present case the ruling letters and prior treatments concern the same product being transported on the same through route for over 20 years.

[41] Specifically, the Court noted that "[we] *do not address the validity of the entire regulation for all purposes*, but merely defer to its determination that the admission of [bypass] entries 'expeditiously and without examination or Customs officer review' does not constitute 'treatment' within the meaning of section 1625(c)(2)." *Motorola*, 436 F.3d at 1367. While the CIT and Federal Circuit ultimately determined that the bypass entries and PRLs at issue did not constitute treatments, they did so based upon the unique facts of the case. *See id.* at 1372 (rejecting reliance on PRLs as treatments for to do so would render "the strict identity requirement of the PRL system . . . superfluous" citing to 19 C.F.R. § 177.9(b)(2) in support). The Federal Circuit did not in words or substance overrule its decision in *CIP* or hold that a ruling letter could never be a treatment.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                        PAGE 41 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 49 of 66

In short, the *Motorola* precedent is inapplicable for two primary reason. First, the merchandise at issue was not subject to a "treatment" because it was admitted through the unique "bypass" entry process where the merchandise was not inspected. Second, the PRLs in *Motorola* addressed the identity requirement related to highly technical electrical component import classifications that are not applicable to the present case which deals with a far simpler issue[42] — whether a Canadian rail line was used as part of the Bayside Route.

In contrast to *Motorola*, *CIP* involved CBP's unlawful modification or revision of ruling letters upon which, according to the Court, *non-parties* were entitled to rely, as is the case here. Moreover, as explained below, the unique issue concerning bypass entries is not relevant in this case because documentation for thousands of shipments that utilized the Bayside Route were individually inspected by CBP at the Calais, Maine border crossing.[43] Further, like *CIP*, Plaintiffs here, in structuring their transportation practices in

---

[42] In particular, Defendants' attempt to equate the analysis applied to what constitutes "identical" for purposes of application of the statute, *see* Dkt. 117 at 41-44, in conjunction with the language outlined in 19 C.F.R. § 177.9(b)(2) and (4) between tariff classification rulings and carrier rulings is akin to comparing apples to oranges. Tariff Classification rulings relate to highly specific, particularized merchandise, requiring precision in identity to samples and descriptions, while carrier rulings relate to identity of "transactions" generally, to "operations" addressed in a ruling letter.

[43] The *CIP* court held that, because the terms "treatment" and "substantially identical transactions," as applied to the specific facts in CIP — which are comparable to the facts here — were unambiguous. *CIP*, 436 F.3d at 1348. CBP's interpretation of § 1625(c)(2) was not entitled to Chevron deference. *Motorola* reached a contrary result because of the unique issue in that case concerning whether "bypass entries" constituted "treatments" — which obviously is not an issue in this action. *Motorola*, 436 F.3d at 1365.

accordance with the Third Proviso, relied on the treatment CBP accorded to third-party importers in allowing the importation of frozen seafood transported on the Bayside Route.

### C. Ruling Letters May Constitute "Treatments" for Purposes of § 1625(c)(2)

Defendants argue that CBP ruling letters are *never* considered "treatment[s]" under § 1625(c)(2). (Dkt. 115 at 37-40). That sweeping claim, as discussed in Plaintiffs' Motion, is contrary to the case law, which recognizes that, in certain cases, "treatments" include ruling letters or decisions issued by CBP. (*See* Dkt. 117 at 72-75). Indeed, as demonstrated above, one basis for the Court's holding that CBP violated § 1625(c)(2) was that CBP rulings in the form of "Treasury Decision[s]" obtained before entry on behalf of third-party importers could be relied on by other members of the import community. *See CIP*, 436 F.3d at 1346. Thus, ruling letters may constitute "treatments" for purposes of § 1625(c)(2).

### D. Plaintiffs Have Demonstrated that CBP Accorded Treatments to Plaintiffs' Bayside Route Shipments Utilizing the BCR Rail Line

Defendants argue that CBP has not accorded a "treatment" to any transactions substantially identical to the transactions covered by its penalty notices. This argument is erroneous because, as demonstrated in Plaintiffs' Motion (*see* Dkt. 117 at 23, 74-75), Plaintiffs provided thousands of bills of lading to CBP at the Calais border crossing disclosing that Plaintiffs were utilizing the Bayside Route — which included using foreign-flagged vessels and a Canadian rail line with a back and forth component in their

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE 43 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 51 of 66

transportation operations.  CBP admitted every one of the over 15,000 entries since 2012,[44] including in the two years immediately preceding the date that CBP began to issue its penalty notices.  (Dkt. 8-6 (2019) and Dkt. 8-7 (2020)).

Defendants contend that "Plaintiffs have not even attempted to show that a CBP officer actually examined any relevant transactions, much less determined whether the transaction complied with the Third Proviso."  (Dkt. 115 at 39).  Defendants cannot reasonably deny that CBP examined the relevant transactions.  Their argument is belied by the administrative record, which establishes that CBP received thousands of custom packets, all of which had to be reviewed and accepted by a CBP official before merchandise was allowed entry into the United States and all of which identified the Bayside Route, including the use of the BCR and the back and forth nature of the BCR rail transportation.[45] (*See* Dkt. 106-11 at 1–Dkt. 106-16 at 20).

If any credence were to be given to CBP's contention that it did not actually examine the entry documents for the Bayside Route shipments, then what purpose do CBP inspections serve if its officials are not making these types of determinations at the border? Any such conduct would contravene one of the agency's "Enduring Mission Priorities":

> *Secure the Border* – Protect the Homeland through the air, land and maritime environments *against illegal entry*, illicit activity or other threats

---

[44]     *See* Dkt. 8-3-Dkt. 8-8 (sample Customs Documentation Packets from 2012 to 2021).

[45]     Moreover, CBP ignores that CBP representatives, onsite "before, during, and after construction of the BCR in Bayside" (Dkt. 52 at ¶ 7), observed its operations, and were aware the rail line was being used for purposes of compliance with the Jones Act.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                           PAGE 44 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 52 of 66

to uphold national sovereignty and promote national and economic security.[46]

And the facts belie CBP's argument that *none* of its officials ever examined *any* of the more than 15,000 bills of lading submitted by Plaintiffs' customers between 2012 and August 2021. By CBP's own admission, it commenced examining those documents at least as early as July 2017.[47] (*See, e.g.*, Dkt. 106-9 at 9).

Defendants argue that the Court should not credit Plaintiffs' argument that the entries of Plaintiffs' customers' frozen seafood constitutes a "treatment" under § 1625(c)(2) for three other reasons: (i) allowing the trucks to enter the United States "only demonstrated that the merchandise . . . was admissible"; (ii) Plaintiffs have not shown that CBP made any determination as to Third Proviso compliance on a "national basis"; and (iii) Plaintiffs made "material omissions concerning their transactions." (Dkt. 115 at 39-40). These arguments are — respectively — wrong, specious, and fallacious.

First, Defendants argue that CBP was not "given an opportunity to examine the facts of the BCR Route to determine compliance with the Third Proviso." (*Id.* at 39-40). This is demonstrably false. Not one of the thousands of shipments permitted to enter into the United States through the Calais border crossing was done without a CBP officer's express

---

[46] United States Customs and Border Protection, *About CBP*, https://www.cbp.gov/about (last visited Dec. 13, 2021).

[47] CBP never provided Plaintiffs any notice of any alleged concerns with Plaintiffs' customers' importation of frozen seafood using foreign-flagged vessels and a Canadian rail line, and instead continued to accept and allow Plaintiffs' customers' merchandise into the country. CBP cannot avoid a "treatment" determination under § 1625(c)(2) by burying its head in the sand as to potential violations or, once they are on notice of potential violations, knowingly admitting allegedly illegal entries for approximately four additional years.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                        PAGE 45 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 53 of 66

review and approval. CBP was provided with all of the information necessary to make the determination whether Plaintiffs' transportation practices constituted a "Point to Point violation[]" — including the Jones Act — which are an enforcement priority in CBP's screening and inspections process at the Calais border facility. (Dkt. 117 at 75, Dkt. 119-5 at 9).

Defendants are effectively arguing that CBP's admission of *thousands* of shipments of frozen seafood into the United States over a period of nearly ten years provides no basis for an importer to structure its transportation of frozen seafood consistent with those entries. Alternatively stated, CBP supposedly can fail to discharge its responsibilities for years, conveying the position that an importer's practices comply with all relevant laws and regulations enforced by CBP, and then, without any prior notice, fundamentally reverse its position and begin assessing hundreds of millions of dollars in business-destroying penalties.[48] Such specious reasoning provides no justification for CBP's failure to comply with the notice and comment requirements of § 1625(c)(2).

<u>Second</u>, to the extent the regulation is even valid, the fact that all of Plaintiffs' customers' shipments went through the Calais, Maine border crossing does not mean that CBP has not applied its entry determinations on a "national basis" as required by CBP's regulations. (*See* Dkt. 115 at 39 (citing 19 C.F.R. § 177.12(c)(1)(i)(C))). The "national basis" requirement merely means that, if shipments are imported across different borders

---

[48] Under CBP's reasoning, CBP has no obligation to provide "clear and unequivocal warning" if it is changing its enforcement practices, particularly after fostering years of reliance by the importers they now seek to penalize. *See Blumenthal*, 590 F.2d at 1165.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                      PAGE 46 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 54 of 66

in the United States, CBP must "*consistently* appl[y] that determination on a national basis." *See* Administrative Rulings, 67 FR 53483-01, 2002 WL 1875603(F.R.) (Aug. 16, 2002). Where all the relevant shipments are imported across a single border in the United States and CBP's entry determinations are entirely consistent as to those shipments, there is no reasonable basis to contend that the "national basis" requirement has not been met.

Moreover, CBP has presented no evidence that it afforded inconsistent treatment to the importation of frozen seafood from Alaska to the eastern United States. To the contrary, *all* entries into the United States using the Bayside Route were afforded the exact same treatment, meeting the "national basis" requirement of the CBP regulation.[49] Nor is there anything in the administrative record indicating that CBP's decision to issue penalty notices to Plaintiffs was in any way a result of any determination of non-compliance with the "national basis" requirement, indicating that this is another litigation-driven excuse to attempt to rationalize penalties that depart from CBP's consistent ruling letters.

Third, Defendants' argument that Plaintiffs made "material omissions concerning their transactions" — *i.e.,* by changing from the NBSR to the BCR — is belied by the documentation submitted by Plaintiffs to CBP. (*See* Dkt. 115 at 40). As demonstrated in the Motion, every bill of lading lists the BCR as the rail line used for the Canadian rail portion of Plaintiffs' transportation and every BCR bill of lading describes the movement

---

[49]     Further, it would be nonsensical to compel an importer — who efficiently imports its product via a single port of entry and then distributes that product throughout the eastern United States — to engage in unnecessary, inefficient and costly multi-port imports merely to qualify for a "treatment."

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                    PAGE 47 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 55 of 66

on the BCR railroad as "Bayside, NB – North Bayside #1 –TO– South Bayside #2 – *And Return*." (*See* Dkt. 117 at 23). The contention that Plaintiffs did not disclose this information to CBP is demonstrably false.

E. **Defendants' Argument that Plaintiffs' Transactions are Not "Substantially Identical" to Any Other Transactions Afforded CBP Treatment is False**

Equally without merit is Defendants' argument that Plaintiffs cannot demonstrate treatments of transactions "substantially identical" to those at issue in this case because no treatments involve the BCR rail line. This argument is largely duplicative of Defendants' other arguments involving the BCR rail line (*see* Dkt. 115 at 23-26) and is addressed in Plaintiffs' Motion. (*See* Dkt. 117 at 75-78). Only one issue raised in Defendants' Motion concerning its reliance on *Motorola* requires further discussion.

Defendants cannot reasonably analogize the different cell phone battery pack circuits at issue in *Motorola*, which were found not to be substantially identical, with the Canadian rail lines at issue here. (Dkt. 115 at 42-44). *Motorola* was interpreting a highly precise and technical definition of the term "hybrid integrated circuits" in the Harmonized Tariff Schedule of the United States. *Motorola*, 436 F.3d at 1360. No such comparable precision is even remotely applicable here with respect to the general statutory language "Canadian rail lines" in the Third Proviso.

Here, the central issue is whether the Bayside route using the NBSR versus the BCR is "substantially similar" for purposes of the Third Proviso. As the evidence establishes, and as this Court already has indicated (Dkt. 64 at 20), the two rail lines are "substantially identical" for purposes of the Third Proviso. (*See* Dkt. 117 at 75-78). There is simply no

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                          PAGE 48 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 56 of 66

merit to Defendants' argument that, for purposes of the Third Proviso, "there are significant differences" between the NBSR and the BCR, "such as *distance*, *purpose*, and *compliance with the fundamental tenants of the Jones Act.*" (Dkt. 115 at 44). None of these supposed "differences" has ever been at issue in determining whether Canadian rail trackage complies with the Jones Act. (*See* Dkt. 117 at 25-30). These "differences" are simply *post hoc* justifications seeking to conceal CBP's unlawful modification or revocation of its prior ruling letters and decisions concerning the Third Proviso's Canadian rail line requirement in an attempt to justify its imposition of enormous, unfounded and unforeseeable penalties on Plaintiffs and others in its supply chain.

\*     \*     \*

In short, the evidence demonstrates Plaintiffs are entitled to summary judgment on Counts II and III of their Complaint, Defendants' motion for summary judgment should be denied, and an order should be issued declaring the penalty notices to KIF null and void and directing CBP to rescind those penalties.[50]

## V.    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FIFTH AMENDMENT CLAIM

The Notices of Penalty issued in this case are a regulatory ambush.

Plaintiffs' Motion established that they are entitled to summary judgment on their due process (Count IV) claim because CBP's undisclosed reversal of its decades-long ruling letters on the "Canadian rail trackage" issue and the non-tariff filing issue deprived

---

[50]    If Plaintiffs prevail on their Count II or III claims, all penalty notices issued to third parties in the Bayside Route supply chain should be null and void based on the same reasoning.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                    PAGE 49 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG    Document 136    Filed 12/17/21    Page 57 of 66

Plaintiffs of constitutionally required "fair notice" and "ascertainable certainty" prior to CBP imposing civil liability on Plaintiff. *Gen. Elec. Co. v. U.S.E.P.A.*, 53 F.3d 1324, 1328-29 (D.C. Cir. 1995). (Dkt. 117 at 79-82).

Defendants' two arguments in support of their contention seeking dismissal of the due process claim cannot withstand scrutiny.

Defendants first argue that this Court already rejected this claim in declining to find a likelihood of success as regards the tariff filing issue. (Dkt. 115 at 44). But on the initial motion, the Court did not have the benefit of the record that Plaintiffs have presented on their Motion. This record and Plaintiffs' complete briefing establish CBP's multiple failures to disclose its changes of position on the tariff-filing issue, and the ambiguity of CBP's claimed "notice" to American Seafoods' counsel that CBP would "abide" by the *Horizon* decision. (Dkt. 117 at 14, 32). Thus, Defendants fail to meet Plaintiffs' proof that conclusively demonstrates the due process violation.[51]

Second, Defendants rely on a false tautology that Count IV is identical to Plaintiffs' § 1625(c)(1) claim (Count II), and because the Court declined to find a likelihood of success on that claim on the initial motion, the claim necessarily fails now. (Dkt. 115 at 45). Among the evident defects in that argument are that the due process claim is factually distinct from the § 1625(c)(1) claim, (*compare* Dkt. 117 at 67-71 *and* Dkt. 117 at 79-82), and this Court's preliminary reaction to the claim does not control the inquiry

---

[51]    Plaintiffs can prevail on this claim if they establish any (or all) Fifth Amendment violation(s) as regards the tariff issue, or the Canadian rail issue, or the inadequacy of the penalty notices.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                  PAGE 50 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 58 of 66

now that Plaintiffs have established, on a full record, that the undisputed facts show they are entitled to summary judgment on the § 1625(c)(1) claim as a matter of law. (*Id.* at 79-82).

Moreover, a Fifth Amendment due process claim is independent of Plaintiffs' other claims, even if they arise from essentially the same allegations. *See Furie*, 2015 WL 4076843 at *7 (considering claims arising from penalties issued by CBP under the Jones Act). Separate and apart from CBP's obligations under § 1625(c), the "due process clause thus 'prevents . . . deference from validating the application of a regulation that fails to give fair warning of the conduct it prohibits or requires.'" *Gen. Elec. Co.*, 53 F.3d at 1328 (finding Fifth Amendment violation and vacating fine issued by EPA due to lack of fair warning of the agency's interpretation of its regulations) (citing *Gates & Fox Co. v. OSHRC,* 790 F.2d 154, 156 (D.C. Cir. 1986)). In *General Electric*, the D.C. Circuit further held:

> In the absence of notice—for example, where the regulation is not sufficiently clear to warn a party about what is expected of it—an agency may not deprive a party of property by imposing civil or criminal liability. . . In *Radio Athens, Inc. v. FCC*, [401 F.2d 398, 404 (D.C. Cir. 1968)] we held that when sanctions are drastic—in that case, the FCC dismissed the petitioner's application for a radio station license—'elementary fairness compels clarity' in the statements and regulations setting forth the actions with which the agency expects the public to comply.

*Gen. Elec. Co.*, 53 F.3d at 1328-29.

Here, CBP's actions and inactions are the epitome of a lack of fair notice, including CBP's reliance on:

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                         PAGE 51 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 59 of 66

- Never-before published or disclosed definitions of "established route," "transportation," "through route," and "continuous carriage;"

- A never-before published or defined "inherent nature" test to determine whether a Canadian railway is in CBP's view sufficiently Canadian and/or sufficiently a railway;

- A never-before published or defined "train to nowhere" test, which is contrary to CBP's longstanding admissions, including CBP's position in this litigation that "all was good" when Plaintiffs used the NBSR (Dkt. 38 at 2), which is also a short line New Brunswick railroad that is functionally identical to the BCR, but far less efficient;

- CBP's knowing, intentional and continuous maintenance on its official CROSS system, even after *Horizon*, of its Ruling Letters which unequivocally state CBP's decision that there is no requirement to file a rate tariff to satisfy the conditions of the Third Proviso;

- CBP's intentional refusal after the *Horizon* remand to take any action to modify or reverse its published "no-tariff filing requirement" decision, thereby leaving CBP's official position unchanged for the past 15 years; and

- CBP's public assertion that Plaintiffs were required to file a tariff despite CBP's undisclosed admission in the administrative record that because Plaintiffs are "freight forwarders," they are exempt from any tariff filing requirement.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.     CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                   PAGE 52 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 60 of 66

Accordingly, Defendants' challenge to Count IV should be rejected. For the reasons set forth in their Moving Brief and above, Plaintiffs have established multiple due process violations by CBP.

## VI.   PLAINTIFFS' EIGHTH AMENDMENT CLAIM SHOULD BE STAYED, NOT DISMISSED

Defendants assert that the Court should dismiss KIF's Eighth Amendment (Count V) claim because it is not ripe under *S. Pac. Transp. Co. v. City of Los Angeles*, 922 F.2d 498, 502 (9th Cir. 1990), a takings case. Defendants are mistaken. The holding there is plainly distinguishable because no Fifth Amendment takings challenge can be asserted until after the plaintiff has exhausted its just compensation claim under state law. *Id.* at 504-05. Here, by contrast, CBP issued penalty notices to KIF totaling $25 million and then, notwithstanding that KIF filed a Petition for remission, Defendants have asserted a Counterclaim seeking the award of $25 million in damages against KIF. (Dkt. 105 at 18-24). There is no requirement that KIF exhaust administrative remedies as a prelude to filing its Eighth Amendment claim, and Defendants do not claim there is any such requirement.

The controlling case here is *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-9 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977), in which the Supreme Court set forth a two-part ripeness test. The first question, whether the case is fit for judicial resolution, turns on whether there is a "case or controversy." *Abbott Labs.*, 387 U.S. at 148-9. Here, the case and the claim are plainly fit for resolution because Defendants have asserted a live counterclaim for tens of millions of dollars.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                  PAGE 53 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 61 of 66

The second part of the *Abbott Labs.* test is grounded in prudential concerns: "Where the legal issue presented is fit for judicial resolution, and where a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts under . . . the Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstances . . ." 387 U.S. at 153. That is plainly this case: CBP issued hundreds of millions of dollars in penalties requiring, absent injunctive relief and given the threat of serious additional penalties attached to non-compliance, immediate and significant change in the business of Plaintiffs and their supply chain participants. (Dkt. 95 at 14-21). Thus, this case is ripe from both a constitutional and prudential perspective. (*Id.*)

In Plaintiffs' Motion for Clarification Regarding Summary Judgment Briefing (Dkt. 109), Plaintiffs stated that the Eighth Amendment claim was not yet "ripe," because Defendants claim they have not yet decided whether it will ultimately seek a full penalty of $25 million as CBP has not yet decided the Petition. Taking Defendants at their word that they are still deliberating, Plaintiffs submit that the Court should stay both the Counterclaim and the Eighth Amendment claim until Defendants come to a final determination on what penalty they seek. Other courts confronted with analogous ripe, but not fully developed claims, have likewise stayed such claims pending their full maturity. *See, e.g., Anversa v. Partners Healthcare*, 835 F.3d 167, 177 (1st Cir. 2016) (staying litigation until resolution of ORI administrative proceedings); *Medici v. Lifespan Corp.*, 239 F.Supp.3d 355, 365 (D. Mass. 2017) (same); *see also Rhines v. Weber*, 544 U.S. 269,

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                              PAGE 54 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 62 of 66

276 (2005) ("District courts ordinarily have authority to issue stays where such a stay would be a proper exercise of discretion.") (citation omitted).

Accordingly, both Plaintiffs' Count V claim, which is constitutionally "ripe," and the Counterclaim, should be stayed, not dismissed, at this time.

## VII. THE COURT SHOULD NOT DISSOLVE THE PERMANENT INJUNCTIVE RELIEF IT ORDERED BASED ON THE CONSTITUTIONAL TOLLING DOCTRINE

Defendants argue that if the Court dismisses all of Plaintiffs' claims as a matter of law, the Court should dissolve the preliminary injunction, including the permanent relief the Court granted based on the constitutional tolling doctrine. (Dkt. 115 at 46). The Court should reject that assertion out of hand for several reasons, including that it would undermine the central point of the constitutional tolling doctrine. (*See* Dkt. 95 at 6-7 ("Constitutional tolling, when applicable, may permanently preclude the issuance or collection of penalties accrued during pending litigation"); *id.* at 12-13 ("Here, Plaintiffs should be accorded the right to test the validity of the Notices of Penalty without having to face the risk of large additional penalties if they do not prevail in this case")).

First, Defendants cite no law, treatise or authority of any kind to support the *vacatur* of permanent injunctive relief that is grounded in the safe harbor concept of the constitutional tolling doctrine.

Second, as Defendants litigated and lost this issue, and did not seek reargument of the Court's October 10, 2021 Order including its grant of permanent injunctive relief, (*id.* at 23-24), Defendants cannot now belatedly challenge that permanent injunctive relief. *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998) (Under law of the case

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.              CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                                    PAGE 55 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 63 of 66

doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case") (citations omitted); *see also United States v. Real Prop. Located at Incline Vill.*, 976 F.Supp. 1327, 1354 (D. Nev. 1997) ("The law of the case doctrine becomes meaningless, at least in the context of a single action, in a single court, before a single judge, if the court accords its own prior rulings no deference. Were it otherwise, a party dissatisfied with a prior ruling could reargue the point, without end, and without new evidence or new controlling law").

Third, the very point of the constitutional tolling doctrine is the entry of permanent injunctive protection from penalties that might otherwise be imposed covering the entire period of the case. *Life & Cas. Co. of Tennessee v. McCrary*, 291 U.S. 566, 574 (1934) (Cardozo, J.). To dissolve the permanent relief this Court granted barring Defendants from "ever issuing and enforcing any new Notices of Penalty" (Dkt. 95 at 23) would undermine the crucially important protective doctrine this Court accepted and applied under the facts of this case. Furthermore, Plaintiffs and their supply chain participants relied on that permanent injunction in continuing to use the Bayside Route since the Court entered the injunction on October 10, 2021. Defendants' request that the Court "pull the rug out" from under those that relied on the injunction order is reprehensible, inequitable, and unjust.

. . .

. . .

. . .

. . .

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.        CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                          PAGE 56 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 64 of 66

## **CONCLUSION**

Based on the foregoing and the reasons set forth in Plaintiffs' Motion, Plaintiffs'

Motion for Partial Summary Judgment should be granted, and the United States' Motion

for Summary Judgment should be denied in its entirety.

DATED this 17th day of December, 2021.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiffs


By: _____/s/ David Karl Gross_____
David Karl Gross, ABA #9611065

KASOWITZ BENSON TORRES LLP
Edward E. McNally, ABA #9203003
Marc E. Kasowitz (*Pro Hac Vice*)
Hector Torres (*Pro Hac Vice*)
David J. Abrams (*Pro Hac Vice*)
Kim Conroy (*Pro Hac Vice*)
David E. Ross (*Pro Hac Vice*)

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                         PAGE 57 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 65 of 66

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the ___17th___ day of December, 2021, a true and correct copy of the foregoing was served via the Court's CM/ECF electronic filing system, on the following:

Seth M. Beausang, Asst. U.S. Attorney
Christine Dollerhide, Asst. U.S. Attorney
Jacquelyn A. Traini, Asst. U.S. Attorney
U.S. Attorney's Office
seth.beausang@usdoj.gov
christine.dollerhide@usdoj.gov
jackie.traini@usdoj.gov

John E. Torgerson
Stoel Rives, LP
jim.torgerson@stoel.com

Keith Bradley
Emily Huggins-Jones
Donald Michael Kaye
John J. Reilly
Squire Patton Boggs
keith.bradley@squirepb.com
emily.hugginsjones@squirepb.com
michael.kaye@squirepb.com
john.reilly@squirepb.com

BIRCH HORTON BITTNER & CHEROT

By: _____/s/ David Karl Gross_____

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' RESPONSE TO USA'S MSJ                                           PAGE 58 OF 58
01154853.DOCX

Case 3:21-cv-00198-SLG   Document 136   Filed 12/17/21   Page 66 of 66