David Karl Gross, ABA #9611065
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
Telephone: 907.276.1550
dgross@bhb.com

Edward E. McNally, ABA #9203003
Marc E. Kasowitz *(Pro Hac Vice)*
Hector Torres *(Pro Hac Vice)*
David J. Abrams *(Pro Hac Vice)*
Kim Conroy *(Pro Hac Vice)*
David E. Ross *(Pro Hac Vice)*
Kasowitz Benson Torres LLP
1633 Broadway
New York, NY 10019
Telephone: 212.506.1700
emcnally@kasowitz.com
mkasowitz@kasowitz.com
htorres@kasowitz.com
dabrams@kasowitz.com
kconroy@kasowitz.com
dross@kasowitz.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

KLOOSTERBOER INTERNATIONAL
FORWARDING LLC and ALASKA
REEFER MANAGEMENT LLC,

        Plaintiffs,

    vs.

UNITED STATES OF AMERICA,
U.S. DEPARTMENT OF HOMELAND
SECURITY, U.S. CUSTOMS AND
BORDER PROTECTION, and TROY A.
MILLER, U.S. Customs and Border
Protection Acting Commissioner,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:21-cv-00198-SLG

**PLAINTIFFS' REPLY IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 1 of 44

# TABLE OF CONTENTS

INDISPUTABLE FACTS AND PRINCIPLES ........................................................ 1

    A.     Canadian Rail Line Facts and Principles ........................................ 2

    B.     Tariff-Related Facts and Principles .............................................. 4

    C.     CBP Ruling Letters Facts and Principles ...................................... 5

ARGUMENT ................................................................................................... 6

I.     DEFENDANTS HAVE FAILED TO REFUTE PLAINTIFFS' SHOWING THAT SUMMARY JUDGMENT SHOULD BE GRANTED IN THEIR FAVOR ON COUNT I ...................................................................................... 6

    A.     The BCR Rail Line is an Integral Part of an STB-Recognized "Through Route" .......................................................................... 8

    B.     The BCR Rail Line is Part of the "Transportation" on the Through Route Used by Plaintiffs ......................................................... 10

    C.     Defendants Fail to Refute that Plaintiffs Are in Compliance with the Rate Tariff Filing Requirement ................................................ 15

        1.     The ASC Tariff Covering the Bayside Route Satisfies the Third Proviso ................................................................ 15

        2.     Plaintiffs did Not Need to be Named in the ASC Tariff for Compliance with the Third Proviso ................................. 17

        3.     Under CBP's Still Valid Sunmar Rulings, a Tariff is Not Required to Satisfy the Third Proviso ............................... 20

II.     DEFENDANTS HAVE FAILED TO REFUTE PLAINTIFFS' SHOWING THAT THEY ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIM THAT CBP VIOLATED 19 U.S.C. § 1625(C)(1) (COUNT II) ........................... 24

III.     DEFENDANTS HAVE FAILED TO REFUTE PLAINTIFFS' SHOWING THAT THEY ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIM THAT CBP VIOLATED 19 U.S.C. § 1625(C)(2) (COUNT III) ......................... 29

    A.     CBP Ruling Letters Constitute Treatments ................................. 29

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT      PAGE i OF v
01159039.DOCX

Case 3:21-cv-00198-SLG    Document 146    Filed 12/30/21    Page 2 of 44

B.  Plaintiffs Also Establish a Treatment by Virtue of the Thousands of CBP Approved Entries of Shipments Using the Bayside Route and BCR Rail Line ....................................................................................................... 30

C.  Plaintiffs' Transactions Are "Substantially Identical" to Those at Issue in the Ruling Letters and the Entries Subject to CBP's Prior Treatment ........ 33

IV.  DEFENDANTS HAVE NO COMPETENT OPPOSITION TO PLAINTIFFS' DUE PROCESS CLAIM ........................................................................................ 34

CONCLUSION .......................................................................................................... 37

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE ii OF v
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 3 of 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fiber & Finishing, Inc. v. United States,*
    121 F.Supp.3d 1273 (Ct. Int'l Trade 2015) .............................................. 31

*Am. Mar. Ass'n v. Blumenthal,*
    590 F.2d 1156 (D.C. Cir. 1978) .............................................. 2, 7

*Cent. Vermont Transp. Co. v. Durning,*
    294 U.S. 33 (1935) .............................................. 8

*Comm'r of Internal Revenue v. Clark,*
    489 U.S. 726 (1989) .............................................. 7

*Conoco v. Skinner,*
    970 F.2d 1206 (3d Cir. 1992) .............................................. 7

*Farmers' & Mechanics' Nat'l Bank v. Dearing,*
    91 U.S. 29 (1875) .............................................. 7

*Gloucester Ferry Co. v. Pennsylvania,*
    114 U.S. 196 (1885) .............................................. 10

*Horizon Lines, LLC. v. United States,*
    414 F.Supp.2d 46 (D.D.C. 2006) .............................................. *passim*

*Int'l Custom Prod., Inc. v. United States,*
    32 C.I.T. 302 (2008) .............................................. 8, 31, 34

*Kahrs Int'l, Inc. v. United States,*
    33 C.I.T. 1316 (2009) .............................................. 33

*Motorola, Inc. v. United States,*
    33 C.I.T. 79 (2009) .............................................. 32, 33, 34

*Motorola, Inc. v. United States,*
    28 C.I.T. 1310 (2004) .............................................. 33

*Precision Specialty Metals, Inc. v. United States,*
    24 C.I.T. 1016 (2000) .............................................. 29

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT    PAGE iii OF v
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 4 of 44

*Precision Specialty Metals, Inc. v. United States*,
25 C.I.T. 1375 (2001) .................................................................................. 30

*Sea-Land Serv., Inc. v. Fed. Mar. Comm'n*,
404 F.2d 824 (D.C. Cir. 1968) .................................................................... 13

*Thompson v. United States*,
343 U.S. 549 (1952) ...................................................................................... 9

*Trailer Mar. Transp. Corp. v. Fed. Mar. Comm'n*,
602 F.2d 379 (D.C. Cir. 1979) ...................................................................... 9

*United States v. $191,910.00 in U.S. Currency*,
16 F.3d 1051 (9th Cir. 1994) ........................................................................ 7

*United States v. 250 Kegs of Nails*,
61 F. 410 (9th Cir. 1894) ............................................................................... 7

*United States v. Louisiana & P.R. Co.*,
234 U.S. 1 (1914) ........................................................................................ 13

*United States v. Marolf*,
173 F.3d 1213 (9th Cir. 1999) ...................................................................... 7

*Village of Hoffman Estates v. Flipside*,
455 U.S. 489 (1982) .................................................................................... 36

*Wright v. Riveland*,
219 F.3d 905 (9th Cir. 2000) ........................................................................ 7

**Statutes, Regulations and Court Rules**

19 C.F.R. § 177.9 ................................................................................... 25, 27

19 C.F.R. § 177.12(d)(1)(iv) ............................................................ 20, 30, 32

19 U.S.C. § 1625 ............................................................................... 21, 5, 27

19 U.S.C. § 1625(c) ............................................................................ *passim*

19 U.S.C. § 1625(c)(1) ........................................................... 24, 25, 26, 28

19 U.S.C. § 1625(c)(2) ......................................................................... *passim*

46 U.S.C. § 55116 ...................................................................................... 17

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.        CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT        PAGE iv OF v
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 5 of 44

49 C.F.R. § 1312.14 ................................................................................................. 18

49 C.F.R. § 1312.16 ................................................................................................. 19

49 U.S.C. § 13102(3) ...................................................................................... 4, 16, 19

49 U.S.C. § 13702 ..................................................................................................... 16

Fed. R. Evid. 1004 .................................................................................................... 19

**Other Authorities**

Black's Law Dictionary 464 (8th Ed. 2004) .............................................................. 27

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.       CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT       PAGE v OF v
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 6 of 44

Plaintiffs Kloosterboer International Forwarding LLC ("KIF") and Alaska Reefer Management LLC ("ARM") submit this Reply in Support of their Motion for Partial Summary Judgment on Counts I through IV of the Complaint, respectfully showing as follows:[1]

## INDISPUTABLE FACTS AND PRINCIPLES[2]

The fact section in Defendants' opposition (Dkt. 134, the "Opposition") relies on numerous "distinctions without a difference" in an attempt to deflect attention from the key issues in these motions. But such efforts do not refute Plaintiffs' demonstration in their Motion — that transportation of their customers' frozen seafood shipments, using the Bayside Route, met each of the requirements of the Third Proviso: "transportation" of merchandise over a "through route in part over Canadian rail lines," where that route was "recognized by the STB" and a "rate tariff for the route has been filed with the STB," or alternatively, was not required to be filed. (Dkt. 117 at 37-61).

In addition, nothing in Defendants' Opposition refutes Plaintiffs' showing that CBP's issuance of the penalty notices to KIF and others in the frozen seafood supply chain violated 19 U.S.C. § 1625(c), and failed to provide the requisite "clear and unequivocal"

---

[1] Plaintiffs' Motion for Partial Summary Judgment (Dkt. 117) is referred to throughout as the "Motion," and Plaintiffs' Response to the United States' Motion for Summary Judgment (Dkt. 136) is referred to throughout as the "Response." To the extent not defined herein, the definitions set forth in the Motion and the Response are the same in this Reply. All emphasis is added unless otherwise noted.

[2] Submitted herewith is the Declaration of David Karl Gross ("Gross Dec."), dated December 30, 2021.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 1 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 7 of 44

warning mandated by *Blumenthal* and the "fair notice" required under the Due Process Clause of the Fifth Amendment. (Dkt. 117 at 62-82).

Though Defendants' Opposition attempts to obscure many of the basic facts and principles key to the determination of these motions, they remain indisputable. Cutting through the "noise" CBP has created, we identify below indisputable facts and principles relating to the BCR rail line, the tariff, and other issues central to the cross-motions for summary judgment.

### A. Canadian Rail Line Facts and Principles

Although the Third Proviso's terms are clear and unambiguous, Defendants continue to read into them requirements, qualifications, or limitations that Congress did not include. The following rail line facts and principles are indisputable:

- The Third Proviso, or CBP's regulations and published rulings, contain:

    o no "commercial-reasonableness" or "commercial-soundness" requirement;

    o no "established route" or "continuous carriage" requirement;

    o no minimum-length requirement for "in part over Canadian rail lines";

    o no "inherent nature" requirement regarding the Canadian rail lines;

    o no "train to nowhere" prohibition;

    o no requirement that the "Canadian rail lines" be federal, national, regional or local, or hold any particular licensure, authorization, or membership in any railway or other association;

    o no requirement that the "rail lines" be located within, on, or through any particular property or properties, except that the rail lines be located in Canada;

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 2 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 8 of 44

- o     no requirement that "in part over Canadian rail lines" necessitates the most direct route;

- o     no requirement that the Canadian rail lines carry the merchandise in any particular direction, bring it closer to or further away from the United States border, discharge the merchandise at a different point than it was loaded onto the railway, or handle the merchandise in any particular way; and

- o     no requirement that the Canadian rail lines transport the merchandise in only one direction on the railway.

- Transporting or arranging for the transportation of merchandise on a Canadian rail line solely for the purpose of complying with the Third Proviso is lawful. (Dkt. 117 at 40-41).

- CBP has never issued any regulation or published any ruling concerning the definition of "transportation" or "continuous" in connection with the use of Canadian rail lines for purposes of complying with the Third Proviso. (Dkt. 117 at 41-43, 80).

- CBP has never issued any regulation or published any ruling prohibiting, for purposes of the Third Proviso, the round-trip transportation of merchandise on a Canadian rail line. (Dkt. 117 at 42).

- The NBSR and the BCR are functionally identical. (Dkt. 117 at 13, 25, 40; *see also* Dkt. 9, ¶ 21).

- The NBSR at times involved the trucking of the merchandise either 30 or 50 miles *away* from the Bayside Port, which is a few miles from the Calais border crossing, transporting the merchandise in trailers on flat rail cars to another point on the NBSR railway away from the Calais border, and then removing the trailers from the rail cars, reconnecting them to the tractors, and trucking the merchandise the 30 or 50 miles back to the Calais border crossing. (Dkt. 117 at 25).

- Defendants affirmatively agree that the use of the NBSR on the Bayside Route was in accord with the Third Proviso. (*Id.*; *see also* Dkt. 38 at 2).

- From 2012 to August 2020, CBP received more than 15,000 bills of lading from separate shipments by Plaintiffs' contracted truckers or their agents, with each intermodal bill of lading for the Bayside Route identifying the use of the BCR rail line and the round-trip movement of the seafood on that rail line. (Dkt. 117 at 23).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.       CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT      PAGE 3 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 9 of 44

### B. Tariff-Related Facts and Principles

Defendants' tariff-related positions continue to be contrary to law and CBP's published regulations. The following tariff-related facts are indisputable:

- A shipper or carrier can comply with the Third Proviso's tariff requirements by relying on a tariff previously filed by another shipper or carrier for the same through route. (Dkt. 134 at 18).

- There has been a tariff on file for the Bayside Route since 2006. (Dkt. 117 at 13).

- A "carrier," pursuant to the federal statute governing the filing of tariffs — 49 U.S.C. § 13102(3) — consists of "a motor carrier, a water carrier, and a freight forwarder." That law does *not* define a rail line as a "carrier."

- Since the formation of the STB in 1995, the STB has not required the identification of a rail line on a tariff for a through route. (Dkt. 117 at 20-21).

- The STB does not require any tariff filing for a Canadian rail line. (Dkt. 136 at 37).

- The STB does not require any tariff filing by a "private carrier." (Dkt. 136 at 12).

- The STB does not require any tariff filing by a "freight forwarder." (*Id.*)

- KIF is both a private carrier and a freight forwarder. (Dkt. 117 at 53-61).

- During its investigation of a potential Jones Act violation and in response to an inquiry from CBP's Jones Act Division of Enforcement ("JADE") concerning Plaintiffs, STB expressly informed JADE and CBP that no tariff filing is required for "private contracts" or "freight forwarders." (Dkt. 106-09 at 25).

- Seven CBP ruling letters over a period of nearly 30 years — dating from 1992 through 2005[3] conclude that no tariff filing is required for Third Proviso compliance for the Bayside Route — *i.e.,* the through route from Alaska to

---

[3] Ruling Letters 112085 (March 10, 1992) (Dkt. 6-12); 113141 (June 29, 1994) (Dkt. 106-03 at 8-9); 114407 (July 23, 1998) (Dkt. 6-24); 115124 (August 11, 2000) (Dkt. 6-8); 115446 (August 9, 2001) (Dkt. 6-7); 116021 (January 21, 2004) (Dkt. 53-1); and 116185 (March 28, 2005) (Dkt. 6-13).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.      CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT     PAGE 4 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 10 of 44

the eastern United States through the Bayside Port in New Brunswick, Canada using a Canadian rail line.

- The CROSS system is CBP's official repository of administrative rulings and is regularly updated to include new rulings and to reflect modified or deleted rulings. (Dkt. 117 at 19, 27).

- CBP can and does modify or revoke ruling letters on the CROSS system that are no longer operative as written. (Dkt. 136 at 39-40).

- After the *Horizon* court remand, CBP did not modify or revoke the Sunmar and other ruling letters that were the subject of that action, and did not remove any of those rulings from its CROSS system. (Dkt. 117 at 13-14, 30; Dkt. 136 at 37-38).

- Plaintiffs are affiliates of American Seafoods Company. (Dkt. 117 at 13, 32-33).

## C.    CBP Ruling Letters Facts and Principles

The following key principles relating to CBP ruling letters are also indisputable:

- There is no requirement set forth in the Third Proviso, or CBP's regulations or published rulings, that a shipper or carrier seek a prospective ruling from CBP as to whether its proposed transportation complies with the Third Proviso.

- Whether a party has complied with the Third Proviso requires an assessment of objective factors — not the intent of the shipper or carrier. (Dkt. 136 at 32).

- Defendants have submitted no evidence that Plaintiffs engaged in artifice or deception in their construction, use, or operation of the BCR rail line. (Dkt. 131 at 31-34).

- The purpose of publicly publishing CBP's ruling letters on its CROSS system is to provide notice to the industry and the public as to CBP's official position on, among other things, its interpretation of the Jones Act, including the Third Proviso. (Dkt. 117 at 27; Dkt. 136 at 13).

- Importers properly may rely on CBP's official written positions. In its Informed Compliance Publication ("ICP") on CBP's Rulings Program, CBP states that "[t]he published rulings provide the international trade community with guidance on how CBP will handle similar transactions." (Dkt. 119-3

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 5 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 11 of 44

at 9). The ICP also provides that "[a]ny importer that wishes to rely on a ruling letter issued to someone else should make sure that the letter has not been modified or revoked." (Dkt. 119-3 at 22).

- The ruling letters cited by Plaintiffs and Defendants on these motions have been on CBP's CROSS system for decades, remained on the CROSS system after the *Horizon* decision in 2006, and remain on that system today. (Dkt. 136 at 59-60).

- Since the *Horizon* decision in 2006, CBP has not published on the CROSS system any regulations or ruling letters concerning the Bayside Route, the Third Proviso, its Canadian rail trackage requirement or its tariff-related issues. (*Id.*)

- Before issuing the penalty notices that are the subject of this action, CBP did not provide any notice to Plaintiffs, or other companies involved in the transportation of frozen seafood on the Bayside Route, that CBP had any concerns of potential Jones Act violations arising from that transportation. (Dkt. 117 at 11; Dkt. 136 at 53, n.47).

- The penalty notices do not refer to the Third Proviso, do not state any reasons for CBP's determination that KIF was not in compliance with the Third Proviso, and do not refer to any issues or objections to the use of the BCR or to the filing of a rate tariff. (Dkt. 117 at 41, n.20).

- CBP was aware of the ASC Tariff by at least 2007. (Dkt. 6-15 at 1).

- CBP has not rendered a decision on Plaintiffs' Petition for Remission or Mitigation. (Dkt. 136 at 9, 16; Dkt. 117 at 82, n.60).

## ARGUMENT

## I. DEFENDANTS HAVE FAILED TO REFUTE PLAINTIFFS' SHOWING THAT SUMMARY JUDGMENT SHOULD BE GRANTED IN THEIR FAVOR ON COUNT I

Plaintiffs' Motion demonstrates how they have satisfied each of the Third Proviso elements in transporting frozen seafood over the Bayside Route, which involves: (a) "transportation" over a "through route"; (b) in part over Canadian rail lines; (c) over a route recognized by the STB; and (d) for which a rate tariff covering the through route has

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL. CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT PAGE 6 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 12 of 44

been filed with the STB.  Defendants' attempts to impose additional requirements on the

statutory language and its speculation as to the legislative purpose and construction of the

Third Proviso should be rejected.[4]

---

[4]     Defendants cannot escape the plain language of the Third Proviso by invoking inapplicable principles of statutory construction to justify the penalty notices.  Because the text of the Third Proviso is unambiguous (*see infra* at p. 36), the only principle of statutory construction applicable here is that the plain and unambiguous language of the Jones Act governs.

Moreover, even assuming, *arguendo*, that any part of the Third Proviso is ambiguous, any doubts concerning its interpretation should be resolved *against* the government's astronomical penalties that are tantamount to forfeiture.  *See Am. Mar. Ass'n v. Blumenthal*, 590 F.2d 1156, 1165 (D.C. Cir. 1978) (Jones Act forfeiture/penalty provision should be *strictly construed against the government* because "persons should receive *clear and unequivocal warning* before facing exposure to harsh penalties . . . where the penalty for noncompliance is enormous" . . . forfeiture is "a strict penalty for a violation of such a limited and sharply defined statute"); *United States v. 250 Kegs of Nails*, 61 F. 410, 413 (9th Cir. 1894) (forfeiture provision in predecessor to Jones Act interpreted strictly).  *See also United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1068 (9th Cir. 1994) (forfeiture statutes are strictly construed against the Government), *cited with approval in United States v. Marolf*, 173 F.3d 1213, 1217 (9th Cir. 1999); *Farmers' & Mechanics' Nat'l Bank v. Dearing,* 91 U.S. 29, 35 (1875) ("When either of two constructions can be given to a statute, and one of them involves a forfeiture, the other is to be preferred").

Defendants' reliance on *Conoco v. Skinner*, 970 F.2d 1206 (3d Cir. 1992), is misplaced given the enormous amount of penalties issued to KIF and others in the supply chain, which leave no doubt as to the punitive nature and effect of the penalty provisions of the Jones Act as applied here.  *See Wright v. Riveland*, 219 F.3d 905, 915 (9th Cir. 2000) ("[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment[.]" (citations omitted)).

Similarly misplaced is Defendants' reliance on *Comm'r of Internal Revenue v. Clark*, 489 U.S. 726 (1989), as purported support for the proposition that the Third Proviso should be read narrowly as an exception to the Jones Act (Dkt. 134 at 9).  *Clark* did not involve the Jones Act, but rather an ambiguous tax code exception where the legislative history suggested Congress did not intend the exception to apply.  *Id.* at 741-42.  Here, in contrast, there is no ambiguity in the language of the Third Proviso, nor is there any legislative history suggesting that Congress did not intend the Third Proviso to apply, or that it should be construed in favor of the Government.  To the contrary, the legislative

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT                    PAGE 7 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 13 of 44

## A. The BCR Rail Line is an Integral Part of an STB-Recognized "Through Route"

Defendants repeat their prior arguments that the BCR rail line does not provide "transportation" over a "through route" and is a "sham" because of its "inherent nature." (Dkt. 134 at 10-14). These arguments are wrong because they ignore the plain language of the Third Proviso and impose *post hoc* litigation-driven requirements articulated for the first time in this action, without any foundation in the Third Proviso. (Dkt. 117 at 38-41; Dkt. 136 at 20-28). The principal deficiencies in those arguments are summarized below.

First, Defendants contend that the BCR cannot be considered a component of the *through route* from Alaska to the eastern United States because it is not part of the "continuous carriage" of goods from the originating point to the point of destination. Defendants' purported support for this argument is that the seafood moves an "extremely short distance" on the BCR, that it does not leave the Bayside port facility, that it supposedly "returns to its starting place" and that it supposedly does not "advance" the merchandise. (Dkt. 134 at 11). This myopic focus on the movement of the seafood on the BCR rail line reflects a misunderstanding of the "through route" requirement, which, by

---

history surrounding the extension of the Third Proviso to Alaska in 1958 demonstrates that transportation from Alaska to the Lower 48 was to be broadly allowed and not limited to established rail lines or through routes. (Dkt. 117 at 18-19; Dkt. 135 at 22-23). Moreover, *Central Vermont Transportation Co. v. Durning*, 294 U.S. 33 (1935), as discussed in *Horizon Lines, LLC. v. United States*, 414 F.Supp.2d 46, 60 (D.D.C. 2006), and cited by Defendants, actually supports Plaintiffs because that case involved a violation of the plain language of the Third Proviso, so there was no real issue as to the appropriate statutory construction. *Id*. at 35.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT                    PAGE 8 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 14 of 44

definition, covers the *entirety* of the transportation, including all points along the route, from point of origin to point of destination. (*See* Dkt. 117 at 39-40, n.18).

Nothing concerning the distance the seafood is moved on the BCR rail line and the round-trip nature of that movement diminishes the indisputable fact that — as required by the definition of a through route — the seafood is being transported from its origin point in Alaska, in part via a Canadian rail line, to its ultimate destination in the eastern United States. The continuity of the through route is not broken in any way by the back-and-forth movement of the seafood on the BCR rail line.[5] *See, e.g., Trailer Mar. Transp. Corp. v. Fed. Mar. Comm'n*, 602 F.2d 379, 394 (D.C. Cir. 1979) ("through routes" not defined as disparate parts, but involve rail and water segments of transportation collectively, as routes "that extend in their entirety from the coastal points on one water carrier's route to the coastal points on another water carrier's route"). As Plaintiffs explained in the Motion, discrete or localized changes in intermediary destination or modes of transport along a through route do not create a new through route. (Dkt. 117 at 39, 45). Defendants' implication that the BCR rail line constitutes a separate through route ignores the language

---

[5] In *Central Vermont*, in discussing the applicability of the Third Proviso to the through route at issue, the Supreme Court recognized that the ICC Act provided for transportation of passengers or property "partly by railroad and partly by water when both are used under a common control, management, or arrangement for a 'continuous carriage or shipment.'" 294 U.S. at 40. As such, even if the Court were to apply a "continuous carriage" requirement to Plaintiffs' through route, it would cover the entire through route from Alaska to the eastern United States, including the BCR rail line. (*See* Dkt. 117 at 38-41; Dkt. 47 at 26-28). *See Thompson v. United States*, 343 U.S. 549, 557 (1952) (test for a "through route" is whether the participating carriers "hold themselves out as offering through transportation services"). Here, Plaintiffs indisputably satisfy any continuous carriage requirement. (*See* Dkt. 117 at 38-41; Dkt. 47 at 26-28; Dkt. 136 at 24-28).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT
01159039.DOCX
CASE NO. 3:21-cv-00198-SLG
PAGE 9 OF 38

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 15 of 44

of the Third Proviso, which only requires use of Canadian rail lines "in part" over a through route.

Second, Defendants' argument that the use of the BCR rail line "does not *advance* the merchandise" applies another new and unsupported requirement that appears nowhere in the Third Proviso or in any CBP regulation or ruling letter, and seemingly has been invented by Defendants for purposes of this litigation. In any event, the notion that round-trip transportation on the BCR rail line, from which the merchandise is transported approximately six miles to the destination point at the Calais border crossing does not *advance* the merchandise, but that the NBSR rail line (endorsed by Defendants as satisfying the Third Proviso), which moved the merchandise 30 or 50 miles *away* from the destination point at the Calais border, did "advance the merchandise," defies all logic. (Dkt. 134 at 11-12).

## B. The BCR Rail Line is Part of the "Transportation" on the Through Route Used by Plaintiffs

Defendants' Opposition does not challenge Plaintiffs' showing that the BCR satisfies the Third Proviso because it is both "Canadian" and a "rail line." (Dkt. 117 at 41-42). Instead, focusing on the back-and-forth nature of the movement of merchandise, Defendants argue that the BCR rail line does not involve "transportation" because the merchandise "is not transported *anywhere*." (Dkt. 134 at 13). Defendants' sole support for this illogical argument is *dicta* in an inapposite 1885 decision on an unrelated legal issue concerning the taxing authority of a state.[6] Apart from ignoring the plain text of the

---

[6]     *Gloucester Ferry Co. v. Pennsylvania*, 114 U.S. 196, 203 (1885).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 10 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG     Document 146     Filed 12/30/21     Page 16 of 44

Third Proviso, Defendants' newest argument seeks to apply the term "transportation" out of context, by isolating the term to refer only to the Canadian rail portion of the through route, rather than the entire transportation between two coastwise points as required under the Third Proviso. Defendants' argument is further contradicted by their acknowledgement that the prior use of the functionally-identical NBSR rail line complied with the Third Proviso.

Here, for the same reasons that the BCR rail line is indisputably part of the Bayside Route — the "through route" from Alaska to the eastern United States — it also indisputably provides "transportation," notwithstanding the short distance and round-trip nature of the movement of the merchandise. Under the plain language of the Third Proviso, the "transportation" requirement applies to the entire through route at issue between coastwise points — not just to the rail line component. (Dkt. 117 at 38-41; Dkt. 136 at 27-28).

Plaintiffs also have previously demonstrated that the round-trip movement of the seafood on the BCR rail line does not mean there was no "transportation" of the seafood, because notwithstanding the short round-trip rail movement, the overall transportation of the seafood advanced from its origin point to its ultimate destination. (Dkt. 47 at 25-27; Dkt. 117 at 39-40; Dkt. 136 at 27-28).

Further evidence that Defendants' argument that the round-trip movement on the BCR rail line is not "transportation" is nothing more than a *post hoc* rationalization, is provided by CBP's treatment of excursions where the voyage originates and ends at the same coastwise point. CBP has long ruled that transportation of passengers by a

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 11 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 17 of 44

non-coastwise qualified vessel entirely within U.S. territorial waters that originates and ends at the same coastwise point, without stopping at any other coastwise point, violates the coastwise trade laws as a prohibited "transportation." (*See* Gross Dec. Ex. 1, Ruling Letter 112048 (March 3, 1992); Ex. 2, Ruling Letter 112189 (April 21, 1992); and Ex. 3, Ruling Letter 112472 (October 26, 1992) (transport of divers and equipment within territorial waters ruled to be a prohibited transportation that violates coastwise trade laws where the voyage originated and ended at the same point)). Defendants' contention that the back-and-forth nature of the BCR rail line does not constitute "transportation" is thus directly contrary to CBP's longstanding and consistent rulings that a voyage within territorial waters that begins and ends at the same point is coastwise "transportation."

Moreover, while Defendants claim they are not applying any commercial-soundness standard, that is the essence of their critique of the round-trip nature of the movement of the seafood on the BCR rail line. Implicit in Defendants' new-found prohibition on round-trip transportation is that if the seafood were transported from one end of the BCR rail line to the other and unloaded, and then trucked into the eastern United States, it would qualify as "transportation" because the seafood would be "advanced," and thus would comply with the Canadian rail line requirement. Yet, that transportation would be functionally indistinguishable from the current round-trip movement of the seafood on the BCR rail line. There is no reasoned basis to argue that the round-trip nature of the transportation is any less compliant with the Third Proviso, especially where Defendants concede there is no commercial-soundness requirement.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.  CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT  PAGE 12 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG Document 146 Filed 12/30/21 Page 18 of 44

Defendants also acknowledge that the short length of the BCR rail line and its round-trip usage can provide no basis for arguing that the BCR is a "sham" or an "artifice" (terms that have no legal significance in enforcing the Third Proviso) because there is no minimum-rail-length or *de minimis* requirement, as CBP has long concluded and now concedes. Indeed, Defendants admit (i) that a rail movement of as short as 25 feet that advances the goods from origin point to destination would be acceptable as part of a through route;[7] and (ii) that in determining whether route components constitute a through route, there is "no distinction between a thousand miles and a few blocks" as long as both carriers are performing a "joint through service."[8] Here, the BCR rail line — irrespective of its length and directional movements — undeniably provides one link in a joint through service as one of the modes of transportation on the through route of the seafood from Alaska to the eastern United States.

Defendants also argue that allowing "sham rail movements" to constitute transportation would thwart the overall policy of the Jones Act. (Dkt. 134 at 14). This argument should be rejected because it is not grounded on any requirement in the Third Proviso and there is absolutely no policy distinction for enforcement purposes between transporting goods a short distance one way (especially in a direction away from the destination point) and transporting them back-and-forth.

---

[7]     *United States v. Louisiana & P.R. Co.*, 234 U.S. 1, 5, 7 (1914).

[8]     *Sea-Land Serv., Inc. v. Fed. Mar. Comm'n,* 404 F.2d 824, 827 (D.C. Cir. 1968).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 13 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG     Document 146     Filed 12/30/21     Page 19 of 44

In any event, this simply is another way for Defendants to argue that the use of the BCR rail line does not meet some undefined commercial-soundness or *de minimis*-length requirement, which conflicts with CBP's long-held rulings and its repeated statements in the *Horizon* briefs disclaiming any such requirements. As Plaintiffs have shown, the "sham" terminology and associated commercial-soundness requirement were used repeatedly by competitors of Plaintiffs in the *Horizon* action and consistently were rejected by CBP, the *Horizon* court and the STB. (Dkt. 117 at 30-32).

Indeed, even in the April 2007 letter from CBP to *Horizon* referenced by Defendants, CBP acknowledged that *Horizon* held that the Third Proviso contains no "commercial-soundness" requirement or prohibition on "sham or commercially impractical Canadian rail movement to achieve 'technical compliance' with the literal terms of the statute." CBP confirmed then that it did not "believe it necessary or appropriate to amend the regulations to impose such a [commercial-soundness] requirement." (Dkt. 134-1 at 2). And as is clear, CBP never did impose such a requirement.

Moreover, to the extent Defendants appear now to argue that the *intent* of the shipper is a factor in determining compliance with the Third Proviso and in demonstrating that the BCR rail line is a "sham" (Dkt. 134 at 12-14), that argument should be rejected. Plaintiffs' intent in using the BCR rail line is not relevant to the issue of compliance with the Third Proviso. The only requirement is *whether* the goods were transported over a Canadian rail line and otherwise in compliance with the Third Proviso — not the intent underlying the use of the rail line. Indeed, Defendants successfully argued in *Horizon* that "the intent of the shipper to avoid the restrictions [under the Jones Act] is *irrelevant* so long as the

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 14 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 20 of 44

statutory requirements are met." (Dkt. 136 at 32-33). There is no question that the frozen seafood here was transported "in part over Canadian rail lines."

**C.** **Defendants Fail to Refute That Plaintiffs Are in Compliance with the Rate Tariff Filing Requirement**

1. <u>The ASC Tariff Covering the Bayside Route Satisfies the Third Proviso</u>

Plaintiffs have demonstrated, on the more complete record available to the Court on these summary judgment motions, that the ASC Tariff satisfies the Third Proviso requirement for the transportation of seafood on the Bayside Route utilizing the BCR rail line. Under the plain language of the Third Proviso — and as Defendants concede — once a rate tariff "has been filed" and the through route is recognized by the STB, *other* parties utilizing that same through route — like Plaintiffs here — are *not* also required to file a tariff for purposes of the Third Proviso. As Defendants concede in their Opposition, if the through route identified in the ASC Tariff applies to the through route utilized by Plaintiffs, then Plaintiffs have satisfied the tariff filing requirement of the Third Proviso. (*See* Dkt. 134 at 18 ("[A] rate tariff covering the BCR Route needed to have been filed by *someone* for the route to qualify for the Third Proviso") (emphasis original)). Plaintiffs have shown that they were utilizing the same through route as identified in the ASC Tariff.

Defendants argue that the ASC Tariff does not satisfy Plaintiffs' Third Proviso tariff requirement because the BCR must be *named* on a tariff. Defendants' argument is incorrect. The switch from the NBSR to the BCR — the only difference in the mode of rail transportation — is immaterial and does not change the unavoidable conclusion that the ASC Tariff satisfies the Third Proviso's requirements. Defendants' argument to the

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 15 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 21 of 44

contrary (*Id.* at 17) is premised on the assumption that the Canadian rail line utilized must be identified on a tariff to satisfy the Third Proviso. That assumption, apart from being unsupported, is erroneous for purposes of compliance with the Third Proviso, which merely requires that a tariff be on file.

Moreover, Defendants' argument ignores the controlling statutes, including 49 U.S.C. § 13702, which describe the information that must be included in a tariff. That statute provides that "carriers" — as defined in 49 U.S.C. § 13102(3) — must be identified in the tariff. Section 13102(3) defines the term "carrier" as "a *motor carrier*, a water carrier, and a freight forwarder." Motor carrier, in turn, is defined in § 13102(14) as "a person providing motor vehicle transportation for compensation." And "motor vehicle" is defined as "a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation . . . but *does not include a vehicle, locomotive, or car operated on a rail*[.]" § 13102(16). Under the plain language of these statutory provisions, therefore, there is no requirement to identify the BCR or any railroad on any tariff.[9] Thus, the absence of the BCR on the ASC Tariff does not invalidate

---

[9] Indeed, the 2003 STB Letter that was discussed and relied upon by the *Horizon* court makes this point clear. (*See* Dkt. 119-1 at 2 ("According to the STB's rules . . . carriers required to file and publish tariffs *may* include . . . information that would not otherwise be required, such as the routing, *information about rail or motor carrier services used*, or advertising and promotional material[.]")). Accordingly, while 49 U.S.C. § 13702 specifically identifies motor carriers as carriers, they are not required to be named in the tariff, and rail carriers are specifically not carriers under the statute.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT        PAGE 16 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 22 of 44

the tariff or preclude Plaintiffs, utilizing the BCR in conjunction with the Bayside Route, from relying on the ASC Tariff.[10]

## 2. Plaintiffs did Not Need to be Named in the ASC Tariff for Compliance with the Third Proviso

Defendants also argue that Plaintiffs cannot rely on the ASC Tariff because all *carriers* that participate in a tariff must be identified; and that to the extent STB's regulations provide that *all* carriers participating in the transportation over a certain route need not be identified in the rate tariff, those regulations are invalid because such regulations "cannot override [the] clear congressional intent." (Dkt. 134 at 18). These arguments fail for several reasons.

First, as noted above, the plain language of the Third Proviso, which states that "rate tariffs for the routes have been filed . . ." (46 U.S.C. § 55116), simply provides that a tariff for a route recognized by the STB be filed, without requiring that every carrier that utilizes a recognized through route be identified. Second, Defendants' argument is inconsistent with Defendants' concession that "[a] rate tariff covering the BCR Route needed to have been filed by *someone* for the route to qualify for the Third Proviso," indicating that not every carrier utilizing a recognized through route must be identified in the filed and

---

[10]    While some tariffs may identify the rail line for informational purposes — or that the ASC and KIF Tariffs identify the Canadian rail lines for informational purposes — that does not in any way create, where there is none, a statutory or regulatory requirement that the rail line be identified in the tariff to satisfy the Third Proviso. (Dkt. 117 at 44-45, 49). Further, although Defendants have conceded all that is necessary is a tariff on file for a recognized route, Plaintiffs have also established that they are a successor to ASC's transportation business and rightfully stepped into ASC's shoes, including reliance on the ASC Tariff. (*Id.* at 46-49; Dkt. 136 at 35-36). Defendants do not dispute any of the facts sets forth in the Declaration of Per Brautaset supporting that conclusion.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT                    PAGE 17 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 23 of 44

accepted tariff. (*See* Dkt. 134 at 18 (emphasis original)).[11]   Third, Defendants do not contest that the carrier that filed the ASC Tariff — ASC — *was* identified.   Fourth, Defendants' *post hoc* litigation argument that *all* carriers must be listed on a tariff is contradicted by their own assertion in this action about the ASC Tariff, that as of 2012, "all was good," although by 2012, ARM had stepped into the shoes of ASC and was not listed on the tariff.[12]  (Dkt. 38 at 2).

Further, as demonstrated, private carrier and freight forwarders — like Plaintiffs — are not required to file *any* tariff.  (Dkt. 117 at 53-61).   This impliedly obviates any requirement that they need to be listed on the tariff for the tariff to be valid and to comply with the Third Proviso.

Defendants' argument that 49 C.F.R. §§ 1312.14 and 1312.16 require the identification of KIF on the ASC Tariff is contrary to the language and application of the regulations and should be rejected.   Section 1312.16 specifically allows a carrier to substitute another carrier *without* requiring that new carrier be named in the tariff.  *See*

---

[11]     *See also* Dkt. 117 at 46-48; Dkt. 136 at 35.

[12]     Both the ASC and KIF Tariffs, which have been accepted by STB, list no vessels or motor carriers although, as CBP knows, vessels and motor carriers (*i.e.*, trucks) are a necessary part of the transportation on the Bayside Route.  Multiple vessels and trucking firms are used to transport the seafood from Alaska to Bayside or from Bayside into the United States and, depending on availability, those vessels and trucking firms are constantly changing.   Thus, Defendants' argument that all carriers must be listed is unsupported by CBP's admission related to the ASC Tariff, the plain language of the Third Proviso, the absence of any CBP regulation or ruling letter or STB regulation so requiring the listing of all carriers, and the obvious commercial reality that a change in any truck or vessel used for any particular shipment would not require the filing of a new tariff, which would be commercially impractical.  (Dkt. 134 at 15-16, 18).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT                    PAGE 18 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 24 of 44

49 C.F.R. § 1312.16 (identifying criteria for "substituting the services of a carrier of a different transportation mode . . . for part of its movement of a shipment" and specifically not listing a requirement for any amendment to existing tariff). "Carriers" are defined to include water carriers, motor carriers, or freight forwarders in 49 U.S.C. § 13102(3). In this instance, KIF, as a freight forwarder, could be substituted for ASC, which was a water carrier. (Dkt. 106-33 at 9, n.4; Dkt. 6-8 at 1). Moreover, Defendants' argument that the NBSR and BCR do not constitute different transportation modes is irrelevant as neither is a carrier as defined by the statute and regulation.

Section 1312.14 also plainly instructs that in circumstances such as those here involving a concurrence all carriers do not need to be named: "Rates and services of a carrier must be filed in a tariff issued in that carrier's name *unless* they are filed . . . [i]n a tariff of another carrier through issuance of a *concurrence* to the latter carrier authorizing the first carrier's participation in joint rates and through routes." This language clearly refers to rates and services only — and does not state that the carrier must be identified.[13] Plaintiffs have satisfied this showing. (*See* Dkt. 118 at ¶¶ 13-14, 16). If Defendants' unsupported argument is accepted, it would mean that all carriers would have to file

---

[13]     There is no merit to Defendants' suggestion that the concurrence evidence presented on the more complete record of this summary judgment motion is improper. (Dkt. 134 at 21-22, n.7). Nor is the evidence provided through a declaration precluded under the best evidence rule in Fed. R. Evid. 1004, which only applies where a party is attempting to prove "the contents of a writing[.]" While the concurrence "must be in writing" and "provided on request" (*Id.* at 21-22, n.7), the declaration makes clear that permission was granted by ASC and Plaintiffs' corporate parent. (Dkt. 118 at ¶¶ 13-14, 16).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT                    PAGE 19 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 25 of 44

duplicative tariffs identifying all parties with tariffs on file, which would be a nonsensical and impractical result.

### 3. Under CBP's Still Valid Sunmar Rulings, a Tariff is Not Required to Satisfy the Third Proviso

Plaintiffs demonstrated in their Motion that *Horizon* did not overturn the challenged Sunmar Rulings in which CBP determined that private carriers were not required to file a tariff to comply with the Third Proviso. Defendants acknowledge that, after *Horizon*, they never publicly modified or revoked the Sunmar Rulings but contend that — under CBP regulations — the decision had the "effect of overturning" those rulings, and thus no further formal agency action was necessary to effect a change in the law. (Dkt. 134 at 25 citing 19 C.F.R. § 177.12(d)(1)(iv)). Defendants thus attempt to escape their notice-and-comment obligations under 19 U.S.C. § 1625(c) by invoking a regulatory "exception" that is nowhere found in § 1625(c). Like CBP's other regulations that unlawfully limit CBP's notice-and-comment obligations,[14] § 177.12(d)(1)(iv) is inconsistent with the text and intent of 19 U.S.C. § 1625(c), and is therefore invalid as applied to the facts in this case. Even assuming *arguendo* that CBP's regulation is valid, however, both the controlling law, and Defendants' conduct after *Horizon*, demonstrate that *Horizon* did not overturn the Sunmar Rulings.

First, the plain language of the court's decision confirms it did not overturn those Rulings. While the *Horizon* court criticized CBP for relying on its Sunmar Rulings on incorrect factual assumptions and internally conflicting legal interpretations, the Court

---

[14] *See* Dkt. 117 at 63-34, n.38; Dkt. 136 at 38-39, 43-44.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 20 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 26 of 44

chose not to vacate those Rulings.  Indeed, the court explicitly recognized that *if* it vacated

the Sunmar Rulings, the immediate effect would be to overturn CBP's position on the lack

of a tariff requirement for all private carriers.  The court stated, "[v]acatur of the agency's

ruling would prevent Horizon's competitors from making use of CBP's flawed ruling . . ."

*Horizon Lines, LLC v. United States*, 414 F.Supp.2d 46, 54 (D.D.C. 2006).   While

recognizing and discussing the consequence of a vacatur, the court then decided — *not* to

vacate — but instead to "remand[] this case to CBP for further proceedings not inconsistent

with this Memorandum Opinion." *Id.* at 60.  The court's decision thus required CBP either

to appeal the decision or to reconsider its positions and publish an updated ruling.  The

court's intent and words are beyond debate:  the court chose *not to overturn* the Sunmar

Rulings, and instead directed CBP to take further action.  By choosing remand instead of

vacatur, the *Horizon* court avoided totally disrupting ongoing businesses that were relying

on the longstanding CBP rulings and instead provided CBP the opportunity to either correct

the defects in its Sunmar Rulings or go through a proper 19 U.S.C. § 1625 notice-and-

comment process so businesses would be privy to any new CBP requirements and have

fair opportunity to react and respond to any such requirements.

Second, Horizon's own counsel wrote to CBP following the case demanding that

CBP comply with the remand order.  (Dkt. 134 at 1).  The very fact that the plaintiff there

recognized that the decision did not overturn the Sunmar Rulings confirms that further

formal agency action was necessary.  If Horizon's own counsel concluded that the Sunmar

Rulings would remain in effect until further action by CBP, then surely every non-litigant

likewise reasonably would conclude that CBP either would appeal the decision or comply

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 21 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 27 of 44

with the court's directive and undertake "further proceedings" concerning the Sunmar Rulings.

Third, CBP's actions and inaction confirm that the Sunmar Rulings remained, and remain, in effect. CBP, as noted, had two principal options following the *Horizon* decision: file an appeal, or comply with the court's directive and conduct "further proceedings" to reopen the administrative record or change the Sunmar Rulings. But CBP did neither. It simply ignored the remand order. To this day, and through this entire case, CBP has not once offered any explanation for its failure to implement any part of the *Horizon* remand order. In their Opposition (*Id.* at 2-3), Defendants point to private letters to ASC's counsel and to Horizon's counsel as purported adequate notice to those parties that CBP intended to require a tariff for private carriers,[15] but those private letters in no way substitute for the statutorily-mandated public notice-and-comment process essential to modify or revoke CBP's rulings.

Fourth, CBP has continued to publish on its CROSS database each of the Sunmar Rulings without any notice or comment to the public indicating that the Sunmar Rulings did not continue to represent CBP's official position concerning private carriers and the rate-filing issue. Though CBP is fully aware of the necessary process to alert the public of

---

[15] The private 2007 letter to Horizon's counsel, in conjunction with CBP's inaction, confuses, rather than clarifies, CBP's position because it conveys only to the recipient of the letter that CBP "henceforth will require" that a "water carrier" who is not otherwise exempt, need have a tariff on file. The letter does not renounce CBP's prior public rulings that private carriers are not required to file rate tariffs to comply with the Third Proviso. In addition, as Plaintiffs have explained (*see* Dkt. 117 at 14, 32), the CBP letter to ASC's counsel did not provide any notice that the Sunmar Rulings were void, or, among other things, that private carriers needed to file rate tariffs.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT                    PAGE 22 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 28 of 44

CBP rulings that have been overturned by a court, it provided no such notice.[16]  Indeed, even CBP's administrative record filed with this Court includes the Sunmar Rulings, demonstrating their continued validity and vitality.[17]

In sum, Judge Houvelle's intentional choice to remand and not vacate the Sunmar Rulings, followed by the CBP's consistent action and inaction recognizing the continued validity of those Rulings, confirm that no tariff filing was required by private carriers at the time the penalty notices were issued in this case.[18]

---

[16]    CBP's CROSS database provides clear notice when CBP modifies or revokes a ruling letter in accordance with the requirements of § 1625(c), both in the database search of the ruling letter and in the text of the ruling letter.  (*See, e.g.*, Gross Dec. Ex. 6; Ex. 4 (Ruling Letter H289250 (Sept. 30, 2021) (revoking HQ H072441, NY N027262, HQ H070673, HQ H095410, HQ 952513, and HQ 953932, and modifying NY I83133, HQ H066795, HQ H0700671, and HQ 955758)).  CBP also provides express notice to the public when it is revoking a ruling letter as the result of a court decision.  (*Id.* ("We have also reviewed [various ruling letters], all issued before the decision in [a case out of the Court of International Trade] and *to the extent they are inconsistent with the holding there, are revoked or modified by operation of law*")).  Yet here, in the wake of the *Horizon* remand, CBP never issued such a ruling letter with respect to the ASC or Sunmar Ruling Letters and CBP has not provided any notice that any of the ruling letters relied on by Plaintiffs have ever been modified or revoked.  (*See* Gross Dec. Ex. 5).

[17]    The administrative record filed by Defendants includes CBP's pre-*Horizon* ruling letters determining that tariff filings are not required for private carriage (Dkt. 106-03 at 000001-000034).  Nowhere in the record does it state that the CBP's ruling letters were no longer binding or that they were superseded by *Horizon*.  To the contrary, JADE — the CBP's enforcement arm for the Jones Act — reviewed the ruling letters and never stated that the rulings were invalid or unenforceable, but instead claimed — erroneously — that the facts from those ruling letters were inapplicable to the facts here.  (*See* Dkt. 106-9 at 000224).

[18]    In addition, because the Sunmar Rulings were neither vacated nor invalidated by *Horizon*, and were not revoked or modified by CBP, its reversal of those rulings without complying with the required notice-and-comment requirements also is a clear violation of § 1625(c).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT                    PAGE 23 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 29 of 44

Further, as Plaintiffs have demonstrated in the Motion, they are private carriers and freight forwarders, a fact that Defendants do not dispute, and as such — as CBP has long held — are exempt from having to file a tariff to be in compliance with the Third Proviso.[19] (*See* Dkt. 106-09 at 25; Dkt. 106-33 at 9, n.4; Dkt. 136 at 38, Dkt. 117 at 53-61).

\* \* \*

For the foregoing reasons, and those set forth in the Motion (Dkt. 117), Plaintiffs are entitled to an order granting a declaratory judgment in their favor on Count I of the Complaint.

## II. DEFENDANTS HAVE FAILED TO REFUTE PLAINTIFFS' SHOWING THAT THEY ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIM THAT CBP VIOLATED 19 U.S.C. § 1625(c)(1) (COUNT II)

Plaintiffs established in their Motion that CBP violated 19 U.S.C. § 1625(c)(1) when it issued the penalty notices, which had the effect of modifying or revoking CBP's prior interpretive ruling letters concerning the Third Proviso's Canadian rail line requirement. (*See* Dkt. 117 at 62-71; *see also* Dkt. 136 at 38-42). Defendants argue that the ruling letters do not relate to the BCR and they deny, contrary to the indisputable evidence, that their

---

[19] The exemption from tariff filing for private carriers and freight forwarders, as Plaintiffs have shown (Dkt. 117 at 53-61), is consistent with the history and purpose of tariffs. Tariffs were required to be filed to establish publicly-declared, uniform rates and liability limits for common carriers. After de-regulation and the onset of competition in the market, which led to competitive rates, government regulation on rates was not necessary. (*See* Dkt. 134 at 10-12). In the private carrier and freight forwarder contexts, rates are privately negotiated so no purpose is served by publishing rates. This Court also previously has acknowledged that rate tariffs are vestigial and no longer serve any regulatory purpose. (Dkt. 64 at 64, n.52).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 24 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 30 of 44

issuances of the penalty notices are premised on revocation of their prior rulings. (Dkt. 134 at 28-32).

First, Defendants argue that CBP has not violated § 1625(c)(1) because "there is no prior ruling letter addressing the BCR Route to revoke." (*Id.* at 28). This argument ignores multiple CBP ruling letters approving the Bayside Route — which is the identical through route utilized by Plaintiffs — and the fact that, as demonstrated *supra* p. 16, the immaterial change from the NBSR to the BCR had no impact on the validity of the through route. (*See also* Dkt. 117 at 22-23, 26, 40-41; Dkt. 136 at 24-28). Simply put, Plaintiffs' transportation of seafood involves the "same circumstances" (the Bayside Route) and "identical operations" (intermodal transportation of seafood from Alaska to the eastern United States in part via a Canadian rail line) as those covered by the CBP ruling letters. The non-material NBSR-BCR rail distinction does not alter the "through route" that was sanctioned by CBP. (*See* Dkt. 117 at 40-41).[20]

Second, Defendants argue that CBP has not revoked its prior ruling letters stating that the Third Proviso's requirement that the transportation occur "in part over Canadian rail lines" means *any* use of Canadian rail. It now argues that those ruling letters did not address "rail movements identical to those over the BCR" or the BCR's supposed

---

[20]    CBP also argues that *CIP* did not invalidate any part of 19 C.F.R. § 177.9 "as Plaintiffs imply." (Dkt. 134 at 29, n.10). Plaintiffs' citation to *CIP* in support of its argument makes clear that the *CIP* court was invalidating CBP's interpretation of § 1625(c)(2)'s "substantially identical transaction" language. (Dkt. 117 at 63-64, n.38). Plaintiffs' citation to *CIP* demonstrates that (i) CBP has implemented regulations interpreting § 1625 in an overly narrow manner that defied the "clear intent of Congress"; and (ii) courts have invalidated those overly-narrow regulations.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 25 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 31 of 44

deficiencies, "that it is not part of a through route[] and used for transportation." (Dkt. 134 at 29). But these are new arguments that are premised on standards that have never been articulated by CBP before this case, and CBP can point to no case, regulation, or ruling letter that in any way qualified the term "*any*" use of Canadian rail, particularly in the manner that it now for the first time is proposing.[21]

CBP's new position that the word "*any*" does not really mean "*any*," simply is unsustainable because it ignores CBP's unequivocal declaration in Sunmar *II*: "We [CBP] have long held that 'in part over Canadian rail lines' is *any* use of Canadian rail." (Dkt. 53-1 at 5). There are no qualifiers to the use of "*any*" and CBP supports its holding in Sunmar *II* by citing *seven* different ruling letters making the same point. (*Id.* at 5). Defendants' contention that CBP has not issued a ruling letter concerning a railroad like the BCR is merely an attempt to rewrite history. CBP's argument, made for the first time in this litigation, that the BCR is a "sham" or "artifice" and is therefore excluded from the reference to "*any* . . . Canadian rail" is based on a modification or revision of CBP's ruling letters (including Sunmar *II*, which explicitly addresses this issue) that violates § 1625(c)(1).[22]

---

[21] CBP's CROSS database provides clear notice when CBP modifies or revokes a ruling letter in accordance with the requirements of § 1625(c), both in the database search of the ruling letter and in the text of the ruling letter. (*See, e.g.*, Gross Dec. Ex. 6; Ex. 4 (Ruling Letter H289250 (Sept. 30, 2021) (revoking HQ H072441, NY N027262, HQ H070673, HQ H095410, HQ 952513, and HQ 953932, and modifying NY I83133, HQ H066795, HQ H0700671, and HQ 955758)). Further, as discussed *supra* n.16, CBP also provides express notice to the public when it is revoking a ruling letter as the result of a court decision.

[22] Defendants' argument that "[a] claim alleging a violation of subsection (c)(1) cannot succeed unless there is a proposed decision that would modify or revoke a prior ruling letter

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.            CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT         PAGE 26 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 32 of 44

Third, Defendants' argument that CBP has never issued a ruling letter holding that the Third Proviso has no minimum-length requirement is incorrect. (*See* Dkt. 134 at 30-31). Defendants essentially are arguing that CBP's previous ruling letters — which explicitly provide that "[t]he Third Proviso does not have a *de minimus* [sic] requirement for 'in part over Canadian rail lines,' nor has CBP in the last twenty years read such a *de minimus* [sic] requirement into the statute" — do not mean what they clearly say. (Dkt. 53-1 at 5; *see also* Dkt. 117 at 26, n.8 (listing other ruling letters discussing the lack of a *de minimis* requirement)). Defendants' new interpretation of the term *de minimis* — which Defendants claim merely means "that a 'through route' does not have to follow the most direct route" — rejects not only the established meaning of the term,[23] but is also directly contrary to, among a myriad other things, the Governments' defense of the term in the *Horizon* litigation. (*See* Dkt. 6-17 at 13 ("Through routes have historically been validated in situations *where one of the participating transporters activities* have been *extremely minimal*" (quoting *Sea-Land*, 404 F.2d at 827)). The Court should reject Defendants' interpretation of *de minimis* that is adopted for the first time in this action and is untethered to both the common meaning and CBP's historical usage of the term.

---

involving the 'same circumstances' or 'identical' operations" (Dkt. 134 at 28) is based on 19 C.F.R. § 177.9, a CBP regulation interpreting § 1625 that is overly narrow, contrary to the statute's text and intent and, therefore, invalid. (*See* Dkt. 117 at 63-64, n.38; Dkt. 136 at 39-41).

[23]  "*[D]e minimis* (də <u>min</u>-ə-mis) [Latin: "of the least"] 1. Trifling; minimal. 2. (Of a fact or thing) so insignificant that a court may overlook it in deciding an issue or case." Black's Law Dictionary 464 (8th Ed. 2004).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT                    PAGE 27 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 33 of 44

Fourth, Defendants' argument that CBP has not revoked "its conclusion that there is no requirement . . . that a 'rail line be commercially reasonable'" because "there is no ruling letter to that effect" (Dkt. 134 at 31) suffers from the same narrow reading of CBP's ruling letters and also ignores CBP's position on this issue in the *Horizon* litigation. While the words "commercially reasonable" are not used in CBP's Third Proviso ruling letters, CBP unquestionably interpreted its ruling in Sunmar *II* to mean that there was no implied "commercial usefulness" requirement under the Third Proviso.[24] The unbroken line of Third Proviso ruling letters discussed in the Motion (Dkt. 117 at 25-26) stands for the proposition that a Canadian rail line need not be commercially reasonable to satisfy the Third Proviso. Defendants cannot change that fact by reframing their argument as a challenge to the "inherent nature" of the BCR. (*Id.* at 31).

\* \* \*

In sum, Plaintiffs have satisfied each of the elements necessary to establish that CBP violated § 1625(c)(1). Through its issuance of the penalty notices, CBP (i) is applying and effectively has issued new interpretive decisions concerning the Bayside Route and the Third Proviso's Canadian rail line requirement, none of which have been subjected to the notice-and-comment process outlined in § 1625(c); and (ii) these new interpretive decisions modify or revoke CBP's "prior interpretive" decisions that have been in effect for at least 60 days. *See* 19 U.S.C. § 1625(c)(1); *Int'l Custom Prod., Inc. v. United States*,

---

[24] "[CBP] also rejected Horizon's argument that the Third Proviso contained an implied 'commercial usefulness' requirement, noting that the term 'through route' has not previously been interpreted to require the most "direct" route." *Horizon,* 414 F.Supp.2d at 50 (citing Sunmar *II* at 5).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT
01159039.DOCX
CASE NO. 3:21-cv-00198-SLG
PAGE 28 OF 38

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 34 of 44

32 C.I.T. 302, 306 (2008). Accordingly, for the reasons set forth above, and in the Motion (Dkt. 117 at 62-71) and Response (Dkt. 136 at 38-42), the Court should render summary judgment against Defendants on Plaintiffs' Count II claim and enter an order declaring void and invalid both past and future penalties assessed by CBP against KIF.

## III. DEFENDANTS HAVE FAILED TO REFUTE PLAINTIFFS' SHOWING THAT THEY ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIM THAT CBP VIOLATED 19 U.S.C. § 1625(c)(2) (COUNT III)

Plaintiffs established in their Motion that CBP also violated 19 U.S.C. § 1625(c)(2) when it issued the penalty notices, which had the effect of modifying or revoking CBP's prior treatment of transactions that were substantially identical to the transactions at issue here. (*See* Dkt. 117 at 62-67, 71-78; *see also* Dkt. 136 at 42-57). Defendants attempt to avoid summary judgment on Plaintiffs' Count III claim by denying (i) that ruling letters may constitute a "treatment"; (ii) that CBP's admission of thousands of Plaintiffs' customers' shipments constitute a "treatment"; and (iii) that transactions subject to the penalty notices are "substantially identical" to prior transactions which utilized the NBSR rail line. (Dkt. 134 at 32-38). These arguments are meritless.

### A. CBP Ruling Letters Constitute Treatments

Defendants repeat their erroneous argument that ruling letters may never constitute "treatments" under § 1625(c)(2). As Plaintiffs already have shown, treatments may include ruling letters or decisions issued by CBP, and those ruling letters or decisions may be relied upon by non-parties.[25] (Dkt. 117 at 72; Dkt. 136 at 51). Plaintiffs thus properly relied on,

---

[25] Defendants mistakenly rely on the statement in *Precision Specialty Metals, Inc. v. United States*, 24 C.I.T. 1016, 1043 (2000), that has effectively been overruled by the

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT                PAGE 29 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 35 of 44

among others, the ASC and Sunmar *I*, *II*, and *III* Ruling Letters in arranging for transportation of the seafood on the Bayside Route using the BCR rail line.

### B.   Plaintiffs Also Establish a Treatment by Virtue of the Thousands of CBP Approved Entries of Shipments Using the Bayside Route and BCR Rail Line

Defendants argue that Plaintiffs have failed to establish that CBP ever accorded a treatment to the over 15,000 separate entries of shipments that utilized the Bayside Route and the BCR rail line.  (Dkt. 134 at 33).  Defendants make three specious arguments in support of this contention.

First, citing CBP regulations, Defendants argue that Plaintiffs have not established that "[t]here was an actual determination by a [CBP] officer regarding the facts and issues involved in the claimed treatment" or that such treatment was done on a "national basis." (*Id.* at 33-34 (citing 19 C.F.R. § 177.12(c)(1)(i)(A) and (C))).  As demonstrated in the Response, these CBP regulations, which are inconsistent with the plain language and purpose of § 1625(c)(2), are invalid as applied to the facts here.  (Dkt. 136 at 43-44).

Even assuming the regulations were valid as applied, however, CBP indisputably has permitted entry of over 15,000 shipments transporting frozen seafood over the Bayside Route including the BCR rail line, each of which was accompanied by a bill of lading

---

Federal Circuit Court of Appeals.  In *Precision*, the court stated that "[t]he term 'treatment' looks to the *actions* of Customs, rather than its 'position' or policy.  It is also distinct from the terms 'ruling' and 'decision.'"  (Dkt. 134 at 32).  But *Precision* and a subsequent decision in the same case, 25 C.I.T. 1375 (2001), was later cited in *California Indus. Prod., Inc. v. United States*, 436 F.3d 1341, 1346 (Fed. Cir. 2006).  *CIP* held that the manufacturer in that case, California Industrial, could rely on treatments — including both ruling letters and entries — afforded to Precision Specialty Metals.  To the extent the lower court's statement in *Precision* conflicts with the later holding in *CIP*, it was overruled.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 30 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 36 of 44

which identified, among other things, that a foreign-flagged vessel was used to transport the merchandise from Alaska to Bayside, that the BCR rail line was used for the Canadian rail part of the transportation, and that the movement of the seafood on the BCR rail line was back and forth.  (Dkt. 134 at 51-57; *see also infra* p. 33).  CBP, by its own admission, prioritizes the enforcement of the Jones Act when it makes entry determinations.  (*See* Dkt. 117 at 75, n.53 (CBP presentation detailing the enforcement priorities at the Calais border crossing provides that one of CBP's priorities as part of its screening and inspections process is the enforcement of "Point to Point violations")).

Further, it is undisputed that there were never any inconsistent treatments at any other border crossing in the nation, meaning that CBP has "*consistently* applied that determination on a nationwide basis."  (Dkt. 136 at 54-55).[26]

Second, Defendants contend that CBP's decision to admit "Plaintiffs' seafood" does not constitute a treatment, because CBP, under its regulations, "will not find that a treatment was accorded to a person's transaction if . . . the issue in question involves the *admissibility* of merchandise[.]"  (Dkt. 134 at 35 (quoting 19 C.F.R.

---

[26]    Defendants improperly attempt to distinguish the case law cited by Plaintiffs in their Motion for the proposition that "entries" may constitute "treatment."  (Dkt. 134 at 34).  First, *American Fiber & Finishing, Inc. v. United States* confirms that *each* entry in that case constituted a treatment.  121 F.Supp.3d 1273 (Ct. Int'l Trade 2015).  The issue in that case was merely determining which of the entries constituted a new treatment — *i.e.*, the date of "the first *entry* that does not receive the anticipated, relied upon treatment" CBP had afforded earlier entries.  *Am. Fiber & Finishing, Inc. v. United States*, 121 F.Supp.3d 1273, 1287 (Ct. Int'l Trade 2015).  Second, *International Custom Products, Inc. v. United States* clearly states that entries can constitute treatments.  33 C.I.T. 79 (2009).  While the importers in that case were unable to establish a prior treatment due to a lack of evidence, the court specified that liquidated entries could "qualify as 'prior treatments' for the purposes of section 1625(c)(2)."  *Int'l Custom Prod.*, 33 C.I.T. at 88.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT                    PAGE 31 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 37 of 44

§ 177.12(c)(1)(iii)(B))). But CBP regulations that define § 1625(c)(2)'s term "treatment" so narrowly that they would exclude thousands of entries over a nearly ten-year period are not a permissible construction of the statute and are therefore invalid. (*See* Dkt. 136 at 43).

In any event, even assuming validity of the regulation, the CBP determination here did not relate to the admissibility of merchandise — which typically is governed by customs laws — but to the issue of whether Plaintiffs' transportation complied with the Jones Act — a cabotage law. Unlike "admissibility" determinations, which are based on an evaluation and inspection of the *merchandise*, the issue here relates to CBP's determination of whether the transportation of seafood on the Bayside Route complied with the "Point to Point" requirements of the Jones Act. CBP repeatedly was provided with all of the information essential to make this determination with the result that every single one of the over 15,000 shipments was approved for entry into the United States.[27] By Defendants' own admissions, CBP personnel at the Calais border crossing with knowledge of and familiarity with the Jones Act review bills of lading and other entry documents, when making entry determinations through the Calais port of entry.[28]

---

[27]     Selectively misquoting Plaintiffs' Motion, Defendants state "Plaintiffs agree that the only issue for CBP when their seafood was admitted was the 'admissibility of merchandise.'" (Dkt. 134 at 35). That is incorrect. The full quote makes the point that the entries at issue here are not "bypass entries" — *i.e.,* relating to merchandise that is not inspected — and that a CBP official at the Calais border crossing reviews paperwork, including bills of lading, when determining admissibility. (*See* Dkt. 117 at 73-74, n.50).

[28]     Herm Gadway, the "highest ranking CBP official at the Calais Port of Entry" who is "familiar with day-to-day operations" at the facility, testified in his declaration (Dkt. 78 ¶¶ 2-3):

> [O]ver my career with CBP working with industry and intergovernmental partners, I have worked with *entry documentation and bills of lading*

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 32 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 38 of 44

Third, Defendants do not dispute that the entries in this case are not "bypass entries" like those at issue in *Motorola*. (Dkt. 134 at 36). Rather, they contend, relying on *Kahrs Int'l, Inc. v. United States*, 33 C.I.T. 1316, 1356 (2009), that the issuance of a CBP 7501 Entry Summary form does not establish a treatment. (Dkt. 134 at 36). Defendants are mistaken because, in *Kahrs*, CBP was unable to "sample the merchandise" which was necessary to determine the correct customs classification. Here, in contrast, as noted, CBP had all the information necessary to determine whether the importer was in compliance with the cabotage laws.

In short, Plaintiffs have demonstrated that CBP accorded thousands of "treatment[s]" to Plaintiffs' transactions using the Bayside Route including the BCR rail line.

### C.    Plaintiffs' Transactions Are "Substantially Identical" to Those at Issue in the Ruling Letters and the Entries Subject to CBP's Prior Treatment

Nor is there any merit to Defendants' argument that the "BCR Route is not substantially identical to the NBSR Route." (*Id.* at 37-38). That argument is based solely on the definition of "substantially identical" in the *Motorola* litigation.[29] But Plaintiffs have demonstrated in their Response, incorporated here by reference, that Defendants'

---

associated with the entry of merchandise imported to the United States through the Calais Port of Entry. In addition, I have developed knowledge and familiarity with the Jones Act and various transportation methods and routes used in a variety of industries. *Much of the information I evaluate comes from CBP sources such as import/entry and vessel entry data*, and from intergovernmental partners' information and data.

[29]  *See Motorola, Inc. v. United States*, 28 C.I.T. 1310 (2004), *aff'd in part, rev'd in part and remanded*, 436 F.3d 1357 (Fed. Cir. 2006).

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 33 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG    Document 146    Filed 12/30/21    Page 39 of 44

arguments based on *Motorola* and the "substantially identical" issue are baseless. (*See* Dkt. 136 at 45-51).

*       *       *

In sum, Plaintiffs have satisfied each of the elements necessary to establish that CBP violated § 1625(c)(2): (i) a "treatment" was accorded by CBP through both its ruling letters and the thousands of shipments of frozen seafood over the Bayside Route that CBP has permitted to enter the United States; (ii) the entries here that are the subject of the penalty notices constitute "substantially identical transaction[s]" to the previous treatments; (iii) CBP's penalty notices have the effect of modifying the previous treatments with respect to the entries in question; and (iv) the penalty notices violate the notice-and-comment requirements of § 1625(c). *See Int'l Custom Prods.*, 33 C.I.T. at 86-87. Accordingly, for the reasons stated above, and in the Motion (Dkt. 117 at 62-67, 71-78) and Response (Dkt. 136 at 42-57), the Court should render summary judgment against Defendants on Plaintiffs' Count III claim and enter an order declaring void and invalid both past and future penalties assessed by CBP against KIF.

## IV.    DEFENDANTS HAVE NO COMPETENT OPPOSITION TO PLAINTIFFS' DUE PROCESS CLAIM

Plaintiffs' Motion established that the penalty notices issued by CBP were imposed without the constitutionally-required "fair notice." (Dkt. 117 at 79-82). CBP's actions and inactions, the epitome of a lack of fair notice, include CBP's reliance on:

- Never-before published or disclosed: definitions of "through route" and "transportation," and purported requirements of "established route" and "continuous carriage";

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 34 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 40 of 44

- A never-before published or disclosed "inherent nature" test to determine whether a Canadian railway is, in CBP's view, sufficiently Canadian and/or sufficiently a railway;

- A never-before published or defined "train to nowhere" test, which is contrary to CBP's longstanding admissions, including CBP's position in this action that "all was good" when Plaintiffs used the NBSR (Dkt. 38 at 2), which is also a short-line New Brunswick railroad that is functionally identical to the BCR, but far less efficient;

- CBP's knowing, intentional, and continuous maintenance on its official CROSS system, even after the *Horizon* decision, of its Ruling Letters which unequivocally state CBP's decision that there is no requirement to file a rate tariff to satisfy the conditions of the Third Proviso; and

- CBP's intentional failure after the *Horizon* remand to take any action to publicly modify or reverse its published "no-tariff filing requirement" decisions, thereby leaving CBP's official position unchanged for the past 15 years.[30]

As CBP concedes by its silence on these points, it has no response to these undisputed facts. Instead, CBP's only response is to attack a straw-man argument, improperly shift to Plaintiffs the obligation to ensure that CBP does not violate Plaintiffs' constitutional rights, and rely impermissibly on rank speculation as to Plaintiffs' intent.

First, even though Plaintiffs have never once contended the Third Proviso is vague in any respect, CBP devotes pages of its brief (Dkt. 134 at 38-42) to arguing that the Third Proviso is not unconstitutionally vague and analyzing cases evaluating vagueness. Because Plaintiffs have shown that the Third Proviso is unambiguous and should be enforced according to its plain language, this misdirection should be summarily rejected.

---

[30] *See also* Section I.C.3 (*supra* at pp. 20-24) detailing CBP's continued maintenance, after *Horizon* and without modification, of its controlling rulings on the CROSS system, and CBP's failure to give any notice, prior to issuance of the penalty notices, that at some point, CBP had decided that such rulings were no longer valid.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT    PAGE 35 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 41 of 44

Second, CBP cites to the Supreme Court's decision on unconstitutional vagueness in *Village of Hoffman Estates v. Flipside*, as an excuse to bootstrap from a single line in that decision. 455 U.S. 489, 498 (1982) ("Indeed, the regulated enterprise may have the ability to clarify the meaning of a [vague] regulation by its own inquiry, or by resort to an administrative process"). Defendants then argue it is Plaintiffs' fault that they were fined because they did not seek a ruling letter, even though it is undisputed that neither the Third Proviso nor any CBP regulation required Plaintiffs to seek a prospective ruling. Plaintiffs' constitutional right to due process is in no way diminished based on CBP's assertion that "Plaintiffs had the opportunity for more process, but they declined to pursue it." (Dkt. 134 at 41). And CBP cites no law, and we know of none, that imposes the burden on the regulated to preempt the regulator from violating their due process rights.

Third, CBP compounds its overreach by then arguing (*Id.* at 41), "[t]he Court would be justified, on this record and given the sham rail movements over the BCR, to infer that Plaintiffs decided not to seek a ruling letter for the BCR Route because they knew CBP would likely conclude that the route did not meet the terms of the Third Proviso — and they knew that CBP's conclusion would have been entitled to *Skidmore* deference." This is sophistry. Among its fundamental flaws are the following: it is pure speculation for which CBP offers no proof whatsoever; a party is not required to seek a ruling letter; this case does not turn on intent; there is no need for any inference given the undisputed dispositive facts in the record; and there is no ruling to be accorded any deference. Arguments and interpretations of the Jones Act and CBP regulations and rulings presented for the first time by Defendants are not entitled to any deference.

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.                    CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 36 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 42 of 44

In short, Defendants' arguments lack any merit and fail to refute Plaintiffs' showing that they are entitled to a summary judgment order declaring that CBP's imposition of the penalty notices violates their Fifth Amendment right to due process.

## **CONCLUSION**

For the reasons set forth in Plaintiffs' Motion, their Response, and this Reply, Plaintiffs' Motion for Partial Summary Judgment should be granted, and Defendants' Motion should be denied.

DATED this 30th day of December, 2021.

BIRCH HORTON BITTNER & CHEROT
Attorneys for Plaintiffs


By: _____/s/ David Karl Gross_____
David Karl Gross, ABA #9611065

KASOWITZ BENSON TORRES LLP
Edward E. McNally, ABA #9203003
Marc E. Kasowitz (*Pro Hac Vice*)
Hector Torres (*Pro Hac Vice*)
David J. Abrams (*Pro Hac Vice*)
Kim Conroy (*Pro Hac Vice*)
David E. Ross (*Pro Hac Vice*)

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 37 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 43 of 44

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the  30th  day of December, 2021, a true and correct copy of the foregoing was served via the Court's CM/ECF electronic filing system, on the following:

Seth M. Beausang, Asst. U.S. Attorney
Christine Dollerhide, Asst. U.S. Attorney
Jacquelyn A. Traini, Asst. U.S. Attorney
E. Bryan Wilson, Asst. U.S. Attorney
U.S. Attorney's Office
seth.beausang@usdoj.gov
christine.dollerhide@usdoj.gov
jackie.traini@usdoj.gov
bryan.wilson@usdoj.gov

John E. Torgerson
Stoel Rives, LP
jim.torgerson@stoel.com

Keith Bradley
Emily Huggins-Jones
Donald Michael Kaye
John J. Reilly
Squire Patton Boggs
keith.bradley@squirepb.com
emily.hugginsjones@squirepb.com
michael.kaye@squirepb.com
john.reilly@squirepb.com

BIRCH HORTON BITTNER & CHEROT

By:  ____ /s/ David Karl Gross _____

KLOOSTERBOER V. UNITED STATES OF AMERICA, ET AL.          CASE NO. 3:21-cv-00198-SLG
PLAINTIFFS' REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT          PAGE 38 OF 38
01159039.DOCX

Case 3:21-cv-00198-SLG   Document 146   Filed 12/30/21   Page 44 of 44