Jim Torgerson, ABA #8509120
Stoel Rives, LLP
510 L Street, Suite 500
Anchorage, AK 99501
907-263-8404
jim.torgerson@stoel.com

D. Michael Kaye, *pro hac vice*
Squire Patton Boggs (US) LLP
2550 M Street NW
Washington, DC 20037
202-457-6000
Michael.kaye@squirepb.com

Keith Bradley, *pro hac vice*
Squire Patton Boggs (US) LLP
1801 California Street, Suite 4900
Denver, Colorado 80202
303-894-6156
Keith.bradley@squirepb.com

John J. Reilly, *pro hac vice*
Squire Patton Boggs (US) LLP
1211 Avenue of the Americas, 26th Floor
New York, NY 10036
212-872-9865
John.reilly@squirepb.com

Emily Huggins Jones, *pro hac vice*
Squire Patton Boggs (US) LLP
4900 Key Tower, 127 Public Square
Cleveland, OH, 44114
216-479-85500
Emily.hugginsjones@squirepb.com

*Attorneys for Proposed Amicus Curiae Lineage Logistics Holdings, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC, et al., <br><br> Plaintiffs, <br><br> UNITED STATES OF AMERICA, et al., <br><br> Defendants. | Case No. 3:21-cv-00198-SLG |

## REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE *AMICUS* BRIEF

The government filed an opposition to Lineage Logistics Holdings LLC's (Lineage) motion to file an *amicus* brief, evidently on grounds of the government's

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)   1

disagreement with some of observations in the proposed brief.¹ In response, Lineage submits this reply in further support of its motion for leave.

The government maintains that the Bayside Route does not qualify for the Third Proviso to the Jones Act because, the government says, the Route was designed to evade the Jones Act. Lineage's proposed *amicus* brief points out that designing a transportation route to qualify for the Third Proviso is permissible and appropriate.² The government now acknowledges that is correct, and agrees it is permissible under the Jones Act to structure a transportation route to qualify for the Third Proviso. ECF No. 143, at 3 & n.2 ("Clearly the various business transactions of the past that CBP has approved have been 'structured' to make use of the Third Proviso."). But what matters, the government now says, is whether the route uses "an established rail line."³

This prerequisite—that the rail line must have been "established"—appears nowhere in the statute (nor do CBP's previous rulings articulate such a requirement⁴), and does not make sense. Likewise, at one point the government refers to whether the "route" was established.⁵ But the proposed *amicus* brief points out that the Third Proviso

---

¹ *See* ECF No. 143 (docketed as a response in opposition to Lineage's motion for leave to file a brief).
² ECF No. 124, at 3-4.
³ ECF No. 143, at 3.
⁴ The government cites various past CBP rulings it says involved established rail lines. ECF No. 143, at 3-5 & n.3. None of those rulings said a rail line must have been "established." That characterization is simply the government's *post hoc* effort, in this litigation, to develop a distinction from those past approvals of Third Proviso routes.
⁵ ECF No. 143, at 5.

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)         2

was extended to Alaska nearly forty years after it was enacted. The government's response ignores this key development.[6] In fact, the Alaska extension of the Third Proviso cannot have been meant to apply to "established through routes." At the time of the Alaska extension, there cannot have been any established through routes to which it would apply.[7]

The Court should take the government to mean what it says first: that the Third Proviso protects only "the use of an established rail line."[8] The result would be that the Third Proviso is, in effect, a protection for some pre-existing set of Canadian railroads that are "established." In the government's view, new railroads such as the BCR railway cannot be used for Third Proviso routes.[9] Why Congress would have wanted to protect pre-existing Canadian rail lines is inexplicable. And the government's insistence that "Congress would not have condoned" the construction of something like the BCR route is contrary to the purposes of the Third Proviso with respect to Alaska.[10] As the proposed *amicus* brief points out, extending the Third Proviso to Alaskan commerce was

---

[6] *Cf.* ECF No. 143, at 4-5 (relying on "the intent of Congress when it enacted the Third Proviso," but not addressing the intent of Congress when it extended the Third Proviso to Alaska).
[7] ECF No. 124-1, at 7-8.
[8] ECF No. 143, at 3.
[9] The government does not say when, on its theory, a rail line must have been "established." The BCR railway was established, in any ordinary sense of the term. KIF has submitted documents through which the government of the Province of New Brunswick established the railway, ECF No. 136, at 29-31, and the railroad was physically built. Does the government mean that a railway must have been in existence for some minimum length of time before it can be used on a Third Proviso route?
[10] ECF No. 143, at 3.

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)    3

understood to be a "relaxation of the coastwise laws," "in an attempt to reduce transportation costs" to Alaska.[11]  Constructing a rail line that complies with the text of the Third Proviso to ship goods from Alaska as efficiently as feasible is exactly what Congress intended.

The government says what distinguishes the BCR railway from an "established" rail line is that it is an "artifice."[12]  Not because the Bayside Route was developed to qualify for the Third Proviso; the government agrees that is a legitimate way to structure a transportation route.  Not because of anything about the commercial utility or non-utility or anything about the intentions of the parties involved; the government insists again that none of those facts matter.[13]  Nor is the BCR railway ineligible because it is asserted to be deceptive in any way.  The proposed *amicus* brief points out that the railway is, in reality, exactly what it purports to be.

The government accuses Lineage of "selectively quot[ing]" from *United States v. Citroen*, 223 U.S. 407 (1912),[14] without specifying what it thinks Lineage omitted.  In fact, the case says exactly what Lineage contended: "So long as no deception is practiced, so long as the goods are truly invoiced and freely and honestly exposed to the officers of customs for their examination, no fraud is committed, no penalty is incurred." 223 U.S. at 415.  "Artifice," in *Citroen*, means "an effort to make [an article] appear otherwise"

---

[11] ECF No. 124-1, at 7 & n.23 (quoting legislative materials).
[12] ECF No. 143, at 4.
[13] *Id.*
[14] *Id.*

*Kloosterboer, et al. v. United States, et al.*
Case No.  3:21-cv-00198 (SLG) 4

than what it is. *Id.* There is no dispute that the BCR railway has a physical rail track, with physical rail cars; and no dispute that the parties used the BCR railway openly with no attempt "to make it appear otherwise" and "no deception," and with the operations "freely and honestly exposed."[15] It is thus not an "artifice" or "disguised" per *Citroen*.

Nor is the BCR railway disqualified on grounds of the government's "continuous route" requirement. The proposed *amicus* brief points out that if the BCR railway defeats the continuity of the Bayside Route, then the Bayside Route is not transportation from Alaska to Maine in the first place and does not violate the Jones Act.[16] The government suggests that a route could be "subject to the Jones Act" without all the " 'Canadian rail' portions of that route also qualify[ing] for the Third Proviso."[17] That statement is contrary to the statute: The Jones Act restricts "transportation of merchandise . . . between points in the United States,"[18] and then exempts any "transportation of merchandise between points in the continental United States . . . over through routes in part over Canadian rail lines."[19] There is one and only one qualification (the route's being recognized through the Surface Transportation Board tariff process). The statute does not empower CBP to pick and choose additional conditions for which "Canadian rail portions" are good enough.

---

[15] *Citroen*, 223 U.S. at 415.
[16] ECF No. 124-1, at 17-18.
[17] ECF No. 143, at 10.
[18] 46 U.S.C. § 55102(b).
[19] *Id.* § 55116.

The government contends *Central Vermont Transportation Co. v. Durning*, 294 U.S. 33 (1935), decided this point. Not so. What *Central Vermont* actually addressed was goods that did not travel on Canadian railways at all. A shipper operated a through route from the northwestern United States, over Canadian railways, to Vermont; from Vermont by rail to the Connecticut port of New London; and by vessel (not coastwise qualified) from New London to New York.[20] That route qualified for the Third Proviso, but Customs threatened to seize merchandise that the shipper was carrying simply between New London and New York—goods that had never been on the Canadian railways in the earlier part of the recognized route.[21] The Supreme Court held simply (and understandably) that the Third Proviso protects only transportation that actually goes over the Canadian rail lines, and not "transportation merely over a domestic segment of a through route which elsewhere embraces Canadian rail lines."[22] That decision has no bearing here, because the Canadian rail lines are not "elsewhere," and the movements at issue are not "domestic."

What is left—the only reason the government has for contending the Bayside Route is an artifice—is the notion that the BCR railway is not "transportation." The government's sole reason for saying it is not "transportation" is the fact that the railway begins and ends at the same place. The proposed *amicus* brief points out that this

---

[20] *Central Vermont*, 294 U.S. at 35-36.
[21] *Id.* at 36.
[22] *Id.* at 38.

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)     6

restrictive interpretation of "transportation" is contrary to the ordinary English meaning of the word.[23] The government does not deny it.[24] Instead, the government relies solely on asserted "authoritative" "Supreme Court interpretations" of the word.[25] In fact, the government has only ever cited one supposed "Supreme Court interpretation"[26]; and that case, *Gloucester Ferry Co. v. Pennsylvania*, 114 U.S. 196 (1885), did not actually offer such an interpretation. The case bears close examination in light of the weight the government places on it.

Pennsylvania imposed a tax on a ferry company that did business across the Delaware River between Philadelphia and New Jersey. The ferry company contended the tax was an unconstitutional tax on interstate commerce, and the state responded that the tax was actually just upon the business of loading and unloading at the wharf in Philadelphia.[27] The Supreme Court rejected that excuse because:

> "[T]he business of landing and receiving passengers and freight at the wharf in Philadelphia is a necessary incident to, indeed is a part of, their transportation across the Delaware River from New Jersey. Without it that transportation would be impossible. Transportation implies the taking up of persons or property at some point and putting them down at another. A tax, therefore, upon such receiving and landing of passengers and freight is a tax upon their transportation; that is, upon the commerce between the two States involved in such transportation."[28]

---

[23] ECF No. 124-1, at 12-13.
[24] ECF No. 143, at 7-8 (asserting the "meaning and intent . . . envisioned by Congress," without discussing the common usage of the word).
[25] *Id.* at 7 (citing ECF No. 38, at 15-21).
[26] ECF No. 38, at 17.
[27] *Gloucester Ferry*, 114 U.S. at 203.
[28] *Id.*

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)   7

This conclusion—that loading and unloading were "necessary incident[s]" to the transportation and thus to the interstate commerce—is what the government asserts is an "authoritative" holding that if the start and end points are the same, there is no transportation at all.

It bears emphasis that the interpretation and application of the statute in this case is squarely within the authority of the Court. The government says "[i]t is CBP's prerogative to determine if a rail operation complies with CBP's interpretation of the Third Proviso."[29] In fact, it is the Court's prerogative. Fifty years ago, the Supreme Court established that when "Congress . . . did not confer upon [the agency] authority to promulgate rules or regulations pursuant to" the statute, the agency's interpretations deserve at best *Skidmore* consideration.[30] The Jones Act does not give CBP that authority, or establish any formal adjudicative procedure. Thus, it is for the Court to decide what the Third Proviso means for this case, without any special deference to the government's views.[31] The government's theories about "established rail" and "transportation" do not even have persuasive force under *Skidmore*. CBP has no history espousing these interpretations, and did not even articulate them in this case. From CBP, the court has only some notices of penalty and internal staff memos without discussion of

---

[29] ECF No. 144, at 6.
[30] *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 141 (1976).
[31] *Schleining v. Thomas*, 642 F.3d 1242, 1246 (9th Cir. 2011) ("[The agency] has not formally interpreted the relevant statutes with regard to the issue at hand, nor has it promulgated rules addressing the question. Therefore, this court performs the statutory analysis de novo without any deference to the [agency's] interpretation.").

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)                  8

these issues. "The Supreme Court has found unpersuasive under *Skidmore* agency determinations containing far more reasoning than that which we confront here."[32]

With respect to the continued reliance by the public on CBP's still-extant *Sunmar* rulings, the government complains it is disingenuous for Lineage to suggest that CBP would have maintained its *Sunmar* position despite losing *Horizon Lines* in a D.C. district court. But that is based on a faulty premise—in fact, agencies regularly decline to follow the decisions of courts with limited geographical jurisdiction. For example, the Environmental Protection Agency has twice in the last decade refused to apply circuit-court decisions to cases arising elsewhere in the country.[33] The D.C. Circuit has recognized that this practice is not, in general, improper.[34] And the Attorney General has recommended that agencies do exactly this.[35] So too has the DOJ's Office of Legal Counsel, noting "the longstanding position of this Office, and the consistent, publicly declared position of the Executive Branch, that an executive agency may 'nonacquiesce' in a court of appeals ruling—a practice whereby the agency, despite an adverse court of appeals decision, continues to act in accordance with its own contrary interpretation of

---

[32] *Sierra Club v. Trump*, 929 F.3d 670, 693 (9th Cir. 2019).
[33] *See Ctr. for Regulatory Reasonableness v. EPA*, 849 F.3d 453, 454 (D.C. Cir. 2017) (noting EPA's nonacquiescence of the decision in *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013)); *Nat'l Envtl. Dev. Association's Clean Air Project v. EPA*, 891 F.3d 1041, 1044 (D.C. Cir. 2018) (noting EPA's nonacquiescence of the decision in *Summit Petroleum Corp. v. EPA*, 690 F.3d 733 (6th Cir. 2012)).
[34] *Clean Air Project*, 891 F.3d at 1049.
[35] See ECF No. 124-1, at 20-21 & n. 50 (quoting DOJ memo).

the law . . . ."[36] The government says Lineage misunderstands "the federal system of laws."[37] If so, it is a misunderstanding that Lineage shares with components of the Department of Justice.

Finally, the government says Lineage should have known that CBP regarded the *Sunmar* rulings as defunct because Lineage is a company that can afford counsel.[38] But Congress has specified what notice the public should receive about CBP's positions, and has said what documents the public—including companies with counsel—can and should rely on. CBP cannot ignore the Section 1625 process by simply assuming that well-counseled companies are aware of unstated position changes made only in letters to private parties. Congress, not counsel in this litigation, dictates the permissible forms of notice. The government does not and cannot contend that CBP's private letter about the *Horizon* case is sufficient.

| | |
|---|---|
| DATED: January 6, 2022 | STOEL RIVES LLP |
| | By:/s/ James E. Torgerson<br>    James E. Torgerson (Bar No. 8509120) |
| | SQUIRE PATTON BOGGS (US), LLP<br>    Keith Bradley (*pro hac vice*)<br>    Michael Kaye (*pro hac vice*)<br>    John J. Reilly (*pro hac vice*)<br>    Emily Huggins Jones (*pro hac vice*) |
| | Attorneys for Proposed Amicus Curiae Lineage Logistics Holdings, LLC |

---

[36] Dept. of Def. Response to Interlocutory Decision of Ct. of App. Regarding Statute Requiring Separation of Homosexual Service Members from Military, 34 Op. O.L.C. 100, 105 (2010).
[37] ECF No. 143, at 12.
[38] *Id.* at 12-13.

## CERTIFICATE OF COMPLIANCE

I certify pursuant to D.Ak. L.R. 7.4(a), this motion complies with the word limitation of D.Ak. L.R. 7.4(a)(2) because it contains 2,428 words, excluding the parts of the motion exempted by D.Ak. L.R. 7.4(a)(4).

DATED: January 6, 2022

                STOEL RIVES LLP

                *s/ James E. Torgerson*
                JAMES E. TORGERSON

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)     11

# CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2022, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court, District of Alaska, by using the CM/ECF system. Participants in this Case No. 3:21-cv-00198 (SLG), who are registered CM/ECF users, will be served by the CM/ECF system.

Seth M. Beausang, Asst. U.S. Attorney
Jacquelyn A. Traini, Asst. U.S. Attorney
E. Bryan Wilson, Asst. U.S. Attorney
U.S. Attorney's Office
seth.beausang@usdoj.gov
jackie.traini@usdoj.gov
bryan.wilson@usdoj.gov

David Karl Gross
Birch Horton Bittner & Cherot
dgross@bhb.com

Edward E. McNally
Marc E. Kasowitz
David J. Abrams
David E. Ross
Hector Torres
Kim Conroy
Kasowitz Benson Torres LLP
emcnally@kasowitz.com
mkasowitz@kasowitz.com
htorres@kasowitz.com
dabrams@kasowitz.com
kconroy@kasowitz.com
dross@kasowitz.com

/s/ James E. Torgerson
James E. Torgerson
113734985.1 0071900-00002

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)                12