# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

KLOOSTERBOER INTERNATIONAL
FORWARDING LLC, *et al.*,

        Plaintiffs,

     v.

UNITED STATES OF AMERICA, *et al.*,

        Defendants.

Case No. 3:21-cv-00198-SLG

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

Before the Court are the parties' motions for summary judgment.
Defendants United States of America, U.S. Department of Homeland Security,
U.S. Customs and Border Protection ("CBP"), and Chris Magnus, in his official
capacity as the Commissioner of CBP (collectively, "Defendants") filed their *Motion
for Summary Judgment* at Docket 115.[1]  Plaintiffs Kloosterboer International
Forwarding LLC ("KIF") and Alaska Reefer Management LLC ("ARM") (collectively,
"Plaintiffs") filed their *Motion for Partial Summary Judgment* at Docket 117.  Non-
party Lineage Logistics Holdings, LLC ("Lineage") filed an amicus brief in support
of Plaintiffs' motion at Docket 124.  Oral argument was not requested on the
motions and was not necessary to the Court's determination.

---

[1] Chris Magnus became the Commissioner of CBP and replaced Troy A. Miller, Acting
Commissioner, as a named defendant.  *See* Fed. R. Civ. Pro. 25.

## BACKGROUND[2]

Kloosterboer International Forwarding LLC ("KIF") is an Alaskan wholly-owned subsidiary of Alaska Reefer Management LLC ("ARM"). KIF and ARM arrange transportation and related services for the movement of frozen seafood products, in particular frozen pollock, from Alaska to the eastern United States on behalf of their customers. Plaintiffs are sophisticated actors in the seafood industry and have decades of experience operating their businesses.

Since 2012, Plaintiffs' transportation route for the frozen seafood has been as follows: After seafood products are harvested and processed at sea by American Seafood Company ("ASC"), the frozen products are stored in KIF's Dutch Harbor, Alaska cold storage facility. The U.S.-bound product is then loaded onto non-coastwise-qualified vessels (i.e., foreign-flagged vessels), which are procured by ARM for shipment of the product to the Port of Bayside in New Brunswick, Canada. On arrival at Bayside, the seafood is unloaded from the vessels and moved directly into KIF's Bayside cold storage facility. KIF then arranges with third-party trucking transportation services to deliver the product to Plaintiffs' customers in the eastern United States. Once the trailer trucks are loaded with product, they are driven directly onto a flat rail car on the Bayside Canadian Rail ("BCR") rail trackage, a registered Canadian railroad. The BCR is

---

[2] Unless otherwise noted, the background information is gathered from Plaintiffs' Complaint at Docket 1 and their Memorandum in Support of Motion for Temporary Restraining Order at Docket 5. The facts are generally not in dispute.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 2 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 2 of 44

approximately 100 feet in length and located entirely within the Port of Bayside. Each truck travels the length of the BCR and back—in other words, from Point A to Point B then back to Point A. The truck is then driven off the BCR and proceeds directly to the Calais, Maine border crossing, where the driver submits a bill of lading to CBP and enters the United States. The frozen seafood products are then delivered to Plaintiffs' customers in the United States. The Court refers to this transportation route as the "BCR Route."

Prior to using the BCR Route, beginning in late 2000, ASC itself transported the frozen seafood from Dutch Harbor to the Port of Bayside on foreign-flagged vessels, then eventually on to Calais, Maine by truck. Beginning in 2009, ASC contracted with ARM to provide the transportation of the product on that same route.[3] However, beginning in 2000 and continuing until 2012, when the product arrived at the Port of Bayside, it was first trucked away from the Port of Bayside to a rail terminal of the New Brunswick Southern Railway ("NBSR"). The NBSR carried the frozen seafood product to a separate rail terminal—not just back and forth like the BCR—over a distance of approximately 34 or 91 miles, depending on the destination terminal.[4] The product then travelled by truck to the border crossing

---

[3] KIF joined the operation in 2018. *See* Docket 7 at 3, ¶ 7 (Brautaset Decl.) ("ARM acquired KIF in September 2018."); Docket 9 at 9–10, ¶ 22 (Andreassen Decl.) ("In 2018, ASC began directly contracting with KIF for its transportation needs.").

[4] Docket 39 at 4–5, ¶ 8 (Hebert Decl.). The pre-2012 route moved the product dozens of miles away from the American border. *See*, *e.g.*, Docket 57-1 (map showing Saint John to McAdam, New Brunswick, NBSR rail segment).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 3 of 44

at Calais, Maine. The Court refers to this transportation route as the "NBSR Route."[5]

In 2017, CBP, the federal agency responsible for enforcing the cabotage laws of the United States, began investigating Plaintiffs' BCR Route.[6] As a result of the investigation, CBP determined that the BCR Route violated the Jones Act because, according to CBP, the BCR Route did not fall within an exception to the Jones Act known as the Third Proviso.[7] In August of 2021, CBP began issuing numerous "Notices of Penalty" to KIF and other companies involved in the BCR Route supply chain—shippers, trucking firms, and storage facilities.[8] As of the date of the filing of Plaintiffs' complaint, KIF had received Notices of Penalty totaling approximately $25 million, and other companies in Plaintiffs' supply chain had received Notices of Penalty totaling approximately $325 million.[9]

On September 28, 2021, the Court denied without prejudice Plaintiffs' motion for a temporary restraining order and preliminary injunction. This was based, in part, on a finding that Plaintiffs had not filed a rate tariff for the BCR Route

---

[5] In their filings, Plaintiffs refer to the "Bayside Route," by which they appear to refer collectively to what the Court addresses separately as the BCR Route and NBSR Route. The Court distinguishes the routes from their component railways, which are referred to as the BCR and the NBSR respectively.

[6] Docket 38 at 11–12 (Defs.' Opp'n to Pls.' Mot. for TRO & Prelim. Inj.)

[7] For further discussion of the Jones Act, see *infra* Discussion Section I.

[8] Docket 38 at 12; *see, e.g.*, Docket 8-9 at 2–3 (Notice of Penalty issued to KIF).

[9] Docket 5 at 12.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 4 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 4 of 44

with the Surface Transportation Board ("STB"). Plaintiffs then promptly filed the applicable rate tariff and on October 1, 2021, filed a renewed motion for a temporary restraining order and preliminary injunction.[10] On October 12, 2021, the Court granted Plaintiffs' renewed motion.[11] Pursuant to that order, the Court enjoined Defendants, during the pendency of this litigation or until further order of the Court, from: (1) enforcing any of the Notices of Penalty that CBP had issued relating to shipments via the BCR Route; and (2) issuing and enforcing any new Notices of Penalty relating to shipments via the BCR Route made at any time.[12]

On November 1, 2021, Defendants filed their answer to Plaintiffs' complaint, as well as a counterclaim against KIF seeking to collect the civil penalties levied for the alleged violations of the Jones Act that gave rise to this litigation.[13] Defendants served and filed the administrative record, comprising 1,369 pages, on November 15, 2021.[14] On December 3, 2021, both Plaintiffs and Defendants

---

[10] Docket 65 (Pls.' Renewed Mot. for TRO & Prelim. Inj.).

[11] Docket 95 (Order re Renewed Mot. for TRO & Prelim. Inj.).

[12] Docket 95 at 22–23.

[13] Docket 105 (Defs.' Answer & Countercl.).

[14] Docket 106 (Notice of Filing of Administrative R.); Docket 107 (Notice of Filing of Administrative R.).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 5 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 5 of 44

filed cross-motions for summary judgment.[15]   The parties filed responses in opposition on December 17, 2021[16] and reply briefs on December 30, 2021.[17]

Each party seeks summary judgment in its favor on four counts raised in Plaintiffs' complaint: (1) Count I, which alleges that the transportation of frozen seafood on the BCR Route complies with the Third Proviso of the Jones Act; (2) Counts II and III, which allege that CBP's issuance of the Notices of Penalty violated 19 U.S.C. §§ 1625(c)(1) and 1625(c)(2) by improperly modifying or revoking a prior agency interpretive ruling or treatment without complying with that statute's notice-and-comment provision; and (3) Count IV, which alleges that CBP's issuance of the Notices of Penalty violated KIF's right to due process under the Fifth Amendment of the United States Constitution.   Defendants' cross-motion additionally seeks summary judgment on Count V of Plaintiffs' complaint, which alleges an Eighth Amendment violation.   Defendants also seek the dissolution of the Court's preliminary injunction.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to grant summary judgment if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."   In reviewing

---

[15] Docket 117 (Pls.' Mot. for Partial Summ. J.); Docket 115 (Defs.' Mot. for Summ. J.).

[16] Docket 134 (Defs.' Opp'n to Pls.' Mot. for Partial Summ. J.); Docket 136 (Pls.' Opp'n to Defs.' Mot. for Summ. J.).

[17] Docket 144 (Defs.' Reply); Docket 146 (Pls.' Reply).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 6 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 6 of 44

cross-motions for summary judgment, a court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[18]

## DISCUSSION

## I.    Count I – The Third Proviso

Count I seeks a declaratory judgment that Plaintiffs' use of the BCR Route falls within the Third Proviso exception to the Jones Act.  The Jones Act generally prohibits a maritime vessel from providing any part of the transportation of merchandise by water—or by land and water—between points in the United States, either directly or via a foreign port, unless the vessel is "coastwise-qualified,"[19] i.e., U.S.-built, U.S.-registered, and U.S.-owned.  The Jones Act was enacted to encourage and aid in the development of a vibrant U.S. maritime industry.[20]

The Third Proviso of the Jones Act creates an exception to the prohibition on non-coastwise-qualified vessels.  As currently codified, the Third Proviso states that the general prohibition "does not apply to the transportation of merchandise between points in the continental United States, including Alaska, over through routes in part over Canadian rail lines and connecting water facilities if the routes are recognized by the Surface Transportation Board and rate tariffs for the routes

---

[18] Flores v. City of San Gabriel, 824 F.3d 890, 897 (9th Cir. 2016) (citing Ctr. for Bio–Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't, 533 F.3d 780, 786 (9th Cir. 2008)).

[19] *See* 46 U.S.C. § 55102(b) (formerly 46 U.S.C. app. § 883).

[20] *See id.* § 50101.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 7 of 44

have been filed with the Board."[21]  When originally enacted in 1920, the Third Proviso did not include Alaska.  Interpreting the Third Proviso at that time, the Supreme Court stated that the purpose of the proviso was to "avoid disturbance" of then-"established" through routes in part over the Great Lakes and in part over Canadian rail.[22]  With the passage of the Alaska Statehood Act of 1958, the text of the Third Proviso was amended to extend the exception to through routes with coastwise points in Alaska.

The Third Proviso exception thus has three requirements:

(1)  the "transportation" of merchandise must include "through routes in part over Canadian rail lines . . .";

(2)  the routes must be "recognized" by the Surface Transportation Board ("STB"); and

(3)  rate tariffs for the routes must have been filed with the STB.

Each of these elements is discussed below.

## A. Interpreting the Third Proviso

Resolution of Count I requires the Court to interpret the text of the Third Proviso. "[T]he first step in interpreting a statute 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'"[23]  Absent a statutory definition, "a statutory term

---

[21] *Id.* § 55116.

[22] *Cent. Vt. Transp. Co. v. Durning,* 294 U.S. 33, 39 (1935).

[23] *United States v. Kollman*, 774 F.3d 592, 596 (9th Cir. 2014) (quoting *Texaco Inc. v. United States*, 528 F.3d 703, 707 (9th Cir. 2008)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 8 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 8 of 44

receives its 'ordinary, contemporary, common meaning.'"[24]   Often, interpreting a statutory term "requires 'examin[ing] not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy.'"[25]   If the plain text of the statute is unambiguous, "that meaning controls."[26]  If, however, the statutory text is ambiguous, legislative history may be consulted in determining the text's meaning.[27]

Preliminarily, the parties disagree on whether the exception created in the Third Proviso should be strictly or broadly construed.  Plaintiffs cite *American Maritime Ass'n v. Blumenthal*, where the D.C. Circuit held that the forfeiture provision of the Jones Act should be "construed strictly" due to the "horrendous" nature of the penalty imposed for its violation; it follows, according to Plaintiffs, that the Third Proviso exception should be broadly construed.[28]  Defendants maintain the opposite: that the exception created by the Third Proviso should be strictly construed.  Defendants rely on *Conoco, Inc. v. Skinner*, where the Third Circuit broadly construed the forfeiture provision of the Jones Act.[29]   The Third Circuit

---

[24] *United States v. Lopez*, 998 F.3d 431, 435 (9th Cir. 2021) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

[25] *Wilson v. C.I.R.*, 705 F.3d 980, 988 (9th Cir. 2013) (alteration in original) (quoting *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999)).

[26] *Id.*

[27] *Id.* (citing *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999)).

[28] Docket 117 at 38 (quoting *Am. Mar. Ass'n v. Blumenthal*, 590 F.2d 1156, 1165 (D.C. Cir. 1978)).

[29] Docket 134 at 10 (quoting *Conoco, Inc. v. Skinner.*, 970 F.2d 1206, 1228–29 (3d Cir. 1992).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 9 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 9 of 44

acknowledged the D.C. Circuit's contrary holding in *Blumenthal*, but reasoned that although in rem forfeiture is a "horrendous" penalty, "the harshness of the penalty itself does not make a statute penal in nature" so as to warrant a narrow statutory construction.[30]  Instead, the Third Circuit cited to Supreme Court precedent post-dating *Blumenthal* that requires "the clearest proof" that Congress intended a statutory provision to impose a criminal penalty as opposed to a civil penalty, and reasoned that such proof was absent with respect to the forfeiture provision of the Jones Act.[31]  Defendants contend that there "is no such proof that the Jones Act is anything but a regulatory statute" and urge this Court to construe the general prohibition in the Jones Act broadly and the exception in the Third Proviso narrowly.[32]

The Court finds that the Jones Act should be broadly construed as it contains no "clear[] proof" that Congress intended the statute to be penal in nature.  The sanctions provision in the Jones Act provides that merchandise transported in violation of the Act "is liable to seizure by and forfeiture to the Government."[33]  In the alternative, the government may recover from any person transporting the merchandise or causing the merchandise to be transported "an amount equal to

---

[30] *Conoco, Inc*, 970 F.2d at 1229.

[31] *Id.* at 1228–29 (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 365 (1984)).

[32] Docket 134 at 10.

[33] 46 U.S.C. § 55102(c).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 10 of 44
Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 10 of 44

the value of the merchandise . . . or the actual cost of the transportation, whichever is greater."[34]  Plainly absent from this text is any indication, much less the "clearest proof," that Congress intended the sanctions provision of the Jones Act to be criminal in nature.[35]  Accordingly, the Court finds that the Jones Act is regulatory, as opposed to penal, in nature and therefore finds that a broad construction of its prohibition and a narrow construction of its exceptions, including the Third Proviso, is warranted.

### B. The "transportation" of merchandise must include "through routes in part over Canadian rail lines."

#### *The parties' positions*

Plaintiffs advance a multi-faceted argument in support of their contention that the BCR Route constitutes "transportation" of merchandise on a "through route[] in part over Canadian rail lines."  Foremost, Plaintiffs maintain that the plain text of the Third Proviso is unambiguous and compels this conclusion.[36]  Plaintiffs assert that the legal and customary usage of the term "through routes" requires a finding that the BCR Route complies with the Third Proviso.[37]  Plaintiffs maintain

---

[34] *Id.*

[35] Because the text of the sanctions provision is clear, the Court need not apply the Supreme Court's multi-factor test to determine whether the Jones Act is regulatory or penal. *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1963).

[36] Docket 146 at 13 n.4 (stating that "the only principle of statutory construction applicable here is that the plain and unambiguous language of the Jones Act governs").

[37] Docket 117 at 38 (citing *Thompson v. United States*, 343 U.S. 549, 557 (1952) (holding that a through route as used in the Interstate Commerce Act exists when "participating carriers hold themselves out as offering a through transportation service")).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 11 of 44

that as used in the Third Proviso, a "'through route' . . . refers to the *entirety* of the journey, not just the rail component."[38]  Further, according to Plaintiffs, a "through route" "remains consistent even if there are changes in intermediary destinations or modes of transport," such as, for example, the use of the BCR in place of the NBSR.[39]

Plaintiffs also maintain that "transportation," as used in the Third Proviso, contains no "caveats, qualifications or restrictions."[40]  "[N]otwithstanding the short round-trip rail movement" of seafood along the BCR, Plaintiffs contend that the Third Proviso's "transportation" requirement is satisfied because "the overall transportation of the seafood advanced from its origin point [in Alaska] to its ultimate destination" in the eastern United States.[41]

Plaintiffs also assert that the BCR Route complies with the Third Proviso's "Canadian rail lines" requirement, as the BCR is a railway located in Canada that is recognized under Canadian law.[42]  Plaintiffs add that the Third Proviso imposes no *de minimis* length requirement or commercial reasonableness requirement on the use of a Canadian rail line.[43]  All that the text requires, according to Plaintiffs'

---

[38] Docket 117 at 39.

[39] Docket 117 at 39.

[40] Docket 117 at 42.

[41] Docket 146 at 17.

[42] Docket 117 at 41–44.

[43] Docket 117 at 43 ("[I]f Congress wishes to limit the use of the Third Proviso to specific routes

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 12 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 12 of 44

reading, is that a Canadian rail line is used at some point during the transportation of merchandise between coastwise points.

Like Plaintiffs, Defendants base their arguments primarily on the text of the Jones Act. Defendants focus on the rail component of the BCR Route and maintain that "the BCR is an artifice that does not meet the statutory requirements of the Third Proviso."[44] Defendants cite to Supreme Court caselaw defining a "through route" as "an arrangement, express or implied, between connecting railroads for the continuous carriage of goods from the originating point on the line of one carrier to destination on the line of another."[45] Defendants maintain that the rail component of the BCR Route is not a through route because it "is not part of a 'continuous carriage of goods'" as it fails to "advance the merchandise along the route from Alaska to the eastern United States."[46]

Defendants also maintain that the BCR does not constitute "transportation" within the plain meaning of the Third Proviso. Defendants assert that "[t]ransportation implies the taking up of persons or property at some point and

---

or to require the STB to evaluate the commercial soundness of a proposed route, it has the authority to do so, but the Third Proviso as currently written contains no such requirement." (quoting *Horizon Lines, LLC v. United States*, 414 F. Supp. 2d 46, 55 n.6 (D.D.C. 2006)).

[44] Docket 115 at 26.

[45] Docket 134 at 17 (emphasis omitted) (quoting *Thompson*, 343 U.S. at 556 (defining the term "through route" as used in the Interstate Commerce Act)).

[46] Docket 134 at 11 (quoting *St. Louis Sw. Ry. Co. v. United States*, 245 U.S. 136, 145 (1917)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 13 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 13 of 44

putting them down at another."[47]  Because the BCR "begins and ends at the same point," Defendants assert that there is no actual "transportation" of merchandise on the BCR itself.[48]  Defendants maintain that CBP regulations and ruling letters reflect this interpretation of "transportation" as excluding "movement of merchandise back and forth to the same place."[49]

Defendants cite to the Supreme Court's observation in *Central Vermont* that the Third Proviso was intended to create an exception for "established routes."[50]  Defendants contend that the BCR, as "[a] 100-foot rail line with pointless movement . . . is unlike anything CBP has ever approved, and is not the kind of established rail line serving the public interest that the Third Proviso was enacted to protect."[51]  While acknowledging that importers may structure their transactions for the express purpose of qualifying under customs law, Defendants maintain that they may not "resort to disguise or artifice" to do so in what Defendants describe

---

[47] Docket 134 at 13 (quoting *Gloucester Ferry Co. v. Pennsylvania*, 114 U.S. 196, 203 (1885)).

[48] Docket 115 at 24.

[49] Docket 115 at 24–25 (citing 19 C.F.R. § 4.80b (providing that "[a] coastwise transportation of merchandise takes place, within the meaning of the coastwise laws, when merchandise laden at a point embraced within the coastwise laws ('coastwise point') is unladen at another coastwise point, regardless of the origin or ultimate destination of the merchandise")); Docket 106-3 pp. 13–15 (CBP Ruling Letter 226667) (ruling that the proposed transportation is prohibited under the Jones Act because "[t]he transportation begins and ends at the same coastwise point"); Docket 106-3 pp 35–40 (CBP Ruling Letter H314401) ("We have previously held that the use of a moored drydock in raising vessels out of the water for repairs and subsequently replacing the vessels back in the water at the same point from which they were elevated is not considered the transportation of merchandise between two coastwise points.").

[50] Docket 115 at 19 (quoting *Cent. Vt. Transp. Co.*, 294 U.S. at 39).

[51] Docket 115 at 22.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 14 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 14 of 44

as Plaintiffs' attempt to "thwart[] the purpose of the Jones Act and the Third Proviso."[52]

Amicus Lineage maintains that as understood in "ordinary English," "transportation" requires only "movement in space," absent any consideration of the total distance moved.[53] Because frozen seafood is physically moved along the BCR, Lineage maintains that merchandise is "transport[ed]" on the BCR within the meaning of the Third Proviso.[54] Lineage likewise contests Defendants' argument that a "through route" must be "continuous," and in the alternative argues that the BCR Route fulfills any continuous carriage requirement articulated in *St. Louis Southwestern Railway Co.*[55] And Lineage maintains that "the Alaska extension of the Third Proviso [in 1958] cannot have been meant to apply to [the] 'established through routes'" referenced by the U.S. Supreme Court in its 1935 *Central Vermont* decision.[56] Rather, Lineage maintains that this modification evidences congressional intent to extend the Third Proviso to "the creation of new routes" to and from Alaska.[57]

---

[52] Docket 115 at 23 (quoting *United States v. Citreon*, 223 U.S. 407, 415 (1912)); Docket 143 at 2–3 (Defs.' Opp'n to Mot. for Leave to File Amicus Br.).

[53] Docket 124-1 at 18.

[54] Docket 124-1 at 18–24.

[55] Docket 124-1 at 21–24; *see St. Louis Sw. Ry. Co.*, 245 U.S. at 139 n.4.

[56] Docket 149 at 3 (Reply to Defs.' Opp'n to Mot. for Leave to File Amicus Br.); *see Cent. Vt. Transp. Co. v. Durning*, 294 U.S. at 40–41.

[57] Docket 124-1 at 12–13.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 15 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 15 of 44

*"Through routes"*

The plain text of the Third Proviso unambiguously provides that a "through route" encompasses the entirety of a route between coastwise points, including the required rail portion. In the text of the proviso, the term "through routes" is immediately preceded by the phrase "the transportation of merchandise between points in the continental United States, including Alaska." And in the proviso, "through routes" is immediately followed by the phrase "in part over Canadian rail lines and connecting water facilities . . . ." A plain reading of this text unambiguously indicates that the "Canadian rail lines" is intended to comprise a "part" of the larger "through routes." Accordingly, the Court determines that as used in the Third Proviso, the term "through routes" refers to the entirety of journeys of merchandise between coastwise points.

However, Plaintiffs' contention that a particular "through route" remains consistent so long as it originates and ends at the same locations, even if there are changes in intermediary destinations or modes of transport, is unavailing. Because the unambiguous text defines "through routes" with reference to the routes traveled between two points, when a route's intermediary destinations or modes of transport are altered, the character of the entire "through route" is necessarily modified.

Defendants' contention that the BCR Route is not a "through route" because the rail component lacks "continuous carriage" is unpersuasive. As explained

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 16 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 16 of 44

above, the relevant "through routes" of the Third Proviso are the entire journeys between coastwise points. To the extent that a continuity requirement is implied from the Supreme Court's holding in *St. Louis Southwestern Railway Co.*, a case considering rail transportation in 1917, such a requirement is encompassed within the "transportation" requirement of the proviso, discussed *infra*.[58]

Applying this interpretation of "through routes" to the facts at hand, the Court finds that Plaintiffs' BCR Route constitutes a "through route[]" within the meaning of the Third Proviso. However, because a qualifying "through route" is defined with reference to its intermediary destinations and modes of transport, the NBSR Route and the BCR Route are distinct "through routes" as used in the Third Proviso.

### *"Canadian rail lines"*

The text of the Third Proviso is unambiguous in stating that a qualifying through route must include transportation in part over "Canadian rail lines." Here, the parties do not dispute that the BCR is a "rail line,"[59] as it consists of a railroad track on a roadbed. And the parties agree that the BCR is located in Canada. Accordingly, the BCR is a "Canadian rail line" for the purpose of the Third Proviso.

### *"Transportation"*

The Third Proviso requires the "transportation" of merchandise in part over Canadian rail lines. Because the Jones Act does not define "transportation," the

---

[58] *See St. Louis Sw. Ry. Co.,* 245 U.S. at 139 n.4.

[59] *See* Docket 115 at 22 (acknowledging that the BCR is "[a] 100-foot rail line").

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 17 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 17 of 44

Court looks to the term's ordinary meaning. As defined in Black's Law Dictionary, "transportation" entails "[t]he movement of goods or persons from one place to another by a carrier."[60] But this definition does not provide a plain and unambiguous meaning to the term "transportation" with regard to the dispute in this case, as the following examples demonstrate: Suppose that merchandise is moved from Point A to Point B. In this scenario, "transportation" as defined has plainly occurred, as the merchandise has moved "from one place to another." But suppose that instead, the merchandise is moved from Point A to Point B, and then immediately back to Point A. Black's definition allows for two equally plausible interpretations. On the one hand, the definition of "transportation" permits a conclusion that two instances of "transportation" have occurred—from Point A to Point B, and then from Point B back to Point A. On the other hand, the definition permits the conclusion that no "transportation" had occurred at all. Because the merchandise began and ended its journey at Point A, there was no movement "from one place to another" as defined.

Finding the common usage of the term "transportation" to be nondispositive, the Court looks to the term's use in the Third Proviso itself: "the transportation of merchandise between points in the continental United States, including Alaska . . . . ." This context illuminates that "transportation," as used in the Third Proviso, indicates movement from one distinct point in the United States to another distinct

---

[60] *Transportation*, Black's Law Dictionary (11th ed. 2019).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 18 of 44

point in the United States.  In this light, "transportation," as written in the proviso, would appear to require forward progress along a through route.  Within the meaning of the Third Proviso, therefore, simple out-and-back movement would not constitute "transportation."

The Court also finds the phrase "over through routes in part over Canadian rail lines" to be instructive to the Third Proviso's use of the term "transportation." Specifically, the Court finds that the transportation requirement applies to both a "through route" and on "Canadian rail lines."  To construe the statute otherwise— to simply require the peripheral involvement of a rail line—would result in absurdity, as it would effectively permit almost any non-coastwise-qualified vessel to fall within the Third Proviso so long as the journey included some contact, however limited, with a railroad in Canada.[61]

The Third Proviso's inclusion of the phrase "connecting water facilities" reinforces this interpretation.  The text of the Third Proviso requires the "transportation" to occur over "Canadian rail lines and connecting water facilities." By referring to distinct modes of transportation at different points along a through route, the Third Proviso employs the term "transportation" in a broad sense, which contemplates continuous forward progress along a through route.

---

[61] *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 670 (9th Cir. 2021) ("We avoid absurd results when interpreting statutes." (citing *Rowland v. Cal. Men's Colony, Unit II Men's Adv. Council*, 506 U.S. 194, 200–01 (1993))).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 19 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 19 of 44

Turning to the facts at hand, the Court must determine whether Plaintiffs' BCR Route complies with the statutory requirements to engage in "transportation" over both a "through route" and over a "Canadian rail line[]." The parties do not dispute that seafood is transported from Dutch Harbor, Alaska, to the eastern United States. Therefore, the requirement to engage in "transportation" over a "through route" is satisfied. However, the Court finds that Plaintiffs' use of the BCR does not satisfy the Third Proviso's additional requirement to engage in "transportation" over a "Canadian rail line[]." The movement of merchandise out-and-back over the 100-foot track at the Port of Bayside does not provide actual progress along the through route and does not constitute "transportation" over a rail line as required by the Third Proviso.

### C. The routes must be "recognized" by the Surface Transportation Board ("STB"); and rates for the tariff route must have been filed with the STB.

The Third Proviso requires that the through route used must be "recognized" by the STB.[62] "Courts have treated the filing of tariff sheets as recognition [of the route] by the [Interstate Commerce Commission] under the Third Proviso."[63] As such, the Court analyzes the second and third requirements of the Third Proviso together.

---

[62] *See* 46 U.S.C. § 55116.

[63] *Horizon STB*, 2007 WL 4429515, at *2 (S.T.B. Dec. 18, 2007) (citing *Cent. Vt. Transp. Co. v. Dunning*, 71 F.2d 273, 274 (2d Cir. 1934), *aff'd*, 294 U.S. 33 (1935)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 20 of 44

Plaintiffs advance multiple arguments in support of their assertion that the BCR Route does not run afoul of the Third Proviso's rate tariff filing requirement.[64] First, Plaintiffs contend that the ASC tariff filed with and accepted by the STB in 2006 extends to the BCR Route, and that "nothing requires other carriers utilizing the same through route to file their own tariff independently."[65] Plaintiffs challenge the Court's September 28, 2021 contrary finding, maintaining that a "holistic analysis of the controlling statute and regulations demonstrates the absence of any requirement that all carriers must be identified on rate tariffs."[66] Additionally, Plaintiffs contend that ARM and KIF succeeded to the ASC tariff through a concurrence expressly recognized by CBP's regulations.[67] Second, Plaintiffs maintain that CBP's ruling letters have clarified that "no tariff filing was required to comply with the Third Proviso."[68] Plaintiffs specifically cite to the Sunmar I Ruling Letter, which states in relevant part that "[t]he indirect transportation between coastwise points of commodities which are exempt from requirements regarding rate tariffs, through the utilization of foreign-flag vessels and Canadian rail trackage, is not prohibited merely because no tariffs may be filed to cover the

---

[64] Docket 117 at 45.

[65] Docket 117 45–46.

[66] Docket 117 at 47 (citing 49 U.S.C. § 13702(b)(2) and 49 C.F.R. § 1312).

[67] Docket 117 at 48–49 (citing 49 C.F.R. §§ 1312.14(a)(2), (b), 1312.16).

[68] Docket 117 at 46.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 21 of 44
Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 21 of 44

movements."[69] Plaintiffs contend that the relevant ruling letters were not vacated by the District Court for the District of Columbia in *Horizon Lines, LLC v. United States*, and that CBP has not itself revoked the ruling letters thereafter, such that Plaintiffs properly relied on the ruling letters in structuring and operating the BCR Route.[70] Third, Plaintiffs contend that, as "freight forwarders" and "private carriers" providing transportation services for select shippers pursuant to privately negotiated contracts, they are not required to file a rate tariff with the STB.[71]

Defendants contest each of Plaintiffs' claims. Foremost, Defendants contend that "ASC's [tariff] filing does not apply to the BCR Route" because "the ASC rate tariff did not describe a route with a connection to the BCR."[72] Defendants also contend that Plaintiffs' "holistic analysis" is unfounded, as the plain text of 49 U.S.C. § 13702(b)(2)(A) "requires that the rate tariff 'identify plainly . . . the carriers that are parties to it.'"[73] Defendants additionally assert that Plaintiffs cannot rely upon prior CBP ruling letters to justify their use of the BCR Route, as "[t]he *Horizon* decision had the effect of modifying CBP's pre-*Horizon*

---

[69] Docket 117 at 49–50 (quoting Docket 6-7 (CBP Ruling Letter 115446 (Sunmar I Ruling Letter)); *see also* Docket 6-12 (CBP Ruling Letter 112085); Docket 6-24 (CBP Ruling Letter 114407); Docket 6-8 (CBP Ruling Letter 115124 (ASC Ruling Letter)); Docket 53-1 (CBP Ruling Letter 116021 (Sunmar II Ruling Letter)); Docket 6-13 (CBP Ruling Letter 116185 (Sunmar III Ruling Letter))).

[70] Docket 117 at 52–53 (quoting *Horizon Lines, LLC v. United States*, 414 F.Supp. 2d 46 (D.D.C. 2006)).

[71] Docket 117 at 46.

[72] Docket 134 at 16–17.

[73] Docket 134 at 18 (quoting 49 U.S.C. § 1307(b)(2)(A)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 22 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 22 of 44

ruling letters."[74]  Defendants specifically point to the *Horizon* court's express holding "that permitting 'a non-coastwise-qualified private shipper to engage in noncontiguous domestic trade without filing a rate tariff with the STB' would 'ignore[] both plain language of the [Third Proviso] and the congressional intent in enacting it.'"[75]  Defendants also point to a letter from CBP to Horizon Lines, LLC, that was later forwarded to ASC in May 2007, clarifying that the agency would thereafter require carriers operating pursuant to the Third Proviso to "have a rate tariff on file with the STB for any through route."[76]  Furthermore, Defendants argue that Plaintiffs are neither "freight forwarders" nor "private carriers," and regardless, that the Third Proviso's tariff-filing requirement applies to the route, as opposed to the entity filing the tariff.[77]

Each of the arguments that Plaintiffs advance is predicated on the assumption that the BCR Route and the NBSR Route are identical through routes for the purpose of the Third Proviso.  But as explained above, the Court has determined that the BCR Route and the NBSR Route are distinct through routes.  And 46 U.S.C. § 55116 requires that a tariff "ha[s] been filed" for each through route.  Thus, the tariff filing for the NBSR Route does not apply to the BCR Route.

---

[74] Docket 134 at 22.

[75] Docket 134 at 23 (alteration in original) (quoting *Horizon Lines, LLC*, 414 F. Supp. 2d at 60).

[76] Docket 134-1 at 1; Docket 6-15 at 1 (stating that the letter was sent to ASC on May 25, 2007 pursuant to a Freedom of Information Act request).

[77] Docket 134 at 26–27.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 23 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 23 of 44

For this same reason, Plaintiffs' "holistic analysis of the controlling statute and regulations" fails, as this analysis is predicated on the assertion that the NBSR Route and the BCR Route are the same through route. Moreover, even if Plaintiffs did "step[] into ASC's shoes as the shipper in the tariff" with respect to the NBSR Route, those shoes did not extend to the BCR Route.[78]

Plaintiffs' contention that as both "freight forwarders" and "private carriers," they are "exempt from any tariff filing requirement" is also unpersuasive. The text of the Third Proviso unambiguously requires that to qualify for the exception, "rate tariffs for the routes have been filed with the [Surface Transportation] Board." Accordingly, even assuming that the STB did not require Plaintiffs to file a tariff in order to comply with 49 U.S.C § 13702(b)(2)(A), the Third Proviso nonetheless requires that a tariff be filed for the BCR Route to achieve compliance with the Jones Act. In light of the foregoing, the Court holds that Plaintiffs failed to satisfy the tariff-filing requirement of the Jones Act prior to September 30, 2021.[79]

For the foregoing reasons, Plaintiffs' motion for summary judgment with respect to Count I is denied, and Defendants' motion for summary judgment with respect to Count I is granted.

---

[78] Docket 5 at 40.

[79] *See* Docket 65 at 3 ("On September 30, 2021, in accordance with 49 U.S.C. §§ 13702, 1312, and the STB's filing procedures during the COVID-19 pandemic, KIF filed a rate tariff with STB for the BCR Route . . . ." (footnote omitted)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 24 of 44

Case 3:21-cv-00198-SLG    Document 154    Filed 05/25/22    Page 24 of 44

## II.     Counts II and III – 19 U.S.C. § 1625(c)

In Counts II and III, Plaintiffs maintain that CBP issued the Notices of Penalty

without any public notice and comment, in violation of 19 U.S.C. § 1625(c).[80]

19 U.S.C. § 1625(c) provides that:

A proposed interpretive ruling or decision which would—

(1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or

(2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;

shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

### A. Plaintiffs' Statutory Causes of Action Arise under 19 U.S.C. § 1625(c).

In their briefing, the parties dispute the source of Plaintiffs' statutory causes

of action.  Plaintiffs maintain that their complaint alleges affirmative statutory claims

that arise "outside of the [Administrative Procedure Act] context."[81]  But Defendants

maintain that "[a]s pled, Plaintiffs' 'statutory' claims appear to be cognizable only

---

[80] Docket 115 at 62.

[81] Docket 123 at 5 (Pls.' Reply in Support of Pls.' Mot. to Supplement the Administrative R.).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 25 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 25 of 44

as APA claims."[82]  Defendants allude to the absence of an explicit cause of action in the text of the Jones Act and cite *Johnson v. Interstate Management Co., LLC* for the proposition that if a private cause of action is not expressly set forth in the text of a statute, there ordinarily is no such cause of action available.[83]

The Court finds that the statutory claims advanced by Plaintiff are cognizable under 19 U.S.C. § 1625(c).  The Court finds instructive the reasoning of the Federal Circuit in *International Custom Products, Inc. v. United States*.[84] There, the court held that CBP had improperly revoked a ruling letter when it issued a Notice of Action because it had not first followed the notice-and-comment procedure set forth in 19 U.S.C. § 1625(c).  In invalidating the agency's action, the Federal Circuit expressly rejected CBP's contention that there is no "proper cause of action" based on § 1625(c).[85]  Adopting this reasoning, the Court finds that Plaintiffs can advance their statutory claims pursuant to § 1625(c).

### B. Count II – Section 1625(c)(1)

Count II alleges that CBP violated § 1625(c)(1) "by issuing the penalty notices that are premised on non-public and undisclosed revocations of Ruling Letters that were in effect for more than 60 days—revocations effectuated without

---

[82] Docket 121 at 2–3 (Defs.' Opp'n to Pls.' Mot. to Supplement the Administrative R.).

[83] Docket 117 at 14 (citing *Johnson v. Interstate Management Co., LLC*, 849 F.3d 1093, 1097 (D.C. Cir. 2017)).

[84] *Int'l Custom Prods., Inc. v. United States*, 748 F.3d 1182  (Fed. Cir. 2014).

[85] *Id. at* 1188 n.6.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 26 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 26 of 44

providing notice or an opportunity for comment."[86]  To prevail on this claim, Plaintiffs must prove that CBP: (1) issued a proposed new interpretive ruling or decision that had not been subjected to the notice-and-comment process outlined in § 1625(c); and (2) the proposed new interpretive ruling or decision would modify or revoke a "prior interpretive ruling or decision" that had been in effect for at least 60 days.[87]

Plaintiffs allege that CBP's Notices of Penalty, together with their supporting internal memoranda, "plainly revoke or modify CBP's ruling letters" that had interpreted the Third Proviso in three respects: "*any* use of Canadian rail," the required length of the rail line, and the nature and function of the rail line.[88] Plaintiffs add that the Notices of Penalty effectively revoke "multiple CBP ruling letters approving the [NBSR Route]," which Plaintiffs maintain is functionally indistinguishable from the BCR Route.[89]

Plaintiffs next argue that the plain language of § 1625(c), which provides for notice and opportunity for comment for "interested parties," "evidences clear

---

[86] Docket 117 at 66.

[87] *See* 19 U.S.C. § 1625(c)(1); *Int'l Custom Prods., Inc. v. United States*, 32 C.I.T. 302, 306 (Ct. Int'l Trade 2008).

[88] Docket 117 at 68–69 (citing Docket 53-1 at 5 (CBP Ruling Letter 116021 (Sunmar II Ruling Letter))).

[89] Docket 146 at 31 (citing Docket 117 at 26 (citing Docket 53-2 (CBP Ruling Letter 105604); Docket 6-22 (CBP Ruling Letter 111987); Docket 6-12 (CBP Ruling Letter 112085); Docket 6-23 (CBP Ruling Letter 113365); Docket 6-24 (CBP Ruling Letter 114407); Docket 6-8 (CBP Ruling Letter 115124); Docket 6-7 (CBP Ruling Letter 115446); Docket 53-1 (CBP Ruling Letter 116021 (Sunmar II Ruling Letter)); Docket 6-13 (CBP Ruling Letter 116185 (Sunmar III Ruling Letter)))).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 27 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 27 of 44

Congressional intent that members of the public may rely on CBP interpretive rulings or decisions."[90] Plaintiffs assert that CBP's regulations interpreting and applying § 1625(c)(1) are overly restrictive and therefore invalid.[91]

In response, Defendants contend that consistent with CBP regulations, "[a] claim alleging a violation of subsection (c)(1) cannot succeed unless there is a proposed decision that would modify or revoke a prior ruling letter involving the 'same circumstances' and 'identical' operations."[92] Defendants maintain that these conditions are not met here because there has been no prior letter ruling regarding the BCR Route and that route "involves a different rail line than any addressed in a prior ruling letter."[93]

Defendants further contend that the applicable CBP regulations are not so overly restrictive as to be invalid. To the contrary, Defendants assert that "[n]othing in 19 C.F.R. § 177.9(b)(4) prevents CBP from carrying out [the notice-and-comment procedures required under § 1625(c)]."[94] Likewise, Defendants maintain that the limiting text of 19 C.F.R. § 177.9(c), which provides that ruling letters apply only to the transaction described in the letter, unless the notice-and-comment

---

[90] Docket 136 at 41.

[91] Docket 136 at 39.

[92] Docket 134 at 28 (quoting 19 C.F.R. § 177.9(a); 19 C.F.R. § 177.9(b)(4)).

[93] Docket 115 at 29; *see also* Docket 134 at 30–31.

[94] Docket 144 at 12.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 28 of 44

procedures of § 177.12 apply, does not conflict with the notice-and-comment procedures provided for under § 1625(c).[95]

The Court holds that CBP has not violated § 1625(c)(1) because that statutory provision is not applicable to the present litigation. Particularly when read in conjunction with subsection (c)(2), which addresses actions that "have the effect" of modifying prior CBP actions, discussed *infra*, subsection (c)(1) unambiguously applies only when CBP seeks to modify or revoke an interpretive ruling, including a ruling letter, that was issued as to a particular entity or transaction. CBP has never issued a prior interpretive ruling with respect to the BCR Route.[96] Accordingly, Plaintiffs' motion for summary judgment on Count II is denied, and Defendants' motion for summary judgment on Count II is granted.

### C. Count III - Section 1625(c)(2)

Count III asserts that CBP's issuance of the Notices of Penalty violated 19 U.S.C. § 1625(c)(2) in two respects: (1) because Plaintiffs' BCR Route is "substantially identical" to transactions authorized in previous CBP ruling letters, and (2) because CBP accorded positive "treatment" to the BCR Route itself by repeatedly approving the entry of merchandise into the United States that had travelled on the BCR. Plaintiffs assert the Notices of Penalty would have the effect

---

[95] Docket 144 at 12 (citing Cust. Bull. Vol. 53, No. 38, at 15).

[96] Because the Court finds § 1625(c)(1) inapplicable to this case, the Court does not address the validity of the regulations associated with that portion of the statute.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 29 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 29 of 44

of modifying these prior treatments such that the notice-and-comment requirement of the statute applies.

To establish a violation of § 1625(c)(2), a plaintiff must demonstrate the following:

> (1) a "treatment [was] previously accorded by [CBP]";
>
> (2) the conduct challenged in CBP's enforcement action constitutes a "substantially identical transaction" to the previous treatment;
>
> (3) CBP issued a "proposed interpretive ruling or decision" that would have the effect of modifying the previous treatment with respect to the entries in question;" and
>
> (4) the proposed interpretive ruling or decision violated the notice-and-comment requirement of Section 1625(c).[97]

The Court's September 28, 2021 order determined that Plaintiffs had made a showing of at least serious questions going to the merits of their § 1625(c)(2) claim. The Court based its decision on functionality, and held that on that basis, "the BCR rail line would appear to be substantially identical to other Canadian rail lines on which merchandise is carried solely to comply with the Third Proviso."[98]

### _Prior Ruling Letters_

Plaintiffs contend that CBP's prior ruling letters constitute "treatment" for the purpose of § 1625(c)(2).[99] Plaintiffs assert that the BCR Route is "substantially

---

[97] 19 U.S.C. § 1625(c)(2); _see also Kahrs Int'l, Inc. v. United States_, 33 C.I.T. 1316, 1354 (2009); _Int'l Custom Prods., Inc. v. United States_, 33 C.I.T. 79, 86-87 (2009).

[98] Docket 95 at 20.

[99] Docket 117 at 72.

Case No. 3:21-cv-00198-SLG, _Kloosterboer, et al. v. USA, et al._
Order re Cross-Motions for Summary Judgment
Page 30 of 44

identical" to the routes described in the NBSR Ruling Letter and the Sunmar Ruling Letters. Citing *California Indus. Prod., Inc. v. United States*, Plaintiffs argue that the "substantially identical" standard "does not require complete identity."[100] Because CBP did not engage in the notice-and-comment procedure set forth in § 1625(c) before issuing the Notices of Penalty, Plaintiffs conclude that Defendants violated § 1625(c)(2) and that the Notices of Penalty should be invalidated.[101]

Defendants respond that prior CBP ruling letters are never considered to be "treatment" for the purpose of § 1625(c)(2); rather, Defendants maintain that ruling letters can only be considered under subsection (c)(1), and then only with regard to the party to whom the ruling letter was issued.[102] Defendants note that the agency's interpretation of "treatment" has been accorded deference under the *Chevron* standard by the Federal Circuit.[103]

The Court's analysis focuses on the Sunmar II Ruling Letter, because based on that ruling letter alone, the Court finds that CBP's issuance of the Notices of

---

[100] Docket 117 at 76 (citing *California Indus. Prod., Inc. v. United States*, 436 F.3d 1341, 1352 (Fed. Cir. 2006)).

[101] Docket 117 at 77–78.

[102] Docket 115 at 35–37.

[103] Docket 115 at 35 (citing *Motorola, Inc. v. United States*, 436 F.3d 1357, 1366-67 (Fed. Cir. 2006) ("Accordingly, we hold that the trial court erred in refusing to give *Chevron* deference to the interpretation of the word 'treatment' provided in 19 C.F.R. § 177.12(c)(1)(ii).")). *Chevron* deference is accorded pursuant to the two-step inquiry set out in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44 (1984). In step one, a court asks "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842–43. If a statute is "silent or ambiguous with respect to the specific issue," a court proceeds to step two, where "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 31 of 44

Penalty violated § 1625(c)(2). In the Sunmar II Ruling Letter, CBP unequivocally stated that "we [CBP] have long held that 'in part over Canadian rail lines' is any use of Canadian rail" to qualify for the Third Proviso, and upheld Sunmar's proposed transportation route. The Ruling Letter added that this policy statement was "consistent with the policy established over the last twenty years of CBP's administration of the 'Jones Act' and the Third Proviso," but stressed that "parties are bound to use Canadian rail lines in order to avail themselves of the Third Proviso."[104] The Sunmar II Ruling Letter was issued in 2004; there is no indication in this record that CBP has modified or revoked this policy statement at any time prior to the issuance of the Notices of Penalty in 2021 that are the subject of this litigation.

*Was a "treatment" previously accorded?*

The first element under § 1625(c)(2) asks whether a treatment was previously accorded by CBP when it issued the policy statement on rail usage in the Sunmar II Ruling Letter. The statue does not define the term "treatment." But the Court finds that the word's plain meaning as used in the statute clearly encompasses a policy statement articulated in a ruling letter. A "treatment" is the "act, manner, or method of handling or dealing with someone or something."[105]

---

[104] Docket 53-1 at 5 (CBP Ruling Letter 116021 (Sunmar II Ruling Letter)).

[105] *Treatment* The American Heritage Dictionary of the English Language, 5th Edition.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 32 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 32 of 44

Clearly, when CBP issues a broad policy statement in a ruling letter, it is stating the manner in which it intends to deal with something.

The Court notes that the Federal Circuit upheld the regulation's definition of "treatment" in *Motorola, Inc. v. United States*.[106]  However, there, the Federal Circuit was only addressing whether CBP's refusal to consider a bypass entry (when it allowed merchandise to enter the United States without any review) as a treatment was a permissible interpretation of treatment, and determined that the interpretation was permissible.[107]  Indeed, the Federal Circuit expressly stated that its holding "[did] not address the validity of the entire regulation for all purposes" and instead "defer[ed] to [CBP's] determination that the admission of entries 'expeditiously and without examination or Customs officer review' does not constitute 'treatment' within the meaning of section 1625(c)(2)."[108]  The present case is distinguished as it involves a different aspect of treatment not addressed by the Federal Circuit—whether a prior ruling letter issued to a third party may constitute a "treatment."

---

[106] 436 F.3d 1357, 1366-67 (Fed. Cir. 2006) ("Accordingly, we hold that the trial court erred in refusing to give *Chevron* deference to the interpretation of the word 'treatment' provided in 19 C.F.R. § 177.12(c)(1)(ii).").

[107] The *Motorola* court noted that under the bypass procedure, "importers declare a value and tariff classification for their goods when they import them; Customs port directors may liquidate the goods as declared, without inspecting the goods or otherwise independently determining the proper duty to be paid." *Motorola, Inc.*, 436 F. 3d at 1362.

[108] *Motorola, Inc. v. United States*, 436 F.3d 1357, 1367 (Fed. Cir. 2006).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 33 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 33 of 44

Given that the Court has interpreted subsection (1) of the statute to only include a prior ruling letter issued to that party, it is clear that prior ruling letters issued to third parties must fall within the definition of a treatment under subsection (2). Otherwise, the notice-and-comment provision of the statute would not apply at all to ruling letters except as to the specific party that received the ruling letter. Such an approach would be directly at odds with the public input process provided by the statute. Moreover, CBP's regulations recognize that third parties may rely on ruling letters and that the rulings are "binding on all Customs Service personnel" and "may be cited as authority in the disposition of transactions involving the same circumstances."[109] Accordingly, the first element to establish a violation of § 1625(c)(2) is met. The Court finds that the relevant treatment that was accorded by CBP in the Sunmar II Ruling Letter was to unequivocally state that its longstanding policy was to treat "any use" of Canadian rail as sufficient to fall within the Third Proviso exception.

*Are the Notices of Penalty Substantially Identical Transactions?*

The Court next asks whether the conduct challenged in the Notices of Penalties constitutes "substantially identical transactions" to the previous treatment. On the basis of the plain text of § 1625(c), the Federal Circuit has held that "Congress clearly intended that 'substantially identical transactions' in 19

---

[109] 19 C.F.R. § 177.9(a). *See also U.S. Customs & Border Protection Rulings Program* (December 2009) (Docket 119-3 at 22) ("Any importer that wishes to rely on a ruling letter issued to someone else should make sure that the letter has not been modified or revoked.").

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 34 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 34 of 44

U.S.C. § 1625(c) include transactions of parties other than the person claiming entitlement to the statute's notice and comment process."[110]  In so holding, the Federal Circuit reasoned that the plaintiff could rely on a "treatment" for the purposes of section 1625(c)(2) derived from CBP rulings in the form of "Treasury Decision[s]" and 145 entries accorded to a third party.[111]  The Court agrees with this reasoning and finds that the conduct challenged in the Notices of Penalty—the use of a Canadian rail—is substantially identical to the previous treatment accorded by CBP to Sunmar, insofar as both involved the "use of a Canadian rail." Accordingly, the second element required to establish a violation of § 1625(c)(2) is met.

*Would the Proposed Interpretive Ruling or Decision Modify Previous Treatment?*

Insofar as the Notices of Penalty would require "transportation" to take place on a Canadian rail, as opposed to "any use" of Canadian rail to qualify for the Third Proviso, the Notices of Penalty modify the treatment that CBP has accorded to Canadian rail use, as expressly articulated in the Sunmar II Ruling Letter. Accordingly, the third element required to establish a violation of § 1625(c)(2) is met.

---

[110] *California Indus. Prod.*, 436 F.3d at 1341.

[111] *See California Indus. Prod.*, 436 F.3d at 1346 (describing the factual circumstances that give rise to the Court's finding of a "treatment" for the purpose of section 1625(c)(2)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 35 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 35 of 44

*No Notice and Comment Were Provided*

Having determined that the first three elements required to establish a violation of section 1625(c) are met, the Court finds that CBP was required to properly notify the public as specified in section 1625(c) that henceforth it intended to require that actual transportation of merchandise on a Canadian rail must occur, as opposed to "any use" of a Canadian rail. Accordingly, Plaintiffs' motion for summary judgment on this aspect of Count III is granted, and Defendants' motion for summary judgment on this aspect of Count III is denied. CBP violated 19 U.S.C. § 1625(c)(2) when it issued the Notices of Penalty without complying with the notice-and-comment provision of that statute.

### *Prior "treatment" of the BCR Route*

Plaintiffs assert that CBP's prior actions of permitting the entry into the eastern United States of over 15,000 trucks containing Plaintiffs' frozen seafood constitutes the requisite "treatment" under subsection (c)(2) that could not be modified without complying with the statute's notice-and-comment procedure.[112] Plaintiffs distinguish *Kahrs Int'l, Inc. v. United States*,[113] where the Court of International Trade found that Entry Summary forms (CBP Form 7501) did not constitute prior "treatment" under subsection (c)(2) because CBP was unable to sample the merchandise to ensure compliance with the "actual determination by a

---

[112] Docket 117 at 73–75. (citing *American Fiber & Finishing, Inc. v. United States*, 121 F.Supp. 3d 1273 (Ct. Intl. Trade 2015).

[113] 33. C.I.T. 1316 (2019).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 36 of 44

Customs officer" requirement pursuant to 19 C.F.R. § 177.12(c)(1)(i)(A).[114] In contrast, here Plaintiffs contend that "CBP had all the information necessary to determine whether the importer was in compliance with the cabotage laws,"[115] and that the bills of lading for each entry underwent individual review by a CBP official at the Calais border crossing.[116] Plaintiffs also contend that in 2012, the President of the BCR, Neil Bickford, requested and received approval from a CBP official, Bruce Mulholland, at the Calais Port of Entry, to construct the BCR and thus, that CBP was fully aware of the BCR Route.[117]

Defendants contend that Plaintiffs' reliance on the bills of lading for the truck shipments that had travelled on the BCR as "treatment" is flawed. Defendants assert that the facts here are the same as in *Kahrs*, where the Court of International Trade held that an Entry Summary form without "an actual physical review of samples or any other information" is not a "treatment" pursuant to subsection (c)(2).[118] Defendants also maintain that CBP regulations preclude the agency from finding that "a treatment was accorded" if the person claiming treatment "made a material false statement or material omission in connection with a Customs [claim] . . . and that statement or omission affected the determination on which the

---

[114] Docket 146 at 39.

[115] Docket 146 at 39.

[116] Docket 117 at 73–74 n.50.

[117] Docket 137 at 4–6, ¶¶ 9–12 (Bickford Decl.).

[118] Docket 134 at 36 (quoting *Kahrs Int'l*, 33 C.I.T. at 1356).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 37 of 44

Case 3:21-cv-00198-SLG    Document 154    Filed 05/25/22    Page 37 of 44

treatment claim is based[.]"[119]  Defendants allege that Plaintiffs made such a "material omission" by switching from the NBSR Route to the BCR Route without notifying CBP that the BCR is a "specially built mini-rail track that goes nowhere."[120] Defendants also maintain that "CBP does not rely upon bills of lading to provide the type of detailed facts necessary to determine if a particular operation complies with the Third Proviso."[121]  And Defendants challenge the veracity of Plaintiffs' claim that, in 2012, Mr. Mulholland approved of Mr. Bickford's request to construct and operate the BCR.  According to Defendants, Mr. Mulholland "has not held any position at the Calais Port of Entry since 2005," and CBP "could not locate any records of such communication."[122]

The Court finds that there are genuinely disputed material facts with respect to whether CBP's prior actions regarding the BCR Route itself constitute a "treatment" for the purpose of subsection (c)(2).  Specifically, there are disputed facts as to whether CBP made an actual determination to approve the entries with knowledge that the merchandise had travelled on the BCR Route, and not the NBSR Route.  Plaintiffs assert that Defendants had approved the BCR Route from its inception in 2012.[123]  To support this contention Plaintiffs point, for example, to

---

[119] Docket 115 at 34 (quoting 19 C.F.R. § 177.12(c)(1)(iii)(C)).

[120] Docket 115 at 40.

[121] Docket 115 at 40.

[122] Docket 144 at 6–7 (citing Docket 78 at 2–3, ¶¶ 5–7 (Gadway Decl.)).

[123] Docket 136 at 52.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 38 of 44

Case 3:21-cv-00198-SLG    Document 154    Filed 05/25/22    Page 38 of 44

the bills of lading provided to CBP, the accompanying Entry Summary forms, the alleged presence of a CBP representative onsite in Bayside before, during, and after the construction of the BCR, and the official investigation into the BCR Route by CBP that began in 2017—three years prior to the issuance of the Notices of Penalty.[124] Defendants assert that CBP was not "given an opportunity to examine the facts of the BCR Route to determine compliance with the Third Proviso"[125] and CBP officials were unaware of the BCR Route until they undertook their investigation. Resolution of this factual dispute is necessary to determine whether CBP's prior actions permitting entry of 15,000 shipments of frozen that had travelled on the BCR constituted a "treatment" for the purpose of subsection (c)(2). If so, this "treatment" would be "substantially identical" to that at issue in the Notices of Penalty, as both concern the BCR Route. For the aforementioned reasons, neither Plaintiffs nor Defendants are entitled to summary judgment on Count III with respect to CBP's prior actions regarding the BCR Route itself.

## III.  Count IV – Due Process Claim

Count IV asserts that CBP's Notices of Penalty violate the Fifth Amendment's Due Process Clause by "reversing decades of consistent administrative rulings interpreting the statutory language" of the Third Proviso

---

[124] *See, e.g.*, Docket 137 at 4, ¶ 9 (Decl. of Neil Bickford) ("In 2012, I informed . . . the Assistant Port Director or Port Supervisor for [CBP]" "about the BCR's planned construction and its intended use in lieu of the NBSR."); Docket 106-9 at 9 (JADE investigation notes).

[125] Docket 115 at 39.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 39 of 44

without providing adequate notice beforehand.[126]  Plaintiffs specifically argue that "CBP's newly-minted interpretation of the Third Proviso fails to provide the requisite fair notice" with regard to the requirements for compliance with the statute's "in part over Canadian rail lines" clause.[127]  Pointing to "CBP's consistent public rulings, treatment and guidance," Plaintiffs maintain that CBP led the regulated community to conclude "that the BCR rail line was compliant with the Third Proviso" but then issued its Notices of Penalty without any advance notice.[128] The Notices of Penalty, in the words of Plaintiffs, amount to "a regulatory ambush."[129]  As a result, Plaintiffs assert that CBP's Notices of Penalty must be invalidated.

Incorporating their arguments from prior briefing, Defendants argue that Plaintiffs' contentions that they lacked sufficient notice are "meritless."[130] Defendants stress that Plaintiffs failed to avail themselves of rights readily available to them under the "well-recognized Ruling Letter process" when Plaintiffs first began considering a switch from the NBSR to the BCR.[131]

---

[126] Docket 117 at 80.

[127] Docket 117 at 80.

[128] Docket 117 at 81.

[129] Docket 136 at 57 (citing *Gen. Elec. Co. v. U.S.E.P.A.*, 53 F.3d 1324, 1328-29 (D. C. Cir. 1995).  In their reply, Plaintiffs stress that they are not asserting that "the Third Proviso is vague in any respect."  Docket 146 at 41.

[130] Docket 134 at 38.

[131] Docket 38 at 29–30 (citing Docket 39 at 6–7, ¶ 11 (Herbert Decl.)).

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 40 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 40 of 44

Plaintiffs' argument relies on the D.C. Circuit case of *Gen. Elec. Co. v. U.S. E.P.A.*.[132] There, the circuit court determined that the EPA had violated GE's due process rights when interpreting its regulation and imposing a fine on the plaintiff.[133] Although the circuit court held that EPA's interpretation of its regulations was permissible, the court also held that where the "regulations and other policy statements are unclear, where the petitioner's interpretation is reasonable, and where the agency itself struggles to provide a definitive reading of the regulatory requirements, a regulated party is not 'on notice' of the agency's ultimate interpretation of the regulations, and may not be punished."[134] Hence, the circuit court set aside the fine.[135]

In light of the Court's rulings on Claim III, the Court finds that Plaintiffs' due process claim is effectively mooted. No due process violation has occurred because the Court is vacating the Notices of Penalty.

## IV. Count V – Eighth Amendment Claim

Count V asserts that the approximately $25 million in penalties identified in the Notices of Penalty issued to KIF violates the Excessive Fines Clause of the

---

[132] 53 F. 3d 1324 (D.C. Cir. 1995).

[133] *Gen. Elec. Co.*, 53 F. 3d at 1333 (holding that "EPA did not provide GE with fair warning of its interpretation of the regulations.").

[134] *Gen. Elec. Co.*, 53 F. 3d at 1334.

[135] *Gen. Elec. Co.*, 53 F. 3d at 1334 ("EPA thus may not hold GE responsible in any way—either financially or in future enforcement proceedings—for the actions charged in this case.").

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 41 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 41 of 44

Eighth Amendment.[136] In light of this Court's ruling on Claim III, the Court finds that Plaintiffs' Eighth Amendment Claim is effectively mooted.

## V.    Count VI – Preliminary Injunctive Relief

In Count VI, Plaintiffs sought an injunction under the constitutional tolling doctrine prohibiting Defendants from assessing any penalties from the commencement of this action through the entry of final judgment.[137]  The Court granted a preliminary injunction in its October 10, 2021 order.  Defendants now seek the dissolution of that injunction as to the enforcement of the August 2021 Notices of Penalty and as to the issuance of additional Notices of Penalty for alleged violations of the Jones Act relating to shipments of seafood products from Alaska to U.S. destinations via the BCR Route.[138]  Although the Court intends to dissolve the preliminary injunction at the conclusion of this case with respect to future penalties, there remain pending issues.  Accordingly, Defendants' motion to dissolve the injunction at this time is denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment and Defendants' motion for summary judgment are each GRANTED in part and DENIED in part as follows:

---

[136] Docket 1 at 31.

[137] Docket 1 at 32–33.

[138] Docket 115 at 46.

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 42 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 42 of 44

- With respect to Count I, Defendants' motion for a declaratory judgment that the transportation of frozen seafood on the BCR Route does not comply with the Third Proviso of the Jones Act is GRANTED.

- With respect to Count II, Defendants' motion for a declaratory judgment that CBP did not violate 19 U.S.C. § 1625(c)(1) when it issued the Notices of Penalty is GRANTED.

- With respect to Count III, Plaintiffs' motion for a declaratory judgment that CBP violated 19 U.S.C. § 1625(c)(2) is GRANTED solely as to CBP's prior letter rulings, and specifically as to the Sunmar II Ruling Letter. Both Plaintiffs' and Defendants' motions for summary judgment that CBP did not violate 19 U.S.C. § 1625(c)(2) are DENIED as to CBP's actions with respect to approving entries from the BCR Route itself.

- With respect to Count IV, KIF's Due Process Clause claim under the Fifth Amendment is DISMISSED as moot.

- With respect to Count V, KIF's Excessive Fines Clause claim under the Eighth Amendment is DISMISSED as moot.

- Defendants' motion seeking dissolution of the Court's preliminary injunction entered at Docket 95 is DENIED at this time.

IT IS FURTHER ORDERED that a status hearing to address the scheduling of further proceedings in this matter shall be held in person on **June 6, 2022 at**

Case No. 3:21-cv-00198-SLG, *Kloosterboer, et al. v. USA, et al.*
Order re Cross-Motions for Summary Judgment
Page 43 of 44

Case 3:21-cv-00198-SLG    Document 154    Filed 05/25/22    Page 43 of 44

**10:00 a.m. in Anchorage Courtroom 3.** The parties are directed to meet and confer on scheduling issues prior to the conference.

DATED this 25th day of May, 2022 at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE

Case No. 3:21-cv-00198-SLG, _Kloosterboer, et al. v. USA, et al._
Order re Cross-Motions for Summary Judgment
Page 44 of 44

Case 3:21-cv-00198-SLG   Document 154   Filed 05/25/22   Page 44 of 44