S. LANE TUCKER
United States Attorney

SETH M. BEAUSANG
SIOBHAN MCINTYRE
Assistant U.S. Attorneys
U.S. Attorney's Office, District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
Email: Seth.Beausang@usdoj.gov
Email:  Siobhan.McIntyre@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC and ALASKA REEFER MANAGEMENT LLC,<br><br>Plaintiffs,<br>vs.<br><br>UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, and TROY A. MILLER, U.S. Customs and Border Protection Acting Commissioner, in his official capacity,<br><br>Defendants. | Case No. 3:21-cv-00198 SLG<br><br>**MOTION TO DISSOLVE THE COURT'S INJUNCTION AS TO PLAINTIFFS' ONGOING USE OF THE BCR ROUTE** |

COMES NOW, the United States of America, through counsel, with the permission of the Court to file this Motion to Dissolve the Court's Injunction as to Plaintiffs' Ongoing Use of the BCR Route, and to move for expedited consideration of this Motion. A Motion for Expedited Consideration is filed herewith.

## INTRODUCTION

The Court is familiar with the facts which need not be repeated here in detail. The United States also incorporates the background stated in Dkt. 156.

The Court concluded on cross-motions for summary judgment that Plaintiffs' use of the BCR Route does not comply with the Third Proviso because no "transportation" occurs over the BCR. [Dkt. 154 at 20] Upon information and belief, Plaintiffs continue to utilize the BCR in that same illegal manner to transport seafood from Alaska to the Eastern United States. [Declaration of Herm Gadway, dated June 7, 2022, filed concurrently herewith] Under the applicable law governing injunctions, the Court should immediately dissolve the part of its injunction that prevents CBP from enforcing the Jones Act as to Plaintiffs' ongoing use of the BCR Route.

## ARGUMENT

I. **Applicable law governing injunctions.**

"[I]njunctive relief is an extraordinary remedy that may only be awarded

upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). An injunction must be "narrowly tailored to remedy the specific harm shown." *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019) (quotations omitted).

Once a court decides the merits of a claim after granting a preliminary injunction, the court ordinarily should next decide whether to grant permanent injunctive relief, which moots the preliminary injunction. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 314 (1999)).

To obtain a preliminary injunction, a plaintiff must establish all four of the *Winter* factors under one of two standards, showing either a likelihood of success on the merits, or at least serious questions going to the merits. *See, e.g., Ramos v. Wolf*, 975 F.3d 872, 887-88 (9th Cir. 2020). To obtain a permanent injunction, a plaintiff must show "actual success" on the merits. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

Even on a motion for a preliminary injunction, if a plaintiff fails to show likelihood of success on the merits, or at least serious questions going to the merits, a court need not consider the other factors and the court may not grant an injunction. *See, e.g., Ramos*, 975 F.3d at 878-79 (holding that because plaintiffs failed to establish the first element, district court abused discretion

in granting injunction); *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (a court need not consider any other factors if a plaintiff cannot establish the first factor).

The Court alternatively may decide to subject the instant motion to the test enunciated in *Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000), for when a party seeks modification or dissolution of an injunction. Under *Sharpe*, the movant in that situation "bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Id.* at 1170.

'There is no dispute but that a sound judicial discretion may call for the modification of the terms of an injunction decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.' " *Sys. Fed'n No. 91, Ry. Emps.' Dept. v. Wright*, 364 U.S. 642, 647 (1961); *see also A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002) ("A district court has inherent authority to modify a preliminary injunction in consideration of new facts."). "Because injunctive relief is drafted in light of what the court believes will be the future course of events, a court must never ignore significant changes in the law or circumstances underlying an injunction lest the decree be turned into an instrument of wrong." *Salazar v. Buono*, 559 U.S. 700, 714-15 (2010) (plurality

opinion).

## II. Plaintiffs are not entitled to injunctive relief on Counts I and II.

In Count I, Plaintiffs sought a declaration that Plaintiffs' use of the BCR Route falls within the Third Proviso exception to the Jones Act. The Court disagreed, and held that Plaintiffs' use of the BCR Route is and was illegal for two independent reasons. First, the Court held that the BCR Route does not comply with the Third Proviso because no "transportation" occurs over the BCR. [Dkt. 154 at 20] Second, the Court held that, prior to September 30, 2021, the BCR Route also did not comply with the Third Proviso because Plaintiffs had not filed a rate tariff with the Surface Transportation Board for the BCR Route. [Dkt. 154 at 24] The Court therefore granted the United States' motion for summary judgment on Count I. [Dkt. 154 at 24]

In Count II, Plaintiffs claimed that CBP violated 19 U.S.C. § 1625(c)(1) when it issued the Notices of Penalty for Plaintiffs' use of the BCR Route. The Court also granted the United States' motion for summary judgment on this count. [Dkt. 154 at 29]

As Plaintiffs are unable to show "actual success" on the merits of Counts I and II, they are not entitled to any injunctive relief on those counts.[1]

---

[1] Plaintiffs are also not entitled to injunctive relief on Counts IV and V, which the Court found to be moot after vacating the Notices of Penalty. [Dkt. 154 at

### III. Although Plaintiffs prevailed, in part, on Count III, they are not entitled to injunctive relief that prevents CBP from enforcing the Jones Act as to Plaintiffs' ongoing use of the BCR Route.

In Count III, Plaintiffs claimed that CBP violated § 1625(c)(2) when it issued the Notices of Penalty for Plaintiffs' use of the BCR Route. The Court agreed that, in one aspect, CBP violated § 1625(c)(2), and also found genuine issues of fact as to whether CBP violated § 1625(c)(2) in a second aspect.

Specifically, the Court found that the Notices of Penalty violated § 1625(c)(2) "[i]nsofar as" the Notices modified CBP's treatment articulated in the Sunmar II Ruling Letter that " 'any use' of Canadian rail [was] sufficient to fall within the Third Proviso exception." [Dkt. 154 at 34-35] As relief for that violation, the Court vacated the Notices of Penalty, and therefore found it unnecessary to consider Plaintiffs' due process and Eighth Amendment claims. [Dkt. 154 at 41-42]

The Court found genuine issues of fact as to whether CBP also accorded treatment to the "BCR Route itself." [Dkt. 154 at 36-39] The Court held that if Plaintiffs can establish "this 'treatment' [it] would be 'substantially identical' to that at issue in the Notices of Penalty, as both concern the BCR Route." [Dkt. 154 at 39] Discovery and a trial are needed to determine whether CBP violated
---

39-42]

§ 1625(c)(2) in this second aspect.

Even though the Court vacated the Notices of Penalty, the Court's ruling on Count III appears to leave open the possibility that CBP can still seek to collect penalties for Plaintiffs' transportation of merchandise using the BCR Route during the time Plaintiffs failed to file a rate tariff for the BCR Route. Since the *Horizon* litigation, CBP has required that rate tariffs be filed with the STB in order for a route to qualify for the Third Proviso. Thus, CBP penalizing Plaintiffs for not having had a rate tariff on file with the STB would not have the effect of modifying CBP's treatment articulated in the Sunmar II Ruling Letter. Plaintiffs may disagree about whether, depending on the outcome of the trial, the Court's decision allows CBP to seek Jones Act penalties for Plaintiffs' past utilization of the BCR Route and lack of a rate tariff filing. The parties would benefit from clarification from the Court on this point so that all parties understand the ramifications of the trial.

Even though the parties may disagree about CBP's ability to seek Jones Act penalties for Plaintiffs' *past* utilization of the BCR Route, no part of the Court's decision on Count III entitles Plaintiffs to an injunction preventing CBP from seeking penalties for *ongoing illegal conduct*. As the United States understands the Court's decision, the remaining pending issues the Court identified relate solely to CBP's ability to collect penalties for Plaintiffs' past

conduct. Now that the Court has ruled that Plaintiffs' use of the BCR Route is illegal, no notice and comment is required under § 1625(c)(2) for CBP to enforce the law as to ongoing conduct.

CBP's regulations are explicit on this point: notice and comment is *not* required when there has been a "rendering of a judicial decision which has the effect of overturning the Customs position." 19 C.F.R. § 177.12(d)(1)(iv). CBP took this same position after its prior ruling letters on the need for a rate tariff filing with the STB were invalidated by judicial decree in the *Horizon* litigation. [Dkt. 134-1 at 2 ("Finally, as to your concern that others may rely on rulings invalidated by the court, we believe that the court's decision constitutes public notice that the rulings were invalidated.")]

Without relying on § 177.12(d)(1)(iv), the Federal Circuit reached the same conclusion in *Sea-Land Services, Inc. v. United States*, 239 F.3d 1366 (Fed. Cir. 2001). In that case, the plaintiff invoked § 1625(c), and argued that CBP was illegally modifying a prior "treatment" without notice and comment, even though CBP was merely applying a rule concerning dutiable expenses announced by the Federal Circuit in a prior case (the *Texaco* case). *Sea-Land Serv.*, 239 F.3d at 1368. The Federal Circuit rejected the plaintiff's argument that CBP had violated § 1625(c), holding:

It was this court in *Texaco* that modified the treatment of vessel

repair expenses under § 1466(a). We "clarif[ied]" the judicial interpretation of 19 U.S.C. § 1466(a) in *Texaco*, explaining that, based on the plain language of the statute, "expenses of repairs" in § 1466(a) meant those expenses that would not have been incurred "but for" the ship's repair. *Texaco*, 44 F.3d at 1546. With this explicit interpretation of § 1466(a), *Texaco* wiped the slate of decisions under § 1466(a) clean, requiring the dutiability of all vessel repair expenses to be determined by the "but for" test. Customs is required to follow and apply the "but for" test. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (noting that [t]he judiciary is the final authority on issues of statutory construction and that when a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect). Any decision by Customs after *Texaco* is a decision under the new, clarified standards for determining what expenses under § 1466(a) are dutiable. Since this court, through its decision in *Texaco*, changed Customs' earlier treatment of vessel repair expenses under § 1466(a), Customs' actions after *Texaco* cannot be recognized as rulings or decisions that revoke or modify Customs' earlier decisions under § 1466(a). Furthermore, Customs, required to act under this court's interpretation of § 1466(a), cannot be said to be the one changing any of its previous decisions; our decision in *Texaco* created those changes.

*Sea-Land Serv.*, 239 F.3d at 1372-73.

The same rule should apply here. The Court's decision on Count I obviates any need for CBP to provide notice and comment to modify or revoke any past rulings or treatment relating to the legality of the BCR Route. Once the Court lifts its injunction as to Plaintiffs' ongoing use of the BCR Route, CBP can immediately begin to enforce the Jones Act as to any violations.

## III. It would be an abuse of discretion for the Court to continue to enjoin CBP from enforcing the Jones Act as to Plaintiffs' ongoing use of the BCR Route.

The Court stated that it intends to dissolve the injunction with respect to future penalties at the conclusion of this case, after resolution of the pending issues. Because the resolution of these pending issues will only determine CBP's ability to collect penalties for past conduct, there is no legal or equitable reason to keep the injunction in place as to CBP's ability to enforce the Jones Act as to Plaintiffs' ongoing use of the BCR Route.

Under the standards identified in Part I, it would be an abuse of discretion for the Court to continue its constitutional tolling injunction as to ongoing conduct. The sole purpose of a preliminary injunction is to "preserve the status quo ante litem pending a determination of the action on the merits." *Sierra Forest Legacy*, 577 F.3d at 1023. The Court has already decided the merits and determined that the BCR Route does not meet the requirements of the Third Proviso. Thus, the injunction should be dissolved. *See, e.g.*, *Index Newspapers LLC v. City of Portland*, 2022 WL 72124, at *9 (D. Or. Jan. 7, 2022) (holding that the court would dissolve injunction because "a significant change in facts" meant that "Federal Defendants have met their burden with respect to likelihood of success on the merits and irreparable harm"); *Netlist, Inc. v. Diablo Techs., Inc.*, 2015 WL 1925114, at *2 (N.D. Cal. Apr. 24, 2015) ("With

the likelihood of success so undermined, the foundation for a preliminary injunction no longer exists."); *cf. Agostini v. Felton*, 521 U.S. 203, 237 (1997) (holding that petitioners were entitled to relief from permanent injunction because of a change in the law).

The Court's constitutional tolling injunction is a form of permanent injunction. Under the Court's injunction, CBP is enjoined "from ever issuing and enforcing any new Notices of Penalty for alleged violations of the Jones Act relating to shipments from Alaska to U.S. destinations through Bayside via the BCR Route commenced or completed at any time from the date of this order until the date of the final judgment in this action, and regardless of the outcome of the action." [Dkt. 95 at 23] Thus, Plaintiffs continue to be the beneficiaries of a permanent injunction even after the Court has determined that Plaintiffs' use of the BCR Route is illegal. Every day the injunction remains in place, the United States is irreparably harmed by its inability to enforce the law.

Even if the Court were to apply the standard in *Sharpe*, the Court should find that the United States has met its burden to establish "a significant change in facts or law [that] warrants revision or dissolution of the injunction." *Id.* at 1170. The Court entered its injunction after finding that "Plaintiffs should be accorded the right to test the validity of the Notices of Penalty

without having to face the risk of large additional penalties if they do not prevail in this case." *Kloosterboer Int'l Forwarding LLC v. United States*, No. 3:21-CV-00198-SLG, 2021 WL 4729303, at *5 (D. Alaska Oct. 10, 2021). Plaintiffs have had due process, and an abundant opportunity to prove that the BCR Route meets the requirements of the Third Proviso—they failed. The Court's injunction, which now effectively allows the Plaintiffs to violate the law with impunity, has become " 'an instrument of wrong.' " *Salazar*, 559 U.S. at 714-15.

## CONCLUSION

For all of these reasons, the Court should dissolve its injunction as to Plaintiffs' ongoing use of the BCR Route and allow CBP to enforce the Jones Act.

RESPECTFULLY SUBMITTED this 7th day of June 2022, in Anchorage, Alaska.

S. LANE TUCKER
United States Attorney

s/ Seth M. Beausang
Assistant U.S. Attorney
United States of America

s/ Siobhan A. McIntyre
Assistant U.S. Attorney
United States of America

**CERTIFICATE OF SERVICE**
I hereby certify that on June 7, 2022,
a copy of the foregoing was served electronically on:

David Karl Gross, ABA #9611065
Edward E. McNally, ABA #9203003
Marc E. Kasowitz *(Pro Hac Vice)*
David J. Abrams *(Pro Hac Vice)*
David E. Ross *(Pro Hac Vice)*
Hector Torres (Pro Hac Vice)
Kim Conroy *(Pro Hac Vice)*
Attorneys for Plaintiffs

s/ Seth M. Beausang
Assistant U.S. Attorney