James E. Torgerson, ABA #8509120
Stoel Rives, LLP
510 L Street, Suite 500
Anchorage, AK 99501
907-263-8404
jim.torgerson@stoel.com

D. Michael Kaye, *pro hac vice*
Squire Patton Boggs (US) LLP
2550 M Street NW
Washington, DC 20037
202-457-6000
Michael.kaye@squirepb.com

Keith Bradley, *pro hac vice*
Squire Patton Boggs (US) LLP
717 17th Street, Suite 1825
Denver, Colorado 80202
303-894-6156
Keith.bradley@squirepb.com

John J. Reilly, *pro hac vice*
Squire Patton Boggs (US) LLP
1211 Avenue of the Americas, 26th Floor
New York, NY 10036
212-872-9865
John.reilly@squirepb.com

Emily Huggins Jones, *pro hac vice*
4900 Key Tower, 127 Public Square
Cleveland, OH, 44114
216-479-85500
Emily.hugginsjones@squirepb.com

*Attorneys for Proposed Amicus Curiae Lineage Logistics Holdings, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KLOOSTERBOER INTERNATIONAL FORWARDING LLC, AND ALASKA REEFER MANAGEMENT LLC,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CUSTOMS AND BORDER PROTECTION, AND TROY A. MILLER, in his official capacity as Acting Commissioner, U.S. Customs And Border Protection,<br><br>　　　　　　　　　Defendants. | Case No. 3:21-cv-00198-SLG |

**BRIEF OF *AMICUS CURIAE* LINEAGE LOGISTICS HOLDINGS, LLC
IN OPPOSITION TO MOTION TO DISSOLVE THE INJUNCTION**

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)　　　　　　1

Lineage Logistics Holdings, LLC ("Lineage") previously filed an *amicus curiae* brief in support of the Plaintiffs' motion for summary judgment. ECF No. 124. As Lineage explained in that brief, it is the ultimate owner of Bayside Canadian Railway Company Ltd. ("BCR"), the company that owns and operates the railway that constitutes the Canadian rail portion of the BCR Route at issue in this case; and Lineage's subsidiary Woodstock Cold Storage (1990) Ltd., d/b/a Kloosterboer Bayside ("KBB") received substantial penalty notices from U.S. Customs and Border Protection ("CBP") arising from the shipment of frozen fish from Alaska to the United States over the BCR Route. *Id.* at 1.

Now, CBP has asked the Court to dissolve its preliminary injunction, which currently bars CBP from issuing new Jones Act penalty notices, on "any . . . person in the chain of supply, transportation, and distribution" through the BCR Route. ECF No. 95, at 23 (preliminary injunction); ECF No. 159 ("CBP Mot."). CBP has previously, by issuing penalty notices to KBB, taken the position that KBB was in that chain. If the Court lifts the injunction, CBP will presumably take that position again. Lineage therefore has an interest in the continuation of the injunction at least until the remaining issues in this case are resolved.

Lineage submits this brief to inform the Court about the perspective of the non-parties benefiting from the Court's injunction.

## I. THE GROUNDS FOR THE PRELIMINARY INJUNCTION REMAIN IN PLACE; THE GOVERNMENT HAS STILL NOT COMPLIED WITH SECTION 1625(C)(2).

The Court initially issued its preliminary injunction solely on the basis of Count III of the complaint. ECF No. 95, at 14-15. Whatever serious questions there were at the time about the merits of Counts I and II, the Court determined that it did not need to evaluate them because the Plaintiffs' likelihood of success on Count III was sufficient to justify a preliminary injunction. *Id.* So it is startling that the Court's decision to grant the plaintiffs summary judgment on Count III—thus bearing out its preliminary assessment of the merits—could, in the government's view, warrant lifting an injunction that was premised on that very claim. Ordinarily, success on a claim would tend to warrant continuing or extending an injunction it had supported—not the backwards outcome that the government demands.

Count III asserted that the government violated 19 U.S.C. § 1625(c)(2) by failing to conduct a notice and comment process before issuing a ruling that differed from its previous treatment of a substantially identical situation. The Court recognized that the BCR Route is "substantially identical" to the previous NBSR Route on which CBP had opined; and the Court determined that CBP's new treatment of the BCR Route is different from how it treated the NBSR Route. ECF No. 154, at 34-37. The government's sole justification for lifting the injunction is that, now that the Court has decided the BCR Route does not qualify for the Third Proviso, CBP no longer has to carry out the notice and comment process mandated by section 1625(c)(2). CBP Mot. at 7-9.

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)                        3

That contention is contrary to the plain text of the statute. Section 1625(c)(2) is triggered when there has been a "treatment" of a "substantially identical transaction[]." The Court has held that there was a "treatment," namely the Sunmar ruling that "any use" of a Canadian railway is sufficient for the Third Proviso; the Court has held that the BCR Route is "substantially identical" to the previous transaction; and the Court has determined that treating the BCR Route as a violation of the Jones Act depends on a treatment that is different from the Sunmar ruling. ECF No. 154, at 34-35. The government does not ask the Court to reconsider any of those holdings. Under section 1625(c)(2), the consequence is straightforward: CBP must conduct a notice and comment process before it can issue a ruling that departs from the Sunmar ruling, as its penalty notices in this case did. That consequence remains the law. Contrary to the government's insistence that it must now be allowed to enforce its current understanding of the Jones Act, CBP Mot. at 7, section 1625(c)(2) says straightforwardly that it must do notice and comment first.

The government says that the Court's preliminary injunction is in effect a permanent injunction prohibiting enforcement of the law. CBP Mot. at 11. Not so. The Court explained why it found the preliminary injunction warranted: CBP's failure to comply with the prerequisites for enforcement that seemed likely (as it appeared at the time) to follow, by statutory mandate, from CBP's past practices. ECF No. 95, at 14-15. To undertake the enforcement that it wishes, CBP has a clear path; it simply has to do what the statute requires.

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)                   4

In truth, it is the government that has matters backward. In the government's view, CBP is not really required to publish a notice of its intention to change its treatment of a type of transaction, to consider the comments, and then to publish its decision. *But see* 19 U.S.C. § 1625(c)(2). As CBP would have it, it can change its interpretation of a statute or rule and change its treatment of a type of activity. Once it prevails on the substance of its new treatment in any enforcement process, it is, supposedly, excused from the statutory notice process. The result would be that the public has to monitor court cases around the country, published and unpublished, to keep track of what CBP's evolving views are. That is the opposite of what Congress prescribed. A major function of section 1625(c)(2), as the Court has recognized, is to require CBP "to properly notify the public" about its revised implementation of the Jones Act. ECF No. 154, at 36.

There are trucking companies, freight forwarders, ocean going vessel operators, importers, and other third parties that participate in the Plaintiffs' commerce but cannot be presumed to be following this case. *See* ECF No. 95, at 17-18 & n.39. Some may have received penalty notices from CBP, but those penalty notices provided no information about why CBP departed from the Sunmar ruling and what has changed—and thus what would be needed to come into compliance. *See, e.g.*, ECF Nos. 8-10. Some may not have received penalty notices and might not even be aware of the dispute. These third parties know where to get information about CBP's interpretation and implementation of the laws it administers: the Customs Bulletin, as section 1625 directs. That is where CBP must notify the public if, contrary to the Sunmar ruling, CBP will no longer accept "any use" of

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)  5

a Canadian railroad. As CBP itself has acknowledged: "Publication in the Customs Bulletin must remain the publication standard for legal purposes . . . because that is the procedure prescribed in the statute." 67 Fed. Reg. 53,483, 53,487 (Aug. 16, 2002). *Cf. Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1486 (9th Cir. 1992) (showing that all interested parties would have actual notice about an agency's plans is insufficient for notice-and-comment under the Administrative Procedure Act; "Federal Register publication . . . ensures that agencies and reviewing courts need not make the difficult and necessarily ad hoc determinations" about actual notice).

It bears mention, too, that section 1625(c) requires CBP not only to publish its *decision* to change treatment. It must first publish a notice soliciting comment, give the public a chance to comment on the proposed change, and "consider[] . . . any comments received." 19 U.S.C. § 1625(c). The government's position, that prevailing on Counts I and II obviates section 1625(c), flouts that requirement. The public—including Lineage— is entitled to an opportunity to inform CBP about consequences of its new views, and to try to persuade it to revert to the Sunmar policy, *before* CBP undertakes enforcement based on its new policy. "Notice and comment gives affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019); *see also Ivy Sports Med., LLC v. Burwell*, 767 F.3d 81, 87-88 (D.C. Cir. 2014) ("[N]otice and comment . . . helps ensure that regulated parties receive fair treatment, a value basic to American administrative law.").

## II. THE COURT'S DECISION CANNOT EXCUSE CBP FROM ITS NOTICE-AND-COMMENT OBLIGATIONS.

The government maintains that a CBP regulation exempts this situation from section 1625(c)(2). 19 C.F.R. § 177.12 implements section 1625(c) by reiterating that CBP will carry out the required notice and comment procedures; but section 177.12(d)(1) states certain exceptions. One of those exceptions is when "a judicial decision . . . has the effect of overturning the Customs position." *Id.* § 177.12(d)(1)(iv).

That exception does not appear in the statute itself, so it cannot be a legitimate excuse. "Exceptions to notice and comment rulemaking 'are not lightly to be presumed.'" *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018). Administrative Procedure Act ("APA") section 553 allows an agency to avoid the APA notice-and-comment requirement when the agency legitimately finds "good cause," meeting one of three specified criteria, for doing so. As the Ninth Circuit explained, even that explicit exception to the notice-and-comment requirement must be "narrowly construed and only reluctantly countenanced." *Id.* But section 1625(c)(2) does not contain the same exceptions, and in fact does not allow any exception at all.

In adopting its regulatory exceptions, CBP explained that in some circumstances the notice and comment process "would serve no purpose." 67 Fed. Reg. at 53,493. That rationale is analogous to a plea of harmless error. Even if such a concept were permissible, "[t]he court must exercise great caution in applying the harmless error rule in the administrative rulemaking context," and "[t]he failure to provide notice and comment is

harmless only where the agency's mistake clearly had no bearing on the procedure used or the substance of decision reached." *California v. Azar*, 911 F.3d at 580. But in truth, there is no harmless error exception in section 1625. *Compare* 19 U.S.C. § 1625 *with* 5 U.S.C. § 706 (in APA review, "due account shall be taken of the rule of prejudicial error"). CBP's belief that notice and comment would sometimes "serve no purpose" is simply a disagreement with the policy that is explicit in section 1625. "If the government doesn't like Congress's notice-and-comment policy choices, it must take its complaints there." *Azar v. Allina*, 139 S. Ct. at 1815.

The government's motion relies on *Sea-Land Services, Inc. v. United States*, 239 F.3d 1366 (Fed. Cir. 2001). CBP Mot. 8. So, too, did the rulemaking that adopted the section 177.12(d)(1) exceptions. 67 Fed. Reg. at 53,492-93. But the *Sea-Land* example is not pertinent. The Federal Circuit's reasoning in that case was that section 1625(c) was not triggered in the first place, because CBP had never made a decision contrary to its prior treatment. The Federal Circuit had made the decision by providing a binding interpretation of a particular statutory provision. "Customs, *required to act under this court's interpretation* of § 1466(a), cannot be said to be the one changing any of its previous decisions; our decision in *Texaco* created those changes." *Sea-Land*, 239 F.3d at 1373 (emphasis added). CBP explained as much in its rulemaking: "Customs was bound by the court decision [in *Texaco*] and had no discretion to modify the court decision and thus would be unable to respond to any comments it received." 67 Fed. Reg. at 53,492.

With all due respect, this Court's decisions do not have the same precedential effect on CBP as do those of the Federal Circuit.[1] As Lineage previously observed, the Federal Circuit has exclusive jurisdiction over tariff cases; and as a court of appeals, its published decisions are precedent binding on it and on the Court of International Trade. ECF No. 124-1, at 26. So, indeed, Customs was bound by the Federal Circuit's precedential decision, which is why the Federal Circuit later (in *Sea-Land*) explained that its previous decision had "created those changes." Not even a decision by the Ninth Circuit would have that effect, because that Court's jurisdiction with respect to the Jones Act is not exclusive. "[A]n opinion of [the Ninth Circuit] is binding within our circuit, not elsewhere in the country. The courts of appeals, and even the lower courts of other circuits, may decline to follow the rule we announce. . . . This ability to develop different interpretations of the law among the circuits is considered a strength of our system." *Hart v. Massanari*, 266 F.3d 1155, 1172-73 (9th Cir. 2001). In *United States v. Mendoza*, the Supreme Court explained why the government is permitted to relitigate issues that it has lost. "Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore a difficult question," and "would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue." 464 U.S. 154, 160 (1984). Moreover, persons that are not

---

[1] Moreover, the Court's summary-judgment decision is not even a final judgment. An interlocutory decision that remains open to revision under Rule 54(b) is a particularly weak basis for deeming CBP's prior ruling "overturned."

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)          9

parties to this case are entitled, in appropriate cases, to litigate the meaning of the Third Proviso in other courts. *Cf. California v. Azar*, 911 F.3d at 583 (noting "non-parties[']... right to litigate in other forums").

In short, unlike the situation that *Sea-Land* discussed, CBP really does have choices after this Court's decision. It could adhere to the Sunmar ruling; it could adopt, as an agency, the interpretive approach from this Court's decision (which was not quite the same as what the government's litigation counsel advocated); it could develop some different interpretation. This Court's decision does not predetermine the result of any of those choices. If CBP does undertake future enforcement against the BCR Route, that enforcement activity will represent CBP policy, not simply CBP's adherence to a binding precedent. The section 177.12(d)(1)(iv) exception, even if it were valid in general, does not apply.

### III. CONCLUSION

"[T]he Government should turn square corners in dealing with the people." *Dep't of Homeland Security v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891, 1909 (2020). But CBP wants the Court to let it cut corners. The Court already held that CBP was required to conduct a section 1625(c) notice and comment process before enforcing an interpretation that differs from the Sunmar ruling. If CBP wants to undertake enforcement, it should simply fulfill that statutory requirement.

DATED: June 21, 2022 STOEL RIVES LLP

By:/s/ James E. Torgerson
    James E. Torgerson (Bar No. 8509120)

SQUIRE PATTON BOGGS (US) LLP
    Keith Bradley (*pro hac vice*)
    D. Michael Kaye (*pro hac vice*)
    John J. Reilly (*pro hac vice*)
    Emily Huggins Jones (*pro hac vice*)

Attorneys for Proposed *Amicus Curiae* Lineage Logistics Holdings, LLC

# CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2022, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court, District of Alaska, by using the CM/ECF system. Participants in this Case No. 3:21-cv-00198 (SLG), who are registered CM/ECF users, will be served by the CM/ECF system.

Seth M. Beausang, Asst. U.S. Attorney
E. Bryan Wilson, Asst. U.S. Attorney
Siobhan McIntyre, Asst. U.S. Attorney
U.S. Attorney's Office
seth.beausang@usdoj.gov
bryan.wilson@usdoj.gov
siobhan.mcintyre@usdoj.gov

David Karl Gross
Birch Horton Bittner & Cherot
dgross@bhb.com

Edward E. McNally
Marc E. Kasowitz
David J. Abrams
David E. Ross
Hector Torres
Kim Conroy
Kasowitz Benson Torres LLP
emcnally@kasowitz.com
mkasowitz@kasowitz.com
htorres@kasowitz.com
dabrams@kasowitz.com
kconroy@kasowitz.com
dross@kasowitz.com

/s/ James E. Torgerson
James E. Torgerson

*Kloosterboer, et al. v. United States, et al.*
Case No. 3:21-cv-00198 (SLG)  12